# EXHIBIT 1

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 2 of 63

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 8953349

2019 WL 8953349
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Adam AARONSON, Plaintiff,

v.

CHW GROUP, INC., d/b/a Choice
Home Warranty, Defendant.

Case No. 1:18-cv-1533
|
Signed 04/15/2019

**Attorneys and Law Firms**

Richard William Ferris, FerrisWinder PLLC, Richmond, VA,
for Plaintiff.

Kyle Reese Elliott, Ogletree Deakins Nash Smoak & Stewart
PC, Richmond, VA, for Defendant.

## ORDER

T. S. Ellis, III, United States District Judge

**\*1** Before the Court in this "robocall" case, brought
under the Telephone Consumer Protection Act [1] ("TCPA"),
is defendant's motion for judgment on the pleadings filed
pursuant to Rule 12(c), Fed. R. Civ. P. The question presented
by the motion is whether plaintiff's Complaint alleges facts
sufficient to show plausibly that defendant made calls to
plaintiff's cellular telephone using an automatic telephone
dialing system or an artificial or prerecorded voice, in
violation of 47 U.S.C. § 227(b)(1)(A)(iii). Because the
Complaint alleges almost no facts concerning the substance
or details of the calls at issue, and thus does not raise the
probability above a speculative level that defendant made
the calls or that defendant did so using automated telephone
equipment, defendant is entitled to judgment on the pleadings.

## I.

Rule 12(c) provides that "[a]fter the pleadings are closed ...
a party may move for judgment on the pleadings." The
standard of review for Rule 12(c) motions is the same as
the "plausibility standard" governing Rule 12(b)(6) motions.

Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014);
Travelers Indem. Co. of Connecticut v. Lessard Design,
Inc., 321 F. Supp. 3d 631, 635 (E.D. Va. 2018). [2] Thus,
"a motion for judgment on the pleadings should only be
granted if, after accepting all well-pleaded allegations in the
plaintiff's complaint as true and drawing all reasonable factual
inferences from those facts in the plaintiff's favor, it appears
certain that the plaintiff cannot prove any set of facts in
support of his claim entitling him to relief." Id.

## II.

Plaintiff claims in the Complaint that defendant violated 47
U.S.C. § 227(b)(1)(A)(iii), the provision of the TCPA that
prohibits the use of automated telephone equipment to make
calls to a cellular telephone. In pertinent part, § 227(b)(1)(A)
(iii) states:

> It shall be unlawful for any person
> within the United States ... to make
> any call (other than a call made for
> emergency purposes or made with the
> prior express consent of the called
> party) using any automatic telephone
> dialing system or an artificial or
> prerecorded voice ... to any telephone
> number assigned to a ... cellular
> telephone service....

The TCPA also provides a private right of action to recover
statutory damages for violations of this provision. Id. § 227(b)
(3)(B). Accordingly, to state a claim under the TCPA, a
plaintiff must allege (i) defendant made one or more calls (ii)
to plaintiff's cellular phone (iii) using an automatic telephone
dialing system ("ATDS") or an artificial or prerecorded voice.
The parties do not dispute that the calls at issue were made to
plaintiff's cellular phone. Analysis thus proceeds to examine
whether the Complaint alleges sufficient facts to show that
defendant made the calls and that defendant did so using one
of the statutorily prohibited automated devices.

## III.

**\*2** Defendant first argues that plaintiff failed to allege facts that show defendant made the telephone calls at issue. A TCPA plaintiff can establish that the defendant "made" a call through theories of direct or vicarious liability. *See Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018).

In order to establish that a defendant is directly liable under the TCPA, courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue. *Id.* (collecting cases). [3] Accordingly, at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone. *See id.*; *Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-PHX-DJH, 2017 WL 3841491, at \*3 (D. Ariz. Feb. 15, 2017); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987 (N.D. Cal. 2014), *aff'd in part*, 670 F. App'x 573 (9th Cir. 2016); *Wallack v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 WL 1515852, at \*3 (E.D. Mich. Apr. 18, 2014).

In this respect, plaintiff fails to plead facts to support his conclusory allegation that defendant called plaintiff's cellular phone. The Complaint is devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone. The lone *fact* marshalled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, "is one of the Defendant's many telephone numbers." Compl. ¶ 11. But without any facts to explain why plaintiff believes the identified phone number is owned by defendant, [4] this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone. Therefore, plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.

**\*3** On the other hand, to demonstrate that a defendant is vicariously liabile under the TCPA for calls made by an agent or other third party, courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency. *See, e.g., Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018); *Childress*, 2018 WL 4684209, at \*3; *In re: Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520. It is well-established under such common law principles that an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at \*6 (S.D.N.Y. Nov. 30, 2015) (quoting Restatement (Third) of Agency, § 1.01 (2006)). Thus, at the pleadings stage, plaintiff "must allege *some* facts regarding the relationship between an alleged principal and agent" that show defendant had the right to control the party making the calls; plaintiff "cannot simply allege general control in a vacuum." *Id.* at \*7 (emphasis in original).

These principles, applied here, confirm that plaintiff has failed to allege facts to show defendant was vicariously liable for the calls at issue. After repeatedly alleging that defendant itself made the calls to plaintiff's cellular telephone, the Complaint further alleges that, in placing the calls, defendant "acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers." Compl. ¶ 9. This conclusory, boilerplate allegation plainly fails to provide any *facts* to demonstrate an agency relationship between defendant and the party who physically initiated the call. *See Melito*, 2015 WL 7736547, at \*7 (stating that "mere conclusory allegations that [the caller] was [the defendant's] agent ... fails to plead an agency relationship ... sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA"). Indeed, the Complaint fails to allege any facts that reflect how the caller identified itself (*e.g.*, as defendant's employee), the substance of the call (*e.g.* a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control. Accordingly, it is clear that plaintiff has failed to plead facts sufficient to support a theory of vicarious liability under the TCPA because plaintiff's allegations do not show plausibly that the party who actually, physically initiated the telephone calls at issue was subject to defendant's control in an agency relationship.

**IV.**

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 8953349

Defendant next argues that even assuming *arguendo* that the Complaint alleges facts sufficient to show that defendant made the calls at issue, plaintiff has nonetheless failed to plead facts to show plausibly that defendant did so using an ATDS or an artificial or prerecorded voice.

As an initial matter, it is clear that there is no basis in the Complaint on which to conclude that the calls at issue used an artificial or prerecorded voice. In fact, the Complaint alleges that after plaintiff answered the calls, he was greeted by a live, human representative. Compl. ¶¶ 24, 32. Thus, because plaintiff has not pled "factual allegations suggesting that the voice on the other end of the line was prerecorded" or artificial, plaintiff must instead demonstrate that the calls were made using ATDS. *See Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014).

The TCPA defines an ATDS as "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). As courts have explained, the defining characteristic of an ATDS is the ability to "dial numbers without human intervention." *ACA Int'l v. FCC*, 885 F.3d 687, 695, 703 (D.C. Cir. 2018); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 801 (D. Ariz. 2018).

**\*4** At the pleadings stage, to demonstrate that a call was made using an ATDS, plaintiff must allege facts to show "why they believe[ ] that an ATDS was used." *Reo v. Caribbean Cruise Line*, Inc., 2016 WL 1109042, at \*4 (N.D. Ohio Mar. 18, 2016). [5] In this respect, given "the difficulty a plaintiff faces in knowing the type of calling system used ... courts can rely on details about the call to infer the use of an ATDS." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129–30 (W.D. Wash. 2012). But without more, merely alleging, in a conclusory fashion, that defendant used an ATDS or parroting the statutory definition of an ATDS to describe the equipment used is insufficient to show plausibly that the telephone calls were made to plaintiff's cellular phone via an ATDS. *Baranski v. NCO Fin. Sys., Inc.*, 2014 WL 1155304, at \*6 (E.D.N.Y. Mar. 21, 2014) (holding that "[p]laintiffs must do more than simply parrot the statutory language" defining ATDS and noting that the "vast majority of courts to have considered the issue have found that "a bare allegation that defendants used an ATDS is not enough").

In this respect, plaintiff fails to plead facts to support his conclusory allegation that defendant called plaintiff's cellular phone using an ATDS. Indeed, the majority of the allegations in the complaint amount to nothing more than a formulaic recitation of the statutory definition of an ATDS. *See* Compl. ¶¶ 25–31. The only factual detail alleged by plaintiff with respect to the content or nature of the calls at issue that could support plaintiff's belief that the call had been made using ATDS is that plaintiff was "*sometimes* greeted with 'dead air' whereby no person was on the other end of the line"; then after "several seconds, an agent was connected" to the call. *Id.* ¶ 24 (emphasis added). Plaintiff also alleges that "the dead air that the Plaintiff *may have experienced* on the calls that he received is indicative of the use of an ATDS." *Id.* ¶ 32 (emphasis added). Putting aside the equivocal nature of these factual allegations, courts have routinely held that a plaintiff cannot support a belief that an ATDS was being used by alleging only that plaintiff experienced "dead air" during the calls at issue. *See, e.g., Norman v. AllianceOne Receivables Mgmt., Inc.*, 637 Fed. Appx. 214, 215 (7th Cir. 2015) (finding that "dead air" was insufficient to create an issue of material fact even though auto dialers frequently result in "dead air"); *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308 (S.D. Fla. 2016); *Estrella v. Ltd. Fin. Servs.*, LP, No. 14-cv-2624, 2015 WL 6742062, at \*3 (M.D. Fla. Nov. 2, 2015). Therefore, plaintiff has failed to plead facts sufficient to support his conclusion that defendant made the calls at issue using an ATDS, as is required in order to state a claim under the TCPA.

## V.

Seeking to avoid dismissal, plaintiff advances two arguments that attempt to show defendant's motion for judgment on the pleadings is inappropriate on procedural grounds.

First, plaintiff argues that defendant's motion was filed in bad faith and that the motion unreasonably increases the proceedings. In this regard, plaintiff emphasizes that in a joint motion to vacate the entry of default against defendant in this matter, defendant "agreed to file its answer and affirmative defenses to the Complaint, rather than a Rule 12(b) motion, as its responsive pleading on or before February 15, 2019." Joint Mot. to Vacate, Dkt. 12, ¶ 12. But it appears that defendant did in fact file its Answer on February 15, 2019, as required by this agreement. *See* Answer, Dkt. 13. Moreover, the joint motion to vacate makes clear that neither side "waivi[es] any rights, defenses, objections, or arguments that may be raised later during the course of this litigation," *see* Joint Mot. to Vacate, Dkt. 12, ¶ 12, and specifically recognized that defendant intended to raise the defense of "failure to state a

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)
2019 WL 8953349

claim under the TCPA," *see id.* ¶ 11. Thus, it does not appear that defendant violated any agreement between the parties or otherwise acted in bad faith by filing its answer, as required, and then later bringing the instant Rule 12(c) motion.

**\*5** Second, plaintiff argues that defendant's motion for judgment on the pleadings is inappropriate because defendant, in its Answer, has denied the central allegations of the Complaint. This argument fails because the fact that a defendant, in its answer, has denied allegations in the plaintiff's complaint does not bar the defendant from seeking judgment on the pleadings. *See, e.g., Chalif v. Spitzer*, No. 9:05-CV-1355, 2008 WL 1848650, at *3, *14(N.D.N.Y. Apr. 23, 2008) (granting the defendants' motion for judgment on the pleadings, notwithstanding the fact that the defendants, in their answer had "generally denied the material allegations of plaintiff's complaint and asserted various affirmative defenses"). This is so because "when a party moves for judgment on the pleadings pursuant to Rule 12(c), the well-pled factual allegations in the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint." *Shelton v. Safeway, Inc.*, No. CIV. PJM 10-2358, 2011 WL 1869827, at *3 (D. Md. May 16, 2011). Accordingly, because resolution of a motion for judgment on the pleadings turns on whether the factual allegations in the Complaint state a claim to relief that is plausible on its face, it is immaterial whether the defendant has admitted or denied certain allegations in the Complaint. *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1037 (D. Neb. 2016).

## VI.

Accordingly, for the reasons stated above,

It is hereby **ORDERED** that defendant's motion for judgment on the pleadings (Doc. 21) is **GRANTED.**

### All Citations

Not Reported in Fed. Supp., 2019 WL 8953349

---

## Footnotes

1       47 U.S.C. § 227.

2       As the Supreme Court famously held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), to state a claim under Fed. R. Civ. P. 12(b)(6), the allegations of the Complaint "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face."

3       *See also, e.g. Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at *3 (S.D.W. Va. Oct. 4, 2018); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018); *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *5 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, at *4 (E.D. Mo. May 20, 2014).

4       Plaintiff does not allege, for example, that the caller identification feature on his telephone informed him that the phone number belonged to defendant. *Cf. Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 916 (9th Cir. 2012).

5       *See also, e.g., Sprye v. Ace Motor Acceptance Corp.*, No. CV PX 16-3064, 2017 WL 1684619, at *5 (D. Md. May 3, 2017); *Aikens v. Synchrony Financial*, 2015 WL 5818911, *3 (E.D. Mich. 2015) report and

**Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)**

2019 WL 8953349

recommendation adopted, 15 CV 10058, 2015 WL 5818860 (E.D Mich. 2015); Johansen v. Vivant, Inc., 2012 WL 6590551, *3 (N-D. Ill. Dec. 18, 2012).

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 7 of 63

2025 WL 1162492
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Zachary FRIDLINE, Plaintiff,
v.
INTEREST MEDIA, INC., Defendant.

No. 4:24-CV-01770
|
Signed April 21, 2025

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Hyun Yoon, Polsinelli PC, Philadelphia, PA, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Matthew W. Brann, Chief United States District Judge

## I. BACKGROUND

**\*1** On October 16, 2024, Zachary Fridline filed a one-count class action Complaint against Interest Media, Inc. ("Interest Media") alleging a violation of the Telephone Consumer Protection Act ("TCPA").[1] Interest Media then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on December 12, 2024.[2] That motion is now ripe for disposition; for the reasons that follow, it is denied.

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[3] and *Ashcroft v. Iqbal*,[4] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[5] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth"; and (3) "assume the[ ] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[6]

## III. FACTUAL ALLEGATIONS

### A. The Parties
Zachary Fridline is an individual residing in Northumberland County, Pennsylvania.[7] Interest Media is a Missouri Corporation that does business in Pennsylvania.[8]

### B. Plaintiff's Cell Phone
Fridline has a telephone number of (570) XXX-XXXX, which had been on the National Do Not Call Registry for over a year prior to his receipt of the first text message at issue in this case.[9] Plaintiff "uses the number for personal, residential, and household reasons;" he has never used the number to conduct business.[10]

### C. The Text Messages
Fridline has never "consented or requested in any way to receive calls from Defendant."[11] He also has never done business with Interest Media.[12] Despite this, "Plaintiff received a total of at least 8 text messages from the Defendant's telephone numbers ... as part of a telemarketing campaign."[13]

"Each of the text messages contained cryptic, nonsensical text, designed to evade carrier and phone-level spam detection algorithms, and a link."[14] These messages were part of an affiliate marketing scheme, "a process whereby an advertiser pays a company ... to drive traffic to its website."[15] To do so, these text messages are sent "*en masse*."[16]

**\*2** "The text messages led to internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform."[17] To reach this conclusion, Fridline "track[ed] the tracking links in the text messages"[18] and "capture[d]" a tracking link.[19] This link directed recipients to "imtrk.go2cloud.org," which is owned by Interest Media.[20] "The Go2Cloud domain is owned by HasOffers, which is an affiliate tracking platform."[21] "The

website imtrk.hasoffers.com is ... Interest Media's account on the HasOffers platform." [22]

These messages "were sent to solicit the purchase of various property, goods, and services offered by advertisers who paid Interest Media to drive traffic to their websites." [23] "By way of example, some of the advertisers included gift card 'giveaway' scams, lead generation websites for sweepstakes, offers for televisions, and offers for iPhones." [24]

## IV. DISCUSSION

Defendant contends that the factual allegations, as described above, are insufficient to make out Fridline's TCPA claim. For a violation of Title 47, United States Code, Section 227(c)(5), Plaintiff must plead that he (1) "receive[d] multiple calls within twelve months;" (2) "by or on behalf of the same entity;" (3) "on a residential phone registered on the" Do Not Call ("DNC") List. [25]

Interest Media's arguments largely target Plaintiff's ability to establish the second element, that the messages were sent by or on behalf of the same entity. Despite Defendant's best efforts, the Court concludes that Fridline adequately demonstrated this element. He alleged that "[e]ach of these text messages contained cryptic, nonsensical text, designed to evade carrier and phone-level spam detection algorithms, and a link." [26] "The text messages led to internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform." [27] These messages were part of an affiliate marketing strategy used to "solicit the purchase of various property, goods, and services offered by advertisers who paid Interest Media to drive traffic to their websites." [28]

Unlike the caselaw Interest Media has relied upon, Plaintiff does not merely "believe[ ] the identified phone number[s]" are "owned by defendant." [29] Instead, Plaintiff described how Defendant's business model is predicated on solicitation and explained how the tracking links directed recipients to "internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform." [30] He then identified an example tracking link that he

traced to a website owned by Interest Media found on a known affiliate tracking platform domain that Defendant maintains an account with. [31] These allegations provide the requisite factual support "to justify that a call came from" Defendant. [32] Nor can it be said that these allegations are unclear or conclusory. Plaintiff has articulated a detailed narrative based on clear factual allegations.

The characteristics of the phone numbers used to message Fridline do not alter this conclusion. First, the Court is unable to consider, nor has Defendant provided evidence to support, that these numbers "are private numbers connected to individual cell phones." [33] Even when considering the area codes of the numbers, Plaintiff has adequately connected the numbers to Defendant through the content of the messages. Fridline specifically averred that "[e]ach of the text messages contained" a link that "led to internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform." While the area codes are not associated with Missouri, the content of the messages sufficiently connects them to Interest Media.

**\*3** Finally, Defendant asserts that it does not use an automatic telephone dialing system ("ATDS") to send the messages. As Plaintiff has noted, he has not alleged that Defendant used an ATDS to send these messages. Because a claim under Title 47, United States Code, Section 227(c) does not require the use of an ATDS, I set aside this argument.

## V. CONCLUSION

Plaintiff has adequately pled his one-count TCPA violation. In accordance with the above, **IT IS HEREBY ORDERED** that:

1. Defendant Interest Media, Inc.'s Motion to Dismiss (Doc. 10) is **DENIED;**

2. Defendant Interest Media, Inc.'s answer to the Complaint is due no later than May 12, 2025.

**All Citations**

Slip Copy, 2025 WL 1162492

2025 WL 1162492

---

### Footnotes

1    Compl., Doc. 1.

2    Motion to Dismiss, Doc. 10.

3    550 U.S. 544 (2007).

4    556 U.S. 662 (2009).

5    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

6    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

7    Compl., Doc. 1 ¶ 5.

8    *Id.* ¶ 6.

9    *Id.* ¶ 16.

10   *Id.* ¶¶ 19-20.

11   *Id.* ¶ 21.

12   *Id.* ¶ 22.

13   *Id.* ¶ 23. Fridline received text messages from the following numbers: 216-474-5734; 616-881-4896; 713-930-5057; 507-441-3453; 401-616-0406; 818-272-0198; 305-797-8736; and 360-622-0634. *Id.*

14   *Id.* ¶ 25. For example, on October 5, 2022, Fridline received a text message from 818-272-0198 that stated "Please do not disregard this" and contained the following link: 8cGB.com/4smt1CCK. *Id.* ¶ 31.

15   *Id.* ¶ 26.

16   *Id.*

17   *Id.* ¶ 27.

18   *Id.* ¶ 28.

19   *Id.* ¶¶ 28-29.

20   *Id.*

21   *Id.* ¶ 30.

22   *Id.* ¶ 31.

23   *Id.* ¶ 32.

24   *Id.* ¶ 33.

25   *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Huber v. Pro Custom Solar, LLC*, No. 19-01090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (Mariani, J.)).

2025 WL 1162492

26    Compl., Doc. 1 ¶ 25.

27    *Id.* ¶ 27.

28    *Id.* ¶ 32.

29    *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr 15, 2019).

30    Compl., Doc. 1 ¶¶ 26-27.

31    *Id.* ¶¶ 28-31.

32    *Smith*, 2020 WL 5632653, at *3.

33    Brief in Support, Doc. 11 at 7. In making this observation, I agree with Interest Media that Plaintiff's arguments concerning "Sim Farms" improperly extends beyond the content of the Complaint. Brief in Opposition, Doc. 14 at 4. Further, I note that Defendant's argument that it "does not initiate calls or text messages to individuals" also seeks to extend the Court's review beyond the scope of the Complaint. Brief in Support, Doc. 11 at 7.

---

**End of Document**          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 146672
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Joseph FRIEL, individually and on behalf of a class
of all persons and entities similarly situated, Plaintiff,

v.

ETN AMERICA INC. and Shlomi Cohen, Defendants.

No. 3:25cv882
|
Signed January 20, 2026

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Corey M. Scher, Peter C. Buckley, Fox Rothschild LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM ORDER

JULIA K. MUNLEY, JUDGE

 **\*1**  Defendant ETN America, Inc. ("ETN") entered into a written agreement with a third-party lead seller whereby ETN agreed to keep certain information confidential. The agreement prohibits ETN from disclosing information except "as may be required by...order of a court[.]" Upon consideration of a motion to compel filed by Plaintiff Joseph Friel in this litigation against ETN, ETN now has that order of court to comply with its agreement with the third-party lead seller. Defendants will be compelled to provide the identity of the lead seller to Friel for the reasons set forth below.

_Friel's Complaint_ - On May 19, 2025, Friel filed this putative class action pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), against Defendants ETN and Shlomi Cohen ("Cohen") (Doc. 1). Friel's complaint seeks to represent a nationwide class of robocall recipients and a class of recipients on the National Do Not Call Registry ("DNCR"). Id.

As alleged, ETN operates a website, contractors99.com. Id. ¶¶ 25–27. In furtherance of that business, ETN placed pre-recorded telemarketing calls. Id. Friel alleges that he received five (5) telemarketing calls from ETN at his personal residential telephone number, which is on the DNCR. Id. ¶ 30. According to the complaint, Friel has never been a customer of ETN or Cohen. Id. ¶ 31.

On May 13, 2025, "to identify the identity of the identity _[sic]_ of the individuals calling him illegally, and for no other reason," Friel engaged with the telemarketing call. Id. ¶ 37. The call began with a prerecorded voice, possibly using an AI-powered telephone agent or a Mechanical Turk worker, _i.e._, a human being powering what appears to be a machine-driven process. Id. ¶ 34. That voice began asking recorded questions about home improvements and windows. Id. ¶ 35. Friel's complaint did not detail his answers, but eventually, he was transferred to "a human being who was obviously human." Id.

Afterward, Friel received text solicitations for window replacements and home contractor services. Id. ¶ 38. He included screenshots of seven (7) text messages to his iPhone device in the complaint. Id. Some of the messages identify the sender as "Tom" or "Mike" from "Install America." Other messages provide links to ETN's contractors99.com website or to a toll-free number. Id.

Friel filed this action six (6) days later. The complaint asserts two causes of action against ETN and Cohen, one on behalf of a proposed Robocall Class under 47 U.S.C. § 227(b) and one on behalf of a proposed DNCR Class under 47 U.S.C. § 227(c)(5). Friel also seeks to hold Defendant Cohen individually liable under the TCPA, 47 U.S.C. § 217. Friel alleges that Cohen personally participated in the violations by: "(a) selecting the script that was going to be used on the calling; (b) personally approving in the call center operations and (d) _[sic]_ personally authorizing any other telemarketing conduct of ETN America." Id. ¶ 23.

_Issues with a Conditional Settlement_ - On August 22, 2025, counsel for defendant advised that the parties had fully executed a "conditional settlement agreement" and anticipated submitting a stipulation of dismissal within the next 90 days. (Doc. 18). The parties requested that the case be closed for administrative purposes. Consequently, the court entered an order administratively closing the case on August 25, 2025 and provided the parties with 90 days to consummate the settlement. (Doc. 19).

 **\*2**  Approximately 45 days later, on October 9, 2025, the parties submitted a letter to the court advising that settlement

2026 WL 146672

would not be completed. (Doc. 20). That is, the parties advised that one of the conditions of settlement ostensibly allowed Friel to make written discovery demands of the defendants. Id. According to the letter, Friel had served an interrogatory seeking to learn the identity of the lead seller that led to the five (5) telemarketing calls described in plaintiff's complaint. [1] Id. Defendants, citing a contractual confidentiality agreement with the lead seller, objected to the request and refused to disclose their identity. Id.

The court reopened the matter on October 22, 2025, (Doc. 21), and directed defendants to file a response to the complaint, which they did on October 29, 2025, (Doc. 22). The court conducted a case management conference shortly thereafter. On December 31, 2025, as part of the litigation, Friel filed a motion to compel disclosure of the lead seller's identity pursuant to the Federal Rules of Civil Procedure. (Doc. 26).

*The Present Litigable Dispute* – Friel contends that the parties' conditional settlement agreement provides for the dismissal of this action against the defendants following the completion of limited discovery. Id. at 2. Additionally, per the motion to compel, the parties' agreed that Friel would serve one limited discovery interrogatory requesting identification of the lead generation entity. Id. Whether the parties have conditionally resolved the matter or not, the court has directed litigation to move forward.

As for the present dispute, Friel's interrogatory provides:
**INTERROGATORY NO. 1:**

> Identify the name, address, and contact information of the person(s) or entity(ies) that provided the call lead resulting in ETN's alleged calls to Plaintiff.

(Doc. 27-2).

Defendants objected as follows:

**OBJECTION TO INTERROGATORY NO. 1:**

Defendants object to the Interrogatory on the basis of confidentiality, including on the basis that a written agreement between ETN America Inc. and the entity

that provided the lead resulting in ETN's alleged calls to Plaintiff provides in relevant part as follows:

6. Confidentiality.

a. "Confidential Information" means any information, data or know-how, whether in oral, written or electronic form (including, without limitation, that relating to developments, methods, inventions, processes, technology, research, engineering, designs, intellectual property, business plans, operations, current or prospective customers or suppliers, agreements with third parties, prices and costs, marketing, budgets or finances) that (A) is disclosed by the disclosing party or its Representatives to, or that is otherwise learned by, the receiving party or its Representatives in the course of discussions or business dealings with the disclosing party, and (B) has been identified as being proprietary and/or confidential or, by the nature of the circumstances surrounding the disclosure or receipt, reasonably ought to be treated as proprietary and/or confidential. Confidential Information also includes, but is not limited to, the terms of this Agreement. Confidential Information does not include information, data or know-how that (i) was legally within the receiving party's knowledge or possession prior to receipt from the disclosing party, (ii) is or becomes generally known to the public other than by a breach of this Agreement, (iii) is lawfully received from a third party who did not have confidentiality obligations to the disclosing party with respect thereto; or (iv) is independently developed by the receiving party without reference to or disclosure of the Confidential Information of the disclosing party, in each case as evidenced by the receiving party's records.

**\*3** b. During the term of this Agreement and for two (2) years thereafter, neither party shall disclose any Confidential Information of the other party except: (i) as expressly permitted by this Agreement; (ii) as may be required by law, regulation, or order of a court or government agency of competent jurisdiction (provided such other party is given prior written notice of such disclosure requirement and a reasonable time to contest or prevent such disclosure); or (iii) on a need-to-know basis to Representatives who are bound by obligations of confidentiality protecting the Confidential Information at least as stringent as those provided in this Section 6.

Id.

During litigation, the Federal Rules of Civil Procedure contemplate the ability of a plaintiff to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The proportionality requirement considers: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Under the rules, Friel has the right to file a motion to compel where a party fails to answer an interrogatory. FED. R.CIV. P. 37(a)(3)(B)(iii). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Since the action against the defendants is pending in the Middle District of Pennsylvania, the court may issue an order compelling disclosure by the defendants in response to Friel's interrogatory. See Fed. R. Civ. P. FED. R. CIV. P. 37(a)(2).

The motion to compel can be resolved easily. Defendants responded by indicating that they are parties to the above-referenced confidentiality agreement with the lead seller and that they furnished a copy of the interrogatory and the motion to the lead seller as part of their responsibilities under Paragraph 6 above. (Doc. 27). The court takes defendants' response as indicating, in essence, that defendants objected to the interrogatory to comply with the agreement and not subject themselves to a separate lawsuit by the lead seller.

Consequently, because the identity of the lead seller is not privileged and is relevant to Friel's TCPA claims in this matter, it is hereby **ORDERED** that:

1) Plaintiff's motion to compel, (Doc. 26), is **GRANTED**;

2) Within seven (7) days, defendants shall provide a full and complete answer to Plaintiff's Interrogatory # 1; and

3) Based upon the terms of the conditional settlement agreement, as represented to the undersigned by the parties in this litigation, the Clerk of Court is directed to close this case.

**All Citations**

Slip Copy, 2026 WL 146672

---

## Footnotes

1    Prior to May 2025, Friel had filed at least four (4) putative class actions in this federal district court alleging violations of the TCPA. See Friel v. North Star Ins. Advs., LLC. No. 3:24cv481; Friel v. Line 5, LLC, No. 3:24cv1866; Friel v. Selectquote Ins. Servs., Inc., No. 3:25cv153; Friel v. Gabriel A. Levy, P.C.. No. 3:25cv502.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3634162

2021 WL 3634162
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Brennan LANDY, Plaintiff,
v.
NATURAL POWER SOURCES,
LLC d/b/a Suntuity, Defendant.

Case No. 3:21-cv-00425
|
Filed 08/17/2021

**Attorneys and Law Firms**

Jeffrey Steven Arons, Arons & Arons LLC, South Orange, NJ, for Plaintiff.

Adlai J.J. Small, Spiro LLC, Short Hills, NJ, for Defendant.

**MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS AND ALLOWING PLAINTIFF TO AMEND COMPLAINT**

PETER G. SHERIDAN, U.S.D.J.

### I. Introduction

**\*1** This matter comes before the Court on Defendant Natural Power Sources, LLC d/b/a Suntuity's ("Suntuity" or "Defendant") motion to dismiss Brennan Landy's ("Plaintiff" or "Landy") class action complaint under the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227. (ECF No. 7.) The Court heard oral argument on July 20, 2021. For the reasons that follow, Defendant's motion to dismiss is granted without prejudice.

### II. Background

On or around October 29, 2020, Landy received a call on his cell phone from an unknown caller who solicited him to purchase green energy products. (Compl. ¶¶ 18-20, ECF No. 1.) Landy heard a pause and click before an operator came on the line, which allegedly indicates the use of an automatic telephone dialing system ("ATDS"). (Compl. ¶ 19.)

Then, Landy was transferred to an operator named Steve who identified himself as working for US Home Solar. (Compl. ¶ 21.) Landy alleges he heard a beep – but not a pause or click –

before being connected with Steve. (*Id.*) Steve also solicited Landy to purchase green energy products. (*Id.*)

After speaking with Steve, Landy alleged he was transferred via a "warm transfer" [1] to a third operator named Evelyn, from Suntuity, who solicited Landy to purchase Suntuity's solar energy products. (Compl. ¶¶ 7, 22.) Landy does not allege that he heard a pause and click before being connected to Evelyn. After the call with Evelyn concluded, Landy received a follow-up email from Brendan McGrane, another Suntuity representative, who solicited Suntuity's products. (Compl. ¶ 23.)

Landy claims he never consented to the initial call and, therefore, it was made in violation of the TCPA. (Compl. ¶¶ 24-26). He alleges Suntuity is vicariously liable for that violation because it "knew about the calls, received the benefits of the calls, directed the calls to be placed, and ratified the calls." (Compl. ¶ 16).

Landy asserts that he and the proposed class members sustained injuries in the form of aggravation, nuisance, invasion of privacy, monies paid to the wireless caller for the receipt of unwanted calls, interference with the use and enjoyment of their phones, depletion of battery life, and wear and tear on their phones. (Compl. ¶¶ 27, 42.) He defines the proposed class as follows:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs.

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 15 of 63

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 3634162

(Compl. ¶ 29.) Landy alleges that his claims are typical of the class members, he can adequately represent the class, there are common questions of law and fact, Defendant's conduct is common to all class members, and the class members are too numerous to be individually joined. (Compl. ¶¶ 31-35.)

**\*2** Landy timely filed his complaint on January 8, 2021. *See* 28 U.S.C. § 1658; *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 608 (3d Cir. 2018). He seeks an injunction against further unauthorized calls, as well as statutory damages and attorneys' fees for class members under the TCPA's private right of action provision, 47 U.S.C. § 227(b)(3)(B). (Compl. ¶¶ 28, 42.)

### III. Jurisdiction & Venue

This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, "because each of the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million." (Compl. ¶ 5.) Venue is proper under 28 U.S.C. § 1391(b) because Suntuity's headquarters are in New Jersey. (Compl. ¶ 7.)

### IV. Legal Standard

Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss asserts a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d. Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard requires showing more than just the possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d. Cir. 2008). The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory

statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

The Third Circuit set forth a three-part test for determining whether or not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679, 129 S.Ct. 1937).

### V. Discussion

#### A. TCPA Claim

"To assert a claim under the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show that the defendant: (1) called her cell phone; (2) using an automatic telephone dialing system ("ATDS"); (3) without her prior express consent." *Valdes v. Century 21 Real Estate, LLC*, No. CV 2:19-05411, 2019 WL 5388162, at \*2 (D.N.J. Oct. 22, 2019). Pursuant to the TCPA's restrictions on use of automated telephone equipment:

> **\*3** (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States —

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

> [...]

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

2021 WL 3634162

U.S.C. § 227(b)(1)(A)(iii).

Landy alleges that he was called on his cell phone without his consent. (Compl. ¶¶ 10-11.) The identity of the initial caller is unknown. (Compl. ¶ 18-20.) However, Landy alleges that because he was eventually transferred to Suntuity, the previous callers acted on Suntuity's behalf and at its direction, thereby establishing vicarious liability. (Compl. ¶ 16.)

### 1. Direct Liability

Courts have held that under the TCPA, 47 U.S.C. § 277(b)(1)(A)(iii), liability is imposed on the party that places the call or text. *See Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016) (citing *Melito v. Am. Eagle Outfitters, Inc.*, Civ. Act. Nos. 14-02240, 15-39, and Nos. 15-2370, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015)). Here, Landy does not allege that Suntuity placed the initial call to Landy; he only alleges the initial caller used an ATDS to call him without his consent. Once that call was initiated, he was transferred to US Home Solar and Suntuity. Therefore, Landy can only pursue a TCPA claim against Suntuity on a vicarious liability theory.

### 2. Vicarious Liability

An entity cannot be held liable under the TCPA "merely because they stand to benefit from the call." *Id.* at *8; *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6593 (F.C.C. 2013). Instead, a defendant that is not the initial caller can be held vicariously liable under the TCPA based on common law agency principles. *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017). Vicarious liability can be established through actual authority, apparent authority, or ratification. *Cunningham v. Cap. Advance Sols., LLC*, Civil Action No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *6, 2018 WL 6061405 (D.N.J. Nov. 20, 2018). The following subsections will discuss each of those theories.

### i. Actual Authority

Landy does not allege facts that establish an agency theory through actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Cunningham* 2018 WL 6061405, at *17 (quoting *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013)).

A plaintiff sufficiently pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf. *Cunningham*, 2018 WL 6061405, at *18. In *Cunningham*, the plaintiff alleged that, pursuant to a contract, Capital Advance Solutions, LLC ("Capital"), placed telemarketing calls on behalf of the bank defendants and received a commission for each successful loan solicitation. *Id.* at *7. Further, Capital allegedly facilitated the submission of loan applications to the bank defendants, as acknowledged in the approval and rejection letters the defendants sent to loan applicants. *Id.* Based on those allegations, the court could "reasonably infer that the Bank Defendants exercised a certain level of control over, or, at a minimum, were aware of, Capital's telemarketing efforts." *Id.*

**\*4** Landy does not allege any facts that establish the initial caller had actual authority to make telemarketing calls on Suntuity's behalf. Unlike *Cunningham*, in which the plaintiff alleged specific facts indicating the defendants directed or consented to solicitation via Capital, Landy simply alleges that because he was transferred to Suntuity, the initial caller was acting at Suntuity's direction. He does not plead facts to support his argument that Suntuity authorized the initial caller, directed them, or was aware of their conduct. As such, the complaint does not sufficiently allege an actual authority relationship between Suntuity and the initial caller.

### ii. Apparent Authority

Landy does not allege enough facts to establish vicarious liability under apparent authority. "[A]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Cunningham,* 2018 WL 6061405, at *6 (quoting *Covington*, 710 F.3d at 120). In a declaratory ruling, the Federal Communications Commission stated that:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 17 of 63

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts.

*In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6593.

A plaintiff sufficiently pleads apparent authority "when a third party reasonably believes that the ... agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *Valdes*, 2019 WL 5388162 at *4 (omission in original) (quoting *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011)). In *Valdes*, the plaintiff alleged that defendant Century 21 was "heavily involved in realtors' unsolicited calls," including directing and training realtors on how to make solicitation calls and what to say. *Id.* Further, the defendant allegedly told callers "to identify themselves as calling on behalf of Century 21, to offer the Century 21 pledge," and it "facilitated realtors' access to lead lists and autodialers." *Id.* Those allegations were sufficient for the court to hold that a third party could reasonably believe that the realtors had authority to act on behalf of Century 21, thereby establishing apparent authority. *Id.*

Unlike the plaintiff in *Valdes*, Landy does not plead any facts that indicate Suntuity's conduct led him to reasonably believe the initial caller had authority to act on Suntuity's behalf. He merely alleges that, because he was transferred to Suntuity and was solicited to buy green energy products, Suntuity must have directed the initial call and known about the initial caller's TCPA violation. Landy's complaint, however, does not assert facts that suggest the initial caller had any relationship with Suntuity, or that would lead a reasonable person to believe the initial caller had authority to act on Suntuity's behalf.

Further, Landy's allegation that Suntuity sent a follow-up email to solicit its products does not support an apparent authority theory. In *Smith v. Vision Solar*, the plaintiffs received telemarketing calls from an Exchange Energy representative, who attempted to sell solar products and stated that Vision Solar would contact them to follow up. *Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 7230975, at *1-2 (E.D. Pa. Dec. 8, 2020). After the initial call from Exchange Energy, Vision Solar called at least one plaintiff to follow up about the solar products. *Id.* Apparent authority was established because the plaintiff alleged that the "purported principal followed-up with the plaintiff after she provided information to the telemarketer, thereby demonstrating that the principal knew of and benefited from the marketing calls." *Id.* at *3. By contrast, Landy does not allege that the initial caller referenced Suntuity, told him to expect contact from Suntuity, or otherwise indicated a relationship with Suntuity.

### iii. Ratification

**\*5** Finally, Landy does not plead facts that support an agency theory based on ratification.

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

Restatement (Third) Of Agency § 4.01 (2006).

A plaintiff must plead facts that indicate the defendant consented to the initial caller making calls on the defendant's behalf. *Just Energy*, 2016 WL 3539137, at *12. In *Just Energy*, the plaintiff alleged that the defendant ratified telemarketing and debt collection calls made by Collectcents employees, who identified themselves as "Just Energy" during the phone calls. *Id.* at *4, 12. The court rejected the plaintiff's argument that the defendant consented to Collectcents' conduct simply because it might have received a benefit from the calls. *Id.* at *12. Because the plaintiff's allegation was based on speculation that the defendants could be receiving a benefit, and there was no evidence of defendant's affirmance, assent, or consent, the facts pleaded were insufficient to support a ratification theory. *Id.*

Similarly, Landy's complaint does not include facts that show Suntuity manifested assent to the initial caller calling on its behalf. Like the plaintiff in Just Energy, Landy speculates

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 18 of 63

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 3634162

that because he was eventually transferred to Suntuity and solicited to buy green energy products, Suntuity must have assented to and received a benefit from the prior callers' actions. Such speculative allegations are insufficient to allege an agency relationship based on ratification.

In sum, Landy's complaint does not allege enough facts to indicate that there was an agency relationship between the initial caller and Suntuity. As such, he has failed to allege that Suntuity can be held vicariously liable for the initial caller's TCPA violations.

### B. ATDS

To support a claim under the TCPA, the plaintiff must demonstrate the nonconsensual call was made using an ATDS. *See* 47 U.S.C § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In the Third Circuit, pleading that there was a brief pause or silence before the operator speaks is sufficient to allege the use of an ATDS. *Hazan v. Wells Fargo Home Mortg.*, No. CV1810228 (MAS/TJB), 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020). Thus, Landy's allegation that he heard a pause before the operator of the initial call came on the line is sufficient to allege that an ATDS was used. (*See* Compl. ¶ 19.)

### C. Consent

To allege a violation under the TCPA, the call must be made without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A); *Valdes*, 2019 WL 5388162 at *2. Suntuity argues that, because Landy admitted he was transferred to Evelyn via a "warm transfer," he consented to speak to Suntuity. However, neither party defines the term "warm transfer." A warm transfer occurs when the first operator stays on the line with the called party during a transfer until the second operator answers. *See, e.g.*, *Reeves v. Nuvox Commc'ns*, No. C.A.6:08-4031(HMH/WMC), 2009

WL 4016617, at *5 (D.S.C. Nov. 18, 2009), *aff'd sub nom. Reeves v. Nuvox Commc'ns, Inc.*, 384 F. App'x 255 (4th Cir. 2010); *Tate v. Washington Mut.*, No. 02 C 5853, 2004 WL 1794924, at *1 (N.D. Ill. Aug. 10, 2004). That definition does not imply that the called party consented to speak to either operator.

### VI. Conclusion

**\*6** Because Landy does not provide enough facts to plausibly allege a claim against Suntuity under the TCPA, Defendant's motion to dismiss shall be granted without prejudice. Landy shall have 30 days to file an amended complaint if he wishes to do so. Defendant may move to dismiss the amended complaint in accordance with the timeframes set forth in the Federal Rules of Civil Procedure.

### ORDER

**THIS MATTER** having come before the Court on a motion to dismiss filed by Defendant Natural Power Sources, LLC d/b/a Suntuity (ECF No. 7); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 16th day of August, 2021,

**ORDERED** that Defendants' motion to dismiss is **granted without prejudice**, and it is further

**ORDERED** that Landy will have 30 days to file an amended complaint.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3634162

---

### Footnotes

1    Neither Plaintiff nor Defendant defines this term. Its significance will be discussed in Section V.C.

---

**Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)**

2021 WL 3634162

---

**End of Document**                         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 19 of 63

**Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)**

2021 WL 3634162

---

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 20 of 63

Perrong v. Aspen Dental Management, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 23026978

2022 WL 23026978
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Andrew R. PERRONG, Plaintiff,
v.
ASPEN DENTAL MANAGEMENT,
INC., et al., Defendants.

Civ. No. 22-1234
|
Signed November 1, 2022

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Matthew T. Corso, Patrick D. Doran, Samantha Lee Southall, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, for Defendant Aspen Dental Management, Inc.

Mark T. Sophocles, Paoli, PA, for Defendant Rex Direct Net, Inc.

**ORDER**

Paul S. Diamond, District Judge

**\*1** Plaintiff Andrew Perrong proceeds on behalf of himself and two putative classes against Rex Direct Net, Inc. and Aspen Dental Management, Inc. under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Plaintiff alleges that Rex Direct made telemarketing robocalls to generate business for ADMI to him and others without their consent. (Am. Compl.; Doc. No. 8.) Rex Direct and ADMI each move to dismiss Plaintiff's claims. (Doc. No. 16, 20); Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(f). For the following reasons, I will deny Rex Direct's Motion, and grant ADMI's Motion only in part. (Doc. Nos. 16, 20.)

**I. Factual Allegations**

As alleged, Plaintiff received two telemarketing calls from Rex Direct on March 10 and March 11, 2022. (Am. Compl. ¶ 35.) Plaintiff did not answer the March 10 call, and the caller left no message. (Id. ¶¶ 35–36.) Plaintiff answered the March 11 call, which began with a recorded message that "Dental Services" was calling to assist with the scheduling of dental services. (Id. ¶ 40.) The message gave Plaintiff the option either to schedule an appointment or to be added to a do not call list. (Id.) Although Plaintiff selected the appointment scheduler hoping to learn the caller's identity, he was transferred to an automated system operated by ADMI. (Id. ¶¶ 41–42.)

Plaintiff received the two calls at his residential telephone number, which is on the National Do Not Call Registry. (Id. ¶¶ 26–28.) That number is assigned to a Voice over Internet Protocol telephone service, which charges him for each call the number receives. (Id. ¶¶ 29–33.) Plaintiff was charged $0.02 for the two calls. (Id. ¶ 46.) Plaintiff did not consent to or request the calls. (Id. ¶¶ 3, 45.) He further alleges that he was "temporarily deprived" of his use of his phone during the call, and that "his privacy was improperly invaded." (Id. ¶ 47.)

Plaintiff alleges that telemarketer Rex Direct generated business leads for ADMI using automated, pre-recorded calls to contact potential customers. (Id. ¶¶ 21–24.) Plaintiff further alleges that ADMI hired Rex Direct to make calls on its behalf and "maintained interim control" over Rex Direct's actions. (Id. ¶¶ 51–52.) ADMI "provide[d] the parameters to Rex Direct of the requirements of individuals that can make appointments in [its] scheduling system" and allowed Rex Direct to transfer calls to its internal telephone and computer systems. (Id. ¶¶ 54–55.) ADMI could have instructed Rex Direct not to use prerecorded messages and not to contact people on the DNC Registry, but failed to do so. (Id. ¶¶ 55–56.)

Plaintiff brings two Counts under the TCPA for violating the Act's prohibitions against: automated calling and prerecorded voice calls to any cell phone for which the recipient is charged; and against telemarketing calls to numbers on the DNC Registry. (Id. ¶¶ 73, 78.) Plaintiff seeks to certify Robocall and Registry classes of persons who received similar calls from Rex Direct and ADMI. (Id. ¶¶ 60–61.) The matter is fully briefed. (Doc. Nos. 16, 20, 21, 22, 23.)

**II. Legal Standards**

**\*2** In deciding a motion to dismiss for lack of subject matter jurisdiction, I must first determine whether the motion presents a "facial" or "factual" challenge to jurisdiction. See In re Schering Plough Corp. Intron/Tendomar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). "A facial attack ... is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject

2022 WL 23026978

matter jurisdiction of the court ....” Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). I may “only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.” Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

In contrast, a factual attack challenges jurisdiction “because the facts of the case ... do not support the asserted jurisdiction.” Aichele, 757 F.3d at 358. The defendant must raise a “factual dispute” by “present[ing] competing facts” about the basis for jurisdiction. Id. If the challenge is factual, “the presumption of truthfulness does not attach to the allegations in the complaint.” Duffy v. Kent Cnty. Levy Ct., Inc., No. 09–817, 2011 WL 748487, at *2 (D.Del. Feb. 23, 2011). I may consider evidence outside the pleadings, and the plaintiff must establish jurisdiction. Id.; see also United States ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 512 (3d Cir. 2007); Kligman v. I.R.S., 272 F. App'x 166, 168 (3d Cir. 2008). When a “defendant contests the jurisdictional allegations ... plaintiff [must] respond to the defendant's sworn factual assertions. In doing so, a conclusory response will not suffice.” Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc., 673 F.2d 700, 711–12 (3d Cir. 1982). Plaintiff must present proof of jurisdiction countering the defendant's facts “by affidavits or other sworn proofs.” Id.

In evaluating a motion to dismiss for failure to state a claim, I must conduct a two-part analysis. Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); Fed. R. Civ. P. 12(b)(6). First, I accept Plaintiff's factual allegations, and disregard legal conclusions or mere recitations of elements. Fowler, 578 F.3d at 210. I then determine whether the facts alleged make out a “plausible” claim for relief. Id. “The plausibility standard is not akin to a ‘probability requirement,’ but it asks for more than a sheer possibility that a defendant has acted unlawfully.” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, the burden is on Defendant to show that Plaintiff has failed to allege facts sufficiently detailed to “raise a right to relief above the speculative level.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

In considering a motion to strike, I “may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter.” Fed. R. Civ. P. 12(f). “Striking a pleading ‘is a drastic remedy to be used sparingly because of the difficulty of deciding a case without a factual record.’ ” Richardson v. Verde Energy USA, Inc., 354 F. Supp. 3d 639

(E.D. Pa. 2018) (quoting Dann v. Lincoln Nat'l Corp., 274 F.R.D. 139, 142 (E.D. Pa. 2011)). Rule 12(f) “is not meant to afford an opportunity to determine disputed and substantial questions of law.” Id. (internal quotations omitted). As a result, motions to strike are generally disfavored. Cipollone v. Liggett Grp., 789 F.2d 181, 188 (3d Cir. 1986).

**III. Rex Direct's Motion to Dismiss**

**a. Subject Matter Jurisdiction**

 **\*3**  In its self-styled factual attack on jurisdiction, Rex Direct argues that Plaintiff's claim should be dismissed for lack of subject matter jurisdiction because Plaintiff consented to receiving calls from Rex Direct. (Doc No. 16 at 3–7.) In support, Rex Direct submits as an exhibit an inbound “web lead” (*i.e.*, a request for information generated by a user's entry of personal and contact information into an online form) featuring Plaintiff's phone number requesting a call back from Rex Direct. (Doc No. 16, Ex. 2.) In his response, Plaintiff provides his own affidavit attesting that he never submitted any such web request nor used the email or IP addresses reflected in Rex Direct's web lead receipt. (Doc. No. 21, Ex. 1.)

“Congress passed [the TCPA] to protect individual consumers from receiving intrusive and unwanted calls.” Gager v. Dell Financial Services, LLC, 727 F.3d 265, 268, 271 (3d Cir. 2013). I should construe the TCPA's language “broadly to effect its purpose.” Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 998 (3d Cir. 2011); see also Leyse v. Bank of America Nat. Ass'n, 804 F.3d 316, 327 (3d. Cir. 2015) (when competing interpretations of the TCPA are equally plausible, the scales should tip in the consumer's favor). The Telephone Consumer Protection Act makes it unlawful to place:

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 22 of 63

Perrong v. Aspen Dental Management, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 23026978

for which the called party is charged for the call ....

47 U.S.C. § 227(b)(1)(A)(iii). "Calls made with 'prior express consent' are not violations of the TCPA." Richardson, 354 F. Supp. 3d at 643 (quoting 47 U.S.C. § 227(b)(1)). The TCPA provides a private right of action with statutory damages of $500 for each impermissible call, with treble damages for knowing or willful violations. Id.

Rex Direct urges me to construe the issue of consent as one of jurisdiction. I will not. Consent is an affirmative defense to liability under the TCPA. See Breda v. Cellco P'ship, 934 F.3d 1, 4 n.4 (1st Cir. 2019) ("[W]e understand consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim."); Latner v. Mount Sinai Health Sys., Inc, 879 F.3d 52, 54 (2d Cir. 2018); A.D. v. Credit One Bank, N.A., 885 F.3d 1054, 1065 (7th Cir. 2018); Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1304–05 (11th Cir. 2015). The Third Circuit has not directly addressed the issue but has signaled its agreement with its sister circuits. Evankavitch v. Green Tree Serv., LLC, 793 F.3d 355, 366 (3d Cir. 2015) (relying on TCPA holdings that consent is an exception to liability for which the defendant bears the burden of proof). Accordingly, I will deny Rex Direct's motion to dismiss for lack of subject matter jurisdiction.

### b. Failure to State a Claim

Rex Direct similarly urges me to dismiss because Plaintiff fails to explain why Rex Direct contacted him only after receiving an inbound lead "by a person of unknown origin, address or relationship to Plaintiff requesting a callback" at Plaintiff's telephone number. (Doc. No. 16 at 2, 5.) Rex Direct thus questions why Plaintiff did not plead around its affirmative defense of consent.

"To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense, ... a defendant must show that 'the defense is apparent on the face of the complaint ....' " Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 130 (3d Cir. 2018) (quoting Bohus v. Restaurant.com, Inc., 784 F.3d 918, 923 n.2 (3d Cir. 2015)); see also Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir. 2015) ("[A] complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not

fail to state a claim simply because it omits facts that would defeat a ... defense."). Plaintiff alleges that he did not consent to receive calls from Rex Direct, and that his number was on the DNC Registry. (Am. Compl. ¶¶ 3, 26–28, 45.) These allegations are sufficient.

### c. Motion to Strike

**\*4** Rex Direct further argues that I should strike Plaintiff's class allegations from his Amended Complaint because individualized issues will predominate. (Doc No. 16 at 10.)

A motion to strike class allegations implicates Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D). Bell v. Cheswick Generating Station, Genon Power Midwest, L.P., Civ. A. No. 12-929, 2015 WL 401443, at \*2 (Jan. 28, 2015). "Motions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." Gray v. BMW of N. Am., LLC, 22 F. Supp. 3d 373, 386 (D.N.J. 2014). Several courts in this District "have held that motions to strike under Rule 23(d)(1)(D) are premature when filed prior to a motion for class certification." Richardson, 354 F. Supp. 3d at 654 (collecting cases). Motions to strike are " 'not meant to afford an opportunity to determine disputed and substantial questions of law.' " Dann v. Lincoln Nat'l Corp., 274 F.R.D. 139, 142 (E.D. Pa. 2011) (quoting N. Penn. Transfer, Inc. v. Vitaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)).

I have "considerable discretion" in deciding a Rule 12(f) motion, but should strike class allegations "when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." McPeak v. S-L Distrib. Co., Inc., Civ. A. No. 12-348, 2014 WL 4388562, at \*3, \*4 (D.N.J. Sept. 5, 2014). Alternatively, I may exercise this discretion "if class treatment is evidently inappropriate from the face of the complaint." Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (citing Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011)).

Rex Direct does not assert specifically what common issues will predominate. Even assuming, as Plaintiff does, that Rex Direct refers to issues as to other class members' consent to its calls, such arguments involve a " 'disputed and substantial question[ ] of law,' ... that should not be resolved using a Rule 12(f) motion to strike." Richardson, 354 F. Supp. 3d at 654

Case 3:26-cv-00293-KM   Document 10-1   Filed 04/13/26   Page 23 of 63

Perrong v. Aspen Dental Management, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 23026978

(quoting Dann, 274 F.R.D. at 142). Accordingly, I will deny Rex Direct's motion to strike Plaintiff's class claims.

## IV. ADMI's Motion to Dismiss

### a. Vicarious Liability

ADMI argues that I should dismiss Plaintiff's claims against it because he has failed to plead adequately that ADMI is vicariously liable for the telephone calls made to Plaintiff's number. (Doc. No. 20 at 12.)

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Klein v. Com. Energy, Inc., 256 F. Supp. 3d 563, 583 (W.D. Pa. 2017) (quoting Gomez v. Campbell-Ewald Co., 768 F.3d 871, 879 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016)); see also In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 F.C.C.R. 6574 (F.C.C. 2013). Courts have relied on the Restatement of Agency to determine the general common law of agency. See e.g., Cmty for Creative Non-Violence v. Reid, 490 U.S. 730, 752 n.31 (1989). "Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority[,] and ratification," and the "relationship between the parties is paramount in determining whether there can be vicarious liability." Klein, 256 F. Supp. at 585. "At the pleadings stage, plaintiff 'must allege some facts regarding the relationship between an alleged principal and agent' that show defendant had the right to control the party making the calls; plaintiff 'cannot simply allege general control in a vacuum.' " Aaronson v. CHW Grp., Inc., No. 1:18-CV-1533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (quoting Melito v. Am. Eagle Outfitters, Inc., 2015 WL 7736547, at *6 (S.D.N.Y. Nov. 30, 2015)).

**\*5** "Actual authority ... [is] '(the authority) that the principal expressly or implicitly gave the agent.' " United States v. Martinez, 613 F.2d 473, 481 (3d Cir. 1980) (quoting Lind v. Schenley Indus., Inc., 278 F.2s 79, 85 (3d Cir. 1960)). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 120 (3d Cir. 2013) (quoting Restatement (Third) of Agency § 2.01 (2006)). "A plaintiff sufficiently

pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf." Landy v. Nat. Power Sources, LLC, No. 3:21-cv-00425, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021).

Here, Plaintiff alleges that ADMI hired Rex Direct to generate business with prerecorded telephone calls, and that ADMI "maintained interim control" over Rex Direct's actions. (Am. Compl. ¶¶ 21–24, 51–52.) Plaintiff further alleges that ADMI "provide[d] the parameters to Rex Direct of the requirements of individuals that can make appointments in its scheduling system." Although Plaintiff's pleadings are spare, he "has alleged an unlawful telemarketing scheme the end result of which was the generation of business for [ADMI], and he has alleged that [ADMI] was an active participant in the scheme." Cunningham v. Rapid Response Monitoring Servs., Inc. 251 F. Supp. 3d 1187 (M.D. Tenn. April 26, 2017); McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014); see also Cunningham, 251 F. Supp. 3d at ("Plaintiff is not required to illuminate every corner of defendants' relationships at the pleading stage."). Plaintiff has plausibly alleged an agency relationship between ADMI and Rex Direct under a theory of actual authority.

" 'Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship.' " Covington, 710 F.3d at 120 (quoting Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1439 (3d Cir. 1994)). In a declaratory ruling, the Federal Communications Commission stated that:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 24 of 63

Perrong v. Aspen Dental Management, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 23026978

> name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts.

In re Dish Network, 28 F.C.C.R. at 6593. Significantly, the third party's reasonable belief in the agent's authority to act on behalf of the principal must "be traced to the principal's own manifestations." Landy, 2021 WL 3634162, at *4 (quoting Valdes v. Century 21 Real Estate, LLC, No. 2:19-05411, 2019 WL 5388162, at *4 (D.N.J. Oct. 22, 2019)).

Here, Plaintiff has not alleged any statements or actions by ADMI that would lead him to believe that Rex Direct was its agent for the purpose of the calls. See Cunningham, 251 F. Supp. 3d at 1199. Plaintiff alleges that Rex Direct transferred his call to ADMI's appointment scheduling system, but does not plead facts about Rex Direct's robocall suggesting that Rex Direct had a relationship with ADMI, or that Rex Direct was acting on ADMI's behalf. See Landy, 2021 WL 3634162, at *4. I will thus dismiss Plaintiff's claims against ADMI to the extent they rely on a theory of apparent authority. See Cunningham, 251 F. Supp. 3d at 1199.

 *6  An agency relationship can arise by ratification. In re Dish Network, 28 F.C.C.R. at 6587. "[A] seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits." Id. (citing Restatement (Third) of Agency § 4.01). "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Landy, 2021 WL 3634162, at *5 (quoting Restatement (Third) of Agency § 4.01(1)). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01(2); see also Klein v. Just Energy Grp., Inc., No. 14-1050, 2016 WL 3539137, at *12 (W.D. Pa. June 29, 2016) (rejecting ratification argument where plaintiff alleged that defendant might have received a benefit from the telemarketer's calls without any evidence indicating defendant's affirmance or consent). In particular, "the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification." Id. at § 4.01.

Here, Plaintiff has failed to allege an agency relationship based on ratification. Plaintiff does not allege that ADMI received any benefit from either call, or that ADMI knew that either call occurred. See Landy, 2021 WL 3634162, at *5 (rejecting plaintiff's argument that because plaintiff was eventually transferred to defendant from initial call and solicited to buy defendant's products, that defendant necessarily assented to and received a benefit from the prior caller's actions). Accordingly, I will dismiss Plaintiff's claims against ADMI to the extent they rely on a theory of ratification. See Cunningham, 251 F. Supp. 3d at 1199.

**b. Registry Violation Claim**

ADMI urges that I dismiss Plaintiff's Registry violation claim because he answered only one of the two phone calls he purportedly received from Rex Direct, and thus did not receive "more than one telephone call within any 12-month period" under the statute. 47 U.S.C. § 227(c)(5); see also Camunas v. Nat'l Republican Senatorial Comm., 541 F. Supp. 3d 595, 604 (E.D Pa. 2021). ADMI thus argues that because Plaintiff only answered the March 11 call, he cannot plausibly aver that he received an unsolicited telemarking call on March 10. (Doc. No. 20 at 11.) ADMI's Registry argument also pertains to the plausibility of Plaintiff's Registry violation claim against Rex Direct. At this early stage, I find that Plaintiff has satisfied his burden.

A person whose telephone number is on the DNC Registry may bring a claim under the TCPA if he "has received more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). The pertinent regulations provide that it is impermissible to initiate a "telephone solicitation" to a person whose residential telephone number is on the DNC Registry. 47 C.F.R. § 64.1200(c)(2). A "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4); see also 47 C.F.R. § 64.1200(f)(15). "Absent factual allegations about the content of the messages or the phone number from which [the messages] were sent, [Plaintiff] cannot plausibly allege that the messages were sent 'by or on behalf of' " Defendants. Camunas, 541 F. Supp. 3d at 604; see also Smith v. Direct Bldg. Supplies, No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (granting motion to dismiss where plaintiff failed to allege how he knew that the four calls he received

from different telephone numbers all came from Defendant). Courts have found that where a plaintiff has alleged close temporal proximity between received, unanswered calls, and received, answered telephone solicitations, there is a reasonable inference that the prior unanswered calls were also intended telephone solicitations. See Toney v. Quality Res., Inc., 75 F. Supp. 3d 727 (N.D. Ill. 2014) ("The content and timing of the fourth call allows the court to draw a reasonable inference that [defendant] made the first three calls to market ... services."); Chapman v. Nat'l Health Plans & Benefits Agency, LLC, No. 22-10229, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022) (inferring that the unanswered calls, which all came from the same telephone number, were telephone solicitations like the answered call).

**\*7** Here, Plaintiff alleges that his residential phone number is on the DNC Registry. (Am. Compl. ¶¶ 26–27.) He further alleges that he received two calls less than 24 hours apart on March 10 and 11 from Rex Direct with the same caller identification. (Id. ¶¶ 36, 39.) Plaintiff did not answer the March 10 call, and the caller left no message. (Id. ¶ 37.) Plaintiff answered the March 11 call, which was a pre-recorded message offering to assist him with the scheduling of dental services. (Id. ¶¶ 39, 40, 44.) I find that the March 11 call to Plaintiff was a "telephone solicitation" under the TCPA. See 47 U.S.C. § 227(a)(4). Moreover, the temporal proximity between the March 10 and 11 calls and their origination from the same telephone number allow me to reasonably infer that Rex Direct made the March 10 call to market services to Plaintiff. At this early stage I will allow Plaintiff to proceed with his Registry violation claim.

\* \* \*

**AND NOW**, this 1st day of November, 2022, upon consideration of Defendants Rex Direct's and ADMI's Motions to Dismiss (Doc. Nos. 16, 20), it is hereby **ORDERED** that:

1. Defendant Rex Direct's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 16) is **DENIED**; and

2. Defendant ADMI's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 20) is **GRANTED in part and DENIED in part** as follows:

   a. Defendant's Motion to Dismiss is **GRANTED** insofar as Plaintiff proceeds against Defendant under apparent authority or ratification theories of vicarious liability. Plaintiff's vicarious liability claim based on apparent authority and ratification is **DISMISSED with prejudice**. Defendant's Motion to Dismiss Plaintiff's vicarious liability claim based on actual authority is **DENIED**;

   b. Defendant's Motion to Dismiss Plaintiff's Registry violation claim is **DENIED**.

**AND IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 23026978

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 26 of 63

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 2713278

2022 WL 2713278
Only the Westlaw citation is currently available.
United States District Court, N.D.
Iowa, Cedar Rapids Division.

Caitlin ROMBOUGH, on behalf of herself
and others similarly situated, Plaintiff,
v.
ROBERT D. SMITH INSURANCE
AGENCY, INC., and State Farm Mutual
Automobile Insurance Co., Defendants.

No. 22-CV-15-CJW-MAR
|
Signed June 9, 2022

**Attorneys and Law Firms**

Eric David Puryear, Puryear Law, PC, Davenport, IA, Aaron David Radbil, Pro Hac Vice, Greenwald Davidson PLLC, Boca Raton, FL, for Plaintiff.

James Gaughan, Pro Hac Vice, Riley Safer Holmes & Cancila LLP, Chicago, IL, J. Michael Weston, Lederer Weston & Craig PLC, Cedar Rapids, IA, for Defendants.

### ORDER

C.J. Williams, United States District Judge

### I. INTRODUCTION

**\*1** This matter is before the Court on defendants' April 15, 2022, motion to dismiss plaintiff's complaint. (Doc. 15). Plaintiff timely filed a resistance. (Doc. 18). Defendants timely filed a reply. (Doc. 20). For the following reasons, defendants' (Doc. 15) motion is **granted** and this case is **dismissed with prejudice**.

### II. BACKGROUND

Plaintiff's claim arises out of defendants' unwanted contact with her via telephone, both by voice message and text message. The following facts are from plaintiff's complaint. (Doc. 1). Plaintiff is an Iowa resident. (*Id.*, at 2). Defendant Robert D. Smith Insurance Agency, Inc. is an Iowa insurance

company, which assists customers in obtaining insurance from defendant State Farm Mutual Automobile Insurance Co. ("State Farm"). (*Id.*, at 2–3). Defendant State Farm is an Illinois insurance company. (*Id.*, at 3).

On October 25, 2021, defendants delivered a voice message and text message marketing State Farm insurance to plaintiff's personal residential telephone number, which had been registered with the national do-not-call registry since April 7, 2017. (*Id.*, at 4–6). The message was intended for a recipient other than plaintiff. (*Id.*, at 6). Plaintiff did not request information from either defendant and is not, and never has been, a State Farm customer. (*Id.*). She suffered actual harm in the form of invasion of privacy, intrusion, and a private nuisance. (*Id.*).

On February 21, 2022, plaintiff brought suit against defendants, on behalf of herself and others similarly situated, (*Id.*, at 1), and alleges that class certification is proper for her claim. (*Id.*, at 7–10). Plaintiff asserts one claim, alleging that defendants violated the Telephone Consumer Protection Act ("TCPA"), Title 47, United States Code, Section 227, by delivering messages as prohibited by Title 47, Code of Federal Regulations, Section 64.1200(c). (*Id.*, at 10–12).

On April 15, 2022, defendants filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15).

### III. APPLICABLE LAW

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rules of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 27 of 63

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 2713278

U.S. at 678 (citation omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question ... is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

## IV. DISCUSSION

*2 Plaintiff alleges that defendants violated Section 227(c)(5) by violating Section 64.1200(c), causing her harm. (Doc. 1). In its motion to dismiss, defendants argue plaintiff's claim fails to meet the federal pleading standard because she does not plausibly allege an existing cause of action. (Doc. 15). Specifically, defendants argue plaintiff fails to allege that she personally registered her telephone number with the do-not-call registry, as required by Section 64.1200(c). (*Id.*, at 3, 6–7).

For the following reasons, the Court finds plaintiff fails to state a claim based on the plain language of Section 64.1200(c). Plaintiff's arguments in support of another interpretation are unavailing. Further, the Court declines plaintiff's request to amend her complaint.

### A. Plain Language

"Congress enacted the TCPA to protect consumers from the 'proliferation of intrusive [telemarketing] calls to their homes.' " *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819 (8th Cir. 2015) (alteration in original) (quoting *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012)). The key provision of the TCPA applicable to this case is Section 227(c)(5).

Section 227(c)(5) provides, in pertinent part, a private right of action to "[a] person who has received more than one telephone call [1] within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]." Section 227(c) requires rulemaking and regulations based on that rulemaking "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Section 64.1200(c) is one such regulation. Section 64.1200(c) prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" Thus, Section 227(c) provides a private action based on the circumstances in Section 64.1200(c).

The plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal quotations omitted). Section 227(c)(5) only displays an intent to create a private remedy where its promulgated regulations so provide. Section 64.1200(c) was promulgated under Section 227(c)(5). But Section 61.1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else.

When "the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (cleaned up); *see Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) (discussing regulations). As discussed, the plain language of Section 61.1200(c) states that a violation occurs only when a person or entity initiates a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. The Court finds no ambiguity in this language. Thus, the Court limits its interpretation to the plain language of Section 64.1200(c). [2]

2022 WL 2713278

**\*3** Here, plaintiff alleges that "[s]ince April 7, 2017, [her] telephone number (319) XXX-3342 has been registered with the DNC Registry." (Doc. 1, at 4). Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone on the do-not-call registry. Although plaintiff alleges defendants violated Section 64.1200(c), thereby entitling her to recovery under Section 227(c)(5), she does not allege that she registered her telephone number on the do-not-call-registry. [3] Further, Section 227(c)(5) does not display an intent to create a private remedy as plaintiff alleges it. *Ziglar*, 137 S. Ct. at 1856. Thus, plaintiff fails to state a claim that defendants violated Section 64.1200(c), as her complaint alleges. [4] *See Iqbal*, 556 U.S. at 678; *Whitney*, 700 F.3d at 1129.

### B. Plaintiff's Arguments

Plaintiff argues that other statutory language and policy consideration show that dismissal of her claim is inappropriate despite Section 64.1200(c)'s plain language. The Court is not persuaded by these arguments.

Plaintiff argues she can properly state a claim under Section 64.1200(c) because Section 227(c)(5) allows "a person," not just a "subscriber," to bring a claim. (Doc. 18, at 9–10). There are two problems with this argument. First, although plaintiff alleges defendants violated Section 227(c)(5) based on Section 64.1200(c), (Doc. 1, at 11), for the reasons discussed, plaintiff fails to sufficiently allege a Section 64.1200(c) violation. Section 227(c)(5)'s terminology does not change this. Second, even if Section 64.1200(c) did allow for plaintiff to bring a claim on someone else's behalf, plaintiff fails to allege that she does so here. Plaintiff alleges that defendants called her telephone number attempting to reach "Kevin" and she alleges that her telephone number was registered to the do-not-call registry, (Doc. 1, at 4–5), but she does not allege that Kevin registered the telephone number such that defendants' calls could be viewed as "initiat[ing] ... telephone solicitation to" a residential telephone subscriber who has registered his or her telephone number with the do-not-call registry, as required by Section 64.1200(c).

**\*4** Plaintiff's corresponding analogy to the court's analysis of the Federal Trade Commission's Telemarketing Sales Rule ("TSR") in *United States v. Dish Network, LLC*, 75. F. Supp. 3d 916 (C.D. Ill. 2014), is likewise unavailing. Plaintiff argues that because the *Dish Network* court found "[t]he TSR does not say the call must be initiated to the person who registered the number on the [do-not-call] Registry," the

Court should similarly interpret Section 64.1200(c). (Doc. 18, at 10–11). But "the TSR states that it is a violation of that rule to initiate 'any outbound telephone call to a person' when '[t]hat person's telephone number is on [the Registry].' " *Dish Network*, 75 F. Supp. 3d. at 935 (citing 16 C.F.R. § 310.4(b)(1)(iii)(B)). Here, plaintiff alleges a Section 64.1200(c) violation, not a TSR violation. (Doc. 1). And unlike the TSR, Section 64.1200(c) expressly limits its violation to telephone solicitations made to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." Thus, Section 64.1200(c) plainly requires that the call to be initiated to the person who registered the number on the registry—even if the TSR does not.

Plaintiff also argues policy considerations should prevent the Court from dismissing her claim. Plaintiff first argues that re-registration of a telephone number on the do-not-call registry is impossible. (Doc. 18, at 19–21). Although the do-not-call registry website is confusing, plaintiff herself demonstrates that she was able to register her telephone number. (*Id.*, at 20 n.4). She states that when she attempted to register "[f]or the sake of example," she nevertheless received a confirmation email thanking her for registering her telephone number. (*Id.*). Though the date of registration did not update from her telephone number's earlier registration, which seemingly occurred while it was assigned to someone else, she nevertheless *could* register, according to the website and its confirmation. (*See id.*). Second, website registration is not the only way a subscriber can register for the do-not-call registry; a subscriber can call a toll-free number. *See National Do Not Call Registry FAQs*, FTC, https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last visited June 9, 2022). There, registration of an already registered telephone number results in a confirmation with no mention of the previous registration date. Third, the FTC website and phone registration emphasize the need for "you" to register "your new number" when obtaining a new telephone number. *See National Do Not Call Registry*, FTC, https://www.donotcall.gov/register.html (last visited June 9, 2022). The website registration is less clear, though it includes the modifier "your" in both verification and registration. This language, coupled with the actual ability to re-register the same telephone number via both the website and toll-free number, suggests that a subscriber can register a telephone number that was already registered. Further, the do-not-call registry statute provides that reassigned numbers will be periodically taken off the list, suggesting that a telephone subscriber who finds their telephone number

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 29 of 63
Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 2713278

already registered cannot rely on that previous registration for protection. 15 U.S.C. § 6155. In sum, the Court does not find plaintiff's policy arguments based on re-registration availing.

Plaintiff then argues the Court should liberally construe Section 64.1200(c) because the TCPA is a remedial statute. (Doc. 18, at 21–22). A court cannot liberally construe a statute when it finds the plain language is unambiguous and therefore does not engage in statutory construction. *See Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1086 (8th Cir. 2009); *Babb*, 140 S. Ct. at 1177. Here, because the Court has found the regulation's plain language unambiguous, the Court does not engage in statutory construction. Thus, the Court declines to follow plaintiff's policy argument based on liberal construction.

**\*5** In sum, despite plaintiff's arguments to the contrary, she fails to state a claim that defendants violated Section 64.1200(c).

### C. Amendment

Alternatively, plaintiff requests that the Court permit her to amend her complaint to add adequate facts. (Doc. 18, at 24). The Court declines plaintiff's request for several reasons. First, plaintiff's request does not comply with Local Rules because she failed to attach her proposed amended complaint. *See* LR 15. Second, plaintiff had the right to amend her complaint as a matter of course within "21 days after service of a motion under Rule 12(b)"—that is, a motion to dismiss. *See* FED. R. CIV. P. 15; FED. R. CIV. P. 12. Here, defendants filed their motion to dismiss on April 15, 2022, and plaintiff was served on that date. (Doc. 15). This means plaintiff could have amended her Complaint through May 6, 2022, without the Court's permission. *See* FED. R. CIV. P. 6. But plaintiff did not.

Finally, although the Court could find that justice requires that the Court allow plaintiff to amend her complaint, *See* FED. R. CIV. P. 15, it does not find that justice requires amendment

here. This Court has allowed amendment of a complaint when "dismissal of the plaintiff's present pleadings is appropriate," but there is "no reason to believe that the plaintiff[ ] cannot adequately plead, as opposed to have not adequately pleaded, a factual basis for [her claim]." *Moller v. Tyson Foods, Inc.*, No. C 14-4056-MWB, 2014 WL 4437548, at *4 (N.D. Iowa Sept. 9, 2014). When arguing for amendment, plaintiff states "if necessary, Plaintiff can amend her complaint to allege that she is the subscriber" to her telephone number. (Doc. 18, at 24). But the issue here is not whether plaintiff is a subscriber. The issue is whether she was the subscriber who registered her telephone number with the do-not-call registry, such that she can state a claim that defendants violated Section 64.1200(c) when they called her. Further, even if plaintiff means to say that she is a subscriber who registered, it appears plaintiff only registered her telephone number with the do-not-call registry as "for the sake of example" in her argument, and had not registered at the time defendants called her. (*See id.*, at 20 n.4). As such, the Court has reason to believe plaintiff cannot adequately plead, as opposed to has not adequately pleaded, a factual basis for her claim. *See Moller*, 2014 WL 4437548, at *4. Thus, the Court declines plaintiff's request to amend her complaint.

For these reasons, the Court grants defendants' motion.[5]

### V. CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 15) is **granted**. This case is **dismissed with prejudice**. The Clerk of Court is directed to **enter judgment** in favor of defendants and against plaintiff.

**IT IS SO ORDERED** this 9th day of June, 2022.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2713278

---

## Footnotes

1      It is undisputed that a text message is a call under the TCPA.

2022 WL 2713278

2      Accordingly, the Court does not consider the parties' arguments relating to extratextual sources. (Docs. 18, at 22–23; 20, at 4–5).

3      In Count I of her complaint, plaintiff alleges that defendants violated Section 64.1200(c) "by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the [do-not-call] Registry[.]" (Doc. 1, at 11). But in her factual allegations and her briefing, plaintiff does not state that *she* registered her telephone number with the do-not-call registry. (*See* Doc. 1, at 4 ("Since April 7, 2017, [plaintiff's telephone number] has been registered with the [do-not-call] Registry.")). Further, plaintiff argues whether she or someone else registered the number with the do-not-call registry is of no consequence. (*See generally* Doc. 18). The Court disagrees.

       Plaintiff also argues other courts have found allegations like hers sufficient to state a claim under the TCPA in motions to dismiss, motions for default judgment, and bench trials. (Doc. 18, at 11–19). Plaintiff notes that defendants do not "reference a single decision adopting their argument." (*Id.* at 5). The decisions that plaintiff cites, however, are from district courts, meaning they are non-binding on this Court. Further, these decisions are from district courts outside the Eighth Circuit Court of Appeals, which detracts from them even being persuasive. For the reasons discussed in this order, the Court declines to follow these courts.

4      That Section 64.1200(c) requires "such do-not-call registrations must be honored indefinitely," makes no difference here because this language appears in the context of the violation the Court has found plaintiff does not adequately allege. (*See* Doc. 20, at 4).

5      Thus, the Court does not reach the parties' arguments about plaintiff's proposed class. (Docs. 15-1, at 3 n.4; 18, at 7 n.1).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 9348208
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Norfolk Division.

Jim SCRUGGS, Plaintiff,
v.
CHW GROUP, INC., and Home Warranty
Administrators, Inc., Defendants.

Action No. 2:20cv48
|
Signed 11/12/2020

**Attorneys and Law Firms**

Craig Carley Marchiando, Consumer Litigation Associates, Newport News, VA, Kevin Anthony Dillon, Consumer Litigation Associates, Richmond, VA, for Plaintiff.

Andrew Zimmitti, John William McGuinness, Pro Hac Vice, Manatt Phelps & Phillips, LLP, Washington, DC, Aaron Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips LLP, Chicago, IL, for Defendants.

### UNITED STATE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Robert J. Krask, United States Magistrate Judge

 **\*1** On July 14, 2020, the defendant, CHW Group, Inc. ("CHW"), filed a motion to dismiss the first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 27. The motion was referred to the undersigned United States Magistrate Judge on September 2, 2020, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 34. For the reasons discussed below, the undersigned **RECOMMENDS** that the motion to dismiss be **GRANTED**.

### I. PROCEDURAL HISTORY

On June 30, 2020, plaintiff, Jim Scruggs ("Scruggs"), filed a two-count amended complaint against defendant, CHW. [1] Pl.'s First Am. Compl., ECF. No. 22. In count one, Scruggs alleges that CHW made repeated unwanted telemarketing calls in violation of the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227(c). *Id.* ¶¶ 32–40. In count two, Scruggs alleges that CHW made repeated unwanted telephone solicitation calls in violation of the Virginia Telephone Privacy Protection Act ("VTPPA"), Va. Code Ann. § 59.1-514. *Id.* ¶¶ 41–47.

On July 14, 2020, CHW filed a motion to dismiss both counts in the first amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state claims pursuant to Rule 12(b)(6). ECF No. 27. On August 11, 2020, Scruggs filed a response in opposition to CHW's motion to dismiss. ECF No. 32. CHW filed a reply to Scruggs' opposition on August 31, 2020. ECF No. 33. After review of the parties' submissions, the Court concludes that a hearing is unnecessary, and this matter is ready for a decision. *See* Local Civil Rule 7(J).

### II. FACTUAL BACKGROUND [2]

On or around August 19, 2004, Scruggs registered his cellphone number ending in 3953 ("the phone number") on the national do-not-call registry. Pl.'s First Am. Compl. ¶ 12. He has continuously owned the phone number, and he has never changed the number, nor removed his number from the registry list. *Id.* Scruggs does not own a landline telephone and uses his cellphone for residential purposes. *Id.* 13.

On January 24, 2019, Scruggs received three unwanted phone calls on his cellphone. *Id.* ¶¶ 14–17. During each call, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty" and "Scruggs informed CHW that he did not want CHW to contact him further." *Id.*

Scruggs also received three unwanted calls on his cellphone the next day, January 25, 2019; an additional call on January 30, 2019; and another on January 31, 2019. *Id.* ¶¶ 18–22. Each time "the caller identified himself as associated with CHW and again attempted to sell a home warranty to Mr. Scruggs." *Id.* And, each time "Mr. Scruggs answered and again told the caller to stop contacting him." *Id.*

 **\*2** Scruggs asserts that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the above calls to Mr. Scruggs." *Id.* ¶ 23.

As a result of the eight calls, Scruggs experienced "anxiety and emotional distress." *Id.* ¶ 24. He "expended considerable

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 32 of 63
Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 9348208

time and energy to try to get CHW to stop calling him," and the calls "interrupted [his] life, harassed him, and caused him to unnecessarily expend time dealing with calls he reasonably expected would stop when he repeatedly instructed CHW's representatives to stop calling him." *Id.* ¶¶ 25–26.

CHW acted willfully in committing these acts in violation of the TCPA and the VTPPA. *Id.* ¶¶ 27–31. Specifically, CHW has had three decades, as well as the means and resources, to come into compliance with the TCPA, which was enacted in 1991. *Id.* ¶¶ 28–30.

### III. LEGAL STANDARDS

**A. Standards applicable to a motion to dismiss for failure to state a claim.**
A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to allege "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Accordingly, when reviewing a motion to dismiss, a court must "assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff," but it need not "accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and internal quotation marks omitted). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

**B. Standards applicable to a motion to dismiss for lack of subject matter jurisdiction.**
Rule 12(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *A. W. ex rel. Wilson v. Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d

219, 221 (E.D. Va. 2008). Specifically, "[a] defendant may challenge the court's subject matter jurisdiction in one of two ways: (1) the defendant may raise a 'facial challenge' by arguing that the facts alleged in a complaint are not sufficient to confer subject matter jurisdiction on the court or (2) the defendant may raise a 'factual challenge' by arguing that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18cv290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, the court evaluates the facts in a complaint using the same standard used for a Rule 12(b)(6) motion to dismiss,"—namely, "all alleged facts are taken as true and the motion must be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction." *Id.* (citing *Kerns*, 485 F.3d at 192). As noted above, however, such allegations are not taken as true with respect to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

**\*3** In this case, the Court concludes that CHW has raised a facial challenge to subject matter jurisdiction. CHW raises its challenge to Scruggs' complaint pursuant to Rule 12(b)(1) by relying only on the allegations noted on the face of the complaint. *See* ECF No. 27 at 29 ("The Court should also dismiss the [first amended complaint] pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff still *fails to plead sufficient facts* demonstrating the essential Article III standing elements of causation or redressability ....." (emphasis added)). Accordingly, aside from "mere conclusory statements" supporting a cause of action's elements or legal conclusions, *Iqbal*, 556 U.S. at 678, the Court "will accept as true all facts alleged in [Scruggs' first amended complaint] for the purposes of determining whether the court has subject matter jurisdiction over this claim," *Brunelle*, 2018 WL 4690904, at *2.

### IV. DISCUSSION

**A. Count one warrants dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, Rule 12(b)(6) for failure to state a claim.**
In count one, Scruggs alleges that CHW violated the TCPA, 47 U.S.C. § 227(c)(5). Pl.'s First Am. Compl. ¶¶ 32–40. Specifically, Scruggs alleges that CHW "made repeated telemarketing calls to Mr. Scruggs' residential phone despite Mr. Scruggs having registered the number on the National

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 33 of 63

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 9348208

Do Not Call List"; continued to make such calls "after he informed CHW ... to stop contacting him"; "made these repeated calls without instituting procedures to maintain a do not call list in violation of 47 C.F.R. § 64.1200(d)"; "made [the calls] without Mr. Scruggs['] authorization[;] and disregarded Mr. Scruggs' designation of the Phone Number on the National Do Not Call List ... [in] violation of 47 C.F.R. § 64.1200(c)(2)." *Id.* ¶¶ 33–36. Scruggs asserts that violation of these regulations "constitute[s] violations of the TCPA." *Id.* ¶ 37 (citing 47 U.S.C. § 227(c)(5)). Further, he alleges that CHW acted "willfully and/or knowingly [in] violat[ing] these regulations," *id.* ¶ 38, which merits treble damages, *id.* ¶ 40 (citing 47 U.S.C. § 227(c)(5) (providing a right to receive up to $500.00 in damages for each violation and up to three times that amount "[i]f the court finds [in its discretion] that the defendant willfully or knowingly violated the regulations")).

Defendant seeks to dismiss the claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. ECF No. 27 at 9. To support the former, defendant argues that Scruggs lacks standing to bring this suit, because the at-issue calls are not "fairly traceable" to CHW and cannot be redressed by CHW. *Id.* at 29–30. To support the latter, defendant advances three main arguments: (1) Scruggs has not pled facts supporting direct TCPA liability, (2) Scruggs has not pled facts supporting vicarious TCPA liability, and (3) the facts, as pled, do not amount to a violation of TCPA's do-not-call rules. *Id.* at 15–26.

Because standing is a "threshold question in every federal case," the Court begins its review of defendant's arguments there. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

**1. This Court lacks subject matter jurisdiction over count one, because plaintiff lacks Article III standing**.
Rule 3(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d at 221. As provided by Article III of the Constitution, federal courts have subject-matter jurisdiction over justiciable cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). The doctrine of standing is one component of justiciability, "serv[ing] to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The standing issue—that is, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to

justify exercise of the court's remedial powers on his behalf," *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962))—presents "a threshold question in every federal case," *id.* at 498.

> **\*4** In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must demonstrate that: (1) [he] has suffered an injury in fact; (2) the asserted injury in fact is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely rather than just conjectural that the asserted injury in fact will be redressed by a decision in the plaintiffs favor.

*Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

CHW does not contest that Scruggs adequately pled the first requirement, that is, that he "suffered an injury in fact" related to harms from eight unwanted phone calls, but instead argues that Scruggs has failed to adequately plead the second and third requirements. *See* ECF No. 27 at 39–30.

**a. The plaintiff's injury is not fairly traceable to the defendant's conduct.**

The purpose of "[t]he 'fairly traceable' requirement [is to] ensure[ ] that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 560). This "standard is 'not equivalent to a requirement of tort causation.' " *Id.* (quoting *Pub. Int. Rsch. Grp. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990)). Nor do plaintiffs need to demonstrate causation with "scientific certainty." *Id.* (quoting *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992)). On the other hand, "[i]f 'the line of causation ... is too attenuated' or 'highly indirect,' the plaintiff's injury is not 'fairly traceable' to the defendant and the plaintiff will not have standing." *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, No. JFM-08-62, 2011 WL 1557759, at *2 (D. Md. April 22, 2011)

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 34 of 63

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 9348208

(quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). In addition, this "element of standing does not require the challenged action to be the sole or even immediate cause of the injury." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018). The alleged conduct, however, cannot be wholly "the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Consistent with the *Iqbal* pleading standards, courts have found that unwanted calls in the TCPA context were "fairly traceable" to defendants where the plaintiff alleged some factual context surrounding the contested calls that supported an inference that the defendant or its agent had made the call. For instance, in *Cordoba v. DIRECTV, LLC*, the complaint alleged that DIRECTV hired Telecel to make marketing calls; that Telecel placed numerous calls on behalf of DIRECTV to the named plaintiff Cordoba, who was listed on the national do-not-call registry; that Cordoba "repeatedly told Telecel that he did not want to be called," that "Telecel admitted that the company did not maintain an internal do-not-call list"; that Cordoba "wr[ote] to DIRECTV and request[ed] that they cease calling him"; that "DIRECTV responded and promised that they would no longer contact him"; and that "the calls continued." 942 F.3d 1259, 1265–66 (11th Cir. 2019). The Eleventh Circuit observed, "Cordoba, as the named plaintiff, has no problem meeting the traceability requirement: the complaint squarely alleges that he repeatedly asked Telecel and DIRECTV to stop calling him, Telecel didn't keep a list of all those who asked not to receive calls, and he later suffered the injury of receiving many phone calls, which would not have happened if Telecel had maintained an internal do-not-call list and abided by it." *Id.* at 1271. Therefore, pleading not only that defendant hired an agent who called the plaintiff, but also facts suggesting the defendant acknowledged making the call—here, by DIRECTV in writing—are contextual factors that might support a finding that a call was fairly traceable to the defendant.

**\*5** Similarly, in *Hurley v. Messer*, the plaintiff identified the specific phone numbers used to make the contested calls in the complaint and alleged that the phone numbers belonged to two defendant service providers. No. 3:16-9949, 2018 WL 4854082, at \*4 (S.D.W. Va. Oct. 4, 2018). The court found that the contested calls were fairly traceable to the voice-over-internet service providers who were alleged to have "kn[own] about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be

broadcast through their assigned telephone numbers." *Id.* Therefore, allegations of control over the calls, knowledge of the calls, and ownership of the assigned telephone numbers are additional contextual factors that might contribute to a finding that the conduct is fairly traceable to the defendant.

On the other hand, courts have found that contested phone calls were not fairly traceable to a defendant where plaintiffs have failed to allege non-conclusory facts that support an inference linking the defendant to the calls. For example, in *Barker v. Sunrun Inc.*, the plaintiff alleged that the defendant "had an agency relationship with the individuals or entities who actually made the offending phone calls." No. CV 18-855 KG/LF, 2019 WL 1983291, at \*3 (D.N.M. April 29, 2019). The court was unpersuaded. *Id.* It observed, "this allegation constitutes a legal conclusion, and so it is not entitled to a presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 678). In addition, the plaintiff "state[d] he ha[d] sworn statements that connect the actions to [the defendant]," but this was insufficient as well, as those statements were not included in or attached to the complaint. *Id.* Ultimately, the court found standing lacking, noting that aside from these conclusory statements, "Plaintiff did not make factual allegations ... connecting the actions to [the defendant]." *Id.*

CHW argues that Scruggs's alleged injury is not fairly traceable to CHW. CHW states, "Plaintiff fails to allege sufficient non-conclusory facts by which one could trace his purported injury to CHW." ECF No. 27 at 29. Specifically, CHW observes that "Plaintiff ... provides virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who *physically* placed any of the calls—*i.e.*, CHW or some third party who merely stated they were 'associated with' CHW somehow." *Id.* at 17. Further, CHW notes that Scruggs concedes this point in his first amended complaint by requiring discovery on the issue. *Id.* (citing Pl.'s First Am. Compl. ¶ 23 ("Discovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [contested] calls to Mr. Scruggs.")).

Scruggs asserts that he has pled sufficient facts to show the unwanted calls are fairly traceable to CHW. ECF No. 32 at 7. He argues, "Mr. Scruggs has clearly pleaded that he received a series of phone calls from Defendant, and the callers identified themselves with Defendant and tried to sell Mr. Scruggs[ ] Defendant's product." *Id.* In short, he notes that "Mr. Scruggs has demonstrated that the offending conduct in his complaint is traceable to Defendant by alleging

that Defendant is the one who called him. Nothing more is needed." *Id.* The Court disagrees.

Viewed in the light most favorable to Scruggs, the alleged facts are insufficient to show that the contested calls are "fairly traceable" to CHW for two principal reasons: (1) the conclusory statements in the first amended complaint do not provide a factual basis to trace the contested phone calls to CHW; and (2) the alleged conduct could be attributed to an unrelated third party not before the Court.

**\*6** As a preliminary matter, Scruggs mischaracterizes the factual allegations set forth in the first amended complaint. First, Scruggs now argues in his opposition to the motion to dismiss "that he received a series of phone calls from Defendant," and that "Defendant is the one who called him." *Id.* But the amended complaint does not reflect that. Instead, the facts section of the amended complaint notes that on eight occasions, "Scruggs received a phone call in which *the caller* identified himself *as associated with* CHW," and that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested] calls to Mr. Scruggs." Pl.'s First Am. Compl. ¶¶ 14, 16–23 (emphasis added). Although Scruggs indicates later in the "counts" section of the complaint that "CHW made repeated telemarketing calls to Mr. Scruggs' residential phone," *e.g.*, *id.* ¶ 33, this type of threadbare recitation of an element of a cause of action is not an alleged fact that the court need accept as true, *see Iqbal*, 556 U.S. at 678, and, indeed, it is inconsistent with his factual assertion that he needs discovery to confirm who called him and how that person is related to CHW, Pl.'s First Am. Compl. ¶ 23. Contrary to his opposition memorandum, Scruggs did not plead that "Defendant is the one who called him," but rather suggested he does not know who called him and that he needs discovery on the issue. ECF No. 32 at 7. Second, Scruggs now argues that "the callers ... tried to sell Mr. Scruggs[ ] Defendant's product." *Id.* But nowhere in the amended complaint does Scruggs state that the alleged product being sold—"a home warranty"—is defendant's product. *See* Pl.'s First Am. Compl. ¶¶ 14, 16–23.

Instead, the allegations in the complaint are largely conclusory and the descriptions of the contested calls are devoid of context. With respect to the content of the calls, Scruggs states, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty," and Scruggs told the caller that "he did not want CHW to contact him further." *E.g., id.* ¶¶ 14–15. The solitary fact proffered to connect the call to CHW is that "the caller identified himself as associated with CHW." *E.g., id.* ¶ 14. But Scruggs was a party to the phone calls and should be able to provide greater detail. For instance, he might include the name of the caller or details of the sales pitch for the home warranty being sold. Or as in *Hurley*, he could have identified the phone numbers used to call him and allege those phone numbers belong to CHW. *See* 2018 WL 4854082, at *4. Scruggs states that "he repeatedly instructed CHW's representatives to stop calling him," and notes in his description of each call that he "told the caller to stop contacting him," but he does not describe how CHW responded to his requests. Pl.'s First Am. Compl. ¶¶ 15–22, 26. For instance, unlike in *Cordoba*, Scruggs did not allege that CHW has acknowledged making the calls. 942 F.3d at 1266.

These sample contextual factors—the defendant's acknowledgement of a call, the defendant's ownership of the phone number used to make the call, details of the specific content of calls—are not required in every case to support a finding that the alleged conduct is fairly traceable to the defendant, but they are illustrative of the types of factual allegations courts have found sufficient under the *Iqbal* pleading standards when conducting a standing analysis. *See Cordoba*, 942 F.3d at 1271; *Hurley*, 2018 WL 4854082, at *4; *see also* Drake v. Firstkey Homes, LLC, 439 F. Supp. 3d 1313, 1315–16, 1323–24 (N.D. Ga. 2020) (finding that an injury related to unwanted phone call was fairly traceable to a defendant where the defendant *admitted making the call* even though a third party gave the defendant consent to contact the plaintiff). Here, Scruggs' allegations remain conclusory and lack the necessary factual context to support an inference linking the calls to CHW. In short, more is needed to render the calls "fairly traceable" to CHW.

Further, as pled, the injury here could be wholly "the result of the independent action of some third party not before the court," which is fatal to satisfying the traceability prong of a standing analysis. *Bennett*, 520 U.S. at 167; *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755–56 (4th Cir. 2013). Again, Scruggs states, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty." Pl.'s First Am. Compl. ¶¶ 14, 16–22. Taken as true, as the Court must, this statement does not foreclose the possibility that a third party wholly unrelated to CHW made the call. The statement does not expressly state that CHW made the call and the complaint otherwise does not allege facts that would support an agency relationship between CHW and the caller. *See id.* ¶¶ 12–31.

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 36 of 63

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 9348208

**\*7** Rather than plead non-conclusory facts supporting an inference that CHW was responsible for the contested phone calls, Scruggs requests discovery on the matter. He states, "Discovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested phone] calls to Mr. Scruggs." *Id.* ¶ 23. The caller said they were "associated with CHW," so Scruggs' logic is that CHW or its agent made the call. *See id.* ¶¶ 14, 23. Absent additional non-conclusory facts that link CHW to the call, however, "this assertion is speculative, and discovery to support it would amount to no more than a 'fishing expedition in hopes of discovering some basis of jurisdiction.' " *Gillison v. Lead Express, Inc.*, No. 3:16cv41, 2017 WL 1197821, at \*15 (E.D. Va. Mar. 30, 2017) (quoting *Base Metal Trading, Ltd. v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002)).

Because Scruggs failed to plead non-conclusory facts linking CHW to his purported injury and because a third party not before the court could be responsible for such conduct, the Court finds that the plaintiff's injury is not "fairly traceable" to the defendant, as is required for Article III standing.

### b. The plaintiff's injury is not redressable.

The purpose of the redressability prong of a standing inquiry is to determine whether "a plaintiff 'personally would benefit in a tangible way from the court's intervention.' " *Friends of the Earth, Inc.*, 204 F.3d at 162 (quoting *Warth*, 422 U.S. at 508). This question is linked to the traceability inquiry, because for the Court to be able to redress the injury, that injury "must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control." *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).

Having found that Scruggs failed to adequately allege facts that fairly trace his injury to CHW, the Court also finds that his injury is not redressable, because the conduct could have been caused by a third party not before the Court.

Because Scruggs' injury is not fairly traceable to CHW or redressable, the Court finds that Scruggs does not have Article III standing to bring this claim. Therefore, this Court lacks subject matter jurisdiction over this matter, and, accordingly, the Court **RECOMMENDS** that defendant's motion to dismiss count one be **GRANTED**.

### 2. Dismissal of count one is also appropriate, because plaintiff fails to state a claim upon which relief can be granted. [3]

CHW also moves to dismiss count one under Rule 12(b)(6) for failure to state a claim by arguing that Scruggs has not pled facts supporting direct or vicarious TCPA liability. [4] ECF No. 27 at 16–22. To the extent Scruggs asserts that CHW is directly liable under the TCPA, CHW argues that "federal courts have routinely dismissed conclusory direct TCPA liability claims that, like Plaintiff's, lack sufficient factual allegations demonstrating that the defendant actually 'initiated' the phone calls at issue in the sense of 'tak[ing] the steps necessary to physically place' a call." *Id.* at 16 (quoting *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020)). To the extent Scruggs asserts that CHW is vicariously liable under the TCPA, CHW argues that Scruggs has not pled sufficient facts to support the finding of an agency relationship between CHW and the caller at issue or to support a finding that CHW exercised control over the caller, which is required for a finding of vicarious liability. *Id.* at 19–22.

**\*8** Scruggs counters that "[r]egardless of whether CHW is directly or vicariously liable, Mr. Scruggs has sufficiently pleaded liability." ECF No. 32 at 13. He argues that "it is nearly impossible for Mr. Scruggs to at this point know precisely what entity actually initiated the calls to him," and that "it is enough for Plaintiff to allege that either the Defendant or someone acting on its behalf placed the calls to Plaintiff to survive Defendant['s] Motion [to Dismiss]." *Id.* at 13– 14. Specifically, he notes that "Mr. Scruggs need only allege facts which, when taken as true, indicate that it[']s plausible that Defendant made the unlawful calls," which he asserts is the case here. *Id.* at 15–16.

Having found that the contested calls are not fairly traceable to CHW in the context of standing, the Court also finds that Scruggs has not adequately pled facts under the *Iqbal* pleading standards supporting direct or vicarious liability under the TCPA.

The telemarketing regulations under the TCPA are fairly straightforward. "If a person wishes to no longer receive telephone solicitations, he can add his number to the [do-not-call registry]," and "[t]he TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2)). Specifically, the statute

provides a private right of action for those who suffer telemarketing calls in violation of regulations promulgated under subsection (c) of the act, namely:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... bring ... an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation.

47 U.S.C. § 227(c)(5). In addition, a defendant to such a claim may be liable under "theories of direct or vicarious liability." *Aaronson v. CHW Grp., Inc.*, No. 1:18cv1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019).

Scruggs alleges that CHW violated two provisions that may provide him relief, each of which requires CHW or its agent to have *made* or *initiated* phone calls to Scruggs. First, Scruggs alleges that CHW violated 47 C.F.R. § 64.1200(c)(2), which generally forbids a telemarketer from contacting persons who have registered on the national do-not-call registry. Pl.'s First Am. Compl. ¶ 36. That regulation provides that

> (c) No person or entity shall *initiate* any telephone solicitation to:
>
> ...
>
> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2) (emphasis added). Second, Scruggs alleges that CHW violated 47 C.F.R. § 64.1200(d), which in general terms, requires persons making telemarketing calls to maintain an internal do-not-call list and honor requests to be placed on such a list. Pl.'s First Am. Compl. ¶ 35. The provision states:

> If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities *making* calls for telemarketing purposes (or on whose behalf such calls are *made*) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

**\*9** 47 C.F.R. § 64.1200(d) (emphasis added). [5] Therefore, as a threshold matter and consistent with the *Iqbal* pleading standards, Scruggs must plead non-conclusory facts that indicate that CHW or its agent "initiate[d]" or "made" calls to Scruggs. 47 C.F.R. §§ 64.1200(c)(2), 64.1200(d).

Accordingly, to establish direct liability under the TCPA, "courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue." *Aaronson*, 2019 WL 8953349, at *2. Therefore, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's] cellular phone." *Id.* For instance, in *Aaronson v. CHW Grp., Inc.*, the court found that the "plaintiff fail[ed] to support his conclusory allegation that defendant called plaintiff['s] cellular phone." *Id.* Specifically, "[t]he lone *fact* marshalled in the Complaint that even c[ame] close to supporting plaintiff['s] conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' " *Id.* (citation omitted). Accordingly, the court found that the allegations there lacked sufficient factual context to support an inference that the defendant made the contested phone calls. *Id.*

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 38 of 63

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 9348208

To establish vicarious liability under the TCPA, "courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency." *Id.* at *3. Those principles provide that an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006). Therefore, "at the pleadings stage, plaintiff 'must allege some facts regarding the relationship between an alleged principal and agent' that show defendant had the right to control the party making the calls; plaintiff 'cannot simply allege general control in a vacuum.' " *Aaronson*, 2019 WL 8953349, at *3 (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)). For instance, the court in *Aaronson* found that a "conclusory, boilerplate allegation" that "defendant 'acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers,' " was insufficient to show defendant was vicariously liable for contested calls. *Id.* The court there suggested that additional facts, such as "how the caller identified itself (*e.g.*, as defendant's employee), the substance of the call (*e.g.* a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control" might change the calculus. *Id.*

**\*10** This case is similar to *Aaronson*, as the alleged facts surrounding the contested calls are sparse. As noted earlier, Scruggs described each of the eight calls at issue in the following manner: "the caller identified himself as associated with CHW and attempted to sell a home warranty to Mr. Scruggs," and Scruggs "told the caller to stop contacting him." Pl.'s First Am. Compl. ¶¶ 14–22. That is the extent of the description of the content of the calls.

Scruggs is correct that he need not know for certain whether CHW or its agent placed the call, but there must still be sufficient, non-conclusory factual allegations linking the calls to CHW to render it liable under the TCPA. For instance, in *Desai v. ADT Sec. Servs., Inc.*, the court held that the "alleg[ation] that at-issue calls were made 'by or on behalf of ADT, and/or with ADT's knowledge, consent, approval and/or acquiescence,' " was sufficient at the pleadings stage. No. 11-c-1925, 2011 WL 2837435, at *1 (N.D. Ill. July 18,

2011). Importantly, however, the allegations there provided sufficient factual context to allow for an inference linking the defendant to the call. For instance, the plaintiffs described the content of the calls, "alleging that they received unsolicited pre-recorded telephone calls promoting ADT's products." *Id.* In other words, although a plaintiff need not always allege specifically whether they seek to hold the defendant accountable under a direct or vicarious liability theory at the pleadings stage, he must allege sufficient non-conclusory facts surrounding the context of the calls that support an inference of direct or vicarious liability.

The amended complaint fails to provide such a factual context. For instance, although he was a party to the eight contested phone calls, Scruggs did not allege facts indicating which phone numbers the caller used, details of the marketing pitch the caller made regarding the home warranty, or how CHW representatives reacted to Scruggs' request to not be contacted. *See* Pl.'s First Am. Compl. ¶¶ 12–31. The sole factual allegation linking CHW to the calls is that the caller identified himself as "associated with CHW." *Id.* ¶¶ 14, 16–22. That lone link to the defendant is insufficient under the *Iqbal* pleading standards. *See Aaronson*, 2019 WL 8953349, at *2; *see also Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) ("[A] complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " (quoting *Iqbal*, 556 U.S. at 678)). Allowing the TCPA claim to proceed beyond this stage would constitute an impermissible fishing expedition to determine if a factual basis exists to assert the claim against CHW. For these reasons and for the same reasons that the amended complaint failed to satisfy the traceability requirements explored in Part IV(A)(1)(a), the allegations of CHW's direct or vicarious liability under the TCPA are insufficient.

Because the amended complaint does not adequately allege direct or vicarious liability for CHW under the TCPA, the Court also finds that Scruggs has failed to state a claim upon which relief may be granted. Therefore, the Court **RECOMMENDS** that CHW's motion to dismiss count one be **GRANTED** on this alternative basis.

**B. Scruggs' state-law claim in count two should be dismissed without prejudice.**

In count two, Scruggs alleges that the same eight, telemarketing phone calls discussed above also violated the VTPPA—specifically, Va. Code Ann. § 59.1-514(A), and (B). Pl.'s First Am. Compl. ¶¶ 41–44. Further, he alleges that "[a]s a result of these unwanted telephone solicitation calls, Mr.

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 9348208

Scruggs suffered actual damages including frustration, anger, stress, and other emotional and mental distress," and "[h]e was also forced to spend time and resources to try to stop CHW from contacting him." *Id.* ¶ 46. Scruggs asserts that "[he] is entitled to recover for $1,500 in statutory damages for each call in violation of the VTPPA, as well as reasonable attorney's fees and costs." *Id.* ¶ 47 (citing § 59.1-515).

**\*11** CHW moves to dismiss Scruggs' VTPPA claim on three grounds: (1) "Plaintiff's VTPPA claim is based on the very same threadbare and conclusory allegations lacking in supporting facts as his TCPA claim, [and] ... should also be dismissed under Rule 12(b)(6) for not meeting federal pleading standards"; (2) plaintiff may not obtain double recovery for the same injury under different legal theories; and (3) CHW has an affirmative defense to the claim by virtue of its "reasonable practices and procedures to effectively prevent telephone solicitation calls," pursuant to Va. Code Ann. § 59.1-514(C). ECF No. 27 at 26-28.

"Because the Court has dismissed [Scrugg's TCPA claim] for lack of standing—the only claim within this Court's original jurisdiction—the Court declines to address [his] state law claim at this time ...." *Judson v. Bd. of Supervisors of Mathews Cty.*, No. 4:18cv121, 2019 WL 2558243, at \*11 (E.D. Va. June 20, 2019). At the time of the filing of Scruggs' amended complaint, this Court had original, federal question jurisdiction over Scruggs' claim under 47 U.S.C. § 227(c)(5) (count one) as a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2018). This Court also had supplemental jurisdiction over plaintiff's state-law claim for repeated unwanted telephone solicitation calls under Va. Code Ann. § 59.1-514 (count two), because the claim was "so related" to the federal question claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2018). Indeed, both counts involved allegations related to the same eight telemarketing phone calls to the plaintiff. Pl.'s First Am. Compl. ¶¶ 32–47.

Notably, "[t]his supplemental jurisdiction [is] not lost when the federal-law claims [are] dismissed." *Johansson v. Prince George's Cnty. Pub. Schs.*, No. CBD-13-2171, 2014 WL 7014430, at \*2 (D. Md. Dec. 10, 2014). Instead, "this Court 'may' decline to exercise supplemental jurisdiction now that it 'has dismissed all claims over which it has original jurisdiction,' but it is not required to do so." *Id.* (citing 28 U.S.C. § 1367(c)); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's

decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is *purely discretionary.*" (emphasis added)). Because this case was originally brought in federal court, the Court does not have the option of remanding the remaining claims to state court, leaving it only two options: hear the claims or dismiss the claims. *See* 14C Charles Alan Wright et al., Federal Practice and Procedure § 3739 (Rev. 4th ed. 2020) ("[F]ederal courts cannot remand an action that was originally filed in federal court." (citing *Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013))).

Dismissal of the claims without prejudice is appropriate in this case. As the Supreme Court has observed, "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). Here, "[i]t is early in the pre-trial period, therefore, the court is less concerned with fairness and judicial economy." *Village Builders on the Bay, Inc., v. Cowling*, 321 F. Supp. 3d 624, 630 (E.D. Va. 2018). In addition, "[t]he parties and the court have yet to expend significant resources on this case," mitigating any inconvenience caused by dismissal of the state-law claims without prejudice to refile in state court. *Id.* With respect to comity, "Virginia courts are better positioned to evaluate causes of action based upon Virginia law.... [as] 'the primary responsibility for developing and applying state law rests with state courts.' " *Id.* (citing *Dunlevy v. Coughlin*, No. 2:15cv347, 2016 WL 595300, at \*4 (E.D. Va. Feb. 10, 2016)).

**\*12** Accordingly, the Court **RECOMMENDS** that defendant's motion to dismiss count two be **GRANTED** without prejudice to proceeding in state court.

## V. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that defendant's motion to dismiss, ECF No. 27, be **GRANTED** as follows:

(1) Defendant's motion to dismiss plaintiff's TCPA claim in count one should be **GRANTED** and count one should be **DISMISSED WITHOUT PREJUDICE**; and

(2) Defendant's motion to dismiss plaintiff's VTPPA claim in count two should be **GRANTED** and count two should be **DISMISSED WITHOUT PREJUDICE**

pursuant to the Court's discretion under 28 U.S.C. § 1367(c). [6]

## VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See*

Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties arc further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 9348208

## Footnotes

1    Home Warranty Administrators, Inc., is no longer a party in this matter. On May 8, 2020, Scruggs filed a notice of dismissal of claims against Home Warranty Administrators, Inc., ECF No. 11, and Scruggs did not bring claims against Home Warranty Administrators, Inc., in his first amended complaint, ECF No. 22.

2    The facts detailed below are set forth in the first amended complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (observing that when addressing a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint").

3    Should the District Judge find that standing is lacking in this matter, then the Court would lack jurisdiction to analyze the merits of defendant's Rule 12(b)(6) arguments. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("[A] court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). For the purposes of this report and recommendation, however, the undersigned addresses defendant's Rule 12(b)(6) motion to aid the District Judge should she find that standing is present.

4    Because the Court agrees with defendant that plaintiff has not pled direct or vicarious TCPA liability, the Court finds it unnecessary to address the defendant's third argument contending that "Plaintiff ... fails to plead sufficient facts indicating a violation of the TCPA's [do-not-call] rules." ECF No. 27 at 22.

5    The parties dispute whether the private cause of action created by 47 U.S.C. § 227(c)(5) extends to the provisions of 47 C.F.R. § 64.1200(d). *See* ECF No. 27 at 23 (discussing cases that have recognized violations of § 64.1200(d) do not give rise to a private cause of action); ECF No. 32 at 20-22 (discussing cases that have recognized a private cause of action for violations of 47 C.F.R. § 64.1200(d)); ECF No. 33 at 20–22. Recently, courts in the Fourth Circuit have found that the TCPA does not provide a private right of action for violations of 47 C.F.R. § 64.1200(d). *See Wilson v. PL Phase One Operations L. P.*, 422 F. Supp. 3d 971,

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 41 of 63

**Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)**

2020 WL 9348208

981–82 (D. Md. 2019) (observing that "the Fourth Circuit has not addressed whether 47 C.F.R. § 64.1200(d) provides a private right of action," but concluding that the section "appears to fall within subsection *d*'s scope, which does not provide a private right of action"); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) (observing that 47 C.F.R. § 64.1200(d) "appear[s] to fall under the aegis of subsection *d* of the TCPA" rather than under subsections *b* and *c*, which create private rights of action). The Court need not decide the issue, however, because Scruggs has not pled sufficient facts to allege that CHW is liable for the calls in question.

6       The Court declines to consider Scruggs' request for leave to amend his complaint should the Court grant the defendant's motion to dismiss. ECF No. 32 at 29. In general, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In order "to determine whether 'justice so requires,' " however, "the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002). Because Scruggs has not yet provided the Court with his proposed amendment(s), deciding his request at this stage would be premature. In order for the Court to consider such a request, Scruggs must file a motion seeking leave to amend the complaint with the proposed amendments attached.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 42 of 63

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

2023 WL 3826460

2023 WL 3826460
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Joseph SHOEMAKER, Richard Gindin,
Demya Johnson, Kimberly Starling, and
Matthew McCormick, individually and on
behalf of all others similarly situated, Plaintiffs
v.
Richard ZEITLIN, American Technology Services,
LLC, Unified Data Services, LLC, Compliance
Consultants, LLC, and John Does 1-10, corporate
entities and individuals presently unknown, Defendants

CIVIL ACTION NO. 1:21-CV-1668
|
Signed June 5, 2023

**Attorneys and Law Firms**

David S. Senoff, First Law Strategy Group, LLC, Philadelphia, PA, Eric H. Weitz, Max Morgan, The Weitz Firm, LLC, Philadelphia, PA, for Plaintiffs.

Daniel J. Treuden, Pro Hac Vice, The Bernhoft Law Firm, S.C., Austin, TX, Patrick T. Kane, Pro Hac Vice, Robert G. Bernhoft, Austin, TX, Thomas Kimble, Pro Hac Vice, Arlington, TX, James N. Clymer, Clymer & Musser PC, Lancaster, PA, for Defendants Richard Zeitlin, American Technology Services, LLC, Unified Data Services, LLC, Compliance Consultants, LLC.

**MEMORANDUM**

Christopher C. Conner, United States District Judge

 **\*1** Named plaintiffs bring this putative class action against defendants Richard Zeitlin and various entities associated with Zeitlin, asserting claims for violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and unjust enrichment under Pennsylvania law. Defendants move to dismiss plaintiffs' amended class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendants also move to strike a portion of plaintiffs' class allegations under Rule 12(f). We will partially grant defendants' motion to dismiss, and we will deny their motion to strike.

## I. Factual Background & Procedural History

Defendants are a telemarketing entrepreneur, Zeitlin, and a collection of entities he uses to conduct various telemarketing endeavors—American Technology Services, LLC ("ATS"); Unified Data Services, LLC ("UDS"); Compliance Consultants, LLC ("CC"). (See Doc. 33 ¶¶ 3-4 & n.1, 42, 44, 76-85, 107). Zeitlin is a resident of Nevada; ATS, UDS, and CC are Delaware limited liability companies with principal places of business in Nevada. (See id. ¶¶ 76, 78, 80, 82). Named plaintiffs Joseph Shoemaker, Richard Gindin, DeMya Johnson, Kimberly Starling, and Matthew McCormick are five individuals residing variously in Pennsylvania, Texas, and Sweden who allege defendants initiated robocalls to their cell phones without their prior consent on various dates between April 26, 2018, and August 2, 2021. (See id. ¶¶ 64-75, 85; see generally id. ¶¶ 112-203). The prerecorded voice on each of these calls solicited donations on behalf of a political action committee ("PAC") purporting to support law enforcement, and one of the calls successfully obtained a donation from plaintiff Shoemaker. (See id. ¶¶ 114, 119, 121, 138, 145, 166, 179, 190).

Plaintiffs' allegations, however, go beyond accusing defendants of engaging in robocalls: plaintiffs allege Zeitlin is the key figure in a "scheme" to solicit donations for PACs secretly controlled by Zeitlin or individuals in league with Zeitlin and whose sole *raison d'être* is to funnel donated money to Zeitlin and his companies. (See id. ¶¶ 5-6, 29-32, 42). Plaintiffs provide a lengthy list of PACs they claim are "scams" orchestrated by or in collusion with Zeitlin, two of which feature prominently in the alleged events underlying the matter *sub judice*: Honoring American Law Enforcement PAC ("HALE") and the Police Officers Defense Alliance LLC ("PODA"). (See e.g., id. ¶¶ 29, 114, 138, 166, 179). Plaintiffs assert the PACs on their list share numerous officers, some of whom are business associates or friends of Zeitlin. According to the complaint, these PACs have no genuine interest in or intention of meaningfully advancing the causes they claim to support. (See id. ¶¶ 4-6, 33-41, 50, 126-127). Plaintiffs allege Zeitlin and his companies partner with these PACs and then make millions of robocalls soliciting donations on their behalf. (See id. ¶¶ 3-4, 42). The calls result in hundreds of thousands—if not millions—of dollars in donations to the PACs annually. (See id. ¶¶ 1, 5, 58; see also id. ¶¶ 125, 149). The PACs supposedly then transfer the lion's share of the money raised through these donations to Zeitlin and his companies "through an array of bogus and inflated overhead expenditures." (See id. ¶¶ 5, 42, 46, 48, 58, 149-156, 177).

Case 3:26-cv-00293-KM   Document 10-1   Filed 04/13/26   Page 43 of 63

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)
2023 WL 3826460

**\*2** According to plaintiffs, Zeitlin and his companies have been the subject of journalistic investigations detailing the scheme. (See id. ¶¶ 30 & n.5, 32 n.7, 58). They also claim the passthrough nature of these PACs can be seen by examining the PACs' filings with the Federal Election Commission ("FEC"). (See id. ¶¶ 45-46; see generally id. ¶¶ 125-197). [1] Namely, they claim the reports show the PACs in question pay out an overwhelming preponderance of their income to entities owned or controlled by Zeitlin. (See Doc. 33 ¶¶ 45-46, 48, 58; see generally id. ¶¶ 125-197). These filings also purportedly show the PACs spend comparatively miniscule amounts on activities plausibly connected to their purported political or social objectives. (See id. ¶¶ 4-6, 126-127). To conceal the relationship between the PACs, Zeitlin, and Zeitlin-controlled companies, plaintiffs allege Zeitlin utilizes a "vast web of inextricably intertwined corporate entities" whose identities he obscures by employing unregistered fictitious names, UPS Store mailboxes in far-flung states, and mail-forwarding services. (See id. ¶¶ 51-57, 99, 106, 154-164). Plaintiffs also allege Zeitlin operates his "vast web" of telemarketing companies as "alter egos of one another" constituting "a single economic enterprise." (See id. ¶¶ 99-106).

Plaintiffs initiated this putative class action against defendants on behalf of themselves and others similarly situated. The action is now proceeding pursuant to plaintiffs' amended complaint (Doc. 33). Defendants move to dismiss plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and partially strike their class allegations under Rule 12(f). The motions are fully briefed and ripe for disposition.

## II. Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is

the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty assertion of jurisdiction would be improper. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

### B. Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. See FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. See id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

### C. Rule 12(b)(6)

**\*3** Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints which fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker, 292 F.3d at 374 n.7). In addition

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)
2023 WL 3826460

to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955); Twombly, 550 U.S. at 556, 127 S.Ct. 1955. A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

### D. Rule 12(f)
Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." See FED. R. CIV. P. 12(f). District courts have "considerable discretion" in resolving a Rule 12(f) motion. See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims. See id.; see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2016). A party is prejudiced when the challenged pleading "confuses the issues" or places an undue burden on the responding party. Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

### III. Discussion
Plaintiffs advance two causes of action: they claim defendants violated Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by initiating illegal robocalls to their cell phones, and they claim defendants are liable to them for unjust enrichment under Pennsylvania common law. (See Doc. 33 ¶¶ 228-39). Plaintiffs also seek certification of a class comprising roughly "[a]ll persons and entities throughout the United States" who received an illegal robocall initiated by defendants between "September 27, 2017 through the date of class certification." (See id. ¶ 211).

*4 Defendants advance four challenges to plaintiffs' amended complaint. They argue plaintiffs' amended complaint should be dismissed in part or *in toto* for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim. They also contend plaintiffs' class allegations should be partially stricken for lack of subject matter jurisdiction on the ground the particular provision of the TCPA under which plaintiffs bring this action was a constitutional nullity during a portion of the proposed class period. We will begin with defendants' two arguments related to subject matter jurisdiction.

### A. Subject Matter Jurisdiction
Plaintiffs assert we have subject matter jurisdiction over the above-captioned action because they bring their primary claim under 47 U.S.C. § 227(b)(3). (See Doc. 33 ¶ 59). Section 227(b)(3) creates a private cause of action against violators of the TCPA, see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 374-75, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (quoting 47 U.S.C. § 227(b)(3)), and plaintiffs allege defendants violated Section 227(b)(1)(A)(iii) of the TCPA, (see Doc. 33 ¶¶ 228-234). Because the TCPA is a federal law, federal courts have federal question jurisdiction over claims brought under Section 227(b)(3). See Mims, 565 U.S. at 372, 386-87, 132 S.Ct. 740. Nonetheless, defendants contend we lack subject matter jurisdiction over some of plaintiffs' claims because the United States Supreme Court's decision in Barr v. American Ass'n of Political Consultants ("AAPC"), 591 U. S. ——, 140 S. Ct. 2335, 207 L.Ed.2d 784 (2020), purportedly rendered Section 227(b)(1)(A)(iii) an unenforceable nullity from November 2, 2015 (when Congress amended the TCPA to include the provision AAPC deemed unconstitutional) through the issuance of AAPC on July 6, 2020. (See Doc. 39 at 3, 47-52); see also Bipartisan Budget Act of 2015, Pub. L.

Case 3:26-cv-00293-KM Document 10-1 Filed 04/13/26 Page 45 of 63

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)
2023 WL 3826460

No. 114-74, § 301, 129 Stat. 584, 588 (codified as amended at 47 U.S.C. § 227).

As a threshold matter, we must decide whether defendants' arguments related to the enforceability of Section 227(b)(1)(A)(iii) in the relevant time period are best considered under Rule 12(b)(1) or Rule 12(b)(6). The absence of a constitutionally valid statute under which to bring a claim "does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citations omitted). Consequently, district courts possess jurisdiction over a claim so long as the constitutional validity of the cause of action is arguable. See id. Only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" is dismissal under Rule 12(b)(1) appropriate. See id. (quoting Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Our court of appeals likewise advises "[w]hen disposing of a claim brought under an unconstitutional statute, courts ordinarily deny the claim on the merits, on the ground that the statute under which relief is sought is unconstitutional, rather than for lack of subject matter jurisdiction." Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 82 (3d Cir. 2003) (citing, *inter alia*, Martin v. United Way of Erie Cnty., 829 F.2d 445, 447 (3d Cir. 1987); Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 898 (3d Cir. 1987)).

Defendants are not the first to raise a jurisdictional challenge regarding enforceability of the TCPA between 2015 and July 6, 2020. Many courts, including some in our circuit, have addressed these arguments under Rule 12(b)(1) because they attack the constitutional validity of Section 227(b)(1)(A)(iii) during the stated time period. See, e.g., Morales v. Sunpath Ltd., No. 1:20-CV-1376, 2022 WL 610766, at *4 (D. Del. Feb. 1, 2022) (citations omitted); Cunningham v. Matrix Fin. Servs., LLC, 531 F. Supp. 3d 1164, 1181 (E.D. Tex. 2021); Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., 506 F. Supp. 3d 1242, 1245 (M.D. Fla. 2020); Creasy v. Charter Commc'ns, Inc., 489 F. Supp. 3d 499, 504-05 (E.D. La. 2020). Others have found enforceability, even if raised under Rule 12(b)(1), to be more appropriately considered under Rule 12(b)(6) because the analysis hinges on how the court construes the anti-robocall provision in light of AAPC. See, e.g., Lindenbaum v. Realgy, LLC, 13 F.4th 524, 527-28 (6th Cir. 2021), *cert.* denied, 4—— U.S. ——, 142 S. Ct. 1362 (2022); Pavelka v. Charter Commc'ns, Inc., No. 3:20-

CV-1557, 2021 WL 5566390, at *3 (D. Conn. Nov. 29, 2021); Williamson v. Irving K Motor Co., No. 3:21-CV-1599, 2022 WL 2053179, at *4 (N.D. Tex. June 7, 2022).

**\*5** We find the reasoning and case law supporting the latter view more persuasive. Defendants concede their position on Section 227(b)(1)(A)(iii) is "controversial." (See Doc. 39 at 3). As we will discuss *infra*, the effect of AAPC on Section 227(b)(1)(A)(iii) is amenable to multiple reasonable constructions. The success of defendants' argument depends entirely on which construction we adopt. See Steel Co., 523 U.S. at 89, 118 S.Ct. 1003 (quoting Bell, 327 U.S. at 689, 66 S.Ct. 785). Moreover, even if we were to adopt defendants' proffered construction, their reading would defeat only a portion of the claims advanced in the amended complaint —some plaintiffs will still theoretically be entitled to relief. See Lindenbaum, 13 F.4th at 527. Plaintiffs' claims under Section 227(b)(1)(A)(iii) are not wholly insubstantial or frivolous, see Steel Co., 523 U.S. at 89, 118 S.Ct. 1003; they are substantial and colorable. We will therefore consider defendants' arguments regarding enforceability under Rule 12(b)(6) rather than Rule 12(b)(1).

**B. Personal Jurisdiction**

Section 227 of the TCPA does not authorize nationwide service of process. See 47 U.S.C. § 227; Mims, 565 U.S. at 381 n.11, 132 S.Ct. 740. Thus, we may exercise personal jurisdiction over a nonresident of the forum state only to the extent authorized by the law of the forum. See FED. R. CIV. P. 4(e), (k)(1); Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 297 (3d Cir. 1985); see also Fischer v. FedEx, 42 F.4th 366, 382 (3d Cir. 2022) (citing Max Daetwyler, 762 F.2d at 297), *cert.* denied, —— U.S. ——, 143 S. Ct. 1001 (2023). Pennsylvania's long-arm statute grants jurisdiction coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing 42 PA. CONS. STAT. § 5322(b)). Our constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under this test, plaintiff must show the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See id. at 316, 66 S.Ct. 154 (internal quotation marks and citations omitted); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citation omitted). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner,

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 46 of 63

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

2023 WL 3826460

433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), with the focus on whether the defendant has fair warning they may be subject to suit in the forum, see Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); Marten, 499 F.3d at 296. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen, 444 U.S. at 298, 100 S.Ct. 580 (internal quotation marks and citation omitted).

Federal courts must possess one of two forms of personal jurisdiction to comport with these principles. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction allows a court to exercise jurisdiction over all claims against a party possessing contacts with the forum state so " 'continuous and systematic' as to render them essentially at home" there. Daimler AG v. Bauman, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing Helicopteros, 466 U.S. at 414 n.9, 104 S.Ct. 1868)); Chavez v. Dole Food Co., 836 F.3d 205, 223 (3d Cir. 2016) (en banc). Specific jurisdiction, on the other hand, allows the court to hear only claims arising out of or relating to the defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414 n.8, 104 S.Ct. 1868; Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006).

 *6 Plaintiffs proceed solely on a theory of specific jurisdiction. (See Doc. 46 at 20-21). Specific jurisdiction usually is assessed on a claim-by-claim basis. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 n.3 (3d Cir. 2007) (citing Remick, 238 F.3d at 255-56). This is true even when, like here, plaintiffs bring a putative class action because, to paraphrase our court of appeals, a named plaintiff cannot accomplish as a representative of a class what they cannot achieve on their own. See Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970); see also Fischer, 42 F.4th at 375. Specific jurisdiction requires each named plaintiff to "establish with reasonable particularity" (1) defendants directed their activities at the forum state, (2) each claim arises out of defendants' activities in Pennsylvania, and (3) exercising personal jurisdiction in Pennsylvania will not offend traditional notions of fair play and substantial justice.[2] See Danziger & De Llano, LLP v. Morgan Verkamp LLC,

948 F.3d 124, 129-30 (3d Cir. 2020) (citations and internal quotation marks omitted).

Defendants contest the merits of Shoemaker and Gindin's claims but do not contest our specific jurisdiction over those claims. (See Doc. 39 at 38-45; Doc. 50 at 14, 18). Nor could they. Shoemaker and Gindin are residents of Pennsylvania and they allege defendants placed or directed illegal robocalls to their cell phones, both of which bear Pennsylvania area codes. (See Doc. 33 ¶¶ 61, 64, 66, 114, 138). We reasonably may infer plaintiffs' injuries—the phone calls they received—occurred in Pennsylvania. See Shelton v. Nat'l Gas & Elec., LLC, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019). By directing calls to Pennsylvania residents possessing Pennsylvania phone numbers, defendants purposely availed themselves of Pennsylvania and its laws. See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (citations omitted)); see also Abramson v. CWS Apartment Homes, LLC, No. 16-426, 2016 WL 6236370, at *4 & n.47 (W.D. Pa. Oct. 24, 2016) (collecting cases). We possess specific jurisdiction over the claims brought by Shoemaker and Gindin against all defendants.[3]

 *7 Johnson, Starling, and McCormick, however, are not residents of Pennsylvania. Johnson was a resident of Alabama at the time of his call and currently resides in Sweden. (See Doc. 33 ¶¶ 69-70). Starling and McCormick are residents of Texas. (See id. ¶¶ 72, 74). None of the three allege they received their calls while in Pennsylvania or attribute a Pennsylvania phone number to their cell phones. Insofar as can be reasonably inferred from plaintiffs' amended complaint, it is entirely possible Johnson, Starling, and McCormick have never set foot in Pennsylvania. We simply cannot say defendants' alleged conduct toward these three plaintiffs was directed at the Commonwealth of Pennsylvania. See Danziger, 948 F.3d at 129-30. We will dismiss Johnson's, Starling's, and McCormick's as named plaintiffs without prejudice.[4]

### C. Failure to State a Claim

#### 1. *TCPA*

Plaintiffs' TCPA claims are grounded in defendants' alleged violations of Section 227(b)(1)(A)(iii). Consequently, we must address defendants' threshold assertion that the TCPA's

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 47 of 63

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)
2023 WL 3826460

prohibition on robocalls was unenforceable during part of the time period relevant to plaintiffs' claims.

### a. Enforceability

The TCPA prohibits certain undesirable telemarketing practices. See Facebook, Inc. v. Duguid, 593 U.S. ——, 141 S. Ct. 1163, 1167-68, 209 L.Ed.2d 272 (2021); AAPC, 140 S. Ct. at 2343-44 & n.1. Section 227(b) of the TCPA specifically prohibits initiating a robocall to a cell phone unless the call is made for "emergency purposes," the recipient has given their prior express consent, or the call falls within an exemption created by the Federal Communications Commission. See 47 U.S.C. § 227(b)(1)(A)(iii), (2)(C); see also AAPC, 140 S. Ct. at 2344-45 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). The TCPA also provides a private cause of action against violators of its provisions. See 47 U.S.C. § 227(b)(3). Violators of Section 227(b)(1)(A)(iii) are liable for the plaintiff's actual damages or statutory damages of $500, whichever is greater; for willful or knowing violations, damages are trebled. See id. § 227(b)(3); see also AAPC, 140 S. Ct. at 2345 (citing 47 U.S.C. § 227(b)(3)).

Congress enacted Section 227(b)(1)(A) in 1991. See AAPC, 140 S. Ct. at 2344. Originally, Section 227(b)(1)(A) prohibited, in relevant part, " 'any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice' to 'any telephone number assigned to a ... cellular telephone service.' " See id. (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3, 105 Stat. 2394, 2395-96) (codified at 47 U.S.C. § 227)) (emphasis omitted). Congress amended Section 227(b)(1)(A) in 2015 to include an exception for calls "made solely to collect a debt owed to or guaranteed by the United States." See id. at 2344-45 (citation omitted). The Supreme Court struck down this exception on July 6, 2020, in its plurality opinion in AAPC. See generally id.

**\*8** Most relevant to defendants' arguments, six Justices agreed the exception for government debt collectors "impermissibly favored debt-collection speech ... in violation of the First Amendment," although they differed significantly as to how they arrived at this conclusion. See id. at 2343 (plurality opinion). Seven Justices then agreed the unconstitutional provision was severable from Section 227(b)(1)(A)(iii) and, accordingly, invalidated the government-debt exception but left in place "the longstanding robocall

restriction." See id. at 2355. The justices, however, failed to specify whether they intended the severance to apply only prospectively or retroactively. Justice Kavanaugh, writing for himself, the Chief Justice, and Justice Alito, addressed the implications of severance in footnote 12:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case .... On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

Id. at 2355 n.12. Justice Gorsuch, dissenting on the question of severance, took issue with this footnote. See id. at 2366 (Gorsuch, J., concurring in the judgment in part and dissenting in part). Joined by Justice Thomas, Justice Gorsuch observed the logic of footnote 12 "shields *only* government-debt collection callers from past liability ... [and] endors[es] the very same kind of content discrimination we say we are seeking to eliminate." Id.

Highlighting the tension between the AAPC plurality and Justice Gorsuch's partial concurrence, defendants present two arguments against the validity of some of plaintiffs' TCPA claims and the scope of plaintiffs' class allegations. First, they argue severance applies prospectively only, leaving Section 227(b)(1)(A)(iii) unenforceable between its enactment in 2015 and the Supreme Court's decision in AAPC. (See Doc. 39 at 51). Second, even if severance does apply retroactively, they argue—as Justice Gorsuch suggested— footnote 12 operates to create a new content-based restriction on speech, once again rendering Section 227(b)(1)(A)(iii) unenforceable between 2015 and issuance of AAPC. (See id. at 51-52).

Our court of appeals has not yet had occasion to consider these questions. In the immediate wake of AAPC, a handful of district courts determined the decision rendered Section 227(b)(1)(A)(iii) retroactively unenforceable. See,

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 48 of 63

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)
2023 WL 3826460

e.g., Creasy, 489 F. Supp. 3d at 503; Cunningham, 531 F. Supp. 3d 1164 (citing Creasy, 489 F. Supp. 3d 499); Hussain, 506 F. Supp. 3d at 1244-45 (same); Lindenbaum v. Realgy, LLC, 497 F. Supp. 3d 290 (N.D. Ohio 2020) (same), rev'd, 13 F.4th 524 (6th Cir. 2021). As the dust has settled, however, a strong majority—including several courts in this circuit—has coalesced around the opposite view, that Section 227(b)(1)(A)(iii) is fully enforceable as to robocalls predating AAPC. See, e.g., Morales, 2022 WL 610766, at *6 & n.78 (collecting cases); Franklin v. Navient, Inc., 534 F. Supp. 3d 341, 346-47 (D. Del. 2021); Williamson, 2022 WL 2053179, at *6 (citations omitted); see also Boisvert v. Carnival Corp., No. 8:20-CV-2076, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021) (judge who decided Hussain reversing course and adopting emerging majority view). Most significantly, the Court of Appeals for the Sixth Circuit reversed the district court's decision in Lindenbaum and rejected the positions now advanced by defendants regarding retroactivity and the First Amendment. See Lindenbaum, 13 F.4th at 528-30. The Sixth Circuit reasoned that severance, at least in this context, was an act of constitutional interpretation capable of applying retroactively. See id. at 529-30. The court explained: AAPC "recognized only that the Constitution had 'automatically displace[d]' the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence." Id. at 530 (quoting Collins v. Yellen, 594 U.S. ——, 141 S. Ct. 1761, 1788-89, 210 L.Ed.2d 432 (2021)) (alteration in original). The court also squarely rejected the notion applying the anti-robocall provision to telemarketers not seeking to collect government-related debt during the retroactive period created a "First Amendment problem." See id.

 *9  Adding to the persuasive weight of the Sixth Circuit's decision in Lindenbaum are two district court cases from our own circuit. See Morales, 2022 WL 610766, at *7-8; Franklin, 534 F. Supp. 3d at 345-47. In Franklin, Judge Bibas, sitting with the district court by designation, cast footnote 12 as mere dictum that does not, in and of itself, exculpate from liability under Section 227(b)(1)(A)(iii) robocallers who sought to collect government-related debts between 2015 and AAPC. See Franklin, 534 F. Supp. 3d at 347 (citing AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion)); see also Morales, 2022 WL 610766, at *4 n.63 (collecting cases observing similarly). Judge Bibas also concluded Section 227(b)(1)(A)(iii) does not create a content-based disparity because it subjects all robocallers to the same degree of civil liability for conduct within the retrospective time frame.[5] See Franklin, 534 F. Supp. 3d at 346-47, 349.

We find the reasoning laid out by the Sixth Circuit, Judge Bibas, and other courts rejecting defendants' arguments to be persuasive.[6] We conclude Section 227(b)(1)(A)(iii) was enforceable throughout the period relevant to the matter *sub judice* and creates no conflict with the First Amendment. We will deny defendants' motion to dismiss claims and to strike class allegations related to calls initiated prior to July 6, 2020.

### b. Sufficiency

We now turn to the sufficiency of the remaining plaintiffs' claims. Courts weighing the plausibility of TCPA claims generally require plaintiffs to aver facts supporting three elements: (1) the defendant or their agent initiated a call to a cell phone number belonging to the plaintiff, (2) using a prerecorded or artificial voice, and (3) without obtaining the plaintiff's prior consent. See, e.g., Smith v. Direct Bldg. Supplies, LLC, No. 20-3583, 2021 WL 4623275, at *2 (E.D. Pa. Oct. 7, 2021) (citation omitted); Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (same); Aaronson v. CHW Grp., Inc., No. 1:18-CV-1533, 2019 WL 8953349, at *1 (E.D. Va. Apr. 15, 2019). The first element—which is the only element defendants dispute, (see Doc. 39 at 18-37)—requires a plaintiff to plead facts supporting "the defendant actually, physically initiated the telephone call at issue," see Aaronson, 2019 WL 8953349, at *2 (citing Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018)); accord Direct Bldg. Supplies, 2021 WL 4623275, at *3. What this usually requires in practice is pleading facts tracing the call to the defendant or their agent. See Direct Bldg. Supplies, 2021 WL 4623275, at *3; Scruggs v. CHW Grp., Inc., No. 2:20-CV-48, 2020 WL 9348208, at *9 (E.D. Va. Nov. 12, 2020).

The gravamen of plaintiffs' pleadings is the alleged arrangement between Zeitlin, his companies, and an assortment of PACs to robocall thousands of people, solicit donations, and divide the proceeds. (See, e.g., Doc. 33 ¶¶ 29-58). We find this "scheme" sufficiently connects the calls identified by the remaining plaintiffs (Shoemaker and Gindin) to the defendants via a two-link chain of plausible inferences.

 *10  The first link is the connection between the PACs and the calls. Shoemaker and Gindin claim the voices on their calls purported to solicit donations on behalf of two PACs—respectively, PODA and HALE. (See Doc. 33 ¶¶ 114, 138).

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

2023 WL 3826460

The factual allegation that the callers identified themselves as calling on behalf of these PACs creates the plausible inference the calls were in fact made on their behalf. PODA's FEC filings document PODA receiving an "itemized individual contribution" from Shoemaker for $300 on April 26, 2018—the day of the alleged call to Shoemaker. (See id. ¶¶ 114, 119; PODA 2018 FEC Report). Had the caller been a prankster or fraudster merely pretending to represent PODA as defendants suggest, (see Doc. 39 at 29-31), Shoemaker's donation never would have made it to PODA.

The next link is the connection between the PACs and defendants. Plaintiffs plead the existence of a dubious hand-in-glove relationship between the PACs in question and Zeitlin and his companies. PODA reported to the FEC raising $624,367.22 in 2018, the year of the call to Shoemaker. (See Doc. 33 ¶¶ 114, 125; see also PODA 2018 FEC Report). PODA spent $496,484.02 the same year (an election year) on operating expenditures compared to $20,000 on identifiable political activities. (See Doc. 39 ¶ 126; see also PODA 2018 FEC Report). Of those operating expenses, PODA paid 88.6% to defendants. (See Doc. 33 ¶¶ 125-132; see also PODA 2018 FEC Report). The year of Gindin's call, HALE took in $5,647,945.22 and spent $4,844,861.94 with 83.8% of those outlays going to what are alleged to be Zeitlin-affiliated entities. (See Doc. 33 ¶¶ 56, 81, 149-64; see also HALE 2021-22 FEC Report). Few of HALE's payments to defendants and none of PODA's are coded as something plausibly related to telemarketing expenses, but plaintiffs allege the labels given to the payments "were coded in such a way to conceal the illegal telemarketing operation that was taking place." (See HALE 2021-22 FEC Report; PODA 2018 FEC Report; Doc. 33 ¶¶ 134-136).

The extensive outlays to Zeitlin-affiliated companies—whose line of business is alleged to be telemarketing—gives rise to the plausible inference all or most of PODA's and HALE's fundraising activity is conducted by those entities.[7] In other words, the facts pled are sufficient to support the notion that defendants, along with other Zeitlin-affiliated entities, were PODA's and HALE's predominate fundraisers. When this inference is combined with the inference the calls came from legitimate representatives of PODA and HALE, we find plaintiffs plausibly plead traceability, i.e., one of the Zeitlin-affiliated entities, either directly or through one of their agents, initiated the calls to Shoemaker and Gindin.[8] The amended complaint only names ATS, UDS, and CC as defendants, but all three received payments from PODA and HALE raising a plausible claim each may have initiated the calls in question. Plaintiffs also plead facts supporting the conclusion these entities, along with the others named in the complaint, are essentially shells used to obscure a singular telemarketing enterprise orchestrated by Zeitlin. (See Doc. 33 ¶¶ 51-57, 99-106). Zeitlin's role at the center of the alleged scheme, considering the broad range of agency theories incorporated into the TCPA, gives rise to a plausible claim he too may be liable as an initiator of the calls.[9] With facts pled supporting traceability of the calls to defendants we will deny defendants' motion to dismiss Shoemaker's and Gindin's TCPA claims.

### 2. *Unjust Enrichment*

**\*11** Defendants argue plaintiffs' unjust enrichment claims must fail because plaintiffs do not plead facts supporting defendants received a benefit from their alleged TCPA violations. (See Doc. 39 at 46-47). Plaintiffs offer neither argument nor legal authority in answer to defendants' challenge to their unjust enrichment claim. We deem plaintiffs' failure to respond to this dispositive legal argument an abandonment of their claims. See Brice v. City of York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (Conner, J.) (citing D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)); Brown v. Pa. State Dep't of Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (Conner, J.) (same); see also Levy-Tatum v. Navient Sols., Inc., 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases). We will dismiss plaintiffs' unjust enrichment claims without prejudice.

### IV. Conclusion

We will grant in part and deny in part defendants' motion to dismiss. We will also deny their motion to strike. An appropriate order shall issue.

### All Citations

Not Reported in Fed. Supp., 2023 WL 3826460

2023 WL 3826460

---

**Footnotes**

1    See also 2018 Financial Summary for Police Officers Defense Alliance LLC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00667865/?cycle=2018 (last visited Mar. 23, 2023) ("PODA 2018 FEC Report"); 2021-22 Financial Summary for Honoring American Law Enforcement PAC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00710178/ (last visited Mar. 23, 2023) ("HALE 2021-22 FEC Report").

2    Plaintiffs' TCPA and unjust enrichment claims arise from phone calls defendants allegedly placed or directed to plaintiffs. (See Doc. 33 ¶¶ 228-239; see also Doc. 46 at 2-4 (describing plaintiffs' unjust enrichment claims as being "concomitant" with TCPA claims)). Hence, we may consider the two substantive claims together when ascertaining the presence of contacts necessary to support specific jurisdiction. See O'Connor, 496 F.3d at 318 n.3.

3    Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to ATS, UDS, CC, or any of the other named entities in the amended complaint. (See Doc. 39 at 43-44). In support of this argument, defendants submit an affidavit from Zeitlin averring he is "neither an owner nor an officer" of any of the named entities and does "not ... operate, control or have the right and ability to supervise, direct or control" any of the entities. (See Doc. 40). Defendants also argue we lack personal jurisdiction over Gindin's claim because ATS, UDS, and CC were all dissolved by the time Gindin received his call on July 14, 2021. (See Doc. 39 at 11, 44). Defendants submit Delaware public records purporting to demonstrate the claimed dissolution. (See Docs. 39-3, 39-4, 39-5). Plaintiffs dispute the accuracy of these records and point to other records indicating the entities were still operating after the date claimed by defendants. (See Doc. 46 at 5-8). Zeitlin's true relationship with the entities named in the amended complaint and the legal status of those entities throughout the period of time relevant to this action are disputes of fact reserved for resolution by the trier of fact. See Carteret Sav. Bank, 954 F.2d at 148. Plaintiffs plead sufficient facts supporting specific jurisdiction over Zeitlin, ATS, UDS, and CC to survive a motion to dismiss under Rule 12(b)(2). See Metcalfe, 566 F.3d at 330; Carteret Sav. Bank, 954 F.2d at 142 n.1.

4    District courts cannot dismiss a claim for lack of personal jurisdiction without first considering transferring the claim to a more appropriate forum under 28 U.S.C. § 1631. See Danziger, 948 F.3d at 132. Section 1631 provides the original court "shall, if it is in the interest of justice, transfer such action ... to any other such court" in which the case could have been brought when it was filed. See 28 U.S.C. § 1631. The court may transfer the entire action or a portion of the action. See D'Jamoos, 566 F.3d at 110. The amended complaint is silent with respect to where Johnson, Starling, and McCormick received the calls at issue, and it does not specify an area code associated with any of their cell phones; it is thus unclear in which court their claims could have been brought. Accordingly, we will dismiss Johnson, Starling, and McCormick as named plaintiffs, without prejudice to their ability to participate in this lawsuit as putative class members or to bring their individual claims in an appropriate forum.

5    Judge Bibas ultimately concludes punitive damages are unavailable against defendants who sought to collect government-related debt between 2015 and July 6, 2020, because of due process issues. See Franklin, 534 F. Supp. 3d at 349.

6    Even if footnote 12 were binding precedent, the plurality disclaims the very position defendants ask us to adopt. The plurality explicitly insists "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." See AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion). The use

---

2023 WL 3826460

of the past tense "covered" makes clear the plurality intends for past violators of Section 227(b)(1)(A)(iii) to remain liable. It would be nonsensical to adopt the first sentence as binding but not the second.

7     Defendants contend a large portion of HALE's disbursements were paid to entities not named as defendants. (See Doc. 39 at 28). This may well be true. But the entities receiving those disbursements are alleged to be controlled by Zeitlin, (see Doc. 33 ¶¶ 151-164), and we view them as potentially incorporated into plaintiffs' lawsuit as defendants through John Doe entities 1-10.

8     Defendants admit the TCPA allows for direct and vicarious liability. (See Doc. 39 at 19, 23-24). The consensus among federal courts is the TCPA incorporates the full range of vicarious-liability theories grounded in federal common-law agency principles. See, e.g., Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1072 (9th Cir. 2019) (citation omitted); Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 251-52 (4th Cir. 2018) (citation omitted). However, our court of appeals has expressed skepticism as to the availability of personal-participation liability against corporate officers under the TCPA. See City Select Auto Sales Inc. v. David Randall Assocs., Inc., 885 F.3d 154, 159-60 (3d Cir. 2018).

9     Defendants deny plaintiffs' allegation that Zeitlin owns or controls the entity defendants, (see Doc. 39 at 43-44), but we must take their allegation to be true for purposes of this motion.

---

**End of Document**          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4623275

2021 WL 4623275
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Stewart SMITH, individually and on behalf
of all others similarly situated, Plaintiff,
v.
DIRECT BUILDING SUPPLIES, LLC and Does 1
through 10, inclusive, and each of them, Defendants.

CIVIL ACTION No. 20-3583
|
Filed 10/07/2021

**Attorneys and Law Firms**

Cynthia Z. Levin, Law Offices of Todd M. Friedman PC, King of Prussia, PA, for Plaintiff.

Brian J. Murren, Kevin L. Hall, Tucker Arensberg, P.C., Lemoyne, PA, for Defendant Direct Building Supplies LLC.

**MEMORANDUM**

Schiller, District Judge

**\*1** Stewart Smith alleges that Direct Building Supplies, LLC, its subsidiaries, and its agents (collectively, "Direct Building Supplies" [1]) violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by unlawfully contacting Smith and purported class members to solicit them to purchase Direct Building Supplies' services without their consent and while they were on the National Do-Not-Call ("DNC") Registry. Before the Court is Direct Building Supplies' Motion to Dismiss Smith's First Amended Complaint ("FAC"), in which Direct Building Supplies contends that Smith's factual allegations fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Direct Building Supplies also maintains that Smith's class allegations and definitions are deficient as a matter of law and thus should be stricken pursuant to Fed. R. Civ. P. 12(f).

This is not Smith's first trip to the courthouse alleging violations of the TCPA. For example, in May 2020, Smith filed a TCPA lawsuit in this District against renewable energy company Vision Solar. Smith's claims here echo his allegations against Vision Solar and the several other companies he has sued. For its part, several portions of Direct

Building Supplies' Motion to Dismiss are virtually identical to the defendant's motion to dismiss in the Vision Solar action. It is as if the Court is receiving one of the robocalls Smith disdains.

Nevertheless, the Court finds that the FAC's factual allegations fail to state a claim under the TCPA. Accordingly, the Court will grant Direct Building Supplies' Motion to Dismiss without prejudice, and will also grant Smith leave to file a second amended complaint.

**I. FACTUAL BACKGROUND**

Direct Building Supplies is a construction and home contracting company. (FAC ¶ 5.) Smith alleges that Direct Building Supplies called Smith's cellular phone number ending in -6860 five times within a four-month span at the end of 2019 and beginning of 2020: on or around October 4, 2019; October 6, 2019; November 1, 2019; January 17, 2020; and January 21, 2020. (*Id.* ¶¶ 8-10.) During each of these calls, there was a "noticeable pause and delay before Defendant came on the line" and attempted to sell its services to Smith. (*Id.* ¶¶ 8-9, 19.) The calls were of an "impersonal nature." (*Id.* ¶¶ 9, 11.)

Smith never provided his consent to Direct Building Supplies to receive calls on his cellular phone that were made using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. (*Id.* ¶ 13.) Smith and Direct Building Supplies had no relationship prior to the October 4 call. (*Id.* ¶ 9.) Smith's cellular phone number ending in -6860 was registered on the National DNC Registry on June 11, 2010. (*Id.* ¶ 15.)

The FAC seeks to certify two classes. The first is the "ATDS Class," defined as "[a]ll persons within the United States who received any solicitation/telemarketing telephone calls from Defendant or its agent to said person's cellular telephone for whom Defendant has no record of prior express consent for such calls within the four years prior to the filing of this Complaint." (*Id.* ¶ 24.) The second is the "DNC Class," defined as "[a]ll persons within the United States registered on the National Do-Not-Call Registry for at least 30 days who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint." (*Id.* ¶ 25.)

**\*2** The FAC contains four counts. Counts I and II, brought by Smith on behalf of the ATDS Class, allege that Direct

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 53 of 63

Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 4623275

Building Supplies violated TCPA § 227(b) by placing calls using an ATDS or pre-recorded voice without the class members' prior express consent. Counts III and IV, brought by Smith on behalf of the DNC class, allege that Direct Building Supplies violated TCPA § 227(c)(5) and related regulations by placing multiple calls to class members' phones registered on the National DNC Registry within a twelve-month span.

Direct Building Supplies moved to dismiss all counts on November 25, 2020. Smith filed a timely response in opposition on December 8, 2020. Smith also requested leave to amend his pleadings to address, *inter alia*, any "lack of sufficient allegations" in the event the Court granted Direct Building Supplies' Motion to Dismiss. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ["Pl.'s Opp'n"] at 10.)

On March 15, 2021, counsel for Smith wrote a letter to the Court directing its attention to *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 WL 7230975 (E.D. Pa. Dec. 8, 2020) ("Vision Solar II"), an opinion in another TCPA case filed by Smith and a co-plaintiff in this District. Smith's counsel wrote that in *Vision Solar II*, "the Honorable Judge Michael Baylson issued an order denying in full that Motion to Dismiss on which [Direct Building Supplies' motion] is based" in this action. Counsel for Smith further pointed out that Direct Building Supplies' "Motion was an almost verbatim copy of a Motion to Dismiss filed and pending in" the Vision Solar action, written by attorneys at a different law firm. [2]

*Vision Solar II* came three months after *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ("Vision Solar I"), in which Judge Baylson dismissed Smith and his co-plaintiff's First Amended Complaint for failure to state a claim. Judge Baylson also granted Smith and his co-plaintiff leave to amend the first amended complaint to address deficiencies both in their factual and class allegations, culminating in *Vision Solar II*.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and make all reasonable inferences in favor of the non-moving party. *Bd. of Trustees of Bricklayers & Allied Craftsmen Loc. 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). Fed. R. Civ. P. 8(a)(2) provides that "a pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the

pleader is entitled to relief." This claim for relief must be "plausible on its face," containing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* In other words, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

### A. Counts I and II: The ATDS Claims

To state a claim under TCPA § 227(b), a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an [ATDS or prerecorded or artificial voice]; (3) without the recipient's prior express consent." *Zemel v. CSC Holdings LLC*, Civ. A. No. 18-2340, 2018 WL 6242484, at *3 (D.N.J. Nov. 29, 2018). Direct Building Supplies argues that the FAC does not state a cause of action under TCPA § 227(b) because it does not contain facts that support a finding that Direct Building Supplies called Smith using an ATDS. Direct Building Supplies also argues that the FAC does not include any factual allegations that plausibly suggest that Direct Building Supplies placed phone calls to Smith in the first instance, since it is bereft of allegations concerning the names and identities of the persons with whom Smith allegedly spoke on the phone, as well as the substance of his conversations with those persons.

**\*3** An ATDS is a piece of equipment with the capacity to "either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator," and to dial such numbers. *Facebook, Inc. v. Duguid*, ––– U.S. ––––, 141 S. Ct. 1163, 1167, 209 L.Ed.2d 272 (2021). A plaintiff must provide "at least some [ ] detail regarding the content of the messages or calls, thereby rending the claim that an ATDS was used more plausible." *Camunas v. Nat'l Republican Senatorial Comm.*, Civ. A. No. 21-1005, 2021 WL 2144671 (E.D. Pa. 2021) (quoting *Zemel*, 2018 WL 6242484, at *3). "[C]ourts in this district continue to find that an allegation of a brief pause at the beginning of a call is sufficient to plead the ATDS element." *Hazan v. Wells Fargo Home Mortg.*, Civ. A. No. 18-10228, 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020); *see also Vision Solar II*, 2020 WL 7230975, at *4 ("For Rule 12 purposes, the distinctive pause at the beginning of repeated marketing calls allows an inference that the caller was using an ATDS.")

Case 3:26-cv-00293-KM   Document 10-1   Filed 04/13/26   Page 54 of 63

Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 4623275

Further, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Scruggs v. CHW Grp., Inc.*, Civ. A. No. 20-48, 2020 WL 9348208, at \*10 (E.D. Va. Nov. 12, 2020); *see also Vision Solar I*, 2020 WL 5632653, at \*3 (quoting *Aaronson v. CHW Group, Inc.*, Civ. A. No. 18-1533, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019)) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.").

The Court finds that the FAC has sufficiently alleged the use of an ATDS by Direct Building Supplies, as it alleges that there was a "noticeable pause and delay before Defendant came on the line" during each of the five offending calls, as well as that Smith had no prior relationship with Direct Building Supplies prior to the October 4 call. (FAC ¶ 9.)

However, Smith has not pleaded facts sufficient to identify Direct Building Supplies as the initiator of the offending calls. The FAC merely states that "Defendant contacted Plaintiff on Plaintiff's cellular telephone number ending in -6860, in an attempt to solicit Plaintiff to purchase Defendant's services," "Defendant [ ] called Plaintiff," and that "Defendant placed multiple calls soliciting its business to Plaintiff." (*Id.* ¶¶ 8, 10, 18.) The FAC, however, provides no details specifying how Smith knew that Direct Building Supplies in fact placed these calls, such as that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services. Smith's opposition does not address Direct Building Supplies' arguments on this point; it merely puts forth that "Defendant sought to solicit its services to Plaintiff and thus the calls were solicitation calls" and that "[t]hese calls were from Defendant." (Pl.'s Opp'n at 7-10.) These circular, conclusory allegations constitute the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not pass muster under the *Iqbal* pleading standard.

Further, Smith's allegations regarding the identity of the initiator of the calls are even more barren than those provided in *Vision Solar I*, *Aaronson*, and *Scruggs*, all of which featured TCPA claims that were dismissed because of a failure to plead

details sufficient to identify the caller. *See Vision Solar I*, 2020 WL 5631653, at \*3 (finding that plaintiffs did not sufficiently plead that the calls in question came from defendant when they only alleged that "Defendant contacted or attempted to contact [one of the Plaintiffs] from multiple telephone numbers confirmed to belong to Defendant"); *Scruggs*, 2020 WL 9348208, at \*10 ("The sole factual allegation linking [Defendant] to the calls is that the caller identified himself as 'associated with [Defendant]' " which is "insufficient under the *Iqbal* pleading standards"); *Aaronson*, 2019 WL 8953349, at \*2 ("The lone fact marshalled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' But without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone.").

**\*4** Smith has therefore failed to plausibly allege that the five calls in question came from Direct Building Supplies, as TCPA § 227(b) claims require. The Court will dismiss the ATDS claims without prejudice and will permit Smith to amend the complaint to provide further relevant information.

**B. Counts III and IV: DNC Claims**

To establish a DNC claim under TCPA § 227(c)(5) and related regulations, a plaintiff must plead facts that plausibly demonstrate: (1) they received multiple calls within twelve months, (2) from the same entity, (3) to a phone number registered on the National DNC Registry. *See Huber v. Pro Custom Solar, LLC*, Civ. A. No. 19-1090, 2020 WL 2525971, at \*2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)). Here too the Court agrees with Direct Building Supplies that Smith's DNC claims fail because the FAC does not contain facts sufficient to establish that Direct Building Supplies placed the offending phone calls. The Court will thus dismiss the DNC claims without prejudice and will permit Smith to amend the complaint to provide further relevant information.

**IV. CONCLUSION**

For the reasons set forth above, Direct Building Supplies' Motion to Dismiss is granted, but Smith may file an amended complaint. Direct Building Supplies' Motion to Strike is

Case 3:26-cv-00293-KM    Document 10-1    Filed 04/13/26    Page 55 of 63

**Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)**
2021 WL 4623275

denied as moot. An Order consistent with this Memorandum will be docketed separately.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4623275

---

## Footnotes

1       Smith brings the FAC against Direct Building Supplies, LLC and ten unidentified Doe defendants, whom he alleges constitute Direct Building Supplies, LLC's subsidiaries and agents.

2       In the future, counsel would be wise to not lift much of the language in its papers word-for-word from other attorneys.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5632653
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Stewart SMITH; Fred Civil Action
Heidarpour, Individually and on Behalf of
All Others No. 20-2185 Similarly Situated,
v.
VISION SOLAR LLC, and Does 1–10

CIVIL ACTION NO. 20-2185
|
Filed 09/21/2020

**Attorneys and Law Firms**

Cynthia Z. Levin, Law Offices of Todd M. Friedman PC, King of Prussia, PA, for Stewart Smith, Fred Heidarpour.

Colin David Dougherty, Fox Rothschild LLP, Blue Bell, PA, Brett Adam Berman, Fox Rothschild LLP, Samuel A. Haaz, Haggerty Goldberg Schleifer & Kupersmith, Philadelphia, PA, for Vision Solar LLC.

**MEMORANDUM**

Baylson, District Judge

**I. Introduction**

 *1 Plaintiffs are suing over alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In their Amended Complaint, ECF 2, Plaintiffs allege Vision Solar LLC and its unidentified agents Does 1–10 (collectively "Vision Solar") violated the TCPA's prohibitions on use of automatic telephone dialing systems ("ATDS") and/ or contacting phone numbers on the National Do Not Call Registry ("DNC List").

Before the Court now is Vision Solar's motion to dismiss. ECF 7. Vision Solar asks the Court to dismiss Plaintiffs' claims and to strike Plaintiffs' class action allegations. In response to Vision Solar's motion, Plaintiffs requested leave to amend their complaint a second time to address several of Vision Solar's arguments. For the reasons given below, the Court will **GRANT** Vision Solar's motion, will dismiss Plaintiffs' Amended Complaint without prejudice, and will **GRANT** leave for Plaintiffs to file a second amended complaint within 14 days from the date of this Memorandum and Order.

**II. Factual and Procedural History**

Assuming as true Plaintiffs' allegations, Vision Solar LLC is a solar and renewable energy company. Am. Compl. ¶ 6. Beginning in or around September 2019, Vision Solar attempted to contact named plaintiffs Stewart Smith, a resident of Montgomery County, Pennsylvania, and Fred Heidarpour, a resident of Maricopa County, Arizona, by telephone. Id. ¶¶ 4, 5, 9, 10.

Vision Solar called each of the named plaintiffs repeatedly, from at least four different telephone numbers that belong to Vision Solar. Id. ¶¶ 12, 13. Smith received these calls on his cell phone; Heidarpour received these calls on his landline. Id. ¶¶ 9, 10. Vision Solar made these calls for the purpose of soliciting its business. Id. ¶¶ 19, 20. Neither Smith nor Heidarpour had given prior express consent to receive calls from ATDS or using artificial or prerecorded voices. Id. ¶¶ 15, 16.

These calls utilized an ATDS. Id. ¶ 11. Both Smith and Heidarpour's phone numbers were on the DNC List at the relevant time for each phone call. Id. ¶¶ 17, 18.

Plaintiffs further allege that Smith and Heidarpour represent two different classes: the ATDS Class and the DNC Class. Id. ¶ 25.

The **ATDS Class** consists of:

> All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

> Id. ¶ 26.

The **DNC Class** consists of:

> All persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any

twelve-month period, within four years prior to the filing of the complaint.

**\*2** Id. ¶ 27.

Plaintiffs filed suit against Vision Solar on May 6, 2020. ECF 1; Plaintiffs then filed the Amended Complaint on May 8, 2020. ECF 2. Vision Solar LLC moved to dismiss Plaintiffs' claims on July 17, 2020. ECF 7. Plaintiffs responded on July 31, 2020. ECF 8. Vision Solar LLC then replied on August 7, 2020. ECF 9.

Plaintiffs assert four causes of action against Vision Solar in the Amended Complaint on behalf of the named plaintiffs and the members of the respective classes:

I. Negligent violation of the TCPA under § 227(b)

II. Knowing and/or willful violation of the TCPA under § 227(b)

III. Negligent violation of the TCPA under § 227(c)

IV. Knowing and/or willful violation of the TCPA under § 227(c)

Counts I and II allege unlawful use of an ATDS to contact Plaintiffs. Counts II and IV allege unlawful violation of the DNC List's protections. Vision Solar's contentions against these claims, as well as the proposed class definitions, are discussed in more detail below.

### III. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### IV. Discussion

#### a. Class Definitions under Rule 12(f)

Vision Solar argues that "Plaintiffs' TCPA class allegations fail because, if granted as requested, [they] would create impermissible fail-safe classes." MtD at 7. Plaintiffs "do not dispute, at this point, that the Classes as proposed are likely fail-safe." Opp. to MtD at 3.

Instead, Plaintiffs request leave to amend the class definitions. Pursuant to the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course," and a court "should freely give leave [for subsequent amendments] when justice so requires." Fed. R. Civ. Pro. 15(a). "The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984). Therefore, the Court will dismiss the class definitions without prejudice and, seeing no reason to deny Plaintiffs' request, will permit Plaintiffs to amend their class definitions. [1]

#### b. Counts I and II: Violation of TCPA § 227(b) ("ATDS Claims")

**\*3** The Amended Complaint raises two related counts under 47 U.S.C. § 227(b); by using an ATDS to call the ATDS Class, Vision Solar either (Count I) negligently or (Count II) knowingly and/or willfully violated the TCPA by calling Plaintiffs with an ATDS, Am. Compl. at ¶¶ 43, 47. "To state a cause of action under [§ 227(b) of] the TCPA, a plaintiff must allege: '(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent.' " Zemel v. CSC Holdings LLC, Civil Action No. 18-2340-BRM-DEA, 2018 WL 6242484, at \*3 (D.N.J. Nov. 29, 2018) (citing Martinez v. TD Bank USA, No. 15-7712, 2017 WL 2829601, at \*4 (D.N.J. June 30, 2017)).

Case 3:26-cv-00293-KM   Document 10-1   Filed 04/13/26   Page 58 of 63

Smith v. Vision Solar LLC, Not Reported in Fed. Supp. (2020)
2020 WL 5632653

Vision Solar argues that Plaintiffs failed to plead sufficient facts to satisfy the second prong — use of an ATDS calling system. MtD at 11. "The entirety of Plaintiffs' allegations in support of Defendant's alleged use of an ATDS consists of a single sentence: 'Defendant used an automatic telephone dialing system ... to place its call to Plaintiffs.' " Id. But Plaintiffs respond that they provided further facts of the alleged abuse of an ATDS: Vision Solar "called Smith multiple times from five different phone numbers [and t]he calls were to solicit Smith to purchase Defendant's services," despite "no prior business relationship" with Vision Solar. Opp. to MtD at 7.

A "bare allegation that defendants used an ATDS is not enough." Zemel, 2018 WL 6242484, at *3 (citing cases). "A plaintiff must provide 'at least some detail regarding the content of the messages or calls, thereby rendering the claim that an ATDS was used more plausible.' " Id. (brackets omitted).

Plaintiffs' Second Amended Complaint must contain sufficient facts for the Court to conclude that Plaintiffs' claims are "plausible."

### c. Counts III and IV: Violation of TCPA § 227(c) ("DNC Claims")

The remaining two counts claim that Vision Solar repeatedly called Plaintiffs who had registered their phone numbers to the DNC List, constituting (Count III) negligent or (Count IV) knowing and/or willful violations of 47 U.S.C. § 227(c). To sustain the DNC Claims, Plaintiffs must plead that (1) they receive multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the DNC List. Huber v. Pro Custom Solar, LLC, No. 3:19-cv-01090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)).

### i. Plaintiff Smith's DNC Claims

As a preliminary issue, Vision Solar notes that Plaintiffs never pleaded that Smith's cell phone line in question is his residential phone, as required for a claim under § 227(c). MtD at 17. Plaintiffs concede that they have not pleaded sufficient facts for Smith's DNC Claims but request leave to amend the complaint to cure the defect. The Court will dismiss Smith's

DNC Claims without prejudice and permit Plaintiffs to amend the pleadings anew to address this deficiency.

### ii. Plaintiff Heidarpour's DNC Claims

Vision Solar also contends that Plaintiffs' Amended Complaint "is devoid of factual content necessary to form a nexus between Defendant and the allegedly offending calls." MtD at 9. In the Amended Complaint, Plaintiffs state that "Defendant contacted or attempted to contact Heidarpour from multiple telephone numbers confirmed to belong to Defendant." Am. Compl. at ¶ 13. Plaintiffs' Opposition does not point to any further information in the pleadings to justify this conclusion.

In a TCPA case, the plaintiff must plead facts to justify that a call came from the defendant. Aaronson v. CHW Group, Inc., Case No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue."). In Aaronson, the plaintiff's "lone fact marshalled ... supporting plaintiff's conclusion that defendant was the party that called his cellular telephone" was that incoming telephone number was "one of the Defendant's many telephone numbers." Id. The court found this to be insufficient. Id. In light of Aaronson, the Court agrees with Vision Solar that Plaintiffs have not sufficiently pleaded that the calls in question came from Vision Solar. The Court will dismiss the DNC Claims for Heidarpour without prejudice but will permit Plaintiffs to amend the complaint to provide further relevant information.

### V. Conclusion

**\*4** For the reasons set forth above, Vision Solar's Motion to Dismiss is GRANTED, without prejudice and with leave to amend.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2020 WL 5632653

2020 WL 5632653

---

## Footnotes

1     Vision Solar argues that the Court should not grant leave to amend without a formal motion, but the Court may grant leave to amend <u>sua sponte</u> where it is "conceivable that plaintiffs possess additional facts sufficient to cure those deficiencies" identified in a motion to dismiss. <u>Magnesita Refractories Co. v. Tianjin New Centuries Refractories Co., Ltd.,</u> Civil Action No. 1:17-cv-1587, 2019 WL 1003623, at *11 (M.D. Pa. Feb. 28, 2019).

---

**End of Document** <span style="float:right">© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>

**2025 WL 3563173**
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Leon WEINGRAD, individually and on behalf
of all others similarly situated, Plaintiffs

v.

EXACT CARE PHARMACY, LLC,
Conversion Finder, Jordan Soblick, Defendants.

CIVIL ACTION NO. 25-1843
|
Filed December 12, 2025

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Christopher Michael Brolley, Sean P. Fahey, Troutman Pepper Locke LLP, Philadelphia, PA, Colleen M. O'Neil, Calfee Halter & Griswold LLP, Cleveland, OH, Gretchen L. Whaling, Calfee Halter & Griswold LLP, Columbus, OH, for Defendant Exact Care Pharmacy, LLC.

Helen MacMurray, Lisa A. Messner, Pro Hac Vice, Mac Murray & Shuster LLP, New Albany, OH, for Defendants Conversion Finder, Jordan Soblick.

**MEMORANDUM RE: DEFENDANTS'**
**MOTION TO DISMISS**

Baylson, District Judge.

**I. INTRODUCTION**

**\*1** In this action, Plaintiff Leon Weingrad ("Plaintiff") alleges that Exact Care Pharmacy, LLC ("Exact Care"), Conversion Finder, and Jordan Soblick (collectively, "Defendants") violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") by placing unwanted telemarketing calls to him while his phone number was listed on the National Do-Not-Call Registry. ECF 43, Amended Compl. "Am. Compl." Presently before the Court is Defendant Conversion Finder and Defendant Jordan Soblick's ("Moving Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing and failure to state a plausible claim for relief

against them. ECF 55–57, Def.'s Mot. to Dismiss "Mot." For the reasons set forth below, Defendants' motion is **DENIED**.

**II. FACTUAL BACKGROUND AND**
**PROCEDURAL HISTORY**

Plaintiff Leon Weingrad is an individual whose phone number is listed on the National Do-Not-Call Registry. Am. Compl. ¶¶ 4, 28. Defendant Exact Care is a medication management and pharmaceutical provider based in Ohio. Id. ¶ 5; ECF 19, Def.'s Mot. to Bifurcate Discovery at 3. Defendant Jordan Soblick is an individual and resident of Florida. Am. Compl. ¶ 7. Defendant Conversion Finder is a fictitious name for GJT Inc, a Nevada corporation conducting marketing services. ECF 57-2, Ex. 2 to Mot. As alleged by Plaintiff, the events giving rise to this case are as follows. [1]

Plaintiff alleges that he received over ten telemarketing calls from Defendants. Am. Compl. ¶ 30–31. Plaintiff alleges that he received a call from "Lisa" of Exact Care Pharmacy pitching home delivery medication services. Id. ¶ 40. In two subsequent calls, Plaintiff alleges that he spoke with "Sophia" of "Healthcare Benefits" who then transferred the call to "Diane" or "Snowar" of Exact Care Pharmacy. Id. ¶¶ 41–43. Plaintiff further alleges that he received similar calls from "Hazel" and "Jane" of Healthcare Benefits and "Justin" offering prescription delivery services. Id. ¶¶ 46–50.

Plaintiff brought a putative class action against Exact Care on April 10, 2025, alleging that these calls violated the TCPA. ECF 1, Compl. Exact Care answered the Complaint on June 4, 2025. ECF 8. After discovery commenced, Plaintiff moved to amend the Complaint on August 19, 2025, to add Conversion Finder and Jordan Soblick as defendants. ECF 37, Pl.'s Mot. to Amend Compl. Plaintiff argued that Exact Care hired Conversion Finder to provide it with marketing services that resulted in the allegedly illegal calls at issue. Id. at 1. Plaintiff further argued that Conversion Finder is a fictitious name used by Jordan Soblick to conduct illegal telemarketing. Id. On September 15, 2025, the Court granted Plaintiff's Motion to Amend the Complaint as unopposed. ECF 42. Plaintiff filed an Amended Complaint on September 15, 2025. ECF 43. Plaintiff seeks TCPA statutory damages and injunctive relief on behalf of Plaintiff and the class. Am. Compl. at 21. Defendant Exact Care answered the Amended Complaint on September 25, 2025. ECF 47. On October 14, 2025, Defendants Conversion Finder and Jordan Soblick filed the present Motion to Dismiss for failure to state a claim and lack of jurisdiction. ECF 55–57. Plaintiff filed a Response

in Opposition on November 11, 2025. ECF 66. Defendants Conversion Finder and Jordan Soblick did not file a Reply Brief.

**\*2** Moving Defendants argue that the Amended Complaint should be dismissed in its entirety under Rule 12(b)(6) because it fails to connect the allegedly illegal calls to Conversion Finder or Jordan Soblick. Mot. at 6. Defendants also argue that the portions of the Amended Complaint seeking injunctive relief should be dismissed under Rule 12(b)(1) for lack of Article III standing because Plaintiff has not alleged ongoing or future harm. Id. at 10. Defendants also move to strike Plaintiff's 23(b)(2) class claims, arguing that Plaintiff's claim for statutory damages is not incidental to the injunctive relief sought as required to maintain a class under 23(b)(2). Id. at 12.

In opposition, Plaintiff argues that the Amended Complaint meets its burden of pleading facts sufficient to give rise to the inference that Conversion Finder and Jordan Soblick placed the allegedly illegal calls at issue. ECF 66, Pl.'s Opp. to Def.'s Mot. to Dismiss "Opp." at 5. Plaintiff also argues that the standing requirement is satisfied and that the 23(b)(2) class claims should not be stricken at this stage. Id. at 14, 17.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted). Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of Sciences, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

#### B. Rule 12(b)(1)

Under Federal Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). A motion to dismiss for lack of Article III standing is properly brought under Rule 12(b)(1) because standing is jurisdictional. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). Constitutional standing may be challenged facially or factually. Thorne v. Pep Boys Manny Moe & Jack Inc., 980 F.3d 879, 885 (3d Cir. 2020). "A facial challenge argues that the plaintiff's factual allegations cannot meet the elements of standing." Id. (citing Schering Plough, 678 F.3d at 243). In reviewing a facial challenge, the court takes the plaintiff's factual allegations as true and views them in her favor. Id. The burden is on the plaintiff to establish that (1) plaintiff has suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). A plaintiff seeking injunctive relief "must demonstrate that they are 'likely to suffer future injury' from the conduct to be enjoined." Atkinson v. Choice Home Warranty, 2023 WL 166168, at \*7 (D.N.J. Jan. 11, 2023) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105, 111 (1983)).

#### C. Rule 12(f)

**\*3** Federal Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike pleadings are within the trial court's discretion. Tauro v. Asset Acceptance, 2012 WL 3779340, at \*1 (W.D. Pa. Aug. 30, 2012) (citing Snare & Triest Co. v. Friedman, 169 F. 1, 6 (3d Cir. 1909). However, these motions are generally disfavored as a drastic remedy. Id. A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. Davis v. C&D Sec. Mgmt., Inc., 2020 WL 4284379, at \*2 (E.D. Pa. July 27, 2020) (Baylson). However, courts should not consider motions to strike class allegations under Rule 12(f). Id. Rather, a motion to strike class allegations should be analyzed under the pertinent provisions of Rule 23, which governs class certification. Id.

### IV. DISCUSSION

#### A. The Complaint States a Plausible Claim Against Moving Defendants

The Amended Complaint includes sufficient facts to state a plausible claim that Defendant Conversion Finder and Defendant Jordan Soblick violated the TCPA. Defendants argue that the Complaint fails because it does not connect the Caller ID numbers or caller names to Conversion Finder or Jordan Soblick. Mot. at 1. Plaintiff alleges that the Caller ID numbers were "spoofed" and that caller names were fictitious aliases. Am. Compl. ¶ 41. The Amended Complaint alleges that Exact Care hired Conversion Finder and Jordan Soblick "to orchestrate an en masse telemarketing campaign that incentivized them to work up interested customer prescription deals that met Exact Care's criteria...." Id. ¶ 58. Plaintiff alleges that pursuant to this contractual agreement, Conversion Finder and Jordan Soblick placed telemarketing calls using the alias "Healthcare Benefits" on behalf of Exact Care to generate leads that were then transferred to Exact Care. Id. ¶ 56.

In Perrong v. Quoteqizard.com, LLC, a telemarketer defendant, Quotewizard, moved to dismiss arguing that the Complaint failed to allege a connection between the telemarketer and the allegedly illegal phone call. 2020 WL 5039445, at *2 (E.D. Pa. Aug. 26, 2020) (Joyner). The Quotewizard plaintiff alleged that he provided false information to a telemarketer which was then used by Geico in subsequent outreach to plaintiff. Id. at 1. Geico stated that it had received the information from its partner, Quotewizard. Id. The court denied the motion to dismiss in Quotewizard because plaintiff's factual allegations created a sufficient causal connection between Quotewizard and the call to plaintiff. Id. at 4. Here, Plaintiff has alleged that several of the calls at issue were transferred to Exact Care. Plaintiff alleges that Exact Care hired Conversion Finder and Jordan Soblick to perform telemarketing services on its behalf. The nature of the alleged contractual relationship between Exact Care, Conversion Finder, and Jordan Soblick gives rise to a plausible inference that Conversion Finder and Jordan Soblick may be connected to the allegedly illegal calls. Thus, Moving Defendants' Motion to Dismiss for failure to state a claim is denied.

### B. Plaintiff Has Standing for Injunctive Relief Claim

At this stage, Plaintiff has met his burden of demonstrating that he is likely to suffer future injury to establish standing to seek injunctive relief under the TCPA. Plaintiff alleges to have received at least ten illegal calls from Defendants spanning a more than two-month period. Am. Compl. ¶ 30–31. The last alleged call occurred one month before Plaintiff initiated this action and Defendants have not provided Plaintiff with

assurances that the calls will cease. Id. In Atkinson v. Choice Home Warranty, the court held that seven calls that occurred seven months before the filing of the Complaint were sufficient to establish standing for injunctive relief.[2] 2023 WL 166168, at *7. When accepted as true, the "recurrent and relatively recent nature of the alleged calls" establish a sufficient likelihood that Defendants will call Plaintiff in the future. Id. Moving Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief is denied.

### C. Defendant's Request to Strike or Dismiss Class Allegations for Injunctive Relief is Premature

**\*4** Defendant seeks to strike Plaintiff's class allegations for injunctive relief brought under Rule 23(b)(2), arguing that TCPA statutory damages are not incidental to the injunctive relief sought for purposes of Rule 23(b)(2). Mot. at 3. However, Courts should do not consider motions to strike class allegations under Rule 12(f). In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). They should be considered under Rule 23(d)(1)(D), which provides that, in conducting a class action, a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

The Third Circuit has held that "[t]o determine if the requirements of Rule 23 have been satisfied, a district court must conduct a 'rigorous analysis.' " Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011), opinion reinstated in part, 2012 WL 2052685 (3d Cir. Apr. 17, 2012) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)). "Discovery and full briefing on the merits of class certification are typically required to conduct this 'rigorous analysis.' " Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 245 (E.D. Pa. 2012) (DuBois, J.). The Third Circuit has acknowledged that a court should only strike class allegations contained in a complaint in "rare" cases when "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman, 640 F.3d at 93 n.30. As Plaintiff notes, there are TCPA cases in which both a Rule 23(b)(3) damages class and a Rule 23(b)(2) injunctive and declaratory relief class have been certified. See West v. California Servs. Bureau, Inc., 323 F.R.D. 295, 307 (N.D. Cal. 2017). It is premature at this stage to eliminate Plaintiff's class allegations for injunctive relief before the Court has considered whether parallel certification of a damages class is appropriate in this case.

The Court denies Defendant's Motion to Strike Plaintiff's class allegations for injunctive relief as premature. This denial is without prejudice to Defendant's right to raise the issue under Rule 23, assuming Plaintiff files a motion for class certification.

### V. CONCLUSION

For the foregoing reasons, Defendant Conversion Finder and Defendant Jordan Soblick's Motion to Dismiss is **DENIED**. An appropriate **ORDER** follows.

**All Citations**

Slip Copy, 2025 WL 3563173

---

### Footnotes

1    This Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of Sci., 961 F.3d 203, 208 (3d Cir. 2020).

2    See also Sasin v. Enter. Fin. Grp., Inc., 2017 WL 10574367, at *7 (C.D. Cal. Nov. 21, 2017) (holding plaintiff had standing to sue for injunctive relief despite six-month gap between the last call and the filing of suit because plaintiff alleged numerous calls within a twelve-month period); Bell v. Hawx Servs., LLC, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025) ("there is no indication that Defendant has ceased the challenged conduct, and Defendant has made no representation that they have taken any action to prevent that challenged conduct"). Cf. Miller v. Time Warner Cable Inc., 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (plaintiff lacked standing because defendant offered evidence that it has respected plaintiff's request not to be called and stopped calling plaintiff eight months before the action was brought).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.