**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH FRIEL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff<br><br>vs.<br><br>PORCH.COM, INC.<br><br>    Defendant. | Case No. 3:26-cv-00293-RDM |

## <u>PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS</u>

### <u>INTRODUCTION</u>

This case exists because Defendant Porch.com, Inc. was ultimately identified as the entity responsible for the unlawful telemarketing campaign at issue in the case of *Friel v. ETN Am. Inc.,* No. 3:25-CV-882 (M.D. Pa.)— despite its efforts to avoid that very disclosure. In the underlying action, Plaintiff was forced to move to compel basic discovery from ETN because Porch.com, Inc. resisted that it be identified as the party behind the calls. Only after court intervention—and an order compelling a "full and complete answer" to the interrogatory seeking that information—was the truth revealed: Porch.com was the company responsible for the contact to Plaintiff. *Id.* Having fought to keep its role hidden, Porch.com now seeks dismissal on the pleadings. That request should be rejected. The Complaint is not speculative—it is the product of discovery, compelled over objection, that directly ties Porch.com to the unlawful conduct alleged.

Defendant's motion also hinges on a legally unsupported theory that Plaintiff must have personally registered his telephone number on the National Do Not Call Registry to state a claim.

That argument finds no support in the TCPA, its implementing regulations, or the overwhelming weight of authority. It is based on a single outlier decision that has been repeatedly rejected by courts across the country and would, if accepted, undermine the core protections of the statute. The Court should reject that argument for the same reason nearly every other court has: the TCPA protects telephone numbers on the Registry—not the identity of the individual who originally registered them.

## **BACKGROUND**

Plaintiff brings this action under the Telephone Consumer Protection Act based on Defendant's unlawful telemarketing practices. ECF No. 1 ¶1 Plaintiff alleges that the TCPA prohibits intrusive telemarketing practices, including prerecorded calls and calls to numbers listed on the National Do Not Call Registry. *Id.* at ¶¶13–15. Plaintiff's telephone number has been listed on the National Do Not Call Registry since 2011. *Id.* at ¶22 Despite this, Plaintiff received multiple telemarketing calls from Defendant in May 2025. *Id.* at ¶24 Plaintiff alleges that these calls utilized prerecorded or artificial voices and followed a uniform, scripted format. *Id.* at ¶¶25–27 Plaintiff further alleges that he did not provide prior express consent to receive such calls. *Id.* at ¶23. Based on this conduct, Plaintiff asserts claims individually and on behalf of a nationwide class of similarly situated individuals. *Id.* at ¶¶34–36.

Defendant attempts to discredit Plaintiff with the label "professional plaintiff." Courts consistently reject such arguments as improper and immaterial to whether the complaint states a claim. The notion that filing four lawsuits renders Plaintiff "professional" is particularly hollow. Four cases over multiple years is not evidence of abuse—it is evidence of repeated exposure to the very conduct the TCPA was enacted to stop. In any event, "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs

2

only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (denying similar motion to dismiss in TCPA case); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.").

## STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief may be granted, a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party. *See Phillips v. County Of Allegheny,* 515 F.3d 224, 228 (3rd Cir. 2008). If a complaint's factual allegations, so treated, state a claim that is plausible—*i.e.*, if they allow the court to infer the defendant's liability—the motion is denied. *See Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786 (3rd Cir. 2016).

## ARGUMENT

### I.    The Complaint Plausibly Alleges that Defendant Directly Initiated the Telemarketing Calls.

Defendant's contention that Plaintiff fails to plausibly allege direct liability under the TCPA is incorrect and rests on a mischaracterization of both the pleading standard and the factual allegations in the Complaint. At the Rule 12 stage, Plaintiff is not required to prove his case or establish liability by a preponderance of the evidence. Rather, Plaintiff must allege facts that plausibly support the inference that Defendant itself initiated the unlawful telemarketing communications. Plaintiff has done exactly that here.

At the pleading stage, Plaintiff need not prove the precise mechanics of Defendant's telemarketing operation. He need only allege enough facts to permit a reasonable inference that

3

Defendant directly initiated the communications or is otherwise legally responsible for them. The Complaint easily clears that bar. It alleges that Defendant placed multiple telemarketing calls to Plaintiff's residential telephone number, which had been listed on the National Do Not Call Registry since 2011, despite Plaintiff never providing consent or having any prior relationship with Defendant. ECF No. 1 ¶¶22–24. Plaintiff specifically alleges that he received at least five such calls in May 2025 alone. *Id.* ¶24. Critically, Plaintiff alleges how those calls are tied directly to Defendant. After engaging with one of the calls, Plaintiff received follow-up text messages that directed him to a website used in the telemarketing campaign, which was associated with Defendant's services and customers. *Id.* ¶¶29–32. The Complaint further alleges that Defendant was identified by the downstream entity (ETN America) as the party responsible for the calling conduct. *Id.* ¶32. Taken together, these allegations do not merely speculate about Defendant's involvement—they trace the calls from initiation, to content, to purpose, and ultimately to Defendant.

Courts routinely reject arguments like Defendant's where, as here, the complaint alleges that the messages were sent from a number owned by the defendant and promoted the types of products offered by the defendant. Those allegations support a reasonable inference of direct involvement sufficient to survive a motion to dismiss. "At first glance, these allegations seem like a strong basis for attributing the … [calls and text] to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is." *See Bradshaw v. CHW Grp., Inc.*, No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649, at *5-6 (D.N.J. Jan. 24, 2025) ("So too as to the December 8 call. The caller allegedly introduced herself as 'Erica . . . from the Defendant.' Why

then would it not be plausible to conclude that she was, in fact, 'Erica . . . from the Defendant'?").

"The logic of this approach is reflected in the decisions of any number of federal courts.  *See, e.g., Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024); *Katz v. CHW Grp., Inc.*, 2023 U.S. Dist. LEXIS 176206, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); *Smith v. Am.-Amicable Life Ins. Co.*, 2022 U.S. Dist. LEXIS 62115 at *2 (E.D. Pa. Apr. 4, 2022); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021)." *Id.*; *accord Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and

5

the dates she received the calls."); *see also Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378, at *15 (E.D.N.C. Feb. 12, 2024) ("Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. The voicemail messages concerned 'an insurance plan.' Globe sells insurance plans. … Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss." (cleaned up)).

The nonbinding authorities that Defendant highlights are easily distinguishable. In *Scruggs*, the Court held that the Plaintiff provided "virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who physically placed any of the calls—i.e., CHW or some third party who merely stated they were 'associated with' CHW somehow." *Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208, at *5 (E.D. Va. Nov. 12, 2020). That is plainly distinguishable from the pleadings here.

At bottom, Defendant asks this Court to resolve factual disputes and draw inferences in Defendant's favor, which is improper on a motion to dismiss. Taking the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Defendant directly initiated the unlawful telemarketing messages at issue. That is sufficient to state a claim for direct liability under the TCPA.

II.     **Defendant's Personal-Registration on the Do Not Call Registry Argument is Contrary to Law and Widely Rejected.**

Defendant's remaining argument—that Plaintiff must have personally registered his

number on the Registry—fails. The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA

7

plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has

been disagreed with by every other court to consider it and its premises and was most notably

rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL

17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the

argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier*

court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-
> populated: it is a list of phone numbers for individuals who have requested that
> telemarketers not contact them. While it is possible a third-party may have registered a
> plaintiff's phone number before a plaintiff acquired it, this is unlikely given how
> infrequently people change numbers. And it is particularly unlikely here given Plaintiff's
> well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). The *Callier* Court is far from alone. *See e.g. Murch v. GPS Cap. Mkts.,*

*LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025) ("After fully considering

the TCPA's private right of action, the statutory scheme, and other language in the implementing

regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, three years

after *Callier*, another federal court recently made forcefully clear how far of an outlier

*Rombough* was:

> the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry
> provision need not allege or prove that he personally registered his phone number
> to state a claim. Every court to consider this issue — with one exception — has
> reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs.*, No.
> 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, 2020 WL 7391299, at *14
> (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728-
> PHX-SMB, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at *2 (D. Ariz.
> Mar. 13, 2024). The exceptional case is *Caitlin Rombough v. Robert D. Smith Ins.
> Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022
> WL 2713278, at *2-3 (N.D. Iowa June 9, 2022) (dismissing claim because
> plaintiff did not allege that she personally registered her phone number in the
> NDNC Registry). In *Rombough*, the court focused on the following language
> from the implementing regulation: "No person or entity shall initiate any
> telephone solicitation to . . . [a] residential telephone subscriber *who has
> registered* his or her telephone number on the" NDNC Registry." 47 C.F.R. §

8

64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Ca., March 3, 2025). This Court should hold the same.

The policy consequences of Defendant's rule underscore its untenability. Millions of Americans change phone numbers every year. If Defendant's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one.

Accordingly, the Court should reject Defendant's invitation to import a personal-registration requirement that appears nowhere in the statute and would eviscerate its protections.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. The Complaint plausibly alleges that Defendant directly initiated unlawful telemarketing calls in violation of the TCPA, and Defendant's remaining arguments—including its improper "professional plaintiff" attack and its unsupported personal-registration theory—fail as a matter of law. At this stage, Plaintiff is entitled to proceed to discovery and test Defendant's defenses on a full factual record.

RESPECTFULLY SUBMITTED AND DATED this 18th day of April, 2026.

Counsel for Plaintiff:

s/ Anthony I. Paronich
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

10