# EXHIBIT 1



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:00 PM EDT

**Job Number:** 281925052

## Document (1)

1. *Bradshaw v. CHW Grp., Inc.*

   **Client/Matter:** -None-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| | -None- |

 | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

Anthony Paronich

Positive

As of: April 18, 2026 8:00 PM Z

# *Bradshaw v. CHW Grp., Inc.*

United States District Court for the District of New Jersey

January 24, 2025, Decided; January 24, 2025, Filed

No. 24-cv-00114 (MEF)(JBC)

**Reporter**

763 F. Supp. 3d 641 *; 2025 U.S. Dist. LEXIS 13649 **; 2025 LX 14294; 2025 WL 306783

MICHAEL BRADSHAW, individually and on behalf of all others similarly situated, Plaintiff, v. CHW GROUP, INC. d/b/a/ CHOICE HOME WARRANTY, Defendant.

## Core Terms

motion to dismiss, message, voicemail, prerecord, entity, phone, private right of action, consumer, telephone, clean

**Counsel:** [**1] MICHAEL BRADSHAW, Plaintiff, Pro se, LAKEWOOD, NJ.

**Judges:** Michael E. Farbiarz, United States District Judge.

**Opinion by:** Michael E. Farbiarz

## Opinion

[*644] **OPINION and ORDER**

## Table of Contents

*Go to table1*

A consumer solicited information from a company, but says that he later asked to be added to its "do not call" list.

The customer sued, alleging that the company continued to call and text him.

The company now moves to dismiss. The motion is denied.

* * *

## I. Background

### A. The Allegations

The allegations as relevant for now are as follows.

In late 2023, looking to receive additional information about a company's[1] product, a consumer[2] provided his personal cellphone number on an online form. See First Amended Complaint ("Complaint") ¶¶ 23, 27-29.

After going back and forth with the company by phone and email, the consumer asked to be placed on the company's do not call list. See id. ¶¶ 30-39.

But the consumer continued to receive calls that he believed [**2] came from the company. See id. ¶¶ 40-68. Among the calls: a voicemail that the consumer suspected was prerecorded. See id. ¶¶ 69-71.

[*645] ### B. The Lawsuit

In light of the above, the consumer (from here, "the Plaintiff") sued the company (from here, "the

---

1 The company: CHW Group, Inc. d/b/a/ Choice Home Warranty.
2 Michael Bradshaw.

Defendant").[3]

The Plaintiff's Complaint presses two claims, each under the *Telephone Consumer Protection Act ("TCPA")*. See Complaint ¶¶ 85-93.

## C. **The Motion**

The Defendant has moved to dismiss the Complaint under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim.

The motion is before the Court.

## D. **The Court's Approach**

To analyze the motion, the Court first moves through the preliminaries --- as to subject matter jurisdiction, see Part II, and the general standards relevant to a motion to dismiss. See Part III.

Next, the Court analyzes the Plaintiff's two TCPA claims, concluding that the first plausibly states a claim, see Part IV.A, and that the second one does, too. See Part IV.B. The motion to dismiss must therefore be denied.

Finally, the Court briefly considers, and rejects, the Defendant's in-the-alternative argument --- that certain material should be stricken from the Complaint. See Part V.

## II. **Jurisdiction**

"[W]hen there is a question as to [a court's] authority to hear a dispute, it is incumbent upon the **[**3]** court[] to resolve such doubts . . . before proceeding to . . . the merits." *Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010)* (cleaned up).

Here, there is "a question" about one thing.

Among other relief, the Plaintiff seeks an

injunction; the proposed injunction would require the Defendant to "cease all unsolicited calling/texting activity." Complaint at 26.

To establish standing for injunctive relief, a plaintiff must generally show that he is "likely to suffer future injury" caused by the defendant. *City of Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)*.

But here, the Plaintiff presses no allegations that fit the bill.

There are no suggestions in the Complaint that any of the alleged conduct is ongoing or even potentially ongoing, or that there is reason to think it might start up again. There are, for example, no allegations as to especially recent calls or texts. There are no allegations of any continuing interactions between the Plaintiff and the Defendant. And there are no alleged texts or voice messages from the Defendant that meaningfully refer to loose ends that it (the Defendant) will try to tie up in the future, perhaps through more calls or texts.

Bottom line: the allegations in the Complaint are in no way forward-looking.

This undoes any suggestion that the Plaintiff is "likely **[**4]** to suffer future injury" caused by the defendant, *Lyons, 461 U.S. at 105* (emphasis added), and so the Plaintiff lacks standing to pursue injunctive relief. See id. His request for such relief is therefore stricken from the Complaint. See *Doyle v. Matrix Warranty Sols., 679 F. Supp. 3d 42, 44 (D.N.J. 2023)*.

## [*646] III. **General Legal Standards**

In deciding a motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*, the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. Cnty. of*

---

3 The Plaintiff sued on behalf of himself and two putative classes. See Complaint ¶ 79.

Case 3:26-cv-00293-KM   Document 11-1   Filed 04/18/26   Page 5 of 95 Page 3 of 8

763 F. Supp. 3d 641, *646; 2025 U.S. Dist. LEXIS 13649, **4

*Allegheny, 515 F.3d 224, 228 (3d Cir. 2008)*.

Motions to dismiss are then assessed as follows.

First, the Court "must tak[e] note of the elements [a] plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016)* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*).

Second, the Court must identify those allegations in a complaint that are merely conclusory, and set them to one side as irrelevant to the analysis. See id.

And third, the Court must determine whether the remaining allegations "plausibly give rise to an entitlement to relief." Id. (quoting *Iqbal, 556 U.S. at 679*).

## IV. The TCPA Claims

As noted, see Part I.C, the Defendant moves to dismiss the Plaintiff's two TCPA claims.

### A. The First Claim

The first TCPA claim invokes *47 U.S.C. § 227(b)(1)(A)(iii)*.

"The elements of a *Section 227(b)(1)(A)(iii)* violation are that (1) the defendant called a cellular telephone number; (2) using a prerecorded **[**5]** voice; (3) without the recipient's prior express consent." *Doyle, 679 F. Supp. 3d at 45* (cleaned up).

Take these elements one at a time.

### 1. Element One

First: has the Plaintiff plausibly alleged that the Defendant called his cell phone? See id.

The Court's conclusion: yes.

* * *

The Plaintiff alleges that on December 8, 2023, a call came in to his cellphone, see, e.g., Complaint ¶¶ 20-23, 69-71, and it left behind a voicemail. See id. ¶ 70. The voicemail said: "[h]ey, this is Erica calling from [the Defendant]," see id., and it went on to advertise discounts for the type of product that the Defendant is alleged to sell. See id. ¶¶ 15, 70.

* * *

At first glance, these allegations seem like a strong basis for attributing the December 8 call to the Defendant.

After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is.

So too as to the December 8 call. The caller allegedly introduced herself as "Erica . . . from [the Defendant]." Id. ¶ 70. Why then would it not be plausible to conclude that she was, in fact, "Erica . . . from [the Defendant]"?

The logic of this approach is reflected in the decisions of any number of federal courts. **[**6]** See, e.g., *Marks v. Unique Lifestyle Vacations, LLC, 2024 U.S. Dist. LEXIS 41804, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024)*; *Katz v. CHW Grp., Inc., 2023 U.S. Dist. LEXIS 176206, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023)*; *Smith v. Am.-Amicable Life Ins. Co., 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022)*; *Adam v. CHW Grp., Inc., 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021)*.

But there is also an alternative approach.

**[*647]** People may generally be honest about who they are in-person. But, the argument goes, when it comes to randomly-received phone calls or texts, dishonesty about one's identity is at least somewhat common --- and therefore, it will not always make

Case 3:26-cv-00293-KM    Document 11-1    Filed 04/18/26    Page 6 of 95    Page 4 of 8

763 F. Supp. 3d 641, *647; 2025 U.S. Dist. LEXIS 13649, **6

sense to conclude that the person on the other end of the line is who they say they are.

This alternative approach also has some force behind it --- and it, too, is reflected in the decisions of some federal courts. See, e.g., *Scruggs v. CHW Grp., Inc., 2020 U.S. Dist. LEXIS 253431, 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)*.

\* \* \*

Here, there is no need to choose between the two competing schools of thought sketched out above.

The reason: the Plaintiff alleges that, at first, he affirmatively reached out to the Defendant and spoke to an employee there. See Complaint ¶¶ 28-34. Around one month later, the alleged December 8 call came through on the Plaintiff's cellphone. See id. ¶ 69. The Plaintiff's prior (and then-recent) interaction with the Defendant is telling. It makes it much more likely that when he got a call "from [the Defendant]" the call was, indeed, from the Defendant.

To be sure, coincidences happen. It is possible that the Plaintiff spoke to the Defendant and then a month **[**7]** later got a call from someone else entirely (a telemarketer, perhaps) who was only pretending to be associated with the Defendant.

But what is necessary at this stage is not an ironclad allegation, but a plausible one. See generally *McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 269 n.3 (3d Cir. 2016)* ("The plausibility standard does not impose a probability requirement; it only requires a pleading to show more than a sheer possibility that a defendant has acted unlawfully.") (cleaned up).

And the Plaintiff has plausibly alleged that the December 8 call was from the Defendant, in light of both what the caller said and the Plaintiff's prior interactions with the Defendant.

## 2. Element Two

Now turn to the second element, whether the call was prerecorded. See *Doyle, 679 F. Supp. 3d at 45*.

> Courts in this circuit have recognized the following averments to be indicative of a pre-recorded call: 1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called.

*Cabral v. Penske Truck Leasing Co. LP, 2024 U.S. Dist. LEXIS 79070, 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024)* (cleaned up); see also *Smith v. Pro Custom Solar LLC, 2021 U.S. Dist. LEXIS 8616, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021)* (noting similar considerations and collecting cases).

Of the six *Cabral* boxes set out above, three are checked here. **[**8]** See Complaint ¶¶ 70-71 (allegations as to the December 8 call: providing instructions to call a 1-800 number; using a "robotic"-sounding delivery; and leaving a generic message). This suggests that the "prerecorded" element has been plausibly alleged. See, e.g., *Cabral, 2024 U.S. Dist. LEXIS 79070, 2024 WL 1916701, at *6*; *Somogyi v. Freedom Mortg. Corp., 2018 U.S. Dist. LEXIS 129697, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018)*; *Slominski v. Globe Life Inc., 2024 U.S. Dist. LEXIS 24378, 2024 WL 556978, at *6 (E.D. N.C. Feb. 12, 2024)*.

Moreover, the Plaintiff alleges that the voicemail that was left on December 8 "appear[ed] to start mid sentence[.]" See Complaint ¶ 71.

This buttresses the conclusion that the message was prerecorded.

People who **[*648]** place live calls and get voicemail ("You have reached . . .") generally hear the concluding beep --- and only then start to leave their message. This generates voicemails that start at the beginning of a sentence, not in the middle of

Case 3:26-cv-00293-KM    Document 11-1    Filed 04/18/26    Page 7 of 95

Page 5 of 8

763 F. Supp. 3d 641, *648; 2025 U.S. Dist. LEXIS 13649, **8

one.

By contrast, machines doling out prerecorded messages are more likely to make a mistake, and to begin leaving a message a bit early --- so that what is recorded on the voicemail does not quite start at the beginning.

Adding all this up, the Plaintiff has plausibly alleged that the December 8 call was prerecorded. Half of the *Cabral* factors are satisfied here, and the voicemail in question allegedly started mid-sentence.

### 3. Element Three

As to the third and final element, does the **[\*\*9]** Plaintiff adequately allege that the December 8 call was made without his consent? See *Doyle, 679 F. Supp. 3d at 45*.

Again, yes.

The Plaintiff alleges that he originally reached out to the Defendant. See Complaint ¶¶ 28-34.

And then afterwards, he alleges, he asked to be placed on the Defendant's do not call list --- and repeatedly requested that the Defendant stop contacting him. See id. ¶¶ 39, 60, 68.

That clears the bar. See *Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013)* ("(1) the TCPA affords [a plaintiff] the right to revoke her prior express consent to be contacted on [her] cellular phone . . . and (2) there is no temporal limitation on that right").

\* \* \*

The Complaint sets out plausible allegations as to each of the three elements of the Plaintiff's first TCPA claim. The Defendant's motion to dismiss that claim is therefore denied.

### B. The Second Claim

The Plaintiff's second claim: the Defendant violated *47 U.S.C. § 227(c)(5)*. See Complaint ¶¶ 89-93.

Under that section of the TCPA, a person can sue if he "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" *47 U.S.C. § 227(c)(5)*.

What "regulation[]" was allegedly violated here? The Plaintiff points to *47 C.F.R. § 64.1200(d)*. See Complaint ¶ 90.

The Defendant **[\*\*10]** moves to dismiss the Plaintiff's second claim on two grounds. Take those up below.

### 1. A Private Right of Action?

First, the Defendant argues the Plaintiff cannot invoke *47 C.F.R. § 64.1200(d)* because that regulation was issued under *47 U.S.C. § 227(d)* --- a provision of the TCPA that, it is said, does not provide for a private right of action. See Motion to Dismiss at 20-21.

The Third Circuit has not directly weighed in on this question.[4]

 **[\*649]** But federal courts around the country have --- with most courts holding that there is a private right of action. See, e.g., *Fischman v. MediaStratX, LLC, 2021 U.S. Dist. LEXIS 149734, 2021 WL*

---

4  In one case, Shelton, the Third Circuit affirmed a district court decision that found a defendant liable for violating 47 C.F.R. § 64.1200(d), the regulation in play here. See Shelton v. Fast Advance Funding, LLC, 805 F. App'x 156 (3d Cir. 2020), aff'g on other grounds 378 F. Supp. 3d 356 (E.D. Pa. 2019). But Shelton did not address the private right of action issue. See also Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1265 (11th Cir. 2019) (similar: suggesting, without further analysis, that § 64.1200(d) was promulgated under 47 U.S.C. § 227(c)); Charvat v. NMP, LLC, 656 F.3d 440, 443-44 (6th Cir. 2011) (same); but see Worsham v. Travel Options, Inc., 678 F. App'x 165 (4th Cir. 2017), aff'g on other grounds 2016 U.S. Dist. LEXIS 118774, 2016 WL 4592373 (D. Md. 2016) (affirming, without comment on the issue, a district court opinion holding there is no private cause of action under § 64.1200(d)). Shelton cannot be meaningfully relied on here, because "[i]t is universally recognized that questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Pennsylvania v. Brown, 373 F.2d 771, 784 (3d Cir. 1967) (cleaned up); cf. Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 237 n.28 (D.N.J. 2023).

Case 3:26-cv-00293-KM    Document 11-1    Filed 04/18/26    Page 8 of 95

Page 6 of 8

763 F. Supp. 3d 641, *649; 2025 U.S. Dist. LEXIS 13649, **10

*3559639, at *4-*6 (E.D.N.C. Aug. 10, 2021)* (holding that there is a private right of action, and collecting cases); *Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020)* (same); *Persichetti v. T-Mobile USA, Inc., 479 F. Supp. 3d 1333, 1338-39 (N.D. Ga. 2020)* (same); *Worsham v. LifeStation, Inc., 2021 Md. App. LEXIS 1014, 2021 WL 5358876, at *13-*16 (Md. Ct. Spec. App. Nov. 17, 2021)* (same); but see, e.g., *Wilson v. PH Phase One Operations, L.P., 422 F. Supp. 3d 971, 981-82 (D. Md. 2019)* (no private right of action); *Burdge v. Ass'n Health Care Mgmt. Inc., 2011 U.S. Dist. LEXIS 9879, 2011 WL 379159, at *3-*4 (S.D. Ohio Feb. 2, 2011)* (same).

This Court is persuaded that there is a private right of action here, largely for the reasons set out in *Fischman, 2021 U.S. Dist. LEXIS 149734, 2021 WL 3559639, at *4-*6*, and *Persichetti, 479 F. Supp. 3d at 1338-39*.

## 2. The Merits

The Defendant also seeks to dismiss the second TCPA claim on the merits, for failure to state a claim.

The elements that must be adequately alleged to state a claim under *47 U.S.C. § 227(c)(5)*: "(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; . . . (3) in violation of the regulations promulgated [**11] by the [Federal Communications Commission]." *Persichetti, 479 F. Supp. 3d at 1339* (cleaned up); see also *Zelma v. Penn LLC, 2020 U.S. Dist. LEXIS 9615, 2020 WL 278763, at *6 (D.N.J. Jan. 17, 2020)*.

* * *

The first of these three elements is satisfied.

The alleged December 8, 2023 phone call was discussed above. See Part IV.A.1.

And the Plaintiff also alleges that he received an

unsolicited text message[5] on November 13, 2023. See Complaint ¶¶ 41-43.

* * *

The next element is whether the November and December communications were "by or on behalf of the same entity." *Persichetti, 479 F. Supp. 3d at 1339*.

Here, that test is met.

The Plaintiff has plausibly alleged that the December 8 phone call came from the Defendant. See Part IV.A.

And the content of the November 13 text[6] points to the same conclusion, and largely for the same reasons.

* * *

 [*650] Come now to the third element of a *§ 227(c)(5)* claim: whether the Defendant's contacts with the Plaintiff violated the relevant FCC regulations. See *Persichetti, 479 F. Supp. 3d at 1339*.

As previously discussed, the Plaintiff asserts that the Defendant violated *47 C.F.R. § 64.1200(d)*. See Complaint ¶¶ 90- 91.

That subsection states that "[n]o person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive [telemarketing] [**12] calls made by or on behalf of that person or entity." *47 C.F.R. § 64.1200(d)*. The regulation then set out the standards that such procedures must meet, including "a written policy, available upon demand, for maintaining a do-not-call list," and the

---

5  Text messages are considered "calls" for these purposes. See Zelma, 2020 U.S. Dist. LEXIS 9615, 2020 WL 278763, at *6 (implying this); see also Gager, 727 F.3d at 269 n.2 (3d Cir. 2013) (discussing the TCPA more generally).

6  The November 13 text: "Morning [Plaintiff], It's Jen with [the Defendant] reaching out about your request for a home warranty quote. If you're still interested, let us know and we can set up a call to discuss our best deals. Text X to end." Complaint ¶ 43.

Case 3:26-cv-00293-KM    Document 11-1    Filed 04/18/26    Page 9 of 95

Page 7 of 8

763 F. Supp. 3d 641, *650; 2025 U.S. Dist. LEXIS 13649, **12

requirement that personnel "must be informed and trained in the existence and use of the do-not-call list." Id.

The Plaintiff alleges that he was repeatedly contacted by the Defendant after asking to be placed on its do not call list, and after following up repeatedly to that effect. See Complaint ¶¶ 40-71.

From this, the Plaintiff argues, it can plausibly be inferred that the Defendant violated the FCC regulation, because it failed to "implement[] internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls/text messages." Id. ¶ 91.

This argument has been accepted by any number of federal courts. See, e.g., *Persichetti, 479 F. Supp. 3d at 1340*; *Fischman, 2021 U.S. Dist. LEXIS 149734, 2021 WL 3559639, at *6*; *Delgado v. Emortgage Funding, LLC, 2021 U.S. Dist. LEXIS 196785, 2021 WL 4776774, at *5 (E.D. Mich. Oct. 13, 2021)*. And this Court accepts the argument, too.[7]

* * *

In a nutshell: the Complaint sets out plausible allegations as to the three elements of the Plaintiff's second TCPA claim.

Therefore, **[\*\*13]** the motion to dismiss that claim is denied.

## V. Motion to Strike

The Defendant's final argument: if it denies the motion to dismiss, as it now has, the Court should strike certain "facially improper" allegations from the Complaint. See Motion to Dismiss at 27 (referring to Complaint ¶¶ 18, 72-74).

The motion to strike is denied.

The Defendant first suggests that striking certain allegations prevents "undu[e] prejudice," seemingly by ensuring the Court would not consider the referenced allegations as part of its assessment of the motion to dismiss. See id. at 28.

But the Court has not here relied on the portions of the Complaint that are the subject of the motion to strike.

Next, the Defendant moves to strike one of the Plaintiff's proposed class definitions on the ground that it is "impermissibly 'fail-safe' in violation of *Rule 23*." Id.

**[\*651]** But the time to object to the Plaintiff's proposed class definition is if and when the Plaintiff moves to certify a class. Such a motion is presumably not far off. See generally *Fed. R. Civ. P. 23(c)(1)(A)* ("At an early practicable time after a person sues or is sued as a class representative, the court (describing Third Circuit case law that is potentially relevant to this question); *Prestan Prods. LLC v. Innosonian Am., LLC, 2024 U.S. Dist. LEXIS 13685, 2024 WL 278985, at *5 n.17 (D.N.J. Jan. 25, 2024)* (similar). **[\*\*14]** must determine by order whether to certify the action as a class action."). But it has not yet been made.

## VI. Conclusion

For the reasons set forth above, the Defendant's motion to dismiss is denied, and so is its motion to strike.

It is on this 24th day of January, 2025, so **ORDERED**.

/s/ Michael E. Farbiarz

Michael          E.          Farbiarz,          U.S.D.J.

---

7  The Court expresses no opinion as to whether the Plaintiff bears the pleading burden on the Defendant's implementation of "internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls/text messages." Complaint ¶ 91; cf. Anigbogu v. Midland Credit Mgmt., Inc., 2025 U.S. Dist. LEXIS 10871, 2025 WL 247592, at *3 (D.N.J. Jan. 16, 2025)

763 F. Supp. 3d 641, *651; 2025 U.S. Dist. LEXIS 13649, **14

**Table1** (*Return to related document text*)

I. <u>Background</u>

A. <u>The Allegations</u>

B. <u>The Lawsuit</u>

C. <u>The Motion</u>

D. <u>The Court's Approach</u>

II. <u>Jurisdiction</u>

III. <u>General Legal Standards</u>

IV. <u>The TCPA Claims</u>

A. <u>The First Claim</u>

1. <u>Element One</u>

2. <u>Element Two</u>

3. <u>Element Three</u>

B. <u>The Second Claim</u>

1. <u>A Private Right of Action?</u>

2. <u>The Merits</u>

V. <u>Motion to Strike</u>

VI. <u>Conclusion</u>

**Table1** (*Return to related document text*)

---

**End of Document**



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:01 PM EDT

**Job Number:** 281925081

## Document (1)

1. *Marks v. Unique Lifestyle Vacations, LLC*

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** Natural Language

**Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

Anthony Paronich

 Neutral

As of: April 18, 2026 8:01 PM Z

# *Marks v. Unique Lifestyle Vacations, LLC*

United States District Court for the Eastern District of Pennsylvania

March 11, 2024, Decided; March 11, 2024, Filed

CIVIL ACTION NO. 20-4915-KSM

**Reporter**

2024 U.S. Dist. LEXIS 41804 *; 2024 LX 141440; 2024 WL 1051974

BRUCE S. MARKS, Plaintiff, v. UNIQUE LIFESTYLE VACATIONS, LLC, Defendant.

## Core Terms

default judgment, default, telephone, phone, third amended complaint, treble damages, motion for default, amended complaint, vacation, culpable conduct, entry of default, telemarket, registry

**Counsel: [*1]** For BRUCE S. MARKS, Plaintiff: ANDRE RUBIN, MARKS & SOKOLOV, LLC, PHILADELPHIA, PA; BRUCE S. MARKS, Marks & Sokolov, LLC, Philadelphia, PA; THOMAS C. SULLIVAN, MARKS & SOKOLOV LLC, PHILADELPHIA, PA.

For Platinum Marketing Group, Inc., Cross Claimant: EDWARD A. MALDONADO, LEAD ATTORNEY, LAW OFFICES OF EDWARD A MALDONADO PA, CORAL GABLES, FL; JOSEPH P. WALSH, LEAD ATTORNEY, WALSH PANCIO LLC, LANSDALE, PA.

**Judges:** KAREN SPENCER MARSTON, J.

**Opinion by:** KAREN SPENCER MARSTON

## Opinion

### MEMORANDUM

### MARSTON, J.

Presently before the Court is Plaintiff Bruce

Marks's third motion for default judgment against Defendant Unique Lifestyle Vacations ("Unique") in a case arising under the Telephone Consumer Protection Act ("TCPA"). (Doc. No. 65.) For the reasons discussed below, the Court grants the motion.

## I. BACKGROUND

On November 27, 2018, Marks registered his personal[1] cell phone number on the national Do-Not-Call ("DNC") registry.[2] (Doc. No. 55 at ¶¶ 3, 19, 23.) Nonetheless, even after that date, Marks continued to receive telemarketing sales calls on his personal cell phone from Unique, a Florida LLC with its principal place of business located at 2251 Consulate Dr. Ste. D, Orlando, FL 32837. (*Id.* at ¶¶ 3, 9.) Unique uses telemarking to promote vacation products and services. **[*2]** (*Id.* at ¶¶ 16, 29.) Marks had never done any transactions with Unique, nor had he provided Unique with his cell phone number. (*Id.* at ¶ 26.)

From November 27, 2018 (the date of Marks' DNC registration) until Marks filed his Complaint on October 5, 2020, Marks received approximately 8 calls from Unique, which included one call on November 29, 2019, two calls on January 6, 2020, two calls on January 21, 2020, one call on January

---

[1] Marks alleges he uses his cell phone for personal purposes, including booking vacations. (Doc. No. 55 at ¶ 27.)

[2] Under Marks's T-Mobile plan, he incurs a charge for incoming/outgoing calls on his personal cell phone. (Doc. No. 55 at ¶ 27.)

24, 2020, and two calls on February 6, 2020. (*Id.* at ¶ 19.) Marks repeatedly requested that Unique stop calling him and that it add his number to its internal "Do Not Call" list. (*Id.* at ¶ 22.) In addition, on January 9, 2020, Marks informed Unique in a letter sent by certified mail: "Effective today . . . your company is to STOP ALL CALLS and TEXT MESSAGES to my cell phone, 215-939-[XXXX]. I do not authorize your contact with my cell phone . . . . I have repeatedly requested that these CALLS concerning vacations cease over the last several years." (*Id.* at ¶ 21.) Notwithstanding Marks' registration on the DNC list, his verbal requests, and his letter, Marks continued to receive telemarketing calls from Unique. (*Id.* at ¶ 23.)

On October 5, 2020, Marks filed a complaint **[*3]** in this Court, asserting claims against Unique under the TCPA. (Doc. No. 1.) Four days later, he filed an amended complaint (Doc. No. 2). When Unique failed to respond to the amended complaint within 21 days, Marks moved for entry of default (Doc. No. 5), which this Court denied, without prejudice, on December 8, 2020 for failure to properly abide by Pennsylvania's rules for service by mail (*see* Doc. No. 6). On January 29, 2021, Marks again moved for entry of default (Doc. No. 15), which the Clerk of Court entered that same day. Marks then moved for default judgment, seeking $210,000 in damages. (Doc. No. 16.) On April 21, 2021, Marks notified the Court that following the Supreme Court's ruling in *Facebook, Inc. v. Duguid, 592 U.S. 395, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)*, he was withdrawing his claims under *47 U.S.C. § 227(b)* and that default judgment should be entered in the amount of $64,500 instead. (Doc. No. 26.) The Court held a hearing on the motion on October 14, 2021. On November 22, 2021, the Court denied Marks' motion for default judgment, without prejudice, after concluding that Marks failed to plead facts to support his assertion that Unique placed the telemarketing calls and therefore had not pled a legitimate cause of action under the TCPA. (Doc. Nos. 36, 37.) **[*4]**

On December 3, 2021, Marks filed a motion for reconsideration (Doc. No. 38), which the Court denied (Doc. No. 39). Marks also requested leave to file a second amended complaint (Doc. No. 38), which the Court granted (Doc. No. 39). In its December 6, 2021 Order, the Court expressly cautioned Marks that in his second amended complaint, he needed to plead "facts supporting his 'belief' that he received 43 calls from Unique." (Doc. No. 39 at n.1; *see also id.* ("Marks must include details explaining how he knew that Unique in fact placed these calls (i.e., that persons with whom he spoke identified themselves as representatives of Unique, that Unique's name appeared in the caller ID, etc.). Although Marks identifies the phone numbers used in eight of these calls, he does not allege, for example, facts suggesting that these are phone numbers associated with Unique.").)

On December 28, 2021, Marks filed a second amended complaint. (Doc. No. 40.) Because Defendant failed to file any response, on October 17, 2022, the Court issued an Order directing Marks to file a request for default against any non-responsive Defendant by Monday, November 7, 2022, and if he did not do so, the Court would dismiss **[*5]** the case for failure to prosecute. (Doc. No. 42.) On November 7, Marks requested that default be entered against Unique (Doc. No. 43), and the Clerk of Court entered default that same day. On March 29, 2023, the Court issued another failure to prosecute order, informing Marks that if he did not file a default judgment motion by April 12, 2023, the case would be dismissed for lack of prosecution. (Doc. No. 44.) The next day, March 30, 2023, Marks filed his second motion for default judgment. (Doc. No. 45.) Following a show cause hearing, the Court denied the motion for default judgment because Marks again failed to establish all the elements of a claim under *§ 227(c)*. (Doc. No. 49 at 5-6.) Of note, Marks again failed to plead facts demonstrating that Unique was the party making the calls. (*Id.*) On July 11, 2023, Marks filed a third amended complaint after receiving the Court's permission to do so. (Doc. No. 55.) On November 14, 2023, upon Plaintiff's request (Doc.

No. 61) and because Defendant failed to respond to Plaintiff's third amended complaint, the Court entered default against Unique. (Doc. No. 63.) Then, on January 9, 2024, the Court again issued an Order directing Marks to file a motion **[*6]** for default judgment by January 24, 2024, or else the case would be dismissed for lack of prosecution. (Doc. No. 64.) Three days later, on January 12, 2024, Marks filed his third motion for default judgment against Unique. (Doc. No. 65.)

The Court held a show cause hearing as to why default judgment should not be entered against Unique on March 6, 2024. Unique did not appear at the hearing.

## II. LEGAL STANDARD

"After a clerk enters default pursuant to *Federal Rule of Civil Procedure 55(a)* against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of a default judgment." *Serv. Emps. Int'l Union, 325 F. Supp. 3d at 634* (quoting *Fed. R. Civ. P. 55(a)*). The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." *Fed. R. Civ. P. 55(b)(1)*. "In all other cases, the party must apply to the court for a default judgment." *Fed. R. Civ. P. 55(b)(2)*. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)* (quoting *Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)*).

When a party moves for default judgment, the Court considers the three factors **[*7]** outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to

culpable conduct." *210 F.3d 154, 164 (3d Cir. 2000)*; *see also, e.g., Spurio v. Choice Sec. Sys. Inc., 880 F. Supp. 402, 404 (E.D. Pa. 1995)* (same).

## III. ANALYSIS

### A. TCPA Violations

Before turning to the *Chamberlain* factors, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Serv. Emps. Int'l Union, 325 F. Supp. 3d at 635* (quotation marks omitted).[3]

Here, the Court finds that Marks established all the elements of a claim under *§ 227(c)* for violation of the DNC Registry. *Section 227(c)(3)(F)* states that if the Federal Trade Commission decides to establish a DNC database, the regulations shall "prohibit any person from making or transmitting a

---

[3] The Court must also confirm that it has personal and subject matter jurisdiction, *see Mark IV Transp. & Logistics v. Lightning Logistics, Inc., 705 F. App'x 103, 108 (3d Cir. 2017)*, and that process was properly served on the defendant, *see Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc., No. CIV. 11-624 JBS/JS, 2011 U.S. Dist. LEXIS 115142, 2011 WL 4729023, at *3 (D.N.J. Oct. 5, 2011)* (citing **Gold Kist, Inc. v. Laurinburg Oil Co., 756 F2d 14, 19 (3d Cir. 1985)**).

Here, the Court has subject matter jurisdiction because Marks is suing under the TCPA, a law of the United States. *See 28 U.S.C. § 1331*. The Court also has personal jurisdiction over Unique because it called a phone number in Pennsylvania, establishing the requisite minimum contacts with Pennsylvania to give rise to personal jurisdiction. *See Newell v. Strategic Admin. Grp., Inc., No. 2:20-CV-00967-JDW, 2020 U.S. Dist. LEXIS 261006, 2020 WL 12770854, at *2 (E.D. Pa. May 6, 2020)* (citing *Abramson v. Agentra, LLC, Civ. A. No. 18-615, 2018 U.S. Dist. LEXIS 212285, 2018 WL 6617819, at * 4 (W.D. Pa. Dec. 18, 2018)*).

Second, process was properly served on Unique. (*See* Doc. No. 62 (approving service of the third amended complaint).) Additionally, in conforming with the Court's Order, Marks properly served Unique with notice of the default judgment hearing by personal service, email, and certified mail with return receipt requested. (Doc. No. 68.) Personal service upon Unique's registered agent was successful. (Doc. No. 68-2.)

telephone solicitation to the telephone number of any subscriber included in such database." *47 U.S.C. § 227(c)(3)(F)*. In turn, the resulting regulation states, "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone **[*8]** solicitations that is maintained by the Federal Government." *47 C.F.R. § 64.1200(c)(2)*.

As discussed in our November 22, 2021 and May 5, 2023 Memoranda, the Court finds that Marks's "allegations pertaining to his cell phone—namely, that he used the cell phone for 'personal purposes, including booking vacations' are sufficient to meet this first element." (Doc. No. 36 at 4-5 (citations omitted); Doc. No. 49 at 5.)

Marks has also now pleaded sufficient facts to show that Unique was the party making the calls. Although he previously failed to state such allegations—for example, by merely stating that he received approximately 43 calls from Unique from November 27, 2018 through the filing of the Complaint (Doc. No. 40 at ¶ 18)—his third amended complaint adds that, "to the best of Plaintiff's recollection, the callers either identified themselves as Unique, or when Plaintiff asked the callers to identify themselves, the callers responded that he or she was calling from 'Unique Lifestyles Vacations'." (Doc. No. 55 at ¶¶ 18, 20.) This provides sufficient detail to support Marks' belief that Unique is the party that made the calls. *See Smith v. American-Amicable Life Ins. Co. of Tex., 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022)* ("In a TCPA action, the plaintiff must allege facts to support his conclusion or **[*9]** belief that defendant is the party that made the calls to plaintiff's phone. . . . In support of his conclusion that the prerecorded calls were made by or on behalf of American-Amicable, Plaintiff alleges that he was informed on both of the prerecorded calls and the subsequent live calls that he was 'speaking with American-Amicable,' and he

was directed to American-Amicable's website during the second prerecorded call. . . . The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable. This inference is also supported by the allegation that both calls concerned insurance benefits—American-Amicable's area of business." (cleaned up)). Thus, the Court finds that the third amended complaint states a *TCPA § 227(c)* claim.

## B. Whether Default Judgment Is Appropriate

As discussed above, when a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable **[*10]** defense, and (3) whether defendant's delay is due to culpable conduct." *210 F.3d at 164*; *see also, e.g.*, *Spurio, 880 F. Supp. at 404* (same).

As to the first factor, prejudice to the plaintiff if default is denied, the Court finds Marks will be prejudiced if default judgment is not entered against Unique. "A plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse." *Mortland v. Castle Hosp., LLC, No. CV 21-1351, 2022 U.S. Dist. LEXIS 149770, 2022 WL 3586661, at *6 (W.D. Pa. Aug. 22, 2022)* (quoting *Cyprus Mines Corp. v. M & R Indus., Inc., No. 14-4590, 2015 U.S. Dist. LEXIS 40180, 2015 WL 1469529, at *8 (D.N.J. Mar. 30, 2015)*). Here, Marks has been attempting to pursue his claims for nearly four years without ever receiving any communication from Unique or any acknowledgment of his claims, despite repeated service of key court filings. Unique's failure to respond could hypothetically continue indefinitely, leaving Marks without any other legal recourse. *See*

*Rayz v. Progressive Ad Sols., LLC, No. CIV.A. 14-7147, 2015 U.S. Dist. LEXIS 73572, 2015 WL 3555310, at *2 (E.D. Pa. June 8, 2015)* (citing *Md. Cas. Co. v. Frazier Family Trust, No. 13-2311, 2014 U.S. Dist. LEXIS 11337, 2014 WL 345218, at *3 (E.D. Pa. Jan. 30, 2014)*) ("Where, as here, a defendant fails to respond to the complaint, the potential delay threatens to carry on indefinitely, and that potential delay establishes prejudice to the plaintiff.").

As to the second factor, whether the defendant has a litigable defense, the Court is unaware of any meritorious defense to Marks' claims that Unique violated the TCPA. As stated above, Marks has stated **[*11]** a claim for violations of the TCPA, and because Unique has not filed an answer, there are no facts to suggest Marks should not recover for those violations. *Cf. Stevens v. Wiggins, Civ. a. No. 90-7038, 1991 U.S. Dist. LEXIS 10985, 1991 WL 152960, at *2 (E.D. Pa. Aug. 6, 1991)* ("A defendant establishes a meritorious defense when defendant's answer, if established at trial, would constitute a complete defense to the action." (quotation marks omitted)). In addition, the Court sees no issues on the face of the third amended complaint with jurisdiction, venue, or the statute of limitations.

Finally, as to the third factor, whether the defendant's delay is due to culpable conduct, "because Defendant was properly served but failed to appear in this action, [ . . . ] the inference is that Defendant's default was the result of culpable conduct." *Frischberg v. Glob. Serv. Grp., LLC, No. 117CV4449NLHKMW, 2018 U.S. Dist. LEXIS 120347, 2018 WL 3472626, at *3 (D.N.J. July 19, 2018)*; *see also Kelly M. v. Luzerne Intermediate Unit, 71 F. App'x 116, 118 (3d Cir. 2003)* ("Jerrytone's conduct in failing to respond to the several personal notices he received from plaintiffs' counsel or to appear at several hearings was culpable."). Accordingly, the Court finds all three *Chamberlain* factors support the entry of default judgment in this case.

## C. Damages

Where a court enters default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Here, Marks argues **[*12]** that he is entitled to treble damages under *§ 227(c)(5)(C)*, totaling $12,000 for the eight alleged telephone calls received after his DNC registration, because Unique willfully called him in violation of the statute. (Doc. No. 65-1 at 9.)

Pursuant to the TCPA, a claimant is entitled to 'received $500 in damages for each . . . violation." *47 U.S.C. § 227(c)(5)(B)*. Additionally, "[i]f the court finds that the defendant *willfully or knowingly* violated the regulations prescribed under this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than [$1,500.]" *Id. § 227(c)(5)(C)* (emphasis added). To demonstrate "willfulness," a party must demonstrate more than just that the mere transmission of the telephone call was itself intentional to warrant treble damages. *Robert W. Mauthe, M.D., P.C. v. MCMC LLC, 387 F. Supp. 3d 551, 570-71 (E.D. Pa. 2019)*. "If we interpreted the statute to require only that the violator knew he was making a call or sending a fax, the statute would have almost no room for violations that are *not* willful or knowing." *Id.* (citing *Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015)*). However, ignorance of the law is insufficient to "insulate[] a defendant from the threat of treble damages." *Id. at 571*. A plaintiff may demonstrate willfulness if he demonstrates that the defendant knew that he did not have the plaintiff's **[*13]** consent to contact him. *Id.* (citing *Kline v. United N. Mortg. Bankers Ltd., No. 4:18-CV-00489, 2018 U.S. Dist. LEXIS 157816, 2018 WL 4404674, at *1 (M.D. Pa. Sept. 17, 2018)*).

Here, Marks alleges that Unique willfully violated the TCPA because (1) Marks joined the DNC Registry in November 2018 (Doc. No. 55 at ¶¶ 17,

19), (2) he sent a letter via certified mail to Unique on January 9, 2020 demanding that they cease and desist from contacting him (*id.* ¶ 21), and (3) he "repeatedly requested" that Unique stop calling him (*id.* ¶ 22). Marks filed an affidavit stating that he repeated oral requests that Unique stop calling on the following dates: August 6, 2017, March 8, 2018, and March 10, 2018. (Doc. No. 16-2 at ¶ 9.) The Court finds that this evidence supports the conclusion that Unique was aware that Marks did not consent to receive the telephone calls listed in the third amended complaint from November 2019 to February 2020. (Doc. No. 55 at ¶ 19.) Therefore, the Court holds that Unique willfully violated the TCPA in calling a person registered on the DNC list who did not consent to telemarketing calls, and grants an award of treble damages for each of the eight calls listed in the third amended complaint. *Compare* [Cleveland v. NextMarvel Inc., TDC-23-1918, 2024 U.S. Dist. LEXIS 9679, 2024 WL 198212, at *3 (D. Md. Jan. 18, 2024)](#) (holding that the defendant willfully violated the TCPA in part because the plaintiff requested that the **[*14]** defendant stop contacting her on six occasions, but was nevertheless sent another telemarketing message) *with KHS Corp. v. Singer Fin. Corp., 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019)* (declining to impose treble damages because the defendant believed that it had received permission from the plaintiff to contact it, and the plaintiff never asked the defendant to stop sending faxed advertisements). Thus, the Court grants treble damages for each of the eight calls listed in the third amended complaint which Marks alleges he received following his registry on the DNC list (*see* Doc. No. 55 at ¶ 19), amounting to $12,000 in total damages.

## IV. CONCLUSION

Because Marks has stated a legitimate cause of action, and demonstrated that default judgment is appropriate, the Court grants his motion for default judgment against Unique.

An appropriate Order follows.

## ORDER

**AND NOW**, this 11th day of March 2024, after considering Plaintiff's Motion for Default Judgment (Doc. No. 65), and the arguments made by Plaintiff's counsel during oral argument on March 6, 2024; and the Clerk of Court having previously entered default against Defendant Unique Lifestyle Vacations, LLC for failure to appear (Doc. No. 63); and for the reasons set forth in the accompanying Memorandum, it is **ORDERED [*15]** that the motion is **GRANTED** and **FINAL JUDGMENT** in the amount of **Twelve Thousand Dollars ($12,000.00)** shall be entered against Defendant Unique Lifestyle Vacations, LLC and in favor of Plaintiff Bruce S. Marks.

**IT IS SO ORDERED**.

/s/ Karen Spencer Marston

KAREN SPENCER MARSTON, J.

---

**End of Document**



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:01 PM EDT

**Job Number:** 281925099

## Document (1)

1. *Katz v. CHW Grp., Inc.*

   **Client/Matter:** -None-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

 Cited

As of: April 18, 2026 8:01 PM Z

# *Katz v. CHW Grp., Inc.*

United States District Court for the Western District of Arkansas, Fayetteville Division

September 29, 2023, Decided; September 29, 2023, Filed

No. 5:22-cv-5198

**Reporter**

2023 U.S. Dist. LEXIS 176206 *; 2023 WL 6445798

SAM KATZ, on behalf of himself and all others similarly situated, PLAINTIFF v. CHW GROUP, INC., d/b/a CHOICE HOME WARRANTY, DEFENDANT

## Core Terms

allegations, telephone, subscriber, prerecorded, residential, phone, implement regulations, do-not-call, numbers, reasonable inference, complaint alleges, definitions, discovery, fail-safe, message, motion to dismiss, artificial voice, telemarketing, regulations, pleaded, motion to strike

**Counsel:** **[*1]** For Sam Katz, on behalf of himself and all others similarly situated, Plaintiff: Corey D. McGaha, LEAD ATTORNEY, Corey D McGaha PLLC, Little Rock, AR; Jeremy M. Glapion, LEAD ATTORNEY, Glapion Law Firm, Wall, NJ.

For CHW Group, Inc., doing business as Choice Home Warranty, Defendant: Conner Eldridge, LEAD ATTORNEY, Eldridge Brooks Partners, Rogers, AR; Emily Aura Neal, LEAD ATTORNEY, Rogers, AR; Paul Heeringa, LEAD ATTORNEY, Manatt, Phelps & Phillips, LLP, Chicago, IL.

**Judges:** P.K. HOLMES, III, UNITED STATES DISTRICT JUDGE.

**Opinion by:** P.K. HOLMES, III

## Opinion

## OPINION AND ORDER

Before the Court are Defendant CHW Group, Inc., d/b/a Choice Home Warranty's ("CHW") motion to dismiss or strike (Doc. 25) and brief in support (Doc. 26), as well as Plaintiff Sam Katz's response in opposition (Doc. 27). For the reasons given below, CHW's motion is DENIED. Additionally, the Court will take this opportunity to explain the basis for its previous ruling on Mr. Katz's motion for partial remand (Doc. 17), which was denied via docket text order on February 17, 2023.[1]

## I. Background.

Mr. Katz brings this putative class action against CHW under the *Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.*, alleging that he has received unlawful telemarketing calls and phone solicitations from **[*2]** CHW. He seeks to represent four different nationwide classes of individuals who have been subjected to the same annoyance. Mr. Katz's operative complaint (Doc. 23) sets forth three separate causes of action. Count 1 alleges that CHW made prerecorded or artificial voice telemarketing calls to Mr. Katz without obtaining his prior express written consent to do so, in violation of *47 U.S.C. § 227(b)(1)(A)(iii)* and various implementing regulations. Count 2 alleges that CHW made telephone solicitations to a phone number of Mr. Katz's that was on the national "Do Not Call" registry, in violation of *47 U.S.C. §*

---

[1] Mr. Katz's motion for partial remand was accompanied by a brief in support (Doc. 18), which CHW opposed (Doc. 20).

*227(c)* and various implementing regulations. And Count 3 alleges that CHW made telemarketing calls to Mr. Katz despite not having an internal written policy pertaining to "Do Not Call" requests, in violation of *47 U.S.C. § 227(c)* and various implementing regulations.

Mr. Katz's lawsuit was originally filed in the Benton County Circuit Court on July 18, 2022, but CHW removed it to this Court on September 27 of that year. *See* Doc. 2. The basis for removal was this Court's federal-question jurisdiction under *28 U.S.C. § 1331*, as the TCPA is a federal statute. *See also 28 U.S.C. § 1441(a)*. On December 2, Mr. Katz filed a motion for partial remand (Doc. 17), asking that Count 3 be sent **[*3]** back to state court. CHW opposed that motion, and this Court denied it without explanation in a docket text order dated February 17, 2023. *See* Doc. 28.

On January 30, 2023, CHW filed a motion to dismiss Mr. Katz's complaint under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted. Alternatively, CHW's motion requested that the complaint's class allegations be stricken under *Rule 12(f)*. That motion has been fully briefed by the parties and is ripe for decision.

## II. Discussion.

Below, in Section II.A, the Court will first provide the basis and explanation for its February 17 order denying Mr. Katz's motion for partial remand. Then, in Subsection II.B, the Court will address CHW's motion to dismiss or strike.

## A. Mr. Katz's Motion for Partial Remand (Doc. 17).

Mr. Katz argued that proceedings on Count 3 of his complaint should be remanded to state court because he *might* not have Article III standing to bring that claim in federal court. The Court emphasizes "might" because Mr. Katz coyly

hedged his bets on this, implying that he perhaps *could* demonstrate Article III standing to bring this claim if he needed to, but that since he does not need to he would really just prefer not to.

To provide some background: Article III of the United States Constitution limits **[*4]** the jurisdiction of federal courts to specific types of "cases" and "controversies." *U.S. Const. art III, § 2*. According to the United States Supreme Court, a lawsuit is not a true "controversy" for Article III unless the plaintiff has "standing" to bring the case, which means the following three elements are all met: (1) the plaintiff suffered an "injury in fact" which was both "concrete and particularized" and "actual or imminent"; (2) there is a causal connection between the injury he suffered and the conduct of which he complains; and (3) it is "likely," rather than merely "speculative," that a favorable decision by the court would redress the injury. *See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*.

Count 3 in Mr. Katz's lawsuit is based on CHW's alleged failure to maintain internal policies and procedures for honoring do-not-call requests. At least one federal appellate court has held that a plaintiff does not have standing to bring this sort of claim unless the plaintiff received calls from the defendant after having previously asked the defendant to stop calling him. *See Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1271-72 (11th Cir 2019)*. The idea here is that if a plaintiff never asked the defendant to stop calling him, then his injury was not caused by the defendant's failure to maintain an internal do-not-call policy; **[*5]** after all, even if the policy existed, it would not have been triggered and the calls would have continued absent a do-not-call request from the plaintiff. *See id.* This Court is not subject to any binding precedent on this particular issue, as the Eighth Circuit has never addressed it.

Mr. Katz makes no secret of the fact that his preferred venue for this lawsuit is the state court

where he originally filed it. Now that he has challenged this Court's jurisdiction over Count 3 of his complaint, Mr. Katz contends that CHW—as the party invoking federal jurisdiction, *see Lujan, 504 U.S. at 561*—bears the burden of showing that Mr. Katz has standing to bring this claim in federal court. *See Mittenthal v. Fla. Panthers Hockey Club, Ltd., 472 F. Supp. 3d 1211, 1222 (S.D. Fla. 2020)*; *see also In re Bus. Men's Assurance Co., 992 F.2d 181, 183 (8th Cir. 1993)*. In his complaint, Mr. Katz artfully avoided making any allegations one way or the other about whether he ever made any such do-not-call request of CHW. Maybe he made the request, or maybe he didn't; but he would prefer not to inform us one way or the other at this time, and instead would like to keep everyone guessing until the big reveal becomes procedurally convenient for him. But for now, since he isn't telling, CHW can't carry its burden and therefore the claim must be remanded to his preferred state-court **[*6]** venue. Or so the argument goes.

This is obvious procedural gamesmanship, and the Court need not countenance it. "Plaintiffs . . . may not omit pertinent facts from their Complaint in an attempt to avoid federal jurisdiction." *Jamil v. Workforce Res., LLC, 2018 U.S. Dist. LEXIS 85066, 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018)*. "Jurisdiction is determined on the basis of the *well-pleaded* complaint. A complaint that is 'artfully pleaded' to avoid federal jurisdiction may be recharacterized as one arising under federal law." *Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1472 (9th Cir. 1984)* (emphasis in original), *overruled on other grounds, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)*. This Court unquestionably had original federal-question jurisdiction at the time of removal, given that the TCPA is a federal statute. Neither party has presented this Court with any good reason to believe it lacks subject-matter jurisdiction.[2]

"Federal courts . . . have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. Jurisdiction existing, . . . a federal court's obligation to hear and decide a case is virtually unflagging." *Sprint Communs., Inc. v. Jacobs, 571 U.S. 69, 77, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013)*. Therefore, Mr. Katz's motion to remand was denied.

**B. CHW's Motion to Dismiss or Strike (Doc. 25)**.

Turning now to CHW's pending motion to dismiss or strike—as previously mentioned, CHW asks that Mr. Katz's complaint be dismissed **[*7]** under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted. Alternatively, CHW requests that the complaint's class allegations be stricken under *Rule 12(f)*.

**1. Legal Standard**.

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012)* (quoting *United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)*). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quotations omitted). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009)*. However, "*Twombly* and *Iqbal* did not abrogate the notice pleading standard of *Rule 8(a)(2)*. Rather, those decisions confirmed that *Rule 8(a)(2)* is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for a

---

[2] Notably, Mr. Katz never says that he *lacks* standing to bring any of his claims; he just argues that at this early stage of the litigation, his standing to bring Count 3 in federal court "is in doubt." *See* Doc. 18,

misconduct alleged.'" *Hamilton v. Palm, 621 F.3d 816, 817 (8th Cir. 2010)* (quoting *Iqbal, 556 U.S. at 678*). Where the facts alleged, taken as true, "raise a reasonable expectation that discovery will reveal evidence" in support of a plaintiff's claim, the Court should deny a motion to dismiss. *Twombly, 550 U.S. at 556*.

As for motions to strike, "striking a party's pleadings [*8] is an extreme measure, and, as a result . . . motions to strike under *Fed. R. Civ. P. 12(f)* are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000)*. "[I]n many cases, a motion to strike or dismiss a plaintiff's class allegations prior to discovery on class-related issues and prior to the submission of a motion for class certification would be premature." *Knowles v. Std. Fire Ins. Co., 2013 U.S. Dist. LEXIS 173370, 2013 WL 6497097, at *2 (W.D. Ark. Dec. 11, 2013)*. However, this Court "has 'liberal discretion' when deciding whether to strike any portion of a pleading" under *Rule 12(f)*, and "may strike class allegations when they involve 'a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion.'" *Id.* A court may also strike or dismiss class claims that do not meet the requirements of *Rule 23*. *See id.*

## 2. Analysis.

To refresh the reader's memory: Count 1 of Mr. Katz's complaint alleges that CHW made prerecorded or artificial voice telemarketing calls to Mr. Katz without obtaining his prior express written consent to do so, in violation of *47 U.S.C. § 227(b)(1)(A)(iii)* and various implementing regulations. Count 2 alleges that CHW made telephone solicitations to a phone number of Mr. Katz's that was on the national "Do Not Call" registry, in violation of *47 U.S.C. § 227(c)* and various implementing regulations. [*9] And Count 3 alleges that CHW made telemarketing calls to Mr. Katz despite not having an internal written

policy pertaining to "Do Not Call" requests, in violation of *47 U.S.C. § 227(c)* and various implementing regulations.

CHW advances a variety of arguments as to why these counts should be dismissed. Several of these arguments can be quickly rejected, so the Court will address those weaker arguments first.

CHW's weakest argument by far is that the complaint alleges insufficient facts to support a reasonable inference that CHW directly placed the calls at issue or had an agency relationship with some third party who placed these calls on its behalf. This is obviously wrong. Among other things, Mr. Katz's complaint alleges that CHW explicitly "identified itself by name on several of the calls" to Mr. Katz, *see* Doc. 23, ¶ 54, and that, for example, one call began with a prerecorded message stating that "[t]his call is being placed on behalf of Choice Home Warranty for telemarketing purposes," *id.* at ¶ 56, that another call was from a live caller who identified himself as "Richard Kelly from CHW," *id.* at ¶ 57, and that another prerecorded call had a message stating "[h]ey, this is Jen from CHW," *id.* at ¶ [*10] 58. The complaint also alleges that Mr. Katz received numerous calls from an entity identifying itself as "Complete Home Services," but that within a minute of receiving one such call, the person with whom Mr. Katz spoke on that call sent Mr. Katz an email thanking him for his interest in CH*W* and advertising CH*W*'s services. *See id.* at ¶¶ 65-75. The Court does not see what more could possibly be necessary or useful for supporting a reasonable inference at the pleading stage that CHW was, indeed, the entity ultimately responsible for placing these calls to Mr. Katz.

CHW's only other argument specific to Count 1 is that the complaint alleges insufficient facts to support a reasonable inference that Mr. Katz ever received any prerecorded or artificial voice calls from CHW. The Court disagrees. The complaint alleges, among other things, that Mr. Katz "received numerous prerecords" from CHW "which

played identical artificial voice messages." *See id.* at ¶ 64. It further explains that by "prerecorded" Mr. Katz means "calls that were non-interactive and sounded as if they were actual pre-created recordings (compare to one's outgoing voicemail message)," and that by "artificial" Mr. Katz means **[*11]** "calls that were either interactive or appeared to be computer- or artificially-generated during the call (compare to a customer service system that invites you to speak responses and answers accordingly)." *Id.* at n.4. The complaint states that "Mr. Katz is aware that these telephone calls used a prerecorded or artificial voice because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter." *See id.* at ¶ 80. That is good enough. Virtually everyone can quickly recognize when they are speaking with a non-human on the phone, and Mr. Katz has provided more than sufficient detail to persuade the Court that he is no outlier on that front. Federal notice-pleading standards do not require his complaint to provide microscopic analysis of these calls' qualities. *See, e.g., Johansen v. Vivant, Inc., 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)* (it is sufficient for complaint to describe "in laymen's terms" the basis for his belief that the messages were pre-recorded, for example, by alleging that the voice sounded "robotic," or that there was a "lack of human response when he attempted to have a conversation with the 'person,'" **[*12]** or that the message's content was "generic"); *cf. Manopla v. Sansone Jr.'s 66 Automall, 2020 U.S. Dist. LEXIS 74792, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020)* (implying that it would have been sufficient for plaintiff's complaint simply to allege that the call's pre-recorded nature was "patently obvious to the naked ear when listening to the message").

Another weak argument from CHW pertains specifically to Count 3: CHW contends that the complaint alleges insufficient facts to support a reasonable inference that CHW failed to maintain internal do-not-call policies. The Court disagrees.

The complaint alleges that during a phone conversation with "Marc at Choice Home Warranty sales," Mr. Katz "requested that Marc provide Plaintiff with a copy of Defendant's Do-Not-Call policy," and that "Marc stated he would provide this policy in an email and then hung up," but then failed to do so. *See* Doc. 23, at ¶¶ 65-72. The complaint also alleges, in detail, that at least one other individual has requested, during a phone call with a CHW representative named "Dennis," that CHW provide them with a copy of its do-not-call policy and that after much discussion CHW refused to do so. *See id.* at ¶¶ 112-19. At this early stage of litigation, this is sufficient. Mr. Katz has alleged that CHW failed to maintain **[*13]** an internal written do-not-call policy, and he has alleged specific facts supporting his belief to that effect. These facts are the most that could ever reasonably be expected to be available, without the benefit of discovery, to an ordinary person who is not an employee of CHW. Some issues in this case will doubtlessly involve very complicated discovery; but establishing the truth or falsity of these particular allegations about when and whether CHW's internal written do-not-call policy existed should be a very simple, straightforward, and non-burdensome affair.

The Court now turns to CHW's sole remaining argument for dismissal of Counts 2 and 3, which is that Mr. Katz is not a "residential telephone subscriber" to the phone numbers at which CHW called him. This is significant because the regulations on which Mr. Katz's claims are based apply only to calls made to "residential telephone subscribers" and "wireless telephone numbers." *See 47 C.F.R. § 64.1200(c)-(e)*. Mr. Katz does not contend his phone numbers in this case are wireless, so his only route to success in this case requires that he be a "residential telephone subscriber" to the numbers at issue here.

Disappointingly, this term is not defined in the **[*14]** TCPA nor in its implementing regulations. CHW contends that for a person to be a "residential telephone subscriber" within the

meaning of these regulations, the number in question must be "actually used for residential purposes," *see* Doc. 26, p. 17 (internally numbered as p. 8), and must be "the primary means of reaching the individual at their residence—that is, there is no other landline or phone at their residence which is instead the primary means of reaching them," *see, e.g., Mantha v. Quotewizard.com, LLC, 2022 U.S. Dist. LEXIS 19502, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022)*. Mr. Katz, by contrast, advocates for a more expansive definition, which is that a "residential telephone subscriber" is a "subscriber to a telephone exchange service that is not a business subscriber." *See, e.g., Rose v. New Tsi Holdings, Inc., 2022 U.S. Dist. LEXIS 56525, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022)*. Apparently the Eighth Circuit has never addressed this issue; and each party cites a smattering of unpublished district court cases from around the country in support of its preferred definition.

The Court favors Mr. Katz's preferred construction, for reasons both textual and purposive. First, with respect to the text, the Court finds nothing in the language of the organic statute or the implementing regulations to support the *Mantha* court's "primary means of reaching the individual at their residence" **[*15]** test. Indeed, quite the opposite: the regulations at issue here explicitly extend their protection not only to "residential telephone subscribers" but also to "wireless telephone numbers." *See 47 C.F.R. § 64.1200(e)*. On this point, the Court agrees with no less an authority than the Federal Communications Commission ("FCC") itself, which is the agency tasked with promulgating and enforcing these regulations. *See 18 FCC Rcd. 14014, 14038, ¶ 35* ("[T]here is nothing in *section 227* to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA.").

Second, although the TCPA and its implementing regulations do not define "residential telephone subscriber," the FCC has provided a definition for that term in a different, but not distant, Subpart of

the federal regulatory code—and that definition is Mr. Katz's preferred one: "a subscriber to telephone exchange service that is not a business subscriber." *47 C.F.R. § 64.2305(d)*. Here, the Court would apply the canon of construction that identical language in related statutes or regulations presumptively carries a consistent meaning. *See United States v. Davis, 588 U.S. ___, 139 S. Ct. 2319, 2329, 204 L. Ed. 2d 757 (2019); Black & Decker Corp. v. C.I.R., 986 F.2d 60, 65 (4th Cir. 1993)* ("Regulations, like statutes, are interpreted according to canons of construction.").

Third, another longstanding canon of **[*16]** construction instructs that to whatever extent remedial statutes are vague or ambiguous, they generally should be liberally construed in favor of the parties they were designed to protect. *See, e.g., Lustgraaf v. Behrens, 619 F.3d 867, 873 (8th Cir. 2010)* (*Securities and Exchange Act*); *Welsh v. Burlington N., Inc., Emp. Benefits Plan, 54 F.3d 1331, 1342 (8th Cir. 1995)* (*ERISA*). "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013)* (internal citations omitted); *see also Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC, 950 F.3d 959, 967 (7th Cir. 2020)* (same); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc., 847 F.3d 92, 96 (2d Cir. 2017)* (same). Arbitrarily importing a requirement that a number be the primary means of reaching an individual at their residence would not comport with this canon.

None of this is to say that the actual use a subscriber makes of a telephone number is irrelevant to whether he is a residential or business subscriber. That may turn out to be a fruitful topic of discovery.[3] But at this stage, the critical question

---

[3] CHW has submitted incomplete transcripts from depositions of Mr. Katz that were taken in earlier lawsuits, and argues that these show it will be impossible for him to prove that he actually uses the phone

is whether Mr. Katz has alleged sufficient facts in his complaint to support a reasonable inference that he is not a business subscriber. The Court concludes that he has. He alleges that both numbers "are subscribed to him personally rather than a business and [are] on a plan intended for individuals rather [*17] than businesses." *See* Doc. 23, ¶¶ 39-40. He also alleges that both numbers "are, and at all times were, used primarily as residential and personal numbers." *Id.* at ¶ 102. While perhaps a little thin, these allegations are sufficient at this early stage to support the reasonable inference that Mr. Katz does not primarily use these numbers for business purposes.

Having rejected all of CHW's arguments for dismissal,[4] the Court turns finally to the issue of whether Mr. Katz's class allegations should be stricken from his complaint. CHW advances two arguments on this topic: first, that the class definitions are improper "fail-safe" classes; and second, that common questions of fact and law do not predominate. The Court has no difficulty rejecting the second argument as premature at this stage; as already noted, motions to strike class allegations at the pleading stage "are viewed with disfavor and are infrequently granted." *Stanbury Law Firm, 221 F.3d at 1063*. "[J]udges in the Eighth Circuit . . . typically deny as premature motions to strike class allegations filed significantly in advance of any possible motion for class certification." *In re Folgers Coffee, 2021 U.S. Dist. LEXIS 253793, 2021 WL 7004991, at *4 (W.D. Mo. Dec. 28, 2021)*. "At this early stage in litigation, prior to any class discovery or a motion for [*18] class certification, the Court cannot determine

---

numbers at issue for residential purposes. Given their incomplete nature and that they are being offered for the truth of the matters within them and inferences to be drawn from them, it would be inappropriate for the Court to take judicial notice of them at this stage of the proceedings. *See Insulate SB, Inc. v. Advanced Finishing Sys., 797 F.3d 538, 543 n.4 (8th Cir. 2015)*.

[4] CHW also argues that Mr. Katz lacks prudential standing to bring Counts 2 and 3 in this lawsuit, but the only basis for this argument is the one the Court has already rejected regarding the definition of "residential telephone subscribers."

whether individualized matters will predominate over common issues." *Bishop v. Delaval Inc., 2020 U.S. Dist. LEXIS 146613, 2020 WL 4669185, at *2 (W.D. Mo. Jan. 28, 2020)*.

As for CHW's first argument regarding fail-safe classes, the Court is presently unpersuaded. A fail-safe class is one that is defined such that membership in the class depends upon having a valid claim on the merits. *See Ford v. TD Ameritrade Holding Corp., 995 F.3d 616, 624 (8th Cir. 2021)*. Fail-safe classes are impermissible because they "allow[] putative class members to seek a remedy but not be bound by an adverse judgment." *Id.* They are also "unmanageable, *see Fed. R. Civ. P. 23(b)(3)(D)*, because the court cannot know to whom notice should be sent." *Id.* (internal quotation marks omitted).

Mr. Katz contends that CHW's fail-safe argument is based on CHW's re-characterization of Mr. Katz's class definitions rather than on the actual language of the class definitions. The Court agrees with Mr. Katz, and would add that those re-characterizations seem to be procrustean attempts at fitting the class definitions into favorable (for CHW) caselaw rather than applying the caselaw to the class definitions that Mr. Katz has proposed. Specifically, every single case that CHW cites in which TCPA class allegations were stricken on fail-safe grounds did so because the classes [*19] included only individuals who did not consent to the receipt of phone calls. *See Sauter v. CVS Pharmacy, Inc., 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076 (S.D. Ohio May 7, 2014)*; *Lindsay Transmission, LLC v. Office Depot, Inc., 2013 U.S. Dist. LEXIS 9554, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013)*; *Pepka v. Kohl's Dep't Stores, Inc., 2016 U.S. Dist. LEXIS 186402, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)*; *Dixon v. Monterey Fin. Servs. Inc., 2016 U.S. Dist. LEXIS 111687, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016)*; *Boyer v. Diversified Consultants, Inc., 306 F.R.D. 536 (E.D. Mich. 2015)*; *Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610 (E.D. Penn. 2015)*; *Martinez v. TD Bank USA, N.A., 2017 U.S. Dist.*

*LEXIS 101979, 2017 WL 2829601 (D.N.J. June 30, 2017)*; *Bryant v. King's Creek Plantation, L.L.C., 2020 U.S. Dist. LEXIS 226044, 2020 WL 6876292 (E.D. Va. June 22, 2020)*. But none of Mr. Katz's proposed class definitions say anything at all about whether the class members ever consented to receive phone calls, *see* Doc. 23, ¶ 139, although CHW inexplicably asserts that they do, *see* Doc. 26, p. 30 (internally numbered as p. 21).

CHW also advances fail-safe objections to a few other aspects of Mr. Katz's proposed class definitions, but does not provide any judicial precedent that meaningfully addresses these other objections. If the Court is not to have the benefit of any caselaw regarding particular class definition language, then it is all the more important that the Court be informed by discovery and by more fulsome class-certification briefing on the topic. Therefore, the Court in its discretion will deny CHW's request to strike Mr. Katz's class allegations, without prejudice to its right to raise these arguments again at the class-certification stage.

### III. Conclusion.

IT IS THEREFORE ORDERED that Defendant CHW Group, Inc., d/b/a Choice Home Warranty's motion to dismiss or strike (Doc. 25) is DENIED.

IT IS SO ORDERED this 29th day of September, 2023.

*/s/ P. [\*20]  K. Holmes, III*

P.K. HOLMES, III

U.S. DISTRICT JUDGE

---

**End of Document**



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:02 PM EDT

**Job Number:** 281925108

## Document (1)

1. *Smith v. American-Amicable Life Ins. Co.*

   **Client/Matter:** -None-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

|              Content Type              |              Narrowed by              |
| -------------------------------------- | ------------------------------------- |
|                                        | -None-                                |



⚠️ Caution
As of: April 18, 2026 8:02 PM Z

# *Smith v. American-Amicable Life Ins. Co.*

United States District Court for the Eastern District of Pennsylvania

April 4, 2022, Decided; April 4, 2022, Filed

CIVIL ACTION NO. 22-333

## Reporter

2022 U.S. Dist. LEXIS 62115 *; 2022 WL 1003762

STEWART SMITH, individually and on behalf of all others similarly situated v. AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS

## Core Terms

prerecorded, alleges, phone, telephone, message, residential, motion to dismiss, telemarketing, speaking

**Counsel:  [*1]** For STEWART SMITH, Plaintiff: ANTHONY PARONICH, PARONICH LAW, P.C., HINGHAM, MA; JEREMY C. JACKSON, Bower Law Associates, PLLC, State College, PA.

For AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, Defendant: FREDERICK P. SANTARELLI, LEAD ATTORNEY, ELLIOTT GREENLEAF, P.C., UNION MEETING CORPORATE CENTER V, BLUE BELL, PA; STEVEN C. TOLLIVER JR., ELLIOTT GREENLEAF, P.C., BLUE BELL, PA.

**Judges:** MICHAEL M. BAYLSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MICHAEL M. BAYLSON

## Opinion

## MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

**Baylson, J.**

## I. Introduction

Defendant American-Amicable Life Insurance Company of Texas has filed a Motion to Dismiss (ECF 7) in this case arising from alleged calls made by Defendant to Plaintiff Stewart Smith. Plaintiff alleges that these calls invaded his privacy and violated his rights under the *Telephone Consumer Protection Act*.

## II. Background and Factual Allegations

Smith is a resident of Pennsylvania whose phone number is on the National Do Not Call Registry. American-Amicable is a life insurance company based in Texas. (Compl. ¶¶ 6-7, 26.) As alleged by Plaintiff, the events giving rise to this case are as follows.

On June 7, 2021, Smith received a phone call that he alleges began with a prerecorded message regarding available **[*2]** insurance benefits. Smith was informed that he was speaking with American-Amicable and was given a callback number. Smith was not interested and ended the call. (Id. ¶¶ 30-35.)

Smith then received another call on June 9, 2021, that again began with a prerecorded message regarding available insurance benefits and on which he was again informed that he was speaking with American-Amicable. Smith informed the caller that he would contact them if he was interested. (Id. ¶¶ 36-42.) Following these two phone calls, Smith

received two live calls regarding American-Amicable products from the callback number he was given on the June 7 phone call. (Id. ¶¶ 43-44.)

Plaintiff brought a putative class action against Defendant, alleging that the calls violated the TCPA, *47 U.S.C. § 227, et seq.* Plaintiff brings two Counts. Count I alleges that American-Amicable violated the TCPA by making prerecorded, non-emergency calls to Smith. (Id. ¶¶ 59-63). Count II alleges that American-Amicable violated the TCPA and its implementing regulations by, directly or though an agent, making multiple telemarketing calls within a 12-month period to a phone number registered in the National Do Not Call Registry. (Id. ¶¶ 64-66.)

Plaintiff seeks **[*3]** to certify and represent a separate class for each Count. The Count I class would consist of all people in the United States who, within the last four years, received a pre-recorded call on their cell phone from or on behalf of American-Amicable. The Count II class would consist of all people in the United States who, within the last four years, received two or more telemarketing calls on their residential landline from or on behalf of American-Amicable and to a telephone number that had been registered in the National Do Not Call Registry for more than thirty days at the time of the call. (Id. ¶ 49.)

Defendant seeks dismissal of both Counts. Plaintiff filed a Response (ECF 9), and Defendant filed a Reply (ECF 10).

### III. Legal Standard

In considering a motion to dismiss under *Rule 12(b)(6)*, the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)* (quoting *Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.2002)*). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,'

thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Id. (quoting *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009)*). Importantly, "threadbare **[*4]** recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

### IV. Discussion

### a. Traceability of Calls to Defendant

In a TCPA action, the "plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's . . . phone." *Smith v. Direct Building Supplies, LLC, No. CV 20-3583, 2021 U.S. Dist. LEXIS 193657, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021)* (Schiller, J.) (quoting *Scruggs v. CHW Grp., Inc., No. CV 20-48, 2020 U.S. Dist. LEXIS 253431, 2020 WL 9348208, at *9 (E.D. Va. Nov. 12, 2020)*). Defendant contends that Plaintiff has failed to plead facts sufficient to establish that the prerecorded calls are traceable to American-Amicable. (MtD 7-15.)

In support of his conclusion that the prerecorded calls were made by or on behalf of American-Amicable, Plaintiff alleges that he was informed on both the prerecorded calls and the subsequent live calls that he was "speaking with American-Amicable," and he was directed to American-Amicable's website during the second prerecorded call. (Compl. ¶¶ 31-39.) Plaintiff further alleges that he was given a callback number with a Texas area code during the first prerecorded call, suggesting, in Plaintiff's view, a connection to the Texas-based American-Amicable. (Compl. ¶¶ 31-33.)

The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was **[*5]** speaking with American-Amicable supports a plausible inference that Smith

was indeed called by or on behalf of American-Amicable. This inference is also supported by the allegation that both calls concerned insurance benefits—American-Amicable's area of business. See *Direct Building Supplies, 2021 U.S. Dist. LEXIS 193657, 2021 WL 4623275, at *3* (discussing how "details specifying how [the plaintiff] knew that [the defendant] in fact placed these calls" may include that "the persons with whom [the plaintiff] spoke identified themselves as representatives of [the defendant], or the services these persons attempted to sell were" the defendant's services).

### b. Pre-Recorded Message Claim

The TCPA provides in relevant part that it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *47 U.S.C. § 227(b)(1)(A)*. Defendant argues that Plaintiff has failed to plead sufficient facts to establish that the allegedly prerecorded calls he received were, in fact, prerecorded. (MtD 16-18.) Plaintiff counters that his Complaint addresses the "tenor, nature, or circumstances" **[*6]** of the call such as to give rise to a plausible inference that the calls were prerecorded. (MtD Resp. 9-10.)

Allegations that may support an inference that a call was prerecorded may include 1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called. *Smith v. Pro Custom Solar LLC, No. CV1920673KMESK, 2021 U.S. Dist. LEXIS 8616, 2021 WL 141336, at *2-3 (D.N.J. Jan. 15, 2021)*; see also *Johansen v. Vivant, Inc., No. 12 C 7159, 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)* (discussing how "[a] TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, [or] the generic content of the message he received").

Plaintiff's allegations regarding the allegedly prerecorded calls are very thin. Plaintiff alleges that the caller ID for both calls was "spoofed" to make them falsely appear to be coming from a local number, which Plaintiff characterizes as "further indication of the *en masse* nature of the calling." (Compl. ¶¶ 28-29.) This allegation is itself conclusory, as Plaintiff does not aver his basis for concluding that the caller ID was "spoofed." Nor does Plaintiff cite any support for **[*7]** the premise that a "spoofed" caller ID is distinct to prerecorded calls.

Plaintiff provides no further allegations to support his conclusion that the June 7 and June 9 calls were prerecorded. To the contrary, Plaintiff describes the substance of the allegedly prerecorded calls as essentially the same as the alleged live calls he received, even alleging that he was informed on both a prerecorded call and the live calls that he was speaking with a person named "Isaac." (Id. ¶¶ 30-44.) See *Trumper v. GE Cap. Retail Bank, 79 F. Supp. 3d 511, 513 (D.N.J. 2014)* (dismissing a TCPA claim in which the plaintiff "provide[d] no factual allegations suggesting that that the voice on the other end of the line was prerecorded").

Because Plaintiff's allegations do not provide the basis for a plausible inference that the allegedly prerecorded calls he received were actually prerecorded, the Court will dismiss Count I without prejudice and with leave to amend. Should Plaintiff choose to amend his Complaint, he must do more than "merely proffer[] the content of the message[s] and conclusory allege[] that Defendant utilized a pre-recorded message," as "[s]uch bare-bones, conclusory allegations are insufficient to survive a motion to dismiss." *Manopla v. Sansone Jr.'s 66 Automall, No. CV1716522FLWLHG, 2020 U.S. Dist. LEXIS 74792, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020)*.

### c. National Do Not Call Registry [*8] Claim

The TCPA, in conjunction with it implementing regulations, prohibits an entity, or those acting on its behalf, from initiating multiple telemarketing calls in a twelve-month period to a "residential telephone subscriber who has registered his or her telephone number" in the National Do Not Call Registry. *47 U.S.C. § 227(c)(5)*; *47 C.F.R. § 64.1200(c)*.

Plaintiff does not plead in his Complaint that the cell phone on which he received the alleged calls is his residential phone. See *Smith v. Vision Solar LLC, No. CV 20-2185, 2020 U.S. Dist. LEXIS 172224, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)* (Baylson, J.) (dismissing a similar TCPA claim because "[p]laintiffs never pleaded that Smith's cell phone line in question is his residential phone, as required"). Although Plaintiff contends in his Response that he "clearly alleges that his cellular telephone is his residential telephone line," (MtD Resp. 10), he must make this factual allegation in his Complaint if he wishes the Court to consider it. See *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)* ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Accordingly, the court will dismiss Count II without prejudice and with leave to amend. Additionally, although the Court is not ruling at this stage on whether to certify Plaintiff's proposed Count II class, the **[*9]** Court notes that Plaintiff is not a member of his proposed class as the Complaint currently stands; the proposed class consists of people who received telemarketing calls on their residential landline, whereas Plaintiff alleges only that he received telemarketing calls on his cell phone. See *Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 360 (3d Cir. 2013)* ("It is axiomatic that the lead plaintiff must fit the class definition.").

### V. Conclusion

For the foregoing reasons, the Court will dismiss Plaintiff's Complaint without prejudice and with leave to amend. An appropriate Order follows.

### ORDER RE: DEFENDANT'S MOTION TO DISMISS

**AND NOW**, this 4th day of April, 2022, for the reasons in the foregoing Memorandum and after careful consideration of Defendant American-Amicable Life Insurance Company of Texas's Motion to Dismiss (ECF 7), Plaintiff Stewart Smith's Response (ECF 9), and Defendant's Reply (ECF 10), it is hereby **ORDERED** that Defendant's Motion is **GRANTED**. Plaintiff's Complaint is **DISMISSED**, without prejudice and with leave to file an amended complaint within twenty-one (21) days.

**BY THE COURT**:

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON, U.S.D.J.**

End of Document



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:03 PM EDT

**Job Number:** 281925131

## Document (1)

1. *Taylor v. Suntuity Solar L.L.C.*

   **Client/Matter:** -None-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

|                   Content Type | Narrowed by |
|-------------------------------|-------------|
|                               | -None-      |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

⚠️ Caution
As of: April 18, 2026 8:03 PM Z

# *Taylor v. Suntuity Solar L.L.C.*

United States District Court for the Middle District of Florida, Tampa Division

March 6, 2024, Decided; March 6, 2024, Filed

Case No: 8:23-cv-00694-MSS-AEP

## Reporter

2024 U.S. Dist. LEXIS 38838 *; 2024 WL 964199

ROBIN TAYLOR, Plaintiff, v. SUNTUITY SOLAR LIMITED LIABILITY COMPANY, Defendants.

**Subsequent History:** Stay lifted by, Motion denied by, Without prejudice *Taylor v. Suntuity Solar Ltd. Liab. Co., 2024 U.S. Dist. LEXIS 130387 (M.D. Fla., July 24, 2024)*

## Core Terms

phone call, telemarket, motion to dismiss, class member, dialer, extrinsic, telephone, concrete, solar, factual allegations, phone number, registry, unwanted, solicit, dial

**Counsel:** [*1] For Robin Taylor, on behalf of herself and others similarly situated, Plaintiff: Avi Robert Kaufman, LEAD ATTORNEY, Rachel Elizabeth Kaufman, Kaufman P.A., Coral Gables, FL.

For Suntuity Solar Limited Liability Company, Defendant: Michelle C. Clerkin, LEAD ATTORNEY, Spiro Harrison & Nelson, Miami Beach, FL; Adlai J Small, PRO HAC VICE, Spiro Harrison & Nelson, NJ, Montclair, NJ.

**Judges:** MARY S. SCRIVEN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MARY S. SCRIVEN

## Opinion

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant Suntuity Solar Limited Liability Company's Amended Motion to Dismiss, (Dkt. 32), Plaintiff's response in opposition thereto, (Dkt. 36), and Defendant's reply. (Dkt. 39) Upon consideration of all relevant filings, case law, and being otherwise fully advised, Defendant's Amended Motion to Dismiss is **DENIED**.

## I. BACKGROUND

Plaintiff Robin Taylor initiated this action against Defendant Suntuity on March 28, 2023. (Dkt. 1) Plaintiff filed the Amended Complaint on June 21, 2023. (Dkt. 18) In the Amended Complaint, Plaintiff alleges the following facts. Plaintiff's phone number has been listed on the National Do Not Call List since January 9, 2009.[1] (Id. at ¶ 19) Plaintiff uses this phone number [*2] for personal purposes; it is not associated with a business. (Id. at ¶ 20-21) Plaintiff has never sought out or solicited information regarding Defendant's services. (Id. at ¶ 22) Defendant never obtained Plaintiff's express written consent to call Plaintiff. (Id. at ¶ 64) Nonetheless, Plaintiff received calls from Defendant on January 31, 2023, and February 8, 2023. (Id. at ¶ 24)

---

[1] Consumers may register their phone numbers with the National Do Not Call List to indicate their desire not to receive solicitations at those numbers. ***47 C.F.R. § 64.1200(c)(2)***. It is a violation of the TCPA for a person or entity to initiate a phone solicitation to a person who has registered her phone number on the National Do Not Call List. Id.

Plaintiff determined both calls were from Defendant because they both came from Caller ID (941) 213-5036 (the "Caller ID"). (Id. at ¶ 25) Both telemarketing calls followed the same script. (Id. at ¶ 33) During the calls, the telemarketer asked Plaintiff questions to determine whether she qualified for Defendant's solar services. (Id. at ¶ 34) For example, Plaintiff was asked whether she owned a home, what her credit score was, and where she lived. (Id. at ¶ 35) Both telemarketers initially provided Plaintiff with generic, fake names, such as "solar of America." (Id. at ¶ 36) The only real company identified during the calls was Defendant Suntuity Solar Limited Liability Company. (Id. at ¶ 37) The February 8 call resulted in Plaintiff's receipt of an email from a call center agent, Jessica Rocha, which confirmed **[*3]** Plaintiff spoke with a representative of Defendant during the call. (Id. at ¶ 38)

The calls were made using the Ytel dialer. (Id. at ¶ 26) The Ytel dialer is a predictive dialer that selects telephone numbers from a preloaded list, dials them, and then connects the receiver to a live call center employee only when the call is answered by a consumer. (Id. at ¶ 27-28) Plaintiff noticed a delay between the moment she answered the phone and the moment the call center employee began speaking during each of the calls she received from Defendant. (Id. at ¶ 30) Plaintiff attributes this delay to the Ytel dialer connecting Plaintiff to a live call center employee only after she answered the phone and began speaking. (Id. ¶ 28-30)

On January 31, 2023, Plaintiff informed the caller she was not interested in receiving information about Defendant's services. (Id. at ¶ 31) Nevertheless, she received another call on February 8, 2023. (Id. at ¶ 32)

Other individuals have reported the Caller ID as a "robocaller." (Id. at ¶ 40) Plaintiff initiated this action on behalf of herself and the following three classes:

Florida Telephone Solicitation Act Autodial Class: All persons in the U.S., who, (1)

received **[*4]** a telephonic sales call made to or from Florida regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

Florida Telephone Solicitation Act Do Not Call Class: All persons in the U.S., who, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) to a number on Florida's no sales solicitation calls list (3) since July 1, 2021.

Telephone Consumer Protection Act Do Not Call Registry Class: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

(Id. at ¶ 42) Plaintiff alleges the members of the classes are so numerous that their individual joinder is impracticable. (Id. at ¶ 45) Specifically, Plaintiff asserts, based on the technology Defendant used to call Plaintiff, Defendant makes calls "en masse," therefore, the members of the class number in the thousands. (Id. at ¶ 46) Plaintiff alleges the common legal and factual questions **[*5]** include whether Defendant has violated the Telephone Consumer Protection Act (the "TCPA") or the Florida Telephone Solicitation Act (the "FTSA") and whether the class members are entitled to actual and/or statutory damages for the alleged violations. (Id. at ¶ 50) Plaintiff alleges her claims are typical of the claims of the class members because she and the other class members received unsolicited sales calls from Defendant without consent. (Id. at ¶ 51) Plaintiff alleges she is an adequate representative of the classes because her interests do not conflict with the interests of the class members, she has retained competent counsel, and she intends to prosecute this action vigorously. (Id. at ¶ 52) Finally, Plaintiff alleges the class

action mechanism is superior to other available means for the fair and efficient adjudication of the class members' claims because many of the class members likely lack the ability or resources to undertake the burden and expense of individually prosecuting this action. (Id. at ¶ 54-55) In this case, individualized litigation will increase the delay and expense to all parties, as well as the burden on the judicial system. (Id. at ¶ 56) Additionally, individualized litigation presents the risk of **[*6]** inconsistent or contradictory judgments among the class members. (Id. at ¶ 57)

Based on these allegations, Plaintiff asserts three counts against Defendant: violation of the FTSA on behalf of Plaintiff and the FTSA Autodial Class Members; violation of the FTSA on behalf of Plaintiff and the FTSA National Do Not Call Registry Class; and violation of the TCPA on behalf of Plaintiff and the National Do Not Call Registry Class. Plaintiff seeks injunctive relief prohibiting Defendant from calling phone numbers listed on the National Do Not Call Registry to advertise their goods or services, except for emergency purposes. She also seeks a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or the FTSA and $1,500 for each knowing or willful violation. Finally, Plaintiff requests an order certifying this action to be a proper class action pursuant to _Fed. R. Civ. P. 23_. She requests the Court establish an appropriate class, find Plaintiff is a proper representative of the class, and appoint the law firms and lawyers representing Plaintiff as counsel for the class.

Defendant moves to dismiss the Amended Complaint. (Dkt. 32) First, Defendant argues Plaintiff **[*7]** lacks standing to bring her claims under the FTSA and the TCPA because she has not suffered a concrete injury. Additionally, Defendant argues Plaintiff fails to allege sufficient facts to state a claim under the FTSA. Finally, Defendant argues Plaintiff fails to plead facts to show Defendant is directly or vicariously liable for the alleged calls. For these reasons, Defendant also

requests dismissal of the putative class members' claims.

## II. LEGAL STANDARD

### a. _Federal Rule of Civil Procedure 12(b)(1)_

A motion to dismiss for lack of subject matter jurisdiction under _Federal Rule of Civil Procedure 12(b)(1)_ may be asserted on facial or factual grounds. _Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009)_. When considering a facial challenge, a court only considers the allegations in the complaint. Id. However, where a defendant raises a factual attack under _Rule 12(b)(1)_, the district court may consider evidence extrinsic to the complaint, including deposition testimony and affidavits. Id. In a factual attack, the court does not take the plaintiff's allegations as true. _Hossfeld v. Am. Fin. Sec. Life Ins. Co., 544 F. Supp. 3d 1323, 1329 (S.D. Fla. June 16, 2021)_. The plaintiff bears the burden of establishing subject matter jurisdiction. Id.

### b. _Federal Rule of Civil Procedure 12(b)(6)_

To survive a motion to dismiss for failure to state a claim under _Federal Rule of Civil Procedure 12(b)(6)_, a complaint must meet an exceedingly low threshold of sufficiency. _Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983)_. A plaintiff must plead only enough facts to **[*8]** state a claim to relief that is plausible on its face. _Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560-64, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)_ (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in _Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)_). Although a complaint challenged by a _Rule 12(b)(6)_ motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic

recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007)* (quoting *Twombly, 550 U.S. at 545*). In light of a motion to dismiss, to evaluate the sufficiency of a complaint a court must accept the well pleaded facts as true and construed in the light most favorable to the plaintiff. *Quality Foods, 711 F.2d at 994-95*. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. *Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*.

## III. DISCUSSION

### a. Lack of Subject Matter Jurisdiction - Standing

Defendant argues the Amended Complaint should be dismissed under *Fed. R. Civ. P. 12(b)(1)* because Plaintiff fails to establish she has standing to pursue her claims. "The Constitution of the United States limits the subject matter jurisdiction of federal courts to 'Cases' **[*9]** and 'Controversies.'" *CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006)* (quoting *U.S. Const. Art. III, § 2*). "Standing" is the litigant's right to have a court decide the merits of the claims for which she seeks relief, and "is an essential . . . part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*. As a threshold procedural matter, a litigant must have standing to invoke the jurisdiction of a federal court. See e.g., *Davis v. F.E.C., 554 U.S. 724, 732, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008)*. The party invoking federal jurisdiction must establish three elements to establish standing. *Lujan, 504 U.S. at 560*. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*.

To establish the injury in fact element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting *Lujan, 504 U.S. at 560*). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id. at 341*; *Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1268 (11th Cir. 2019)* ("[P]laintiffs do not automatically satisfy the injury-in-fact requirement whenever a statute grants them the right to sue; they still must allege a concrete harm that is more than a bare procedural violation.") (internal **[*10]** quotations omitted). But a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Spokeo, 578 U.S. at 341*.

On its face, the Amended Complaint contains sufficient factual allegations to establish Plaintiff suffered an injury in fact. The Eleventh Circuit has held that the "receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." *Cordoba, 942 F.3d at 1270*. The Circuit has noted an unwanted telemarketing call is "an intrusion into peace and quiet in a realm that is private and personal," analogous to an injury giving rise to liability under the common law tort of intrusion upon seclusion. *Drazen v. Pinto, 74 F.4th 1336, 1345 (11th Cir. 2023)* (internal quotations omitted) (observing that while injuries under the TCPA may not satisfy common law's elements, "Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA"). Plaintiff alleges she received two unwanted telemarketing calls in violation of the TCPA. (Dkt. 18 at ¶ 22-24, 31) She alleges she suffered harm from these unwanted phone calls in the form of violated privacy, annoyance, and harassment, as well as

depleted **[*11]** phone battery and network bandwidth. (Id. at ¶ 41) This Court finds Plaintiff alleges sufficient facts in the Amended Complaint to show she suffered a concrete injury. Therefore, Plaintiff's allegations satisfy the first element of the standing requirement.

Defendant asserts a factual attack on the Amended Complaint and presents extrinsic material to disprove Plaintiff's allegations concerning her injury. First, Defendant asserts its extrinsic material shows Plaintiff engaged in and encouraged conversation with Defendant's representative during the February 8, 2023 phone call. Defendant believes Plaintiff's behavior negates her allegations of annoyance and harassment. Defendant contends Plaintiff's engagement with Defendant's representative during the telemarketing call shows she did not suffer the injuries she alleges. Next, Defendant maintains this extrinsic material shows Plaintiff consented to receive phone calls from Defendant. If Plaintiff consented to receive Defendant's phone calls, Defendant argues, Plaintiff has not suffered an injury because the phone calls were not unwanted. Lastly, Defendant submits its extrinsic material proves Plaintiff only received one phone call from **[*12]** Defendant, not two. Defendant asserts that under _Cordoba_, a plaintiff must allege she received at least two phone calls to allege an injury. _942 F.3d at 1270._ Defendant maintains if Plaintiff only received one phone call, and Plaintiff had previously consented to receiving that phone call, Plaintiff has not suffered an injury. For these reasons, Defendant believes the Amended Complaint should be dismissed for lack of standing.

The Court declines to dismiss the Amended Complaint for lack of standing at this time. Unless extrinsic evidence is attached to or incorporated into the complaint, it is not properly considered at the motion-to-dismiss stage. Defendant is free to reassert its contentions at the summary judgment stage of the litigation. See _Simpson v. The J.G. Wentworth Co., No: 23-cv-00152, 2024 U.S. Dist. LEXIS 11395, 2024 WL 245992, at *4 (M.D. Fla. Jan. 23, 2024)._ Later discovery may reveal the call

was invited; Defendant may raise the injury-in-fact issue then. Id.

For these reasons, dismissal on standing grounds is inappropriate.

**b. Failure to State a Claim Under the FTSA**

Defendant asserts Plaintiff's FTSA claim fails because she has not sufficiently alleged the calls were made using autodialing. _Section 501.059(8)(a), Florida Statutes_ (2023), prohibits making or knowingly allowing an unsolicited telemarketing call to be made "if such call involves an automated **[*13]** system for the selection and dialing of telephone numbers . . . without the prior express written consent of the called party." Defendant argues Plaintiff's factual allegations are insufficient to show the calls were made with an automated dialing system.

Plaintiff alleges sufficient facts to show the calls were made using autodialing at this stage. Taking Plaintiff's factual allegations as true, Defendant used the Ytel dialer, an automated system for the selection and dialing of phone numbers, to place the calls which Plaintiff asserts violated the FTSA. (Dkt. 18 at ¶¶ 27-28) Plaintiff alleges the Ytel dialer only connects a live call center employee to the call if a consumer answers first. (Id. at ¶ 29) Plaintiff alleges she experienced a corresponding delay between the moment she answered the calls and the moment the calls were connected to a live call center employee. (Id. at ¶ 30) These allegations are sufficient to establish an automated system for the selection and dialing of phone numbers was used to place the calls at this stage.

Defendant provides a declaration of its Vendor Relationship Manager to dispute the allegation that Defendant ever used the Ytel dialer or that Defendant **[*14]** used the Ytel dialer during the relevant time periods. (Dkt. 32-2 at ¶ 10) Again, this is extrinsic evidence not appropriately considered at this stage in the proceedings. Thus, the Court will not consider this declaration.

Defendant may rely on the statements in the declaration to disprove Plaintiff's allegations at a later stage in these proceedings.

### c. Failure to State a Claim Under the TCPA

Defendant's challenge to the Plaintiff's TCPA claim also fails. First, Defendant argues Plaintiff fails to plead facts to show Defendant is directly or vicariously liable for the alleged calls. An entity is directly liable under the TCPA if it initiates an illegal telemarketing call. *Grant v. Regal Auto. Group, Inc., No. 8:19-cv-363, 2020 U.S. Dist. LEXIS 248347, 2020 WL 8254283, at *7 (M.D. Fla. Jul. 30, 2020)*; *Cabrera v. Gov't Emps. Ins. Co., 452 F. Supp. 3d 1305, 1316 (S.D. Fla. Sept. 17, 2014)* ("[B]ecause GEICO did not make or initiate any of the calls at issue in this action, there can be no direct liability against GEICO under the TCPA."). An entity may be vicariously liable for TCPA violations under federal common law principles of agency. Id. Therefore, a seller may be liable for third-party acts by way of formal agency, apparent authority, or ratification. Id. Defendant argues Plaintiff cannot show Defendant is directly **[*15]** liable under the TCPA because Defendant did not initiate the calls; instead, Defendant's third-party telemarketing vendor initiated them. Moreover, Defendant asserts Plaintiff alleges no facts to show Defendant is vicariously liable for the actions of the third-party vendor. For these reasons, Defendant believes the Court should dismiss Plaintiff's TCPA claim.

Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. *Stemke v. Marc Jones Construction, LLC, No. 21-cv-274, 2021 U.S. Dist. LEXIS 181916, 2021 WL 4340424, at *3 (M.D. Fla. Sept. 23, 2021)* (declining to dismiss the complaint and noting, "[t]o the extent [defendant] disputes that it directly placed the calls, [defendant] may take discovery on this matter and argue the issue at the dispositive motion stage"). Plaintiff alleges Defendant initiated the telemarketing calls.

Specifically, Plaintiff alleges, "The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023." (Dkt. 18 at ¶ 24) Plaintiff further alleges: "During both calls, Plaintiff was initially provided a generic, fake name, 'solar of America[.]'" (Id. at ¶ 36) "The only real company identified during the calls was Suntuity." (Id. at ¶ 37) "In fact, the February 8, 2023 call resulted in an e-mail from Jessica **[*16]** Rocha, a 'call center agent' of the Defendant." (Id. at ¶ 38) Because the Court takes Plaintiff's allegations as true at this stage in the proceedings, dismissal for failure to state a claim on the grounds Defendant asserts is inappropriate.

Second, Defendant argues Plaintiff fails to state a claim under the TCPA because she does not show she received more than one phone call in a twelve-month period. The TCPA's private right of action provision only grants the right to sue to persons who have received more than one phone call within a 12-month period. *47 U.S.C. § 227(c)(5)*. Plaintiff alleges she received two phone calls from Defendant: one on January 31, 2023, and one on February 8, 2023. For this reason, Plaintiff meets *§ 227(c)(5)*'s requirements to sustain a private right of action under the TCPA. Consequently, dismissal for this reason is inappropriate.

Finally, Defendant argues that because Plaintiff lacks standing and fails to sufficiently plead her claims, the Court should dismiss the putative class members' claims. This Court finds Plaintiff has alleged she suffered an injury sufficient to meet the standing requirement. Additionally, the Court finds Plaintiff has alleged sufficient facts to state her claims **[*17]** under the FTSA and the TCPA. Therefore, the Court declines to dismiss the putative class members' claims.

### IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1.  Defendant Suntuity Limited Liability

2024 U.S. Dist. LEXIS 38838, *17

Company's Motion to Dismiss, (Dkt. 32), is **DENIED**.

2. Defendant Suntuity Limited Liability Company is **ORDERED** to file an answer to the Amended Complaint within fourteen (14) days of the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida this 6th day of March 2024.

/s/ Mary S. Scriven

MARY S. SCRIVEN

UNITED STATES DISTRICT JUDGE

---

**End of Document**



**User Name:** Anthony Paronich
**Date and Time:** Saturday, April 18, 2026 4:03 PM EDT
**Job Number:** 281925150

## Document (1)

1. *Stemke v. Marc Jones Constr., LLC*
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:** Natural Language
   **Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis
Anthony Paronich

⚠️ Caution
As of: April 18, 2026 8:03 PM Z

## *Stemke v. Marc Jones Constr., LLC*

United States District Court for the Middle District of Florida, Ocala Division

September 23, 2021, Decided; September 23, 2021, Filed

Case No: 5:21-cv-274-30PRL

### Reporter

2021 U.S. Dist. LEXIS 181916 *; 2021 WL 4340424

CHARLENE STEMKE, individually and on behalf of all others similarly situated, Plaintiff, v. MARC JONES CONSTRUCTION, LLC, a Louisiana company d/b/a Sunpro, Defendant.

## Core Terms

phone number, residential, class certification, motion to dismiss, telephone, solar

**Counsel:** [*1] For Charlene Stemke, individuallyon behalf of all others similarly situated, Plaintiff: Avi Robert Kaufman, LEAD ATTORNEY, Kaufman P.A., Miami, FL; Stefan Coleman, Law Offices of Stefan Coleman, PLLC, Miami, FL.

For Marc Jones Construction, LLC, a Louisiana company doing business as, Sunpro, Defendant: Yaniv Adar, Mark Migdal & Hayden, Miami, FL.

**Judges:** JAMES S. MOODY, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES S. MOODY, JR.

## Opinion

### ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 13) and Plaintiff's Response in Opposition (Dkt. 15). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied because the claims are adequately pled under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* and Plaintiff alleged sufficient facts to establish standing. The Court also denies Defendant's alternative request to strike the class allegations because a determination of whether to certify the proposed class is premature at this early stage.

### BACKGROUND

Plaintiff's Amended Class Action Complaint alleges violations of the *Telephone Consumer Protection Act ("TCPA")*. The following facts are taken from the Amended Complaint (Dkt. 11) and assumed to be true at this stage. Plaintiff [*2] Charlene Stemke lives in Ocala, Florida. Defendant Marc Jones Construction, LLC d/b/a Sunpro is a rooftop solar provider that solicits solar installations on properties throughout the United States. Sunpro engages in telemarketing to consumers in order to solicit its solar energy solutions. Sunpro places calls to individuals without their consent. These "cold calls" include calling individuals who have registered on the National Do Not Call Registry ("DNC"), who have never provided their phone number to Sunpro, and who never consented to receive phone calls from Sunpro.

Plaintiff received multiple calls from Sunpro without her consent and after she informed Sunpro to stop calling her. Specifically, Plaintiff registered her residential phone number on the DNC on June

30, 2003. Plaintiff uses her residential phone number for only personal matters. In approximately February of 2021, Plaintiff started receiving unsolicited telemarketing calls from Sunpro to her residential phone number regarding solar installations. Plaintiff answered at least two calls and specifically instructed the callers not to call her because she was not interested in solar installation. Despite this request, Sunpro's **[*3]** agents continued to place unsolicited calls to Plaintiff's phone number.

On March 8, 2021, Plaintiff received three unsolicited calls from Sunpro from the following phone numbers: 352-218-5852; 352-218-6435; and 352-218-5851. Plaintiff's attorneys called 352-218-5851 on March 21, 2021, and confirmed that this phone number belongs to Sunpro. The other phone numbers were no longer in service. On March 9, 2021, at approximately 2:30 PM, Plaintiff received another unsolicited call from Sunpro, this time from phone number 352-218-3644. Plaintiff's attorneys called 352-218-3644 on March 22, 2021, and confirmed this phone number belongs to Sunpro.

Plaintiff alleges that Sunpro's calls harmed her "in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone." Plaintiff seeks relief under the TCPA's do not call provisions and related implementing regulations, which together and in pertinent part: (i) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the DNC; and (ii) require any "person **[*4]** or entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made to them within a "reasonable time" and to have internal DNC policies and procedures in place meeting certain minimum standards. *47 U.S.C. §§ 227(c)(5)* & *(d)*; *47 C.F.R. §§ 64.1200(c)(2) & (d)*.

The Amended Complaint seeks to certify the following classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom the Defendant claims they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that Defendant stop **[*5]** calling.

Defendant moves to dismiss the Amended Complaint for failure to state a claim under *Rule 12(b)(6)* and lack of standing. In the alternative, Defendant requests that the Court strike the class allegations. Defendant's arguments read like a summary judgment motion and are unpersuasive at this stage.

## MOTION TO DISMISS STANDARD

*Federal Rule of Civil Procedure 12(b)(6)* allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004)* (internal citations omitted); *Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)*. Courts must accept all factual allegations as true and view the facts in a light most

favorable to the plaintiff. *See Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)*.

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003)*. To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal, 556 U.S. at 678* (internal quotation marks and citations omitted). **[*6]** This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

The Court concludes Plaintiff's claims contain sufficient factual matter to meet the plausibility standard. As Plaintiff points out in the response in opposition, the TCPA squarely prohibits telemarketing calls to persons who list their residential phone number on the DNC. The question before the Court at this juncture is whether Plaintiff pleads a valid cause of action, not whether Plaintiff establishes the claim. Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.

For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times **[*7]** that she or her attorneys confirmed that Sunpro placed

the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

Sunpro next argues that, because Plaintiff failed to plead facts showing any conduct attributable to Sunpro as opposed to third parties, Plaintiff lacks Article III standing. The Court quickly disposes of this argument because the Court concludes that the Amended Complaint sufficiently alleges that Sunpro placed the subject calls. Sunpro's remaining arguments in favor of dismissal are denied for the reasons stated in Plaintiff's response.

Finally, Sunpro's motion to strike the class allegations is denied as premature. *Rule 23(c)* directs a district court "[a]t an early practicable time after a person sues or is sued as a class representative, ... [to] determine by order whether to certify the action as a class action." *Fed. R. Civ. P. 23(c)(1)(A)*. Although a Court can determine whether to certify a class based solely on a complaint, *Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008)*, the issue is generally raised once a plaintiff moves for class certification. As the Eleventh **[*8]** Circuit explained below, that is because the determination of whether to certify the class usually requires some discovery:

> [T]he Supreme Court has emphasized that class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend, U.S. , 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013)* (internal quotation marks omitted). In fact, "the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential...." *Huff v. N.D. Cass Co. of Ala., 485 F.2d 710,*

*713 (5th Cir.1973)* (*en banc*) (internal citation and footnote omitted). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374 (2011)* (internal quotation marks omitted).

*Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 Fed. App'x 930, 934 (11th Cir. 2016)*.

The allegations in the Amended Complaint are not so facially defective to allow the Court to deny certification without permitting Plaintiff to take discovery to try to satisfy the requirements of *Rule 23*. Sunpro is free to renew the arguments once Plaintiff moves for class certification.

Accordingly, **[*9]** it is ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 13) is denied.

2. Defendant shall file an answer to the Amended Complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida, this September 23, 2021.

/s/ James S. Moody, Jr.

**JAMES S. MOODY, JR.**

**UNITED STATES DISTRICT JUDGE**



**User Name:** Anthony Paronich
**Date and Time:** Saturday, April 18, 2026 4:04 PM EDT
**Job Number:** 281925160

## Document (1)

1. *Slominski v. Globe Life Inc.*
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:** Natural Language
   **Narrowed by:**

|         Content Type         |        Narrowed by        |
|------------------------------|---------------------------|
|                              | -None-                    |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

 Caution
As of: April 18, 2026 8:04 PM Z

# *Slominski v. Globe Life Inc.*

United States District Court for the Eastern District of North Carolina, Southern Division

February 12, 2024, Decided; February 12, 2024, Filed

No. 7:23-CV-1081-D

**Reporter**

2024 U.S. Dist. LEXIS 24378 *; 2024 WL 556978

SHIRLEY ANN SLOMINSKI, v. GLOBE LIFE INC., et al., Defendants.

## Core Terms

alleges, personal jurisdiction, messages, voicemail, pre-recorded, motion to dismiss, phone number, do-not-call, quotation, defendants', telephone, telephone number, insurance plan, cell phone, regulations, consumers, customers, registry, entity, phone, light most favorable, minimum contact, purposefully, residential, artificial, contacts, YouMail, survive, caller

**Counsel:** [*1] For Shirley Ann Slominski, Plaintiff: Avi R. Kaufman, LEAD ATTORNEY, Kaufman P.A., Miami, FL; Ryan P. Duffy, The Law Office of Ryan P. Duffy PLLC, Charlotte, NC.

For United American Insurance Company, a Delaware registered corporation, Defendant: David Baird Carpenter, LEAD ATTORNEY, Alston & Bird LLP, Litigation & Trial Practice, Atlanta, GA; Kelsey Kingsbery, Alston & Bird LLP, Raleigh, NC.

For Globe Life and Accident Insurance Company, Inc., Defendant: Kelsey Kingsbery, LEAD ATTORNEY, Alston & Bird LLP, Raleigh, NC.

**Judges:** JAMES C. DEVER III, United States District Judge.

**Opinion by:** JAMES C. DEVER III

## Opinion

## ORDER

On June 22, 2023, Shirley Ann Slominski ("Slominski" or "plaintiff") filed a class action complaint against Globe Life Inc. and United American Insurance Company ("United") alleging two violations of the *Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227* [D.E. 1]. On August 18, 2023, Globe Life Inc. and United moved to dismiss Slominski's complaint [D.E. 12].

On September 22, 2023, Slominski filed an amended complaint against Globe Life and Accident Insurance Company, Inc. ("Globe") and United (collectively "defendants") alleging three violations of the TCPA and its implementing regulations [D.E. 18].[1] On October 30, 2023, Globe and United moved to dismiss [*2] Slominski's amended complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted [D.E. 22] and filed a memorandum in support [D.E. 23]. See *Fed. R. Civ. P. 12(b)(2)*, *(6)*. On December 4, 2023, Slominski responded in opposition [D.E. 25]. On December 18, 2023, Globe and United replied [D.E. 26]. As explained below, the court grants in part defendants' motion

---

[1] Slominski does not name Globe Life Inc., defendants' parent company, as a party in her amended complaint. See id. Slominski does not bring any claims against Globe Life Inc. See id. Accordingly, the court grants in part Globe Life Inc. and United's motion to dismiss [D.E. 12] and dismisses Globe Life Inc. from this case. The court denies as moot the remainder of the motion.

Anthony Paronich

to dismiss and dismisses Slominski's third claim.

I.

Globe and United are "sister compan[ies]" that sell supplemental health insurance and life insurance. Am. Compl. [D.E. 18] ¶¶ 16-17. Defendants solicit business by cold calling potential customers. See id. at ¶¶ 19-21. Consumers complain that defendants refuse to stop calling even after the consumers request defendants stop calling. See id. at ¶¶ 27-30.

Slominski is the sole subscriber and sole user of her cell phone. See id. at ¶ 32. On April 11, 2018, Slominski registered her cell phone on the national do-not-call registry. See id. at ¶ 33. Slominski uses her cell phone "as one would use a landline telephone number in one's home." Id. In late February 2023, Slominski called United about a supplemental insurance policy. See id. at ¶ 35. United told **[*3]** Slominski a licensed insurance employee would call her back a few days later. See id. Shortly after Slominski's call to United, United called Slominski from phone number 844-593-8913. See id. at ¶ 36. Slominski "told the employee that she would like to cancel her request for information." Id.

Slominski alleges that, "[d]espite the cancellation of her request, . . . Slominski received a series of calls from . . . United . . . to her cell phone number." Id. at ¶ 37. Slominski "called 844-593-8913 at the end of February from her cell phone . . . and made a specific request for the calls to stop, asking to have her phone number removed from whatever list [United] was using." Id. Nonetheless, Slominski alleges she continued to receive "upwards of 10 calls per day from [both of] the Defendants to her cell phone number" even though she had "never heard of Globe. Id. at ¶¶ 38-39. Slominski alleges she "received unsolicited calls from" Globe on "February 28, March 2, and March 3, 2023 from the phone number 214-250-5780." Id. at ¶ 41.

On March 13, 2023, Slominski answered a call from United and "made an additional stop request." Id. at ¶ 42. The employee told Slominski that she added Slominski **[*4]** to a do-not-call list. See id. On March 14, 2023, Slominski received a call from phone number 214-250-5780. See id. at ¶ 43. Slominski did not answer the call and received a "pre-recorded voicemail . . . asking [Slominski] to call [Globe] back to get an insurance plan." Id. On March 15, 2023, Slominski received a call from phone number 214-250-5518. See id. at ¶ 44. Slominski also did not answer this call and received another "pre-recorded voicemail . . . asking [Slominski] to call [Globe] back to get an insurance plan." Id. Slominski "believes that the voicemails were pre-recorded because of their generic, scripted nature, the sound of the speech and because other consumers reported similar, if not the same pre-recorded voicemails." Id. at ¶ 45; see id. at ¶ 46 (other consumers' reports).

Slominski filed this action on behalf of herself and three proposed classes: (1) all persons in the United States who, during the four years before Slominski filed this suit, received a call on their cell phone from Globe or an agent calling on behalf of Globe using an artificial or prerecorded voice message; (2) all persons in the United States who, during the four years before Slominski filed this **[*5]** suit, received more than one call or text from Globe within a 12-month period where the person's residential telephone number had been listed on the national do-not-call registry for at least 30 days; and (3) all persons in the United States who, during the four years before Slominski filed this suit, received more than one call from United within any 12-month period including at least once after the person requested that United stop calling or texting the person's residential telephone number. See id. at ¶¶ 50-51.

II.

Defendants move to dismiss for lack of personal jurisdiction. See [D.E. 22] 1; [D.E. 23] 3-7. Here, personal jurisdiction over a nonresident defendant requires compliance with North Carolina's long-arm statute and the *Fourteenth Amendment's Due*

*Process Clause*. See, e.g., *Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004)*. North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the *Fourteenth Amendment's Due Process Clause*. See *Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)*. Thus, the statutory inquiry merges with the constitutional inquiry. See id.; *Atl. Corp. of Wilmington. Inc. v. TBG Tech Co., 565 F. Supp. 3d 748, 759 (E.D.N.C. 2021)*.

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colour., S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)* (cleaned up). The minimum contacts analysis focuses **[\*6]** on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (quotation omitted); see *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 141 S. Ct. 1017, 1024-25, 209 L. Ed. 2d 225 (2021)*. The minimum contacts analysis ensures that a defendant is not haled into a jurisdiction's court "solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp., 471 U.S. at 475* (quotations omitted); see *Ford Motor Co., 141 S. Ct. at 1025*. The minimum contacts analysis focuses "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)* (quotation omitted); see *Ford Motor Co., 141 S. Ct. at 1024-26*; *Bristol-Myers Squibb Co. v. Super. Ct., 582 U.S. 255, 263-64, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017)*.

The extent of the contacts needed for personal jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. See *Ford Motor Co., 141 S. Ct. at 1024-26*; *Bristol-Myers Squibb Co., 582 U.S. at 262-63*; *ALS Scan. Inc. v.*

*Dig. Serv. Consultants. Inc., 293 F.3d 707, 712 (4th Cir. 2002)*; *Atl. Corp. of Wilmington. Inc., 565 F. Supp. 3d at 760*. In determining specific jurisdiction, the court considers: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of or relate to those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. See *ALS Scan, 293 F.3d at 712*. The "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant **[\*7]** purposefully established minimum contacts in the forum State." *Burger King Corp., 471 U.S. at 474* (quotation omitted); see *Bristol-Myers Squibb Co., 582 U.S. at 263-64*; *Walden, 571 U.S. at 284-91*.

In determining whether the exercise of personal jurisdiction is constitutionally reasonable, a court may "consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privileges of the forum state. *Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009)*. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social polices. See id.

When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. See *Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019)*; *Sneha Media & Ent.. LLC v. Associated Broad. Co., 911 F.3d 192, 196-97 (4th Cir. 2018)*; *Mylan Lab'ys. Inc. v. Akzo. N.V., 2 F.3d 56, 60 (4th Cir. 1993)*. In doing so, the court construes all relevant jurisdictional allegations in the complaint in the light most favorable to the

plaintiff and draws the most favorable inferences for the existence of jurisdiction See *Hawkins*, 935 F.3d at 226; *Mylan Lab'ys, 2 F.3d at 60*. In that [*8] procedural posture, a plaintiff need not establish the existence of personal jurisdiction by a preponderance of the evidence. See *Sneha Media & Ent., 911 F.3d at 196-97*. If the court holds an evidentiary hearing concerning personal jurisdiction, plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. See *id. at 197*; *Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016)*.

Globe is a Delaware corporation headquartered in Texas. See Am. Compl. ¶ 2. United also is a Delaware corporation headquartered in Texas. See id. at ¶ 3.[2] Accordingly, this court cannot exercise general personal jurisdiction over Globe or United. See *Daimler AG v. Bauman, 571 U.S. 117, 122, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)*; *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)*. Thus, the court must have specific personal jurisdiction over Globe and United.

In a TCPA case, "specific personal jurisdiction exists when it is reasonable to infer that defendant purposefully aimed its conduct at North Carolina by contacting directly plaintiff's North Carolina telephone number." *Davis v. Reliance First Capital, No. 7:22-CV-18, 2023 U.S. Dist. LEXIS 24055, 2023 WL 1982354, at *2 (E.D.N.C. Feb. 13, 2023)* (unpublished) (cleaned up); see *Jones v. Mut. of Omaha Ins. Co., 639 F. Supp. 3d 537, 550 (D. Md. 2022)* ("[I]n the context of the TCPA, personal jurisdiction is proper in the District where an unlawful communication is received." (cleaned up)); *Mey v. Castle L. Grp., 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019)*.

---

[2] Slominski alleges that Globe and United are Delaware corporations. See id. at ¶¶ 2-3. Defendants submitted a declaration from their Vice President of Customer Care, Paul Anderson ("Anderson"), in which Anderson declares both defendants are Nebraska corporations. See [D.E. 23-1] ¶¶ 5, 9. Whether defendants are Delaware corporations or Nebraska corporations, this court does not have general personal jurisdiction over either defendant.

Defendants contend that their "evidence confirms" they did not call Slominski's phone. [D.E. 23] 6 (citing [D.E. 23-1] ¶¶ 8, 12). In Anderson's affidavit, he declared [*9] that Globe and United do not directly call customers. See [D.E. 23-1] ¶¶ 7, 11. Instead, Globe and United hire agents to call customers or potential customers. See id. at ¶¶ 8, 12. Defendants contend that Slominski "cannot meet her burden of identifying any suit-related conduct by Defendants that created any substantial connection with North Carolina." [D.E. 23] 7. Slominski responds that she "has offered more than speculation or conclusory assertions about contacts with" North Carolina and "is entitled to jurisdictional discovery regarding the identity of, and extent of [Globe]'s relationship with" any agent that called Slominski. [D.E. 25] 3-4 (quotation omitted). Defendants reply that Slominski's "failure to even attempt to rebut Defendants' evidence confirms that personal jurisdiction cannot exist based on [Slominski]'s incorrect assertion that Defendants 'called into' North Carolina." [D.E. 26] 2.

"[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to [*10] *survive* the jurisdictional challenge." *Grayson, 816 F.3d at 268* (emphasis added); see *Mylan Lab'ys, 2 F.3d at 60, 62*; *Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)*. In this procedural posture, the court construes all relevant jurisdictional allegations in the complaint in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. See *Hawkins*. 935 F.3d at 226; *Mylan Lab'ys, 2 F.3d at 60*.

Slominski alleges that she received unsolicited calls in the Eastern District of North Carolina from Globe on February 28, March 2, and March 3, 2023, from the phone number 214-250-5780. See Am. Compl. ¶¶ 5, 33, 41. Slominski alleges that on March 14, 2023, she received another phone call

and voicemail message from the same phone number "asking [Slominski] to call [Globe] back to get an insurance plan." Id. at ¶ 43. Slominski alleges that on March 15, 2023, she received another phone call and voicemail message from a different phone number that asked Slominski "to call [Globe] back to get an insurance plan." Id. at ¶ 44. Anderson declares that defendants do not call potential customers directly. See [D.E. 23-1] ¶¶ 7, 11. Crediting Slominski's allegations as true and viewing the evidence in the light most favorable to her, she has alleged prima facie specific jurisdiction. See, e.g., *Mylan Lab'ys, 2 F.3d at 62* ("[Plaintiff's] **[*11]** assertions carry the same quantum of trustworthiness as [defendant's] sworn affidavit. Construing both documents in the light most favorable to [plaintiff], we believe that the district court erred in resolving the matter . . . in [defendant's] favor.").

Alternatively, and in any event, Anderson's declaration provides no comfort to defendants. "[T]he Federal Communications Commission (the 'FCC') has authorized vicarious liability for violations of the TCPA." *Jones, 639 F. Supp. 3d at 550*; see *In re Joint Pet. Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6584 (2013)* ("Dish Network"). "Vicarious liability plays an essential role in enforcing the TCPA" because sellers "are in the best position to monitor and police TCPA compliance by third-party telemarketers." *Bradley v. DentalPlans.com, 617 F. Supp. 3d 326, 338 (D. Md. 2022)* (quotation omitted); see *Dish Network, 28 FCC Rcd. at 6588*. Otherwise, "sellers could avoid potential liability by outsourcing [their] telemarketing activities to unsupervised third parties who are often judgment proof, unidentifiable, or located outside the United States." *Bradley, 617 F. Supp. 3d at 338* (quotation omitted); see *Dish Network, 28 FCC Rcd. at 6588*. Anderson declared that defendants "contract[] with independent agents, who may place calls to potential customers to inquire about insurance policies." [D.E. 23-1] ¶ 8; see id. at ¶ 12. Thus, when coupled with Slominski's allegations, defendants' evidence supports **[*12]** this court's

exercise of specific personal jurisdiction over defendants. Accordingly, the court denies defendants' motion to dismiss for lack of personal jurisdiction. See, e.g., *Mey v. Matrix Warranty Sols., Inc., No. 5:21-CV-62, 2021 U.S. Dist. LEXIS 265082, 2021 WL 11421819, at *4-6 (N.D.W. Va. Sept. 2, 2021)* (unpublished); *Hicks v. Houston Baptist Univ., No. 5:17-CV-629, 2019 U.S. Dist. LEXIS 664, 2019 WL 96219, at *4 (E.D.N.C. Jan. 3, 2019)* (unpublished).

As for defendants' motion to dismiss for failure to state a claim, a motion to dismiss under *Rule 12(b)(6)* tests the complaint's legal and factual sufficiency. See *Ashcroft v. Iqbal, 556 U.S. 662, 677-80, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*; *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*; *Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)*, aff'd, *566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012)*; *Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)*. To withstand a *Rule 12(b)(6)* motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal, 556 U.S. at 678* (quotation omitted); see *Twombly, 550 U.S. at 570*; *Giarratano, 521 F.3d at 302*. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." *Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014)* (quotation omitted); see *Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013)*, abrogated on other wounds by *Reed v. Town of Gilbert, 576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015)*. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano 521 F.3d at 302* (quotation omitted); see *Iqbal, 556 U.S. at 678-79*. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," *Twombly, 550 U.S. at 570*, beyond the realm of "mere possibility" into "plausibility." *Iqbal, 556 U.S. at 678-79*.

When evaluating a motion to dismiss, a court

considers the pleadings and any materials "attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)*; see *Fed. R. Civ. P. 10(c)*; *Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016)*; **[*13]** *Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005)*. A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. *Goines, 822 F.3d at 166*. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." M. (quotation omitted); see *Fayetteville Invs. v. Com. Builders. Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)*. Additionally, a court may take judicial notice of public records. See, e.g., *Fed. R. Evid. 201*; *Tellabs. Inc. v. Makor Issues & Rts.. Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)*; *Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)*.

The TCPA prohibits, inter alia, a person or entity from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." *47 U.S.C. § 227(b)(1)(A)(iii)*; see *Mims v. Arrow Fin. Servs.. LLC, 565 U.S. 368, 373-74, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)*; *Cunningham v Gen. Dynamics Info. Tech. Inc., 888 F.3d 640, 644-45 (4th Cir. 2018)*; *Davis v. Safe Streets USA LLC, 497 F. Supp. 3d 47, 55 (E.D.N.C. 2020)*. The TCPA's implementing regulations also prohibit, inter alia, a person or entity from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone **[*14]** number on the national do-not-call registry" and from "initiat[ing] . . . any call for

telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." *47 C.F.R. § 64.1200(c)—(d)*. The TCPA provides that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring in an appropriate court . . . an action based on violation of the regulations prescribed under this subsection to enjoin such violation, . . . an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or . . . both." *47 U.S.C. § 227(c)(5)*.

In her first claim, Slominski alleges Globe made "pre-recorded voice calls . . . en masse without the prior express written consent of Slominski and members of one of her proposed subclasses in violation of *47 U.S.C. § 227(b)(1)(A)(iii)*. Am. Compl. ¶¶ 59-60. "To state a claim under *Section 227(b)(1)(A)(iii) of the TCPA*, a plaintiff must allege: (1) that the defendant initiated a telephone call to a cellular **[*15]** phone number (2) using an artificial or prerecorded voice to deliver a message, (3) without prior express consent of the called party." *Connor v. Priority Concepts, Inc., No. 2:23-cv-3726, 2024 U.S. Dist. LEXIS 9709, 2024 WL 199138, at *2 (D.S.C. Jan. 18, 2024)* (unpublished); see *Drake v. Synchrony Bank, Civ. No. 19-2134, 2023 U.S. Dist. LEXIS 182503, 2023 WL 6621345, at *2 (D. Md. Oct. 11, 2023)* (unpublished); *Hossfeld v. Gov't Emps. Ins. Co., 88 F. Supp. 3d 504, 509 (D. Md. 2015)*.

Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. See Am. Compl. ¶¶ 43-44. The voicemail messages concerned "an insurance plan." Id. Globe sells insurance plans. See id. at ¶ 17. Slominski received these calls and messages without her consent. See id. at ¶¶ 39, 47. Slominski alleges she "believes that

the voicemails were pre-recorded because of their generic, scripted nature, the sound of the speech and because other consumers reported similar, if not the same pre-recorded voicemails." Id. at ¶ 45.

Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. See [D.E. 23] 8-9. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss. See Am. Compl. ¶¶ 17, 43, 44; see, e.g., *Sojka v. DirectBuy. Inc., 35 F. Supp. 3d 996, 999-1000 (N.D. M. 2014)*; cf. *Aaronson v. CHW Grp., Inc., No. 1:18-cv-1533, 2019 U.S. Dist. LEXIS 231433, 2019 WL 8953349, at *3 (ED. Va. Apr. 15, 2019)* (dismissing plaintiff's TCPA claim because, in relevant part, plaintiff [*16] failed to allege facts about the calls that would attribute the calls to the defendant, such as "how the caller identified itself" or "a statement by the caller that he or she was marketing defendant's goods or services").

As for the second element, courts diverge on the governing standard for a plaintiff's allegations to survive a motion to dismiss. See *Sojka, 35 F. Supp. 3d at 1001-03* (describing the divergence and collecting cases)[3] Under the easier standard,

"merely . . . alleging that a defendant used an artificial or prerecorded voice suffices at the pleading stage." *Id. at 1002* (quotation omitted). Slominski alleges Globe left prerecorded voicemail messages on her phone. See Am. Compl. ¶¶ 43-44. Accordingly, Slominski's allegations survive this pleading standard. See, e.g., *Connor, 2024 U.S. Dist. LEXIS 9709, 2024 WL 199138, at *2*; *Duarte v. Truist Bank, No. 3:20-CV-270, 2020 U.S. Dist. LEXIS 207520, 2020 WL 6528073, at *2 (W.D.N.C. Nov. 5, 2020)* (unpublished) (denying defendant's motion to dismiss a TCPA claim where plaintiff alleged "Defendant called Plaintiff and delivered prerecorded or artificial voice messages" (quotation omitted)).

Under "the stricter pleading standard," a TCPA claim survives a motion to dismiss if the plaintiff "describe[s] anything about the circumstances of a call or message contributing to [her] belief it was pre-recorded." *Sojka, 35 F. Supp. 3d at 1003* (cleaned [*17] up); see *Johansen v. Vivant, Inc., No. 12 C 7159, 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, at *3 (N.D. M. Dec. 18, 2012)* (unpublished). Slominski alleges that she believed the voicemail messages were prerecorded based on "their generic, scripted nature" and "the sound of the speech." Am. Compl. 145. These allegations suffice to meet the stricter pleading standard. See, e.g., *Somogyi v. Freedom Mortg. Corp., Civ. No. 17-6546, 2018 U.S. Dist. LEXIS 129697, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018)* (unpublished); cf. *Rallo v. Palmer Admin. Servs. Inc., No. 18-cv-1510, 2019 U.S. Dist. LEXIS 56938, 2019 WL 1468411, at *2-3 (D. Colo. Apr. 3, 2019)* (unpublished).

Next, defendants cite *Hicks v. Alarm.com Inc., No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020)* (unpublished), and contend that Slominski's

---

[3] Defendants contend that in Slominski's opposition, she "fail[ed] to respond altogether" to defendants' argument that Slominski "does not sufficiently allege that the voicemails she received were prerecorded." [D.E. 26] 4-5. Thus, defendants argue Slominski has abandoned her first claim against Globe. See id.

The court does not read defendants' memorandum to specifically argue that Slominski fails to plausibly allege that the voicemail messages she received were prerecorded. See [D.E. 23] 8-9. To the extent defendants implicitly made that argument, Slominski's response sufficed. See [D.E. 25] 1-2. To the extent defendants did not make that argument in their original memorandum, "new arguments cannot be raised in a reply brief before the district court." *De Simone v. VSL Pharms., Inc., 36 F.4th 518, 531 (4th Cir. 2022)* (quotation omitted); see *United States v. Smalls, 720 F.3d 193, 197 (4th Cir. 2013)*; *United States v. Ballard, F. Supp. 3d , 2023 U.S. Dist. LEXIS 231292, 2023 WL 8946800, at *18 (E.D.N.C. Dec. 27, 2023)*. Accordingly, the court rejects this argument. Regardless, defendants move to dismiss this claim. Hence, the court considers

whether Slominski plausibly alleges enough facts to support every element of her claim. See, e.g., *Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764-65 (4th Cir. 2003)*; *Inman v. Klockner-Pentaplast of Am., Inc., 467 F. Supp. 2d 642, 646-47 (W.D. Va. 2006)*.

allegations are contradictory because she relies on reports of other voicemail messages listed on YouMail.com. See [D.E. 26] 5-6. Slominski cites anonymous consumer reports of "similar, if not the same pre-recorded voicemails" to the ones she received. Am. Compl. ¶¶ 45-46. Each of the messages Slominski cites slightly differ from one another. See id. at ¶ 46. In Hicks, the court considered similar allegations and held that the plaintiff failed to state a claim under *section 227(b)* in part because the YouMail.com messages contradicted plaintiff's allegations that the calls were prerecorded or generic. See *Hicks, 2020 U.S. Dist. LEXIS 157433, 2020 WL 9261758, at *5*.

In Hicks, the YouMail.com messages were almost totally different from one another and sometimes pertained to different companies altogether. See id. (citing YouMail, Reverse phone number lookup, https://directory.youmail.com/phone/954-507-9334 **[*18]** (last visited Feb. 12, 2024)). By contrast, the messages Slominski cites are very similar to one another and appear to all come from Globe. See Am. Compl. ¶ 46. Accordingly, unlike in *Hicks*, the reports Slominski cites do not contradict her allegations. Thus, the court denies defendants' motion to dismiss Slominski's first claim.

In her second claim, Slominski alleges Globe called Slominski and members of one of her proposed subclasses despite Slominski and the putative class members registering "their respective telephone numbers on the National Do Not Call Registry" in violation of *47 C.F.R. § 64.1200(c)* and *47 U.S.C. § 227(c)(5)*. Am. Compl. ¶¶ 61-66. Slominski must plausibly allege that her phone number was on the national do-not-call registry and that Globe called her at least twice in a year. See *Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 655 (4th Cir. 2019)*; *Nickson v. Advanced Mktg. & Processing, Inc., Civ. No. 22-2203, 2023 U.S. Dist. LEXIS 135043, 2023 WL 4932879, at *6 (D. Md. Aug. 2, 2023)* (unpublished).

Slominski alleges that she "registered her cell phone on the [national do-not-call registry] on April 11, 2018." Am. Compl. ¶ 33. Slominski alleges she "received unsolicited calls from Defendant Globe Life on February 28, March 2, and March 3, 2023." Id. at ¶ 41. Slominski alleges that on March 14 and March 15, 2023, she received two unsolicited calls and voicemail messages asking Slominski to call Globe back to **[*19]** get an insurance plan. See id. at ¶¶ 43-44. Slominski alleges that, at the time of the calls, she "had never heard of Globe and had "never provided consent to" Globe to call her. Id. at ¶¶ 39, 47.

Defendants contend that Slominski does not plausibly allege "any facts to explain or elaborate her basis for believing these calls came from [Globe], and there is no information about the alleged calls or voicemails from which the court could find that [Globe] plausibly placed these calls." [D.E. 23] 9. As discussed, Slominski plausibly alleges Globe called her at least twice, on March 14 and March 15, 2023. For those calls, Slominski alleges that she let the callers leave voicemail messages, and the callers asked Slominski to "call Globe Life back." Am. Compl. ¶ 43; see id. at ¶ 44. Moreover, Slominski alleges that Globe "sells supplemental health insurance and life insurance" and the voicemail messages concerned "insurance plan[s]." Id. at ¶¶ 17, 43, 44. Accepting Slominski's allegations as true and drawing all reasonable inferences in her favor, Slominski plausibly alleges a claim against Globe under *47 C.F.R. § 64.1200(c)*. See, e.g., *Sojka, 35 F. Supp. 3d at 999-1000*. Accordingly, the court denies defendants' motion to dismiss Slominski's **[*20]** second claim.

In her third claim, Slominski alleges United called Slominski and members of one of her proposed subclasses "without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow [United] to initiate telemarketing calls" in violation of *47 C.F.R. § 64.1200(d)* and *47 U.S.C. § 227(c)(5)*. Am. Compl.

¶¶ 67-71. Slominski must plausibly allege United called her at least twice in a year and these calls indicate United "did not implement the procedures outlined in *47 C.F.R. § 64.1200(d)*, including maintaining an internal do-not-call list." *Fischman v. MediaStratX, LLC, No. 2:20-CV-83, 2021 U.S. Dist. LEXIS 149734, 2021 WL 3559639, at *6 (E.D.N.C. Aug. 10, 2021)* (unpublished). When a callee asks to be put on an internal do-not-call list, a caller "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made," not to exceed "30 days from the date of such request." *47 C.F.R. § 64.1200(d)(3)*.

In late February 2023, Slominski alleges she initially consented to United calling her. See Am. Compl. ¶¶ 35-36. After Slominski "received a series of calls from" United, Slominski "made a specific request for the calls to stop, asking to have her phone number removed from whatever list [United] was using." Id. at 1137. **[*21]** Slominski alleges she continued to receive calls from both defendants, but she provides no details about any other calls from United except one: on March 13, 2023, Slominski answered a call from United and "made an additional stop request" Id. at ¶ 42. Slominski does not allege any more calls from United.

Defendants contend Slominski fails to state a claim because she alleges United stopped calling Slominski within 30 days of her stop request. See [D.E. 23] 11-12; *47 C.F.R. § 64.1200(d)(3)*; see also Am. Compl. ¶¶ 37, 42. The regulation required United to honor Slominski's request "within a reasonable time" after Slominski made her request. *47 C.F.R. § 64.1200(d)(3)*. Whether United put Slominski "on the Do-Not-Call list within a 'reasonable time' is a question of fact best left for development in discovery." *Boger v. Citrix Sys.. Inc., Civ. No. 8:19-cv-1234, 2020 U.S. Dist. LEXIS 36517, 2020 WL 1033566, at *5 (D. Md. Mar. 3, 2020)* (unpublished). Slominski plausibly alleges that United acted unreasonably in continuing to call Slominski for approximately two weeks after she

asked to be placed on a do-not-call list. See, e.g., *Nece v. Quicken Loans, Inc., No. 8:16-cv-2605, 2018 U.S. Dist. LEXIS 42356, 2018 WL 1326885, at *6-7 (M.D. Fla. Mar. 15, 2018)* (unpublished) (describing the regulations at issue and holding a "jury might find unreasonable the persistence of [defendant's] calls for a week" after plaintiff made a do-not-call request). Accordingly, the court rejects defendants' **[*22]** argument.

Next, defendants contend Slominski fails to plausibly allege facts supporting her third claim. See [D.E. 23] 10-11. Slominski conclusorily alleges she "received upwards of 10 calls per day from the Defendants to her cell phone number" after she first asked United to put her on a do-not-call list. Am. Compl. ¶ 38. Slominski, however, does not allege when these calls occurred, what the content of the calls or voicemail messages was, or even which defendant made the alleged calls. By contrast, in *Fischman*, the plaintiff alleged the dates of, frequency of, and phone numbers associated with several of the alleged calls. See Fischman v. MediaStratX. LLC, No. 2:20-cv-83, [D.E. 1] ¶¶ 34-45; see also *Fischman 2021 U.S. Dist. LEXIS 149734, 2021 WL 3559639, at *6* (holding "Fischman has plausibly alleged a violation of *section 64.1200(d)*"). Slominski plausibly alleges just one call from United after she asked to be placed on an internal do-not-call list. See Am. Compl. ¶ 42; see also *47 U.S.C. 227(c)(5)* (a plaintiff must allege "more than one telephone call" in violation of the applicable regulations to bring a claim). Accordingly, the court grants defendants' motion to dismiss Slominski's third claim. See, e.g., *Nickson, 2023 U.S. Dist. LEXIS 135043, 2023 WL 4932879, at *7*.

III.

In sum, the court GRANTS IN PART defendants Globe Life Inc. and **[*23]** United's motion to dismiss [D.E. 12], GRANTS IN PART defendants Globe and United's motion to dismiss [D.E. 22], DISMISSES defendant Globe Life Inc. from this action, and DISMISSES WITHOUT PREJUDICE plaintiff's *47 C.F.R. § 64.1200(d)(3)* claim.

SO ORDERED. This 12 day of February, 2024.

/s/ James C. Dever III

JAMES C. DEVER III

United States District Judge

---

**End of Document**



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:05 PM EDT

**Job Number:** 281925190

## Document (1)

1. *Callier v. American-Amicable Life Ins. Co. of Texas*

**Client/Matter:** -None-

**Search Terms:** Callier v. Am.-Amicable Life Ins. Co. of Texas

**Search Type:** Natural Language

**Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| | -None- |

Positive

As of: April 18, 2026 8:05 PM Z

# *Callier v. American-Amicable Life Ins. Co. of Texas*

United States District Court for the Western District of Texas, El Paso Division

October 18, 2022, Decided; October 18, 2022, Filed

EP-22-CV-00018-FM

**Reporter**

2022 U.S. Dist. LEXIS 228176 *

BRANDON CALLIER, Plaintiff, v. AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, a Florida Corporation, Defendant.

**Prior History:** *Callier v. American-Amicable Life Ins. Co. of Texas, 2022 U.S. Dist. LEXIS 228603 (W.D. Tex., Aug. 9, 2022)*

## Core Terms

telemarketer, solicitation, allegations, registered, telephone, agency relationship, claim for relief, robocalls, prerecorded, third-party, products, connect, vicarious liability, motion to dismiss, phone number, pleadings

**Counsel:** [*1] Brandon Callier, Plaintiff, Pro se, El Paso, TX.

For American-Amicable Life Insurance Company of Texas, a Florida Corporation, Defendant: Danielle A. Gilbert, LEAD ATTORNEY, Husch Blackwell LLP, Austin, TX.

**Judges:** FRANK MONTALVO, UNITED STATES DISTRICT JUDGE.

**Opinion by:** FRANK MONTALVO

## Opinion

### ORDER DENYING MOTION TO DISMISS

Before the court are "Plaintiff's Second Amended Complaint" ("Complaint") [ECF No. 24], filed

August 9, 2022, by Brandon Callier ("Plaintiff") and "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Motion") [ECF No. 26], filed August 23, 2022, by American Amicable Life Insurance Company of Texas ("Defendant"). In its Motion, Defendant moves to dismiss Plaintiff Brandon Callier's claims pursuant to *Federal Rules of Civil Procedure ("Rule") 8(a)*, *10(b)*, and *12(b)(6)*.[1] After due consideration of the Complaint, Motion, and applicable law, the Motion is **DENIED**.

### I. BACKGROUND

*A. Factual Background*

At this stage, the court accepts all non-conclusory allegations in the Complaint as true. They are as follows: Plaintiff has at all relevant times been on the National Do-Not-Call Registry ("DNC").[2] Nevertheless, throughout November and December 2021, he received nineteen cell phone calls featuring a prerecorded message ("Hi, this [*2] is Kate from Senior Benefits") soliciting senior life insurance products.[3] Plaintiff consented to none of

---

[1] "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Mot.") 3, ECF No. 26, filed Aug. 23, 2022.

[2] "Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

[3] *Id.* at 6 ¶¶ 30-31, 7-8 ¶ 36.

Anthony Paronich

these calls, and none had an emergency purpose.[4]

On one such call, Plaintiff opted to be connected to a representative who asked certain qualifying questions to determine if Plaintiff was eligible for the life insurance products being sold; upon hearing Plaintiff was only forty-seven years old, the telemarketer hung up.[5] Plaintiff continued to receive prerecorded calls from "Kate." During one of these calls he again opted to connect to a representative, but this time he claimed he was fifty years old "to qualify for an insurance policy in order to find out who was behind the calls."[6] Now qualified, Plaintiff was promptly transferred to Ms. Sophia Ahmed, an insurance agent for Defendant, "who sold Plaintiff a life insurance policy."[7] Shortly thereafter, Plaintiff received a life insurance policy from Defendant American-Amicable Life Insurance Company of Texas.[8]

*B. Procedural Background*

Plaintiff filed his Complaint in August 2022, raising three claims for relief: damages from "non-emergency telemarketing robocalls" in violation of the Telephone Consumer Protection Act ("TCPA")[9] ; damages from solicitation to his **[*3]** private phone number, which was listed on the DNC, in violation of the TCPA[10] ; and damages pursuant to the Texas Business and Commerce Code, which prohibits telephone communications for purposes of solicitation.[11]

Defendant subsequently filed its Motion, arguing Plaintiff's complaint should be dismissed, first, for failure to meet "basic pleading standards under *Rules 8* and *10*" by improperly conflating and failing to differentiate between the parties and non-parties.[12] Second, Defendant asserts Plaintiff has not stated a claim for relief as his allegations 1) do not demonstrate vicarious liability and 2) are "entirely conclusory."[13]

## II. <u>LEGAL STANDARD</u>

*Rules 8* and *10* pertain to pleading clarity. *Rule 8* requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[14] "Each allegation must be simple, concise, and direct."[15] *Rule 10* requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."[16]

*Rule 12(b)(6)* pertains to a pleading's substance, requiring dismissal of a complaint when it fails "to state a claim for which relief can be granted."[17] To survive a motion to dismiss, a plaintiff **[*4]** must plead "enough facts to state a claim to relief that is plausible on its face."[18] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[19] Facial plausibility exists

---

[4] *Id.* at 6 ¶ 30.

[5] *Id.* at 8 ¶ 37.

[6] *Id.* at 6-7 ¶ 33, 8 ¶ 39.

[7] *Id.* at 1 ¶ 3, 7 ¶ 34.

[8] *Id.* at 7 ¶ 35.

[9] *Id.* at 18-19; *see 47 U.S.C. § 227(b)*.

[10] *Id.* at 19; *see 47 U.S.C. § 227(c)(3)(F)*; **47 C.F.R. § 64.1200(c)**.

[11] *Id.* at 20; *see Tex. Bus. & Com. 305.053*.

[12] Mot. at 3.

[13] *Id.* at 3, 2.

[14] *Fed. R. Civ. P. 8(a)(2)*.

[15] *Id. § 8(d)(1)*.

[16] *Id. § 10(b)*.

[17] *Id. § 12(b)(6)*.

[18] *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.

[19] *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[21] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[22]

## III. DISCUSSION

Defendant argues Plaintiff's complaint should be dismissed pursuant to *Rules 8(a)* and *10(b)* for failure to meet pleading standards and *Rule 12(b)(6)* for failure to state a plausible claim for relief. Defendant's overwrought, disingenuous contentions fail at every step.

### A. Failure to Meet Pleading Standards

Defendant complains that Plaintiff has improperly conflated alleged acts by Defendant and Defendant's insurance agent, Ms. Ahmed, [*5] who, until recently, was also a defendant in this case.[23] Specifically, Defendant points to Plaintiff's vague, occasional use of 1) "Defendant" in the singular and 2) "Defendants" without specification.[24] Defendant also takes issue with Plaintiff's imprecise reference to the actions by Ms. Ahmed "and/or" Defendant and by Defendants

"and/or their affiliates or agents."[25]

According to Defendant, courts "consistently" dismiss "such facially-deficient pleadings. . ., even in *pro se* cases."[26] Defendant cites several unreported, out-of-circuit cases. To say none of them are on point is putting it mildly. The best Defendant can muster is *Ewing v. GoNow Travel Club, LLC* [27] and *Cunningham v. Lifestyles Development, LLC*,[28] both of which pertained to inadequate pleading in the TCPA context. In *Ewing*, the plaintiffs' pleading failed because it lumped together and asserted TCPA claims against multiple defendants, any one of whom was alleged to be the possible source behind the violative calls.[29] That is not the case here as Defendant is the only alleged principal.

In *Cunningham*, the plaintiff failed to demonstrate that the entity who physically made the telemarketing call (inviting him [*6] to a time share seminar) had any principal-agency relationship with the defendant, which was one of several commercial entities involved in the

---

[20] *Id.* (citing *Twombly, 550 U.S. at 556*).

[21] *Twombly, 550 U.S. at 555*.

[22] *See Kaiser Aluminum & Chem. Sales, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)* (citing *Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)*).

[23] *See* "Order to Dismiss Sophia Ahmed," ECF No. 28, entered Sept. 13, 2022.

[24] Mot. at 6; *see* Compl. at 2 ¶ 5, 10 ¶ 51, 11-12 ¶ 64, 17 ¶¶ 91-94, 18 ¶ 97, 98, 19 ¶ 3, 20.

---

[25] Mot. at 7 (emphasis removed).

[26] *Id.* at 5 (citing *Cunningham v. Politi, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102545, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019)*; *Cunningham v. Lifestyles Dev., LLC, No. 4:19-CV-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019)*; *Garig v. Travis, No. 20-654-JWD-RLB, 2021 U.S. Dist. LEXIS 122430, 2021 WL 2708910 (M.D. La. June 30, 2021)*; *Williams v. Am. Com. Lines, Inc., No. 20-139-SDD-EWD, 2020 U.S. Dist. LEXIS 142295, 2020 WL 4574515 (M.D. La. July 23, 2020)*); *see also id.* at 7 (citing *Ewing v. Gonow Travel Club, LLC, No. 19-cv-297-BAS-AGS, 2019 U.S. Dist. LEXIS 120969, 2019 WL 3253058 (S.D. Cal. July 19, 2019)*; *Mendoza v. J.P. Morgan Mortg. N.A., No. 7:17-CV-180, 2017 U.S. Dist. LEXIS 98990, 2017 WL 2778250 (S.D. Tex. June 27, 2017)*; *Cobarobio v. Midland Cty. Tex., No. MO:13-CV-00111-RAJ, 2015 U.S. Dist. LEXIS 193948, 2015 WL 13608102 (W.D. Tex. Jan. 7, 2015)*); id. at

[27] *Ewing, 2019 U.S. Dist. LEXIS 120969, 2019 WL 3253058*.

[28] *Cunningham, 2019 U.S. Dist. LEXIS 154112, 2019 WL 4282039*.

[29] *See Ewing, 2019 U.S. Dist. LEXIS 120969, 2019 WL 3253058, at *3*.

seminar.[30] There was no indication the defendant had any control over, or even knew about, the violative calls. Thus, *Cunningham* is also inapposite as the alleged principal-agency relationship here is direct and straightforward: Defendant is the alleged principal, Ms. Ahmed its agent, and an unnamed telemarketer a subagent.[31]

Furthermore, Defendant is plainly wrong that Plaintiff's complaint is inadequately pled. The "liberal" pleading standards of the Federal Rules of Civil Procedure aim simply to ensure a defendant has "fair notice of the basis for" a plaintiff's claims.[32] Here, Plaintiff has provided a "short and plain statement" outlining his claim, as required by *Rule 8(a)*, and he has done so in a way that clearly indicates agency relationships between Defendant, Ms. Ahmed, and the telemarketer. His pleadings easily put Defendant on notice, apprising it of the nature of his claims, which he has stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," as required by *Rule 10(b)*.[33] Additionally, the court must hold complaints **[*7]** by *pro se* litigants "to less stringent standards than formal pleadings drafted by lawyers."[34] Even if that were not the case, however, the court finds Plaintiff's Complaint is pled with sufficient clarity.

That said, it is true that Plaintiff does occasionally "conflate" Defendant and Ms. Ahmed. When he does, however, his allegations pertain to the relationship between Defendant "and/or" Ms. Ahmed, on the one hand, and the actual telemarketer, on the other. For example, he alleges "Ahmed and/or [Defendant] contracted with an

unknown third-party telemarketer to market and solicit insurance products."[35] But such an allegation is permissible for two reasons. First, Plaintiff has no way of knowing who directly hired the telemarketer, although chances are it would have been Defendant and not Ms. Ahmed. Second, even if it had been Ms. Ahmed, she and Defendant allegedly had a principal-agency relationship, meaning Defendant, the principal, may be liable for her conduct to the extent she was acting as an agent for and on behalf of Defendant.[36] Therefore, the outcome is the same whether Defendant directly hired the telemarketer or Ms. Ahmed did: Defendant may be on the hook.

## B. Failure to State **[*8]** a Claim for Relief

Defendant next asserts Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's claims for relief arise from Defendant's alleged 1) non-emergency telemarketing[37] ; 2) solicitation to a DNC-registered phone number[38] ; and 3) violations of the Texas Business and Commerce Code, which prohibits telephone solicitations.[39]

### a. Non-Emergency Telemarketing

Under the TCPA, it is "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular

---

[30] *Cunningham, 2019 U.S. Dist. LEXIS 154112, 2019 WL 4282039, at *4*.

[31] Compl. at 6 ¶ 29.

[32] *Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*.

[33] *Fed. R. Civ. P. 10(b)*.

[34] *Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002)*.

[35] Compl. at 11 ¶ 55.

[36] *See Schrum v. Land, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997)* ("A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them.").

[37] Compl. at 18-19; *see 47 U.S.C. § 227(b)*.

[38] *Id.* at 19; *see 47 U.S.C. § 227(c)(3)(F)*; **47 C.F.R. § 64.1200(c)**.

[39] *Id.* at 20; *see Tex. Bus. & Com. 305.053*.

telephone service."[40] Further, "under federal common-law principles of agency, there is vicarious liability for TCPA violations."[41] Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of former.[42]

Plaintiff asserts Defendant made, authorized, or ratified "non-emergency telemarketing robocalls" to his cell phone "without his prior express written consent."[43] Defendant does not dispute **[*9]** Plaintiff received violative calls. Instead, Defendant simply claims Plaintiff failed to allege any facts supporting an agency relationship and therefore vicarious liability.[44]

Defendant again fortifies its position primarily with unreported, inapposite, misapplied, out-of-circuit cases.[45] Yet even a cursory review of this court's TCPA caselaw demonstrates Plaintiff has plausibly alleged an agency relationship between Defendant and the unnamed telemarketer and therefore vicarious liability.

In *Callier v. National United Group, LLC*, this same plaintiff allegedly received a robocall, requested to connect to a live representative, and was then told by the telemarketer she would call him back so he could talk to a sales agent.[46] Mr.

Callier received a call back shortly thereafter.[47] This court noted:

> Mr. Callier's information was provided to [the defendant] from the initial telemarketing call and [the defendant] subsequently contacted him because of the telemarketing call. The immediacy between the two calls and the purpose of both imply that the call back was closely linked to the preceding prerecorded call. The proximity and relatedness of these calls allows for a plausible inference **[*10]** that the first prerecorded call was made by or on behalf of [the defendant].[48]

The calls in this case are even more closely connected since no call back was necessary: Plaintiff was connected directly to Ms. Ahmed on the same initial call.[49]

In *Callier v. MultiPlan, Inc.*, although our intrepid litigator failed to identify which of three defendants was the principal, the agent, or the beneficiary behind the robocalls, the court nevertheless "reasonably infer[red] the existence of an agency relationship amongst" them because Mr. Callier claimed they had "authorized a third-party telemarketer to generate prospective customers."[50] "At the very least," this and other allegations suggested one of the defendants "was a principal that authorized other [d]efendants to make robocalls on its behalf or, alternatively, ratified the robocalls by accepting the benefits they yielded."[51]

When Mr. Callier has failed, it has been because he did not directly connect the sale of a solicited product to the original "producer" of that product. In *Callier v. SunPath Ltd.*, he allegedly purchased

---

[40] *47 U.S.C. § 227(b)(1)*.

[41] *Callier v. Multiplan, Inc., No. EP-20-CV-00318-FM, LLC, 2021 U.S. Dist. LEXIS 256747, 2021 WL 8053527, *15 (W.D. Tex. Aug. 26, 2021)*.

[42] *Debaillon v. Total Minatome Corp., 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998)*.

[43] Compl. at 9 ¶ 43, 19 ¶ 2.

[44] Mot. at 15.

[45] *See generally id.* at 12-17.

[46] *Callier v. Nat'l United Grp., LLC, No. EP-21-CV-71-DB, 2021 U.S. Dist. LEXIS 223278, 2021 WL 5393829, *4 (W.D. Tex. Nov. 17, 2021)*.

[47] *Id.*

[48] *Id.* at 7.

[49] Compl. at 7 ¶ 34.

[50] *MultiPlan, 2021 U.S. Dist. LEXIS 256747, 2021 WL 8053527, at *15* (internal quotation marks omitted).

[51] *Id.*

car warranty policies from an unnamed telemarketer—but he learned the policies were covered by the defendants only **[\*11]** after those policies were mailed to his house.[52] The "mere fact that telemarketing calls were made on behalf of" the defendants, however, did not suffice to establish an agency relationship: although the defendants "undoubtedly benefited from the marketing calls, nothing in the pleadings indicate[d] either were aware of the actions allegedly in violation of the TCPA."[53]

Such is not the case here. Plaintiff alleges Ms. Ahmed or Defendant "contracted with an unknown third-party telemarketer to market and solicit [its] insurance products," "supplied the telemarketer with the age, health, income, and state of residence requirements to purchase [those] insurance products," "provided the telemarketer with access to real-time quotes and pricing information for the solicited life insurance products," "authorized the third-party telemarketer to generate automated phone calls with prerecorded voice message scripts," and "gave access to proprietary information to the third-party telemarketer to assist in the robocalling campaign."[54] The telemarketer then called Plaintiff numerous times.[55] Once Plaintiff met the criteria to purchase Defendant's life insurance policy, he was transferred **[\*12]** directly to Ms. Ahmed, its sales agent, who sold him a policy.[56]

These allegations are not, as Defendant claims,

"wholly conclusory and speculative."[57] Moreover, if they are true, which the court must assume at this stage, they reasonably imply an agency relationship between Defendant and the unnamed telemarketer. First, the allegations demonstrate an agency relationship between the telemarketer and Ms. Ahmed given her direct involvement in the call.[58] Second, they show an agency relationship between Ms. Ahmed and Defendant since Ms. Ahmed is a registered insurance agent for Defendant and sells insurance on its behalf.[59] Thus, the telemarketer was allegedly Defendant's subagent. Texas courts hold a principal vicariously liable for the tortious acts of its subagents.[60]

Accordingly, Defendant's Motion is denied with respect to Plaintiff's first claim for relief.

b. Solicitation to a DNC-Registered Phone Number

"No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained **[\*13]** by the Federal Government."[61] Plaintiff alleges that he has at all relevant times "been on" the DNC.[62]

Defendant contends this second claim for relief must fail for the same reason as Plaintiff's first: he

---

[52] *Callier v. SunPath Ltd.*, W.D. Tex, 3:20-cv-00106-FM, "Plaintiff's First Amended Complaint," 6 ¶¶ 30-33, ECF No. 27, filed Sept. 9, 2020.

[53] *Callier v. SunPath Ltd., EP-20-CV-00106-FM, 2020 U.S. Dist. LEXIS 256792, 2020 WL 10285659, \*3-4 (W.D. Tex. Aug. 10, 2020)*.

[54] Compl. at 5-6. Plaintiff alleges Defendant "and/or" Ms. Ahmed did these things. Again, however, such allegations nevertheless suffice to imply Defendant's vicarious liability.

[55] *Id.* at 6 ¶¶ 32-33.

[56] *Id.* at 8 ¶ 39, 7 ¶ 34.

[57] Mot. at 15.

[58] *See Callier v. Nat'l United Grp., LLC, EP-21-CV-71-DB, 2022 U.S. Dist. LEXIS 160399, 2022 WL 4088205, \*6 (W.D. Tex. Sept. 6, 2022)* (finding an agency relationship may have existed between an unnamed telemarketer and an insurance agent because, although the insurance agent was not present on the call, she had a "high degree of 'relatedness'" to the call as she was the one "responsible for the act of selling of insurance policies").

[59] Compl. at 1 ¶ 3.

[60] *See, e.g., Arvizu v. Estate of Puckett, 364 S.W.3d 273, 277 (Tex. 2012)*.

[61] **47 C.F.R. § 64.1200(c)**.

[62] "Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

has not adequately pled vicarious liability.[63] As discussed above, the court disagrees.

Defendant next argues Plaintiff's second claim for relief fails as he did not allege that *he himself* registered his number on the DNC.[64] Defendant cites *Rombough v. Robert D. Smith Ins. Agency, Inc.*, an unreported, out-of-circuit case, which dismissed a TCPA claim because the plaintiff, although she claimed her number was registered with the DNC, did not allege she had been the one to register it.[65] Defendant's contention borders on frivolous.

First, this court has already considered a TCPA claim in which a plaintiff alleged her number was registered on the DNC but did not specifically allege she did the registering.[66] That detail, however, did not doom her TCPA claim, to which this court found she was entitled to summary judgment.[67]

Second, *Rombough*'s nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals *who have requested* that telemarketers not [*14] contact them.[68] While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the

DNC.[69]

Finally, at the motion to dismiss stage, "a district court must accept a plaintiff's allegations as true and *indulge all reasonable inferences in their favor.*"[70] A supremely reasonable inference from the allegation that Plaintiff's number was registered on the DNC is that *he* did the registering.

Defendant's Motion is therefore denied with respect to Plaintiff's second claim for relief.

c. Telephone Solicitations Under Texas State Law

Texas Business and Commerce Code provides that anyone "who receives a communication that violates" the TCPA may seek an injunction and damages "against the person who originates the communication."[71]

Defendant makes two arguments against Plaintiff's final claim. First, "[b]ecause Plaintiff's TCPA claims fail," his state law claim also fails.[72] As discussed, however, Plaintiff's TCPA claims do not fail and therefore neither must his **[*15]** state law claim.[73]

Second, Defendant contends Plaintiff's state law claim should be dismissed because "allowing [him] to recover under both statutory schemes for the same alleged calls would amount to an improper

---

[63] Mot. at 17.

[64] Mot. at 18.

[65] *Id.* (citing *Rombough v. Robert D. Smith Ins. Agency, Inc., 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278, *2-3 (N.D. Iowa June 9, 2022)*).

[66] *Atkinson v. Pro Custom Solar LLC, SA-21-CV-00178-OLG, 2022 U.S. Dist. LEXIS 158629, 2022 WL 4071998, *8 (W.D. Tex. Sept. 1, 2022)*.

[67] *Id.*

[68] *See* Federal Trade Commission, *National Do Not Call Registry*, https://www.donotcall.gov/.

---

[69] *See, e.g., MultiPlan, 2021 U.S. Dist. LEXIS 256747, 2021 WL 8053527*; *Nat'l United Grp., LLC, 2022 U.S. Dist. LEXIS 160399, 2022 WL 4088205*; *Nat'l United Grp., LLC, 2021 U.S. Dist. LEXIS 223278, 2021 WL 5393829*; *SunPath Ltd., 2020 U.S. Dist. LEXIS 256792, 2020 WL 10285659*.

[70] *Callier v. GreenSky, Inc., No. EP-20-CV-00304-KC, 2021 U.S. Dist. LEXIS 126769, 2021 WL 2688622, *2 (W.D. Tex. May 10, 2021)* (citing *Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)*) (emphasis added).

[71] *Tex. Bus. & Com. 305.053*.

[72] Mot. at 19.

[73] *See, e.g., Nat'l United Grp., LLC, 2021 U.S. Dist. LEXIS 223278, 2021 WL 5393829, at *10* ("Since the Court has already found that Mr. Callier adequately states a claim under the TCPA, it also finds that he adequately states a claim under § 305.053.").

double recovery."[74] But Plaintiff is not recovering anything at this stage; the court is simply assessing whether he has plausibly alleged his claims for relief. He has.

## IV. **CONCLUSION**

Accordingly, it is **HEREBY ORDERED** that "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" [ECF No. 26] is **DENIED**.

**SIGNED AND ENTERED** this **18th** day of **October 2022**.

/s/ Frank Montalvo

**FRANK MONTALVO**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**

---

[74] Mot. at 20.



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:05 PM EDT

**Job Number:** 281925207

## Document (1)

1. *Murch v. GPS Cap. Mkts., LLC*

   **Client/Matter:** -None-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

Anthony Paronich

 Warning
As of: April 18, 2026 8:05 PM Z

## *Murch v. GPS Cap. Mkts., LLC*

United States District Court for the District of Oregon

June 6, 2025, Decided; June 6, 2025, Filed

Case No. 3:24-cv-01854-SB

### Reporter

2025 U.S. Dist. LEXIS 169651 *; 2025 LX 375264; 2025 WL 2466576

JESSICA MURCH, Plaintiff, v. GPS CAPITAL MARKETS, LLC, Defendant.

**Subsequent History:** Rejected by, in part, Adopted by, in part, Dismissed by, in part, Motion denied by, in part *Murch v. GPS Cap. Mkts., LLC, 2025 U.S. Dist. LEXIS 190162 (D. Or., Sept. 26, 2025)*

### Core Terms

foreign exchange, telephone solicitation, motion to dismiss, discovery, registry, solicit, reasonable inference, telephone, phone number, caller, district judge, telemarket, intertwine, brokerage, injunctive relief, subject matter jurisdiction, message, telephone number, district court, simplify, recommend, consumer, facial, pleading stage, register, largest, prevail, class certification, factual allegations, proposed class

**Counsel: [*1]** For GPS CAPITAL MARKETS LLC, Defendant: Jeffrey G. Bradford, LEAD ATTORNEY, Tonkon Torp LLP, Portland, OR; Aaron Paul Heeringa, PRO HAC VICE, Manatt Phelps & Phillips LLP, Chicago, IL; Paul Heeringa, Manatt Phelps & Phillips, Chicago, IL; John W. McGuinness, PRO HAC VICE, Manatt Phelps & Phillips LLP, Washington, DC.

For JESSICA MURCH, individually and on behalf of all others similarly situated, Plaintiff: Andrew Roman Perrong, LEAD ATTORNEY, Perrong Law LLC, Glenside, PA.

**Judges:** HON. STACIE F. BECKERMAN, United States Magistrate Judge.

**Opinion by:** STACIE F. BECKERMAN

## Opinion

### FINDINGS AND RECOMMENDATION

**BECKERMAN, U.S. Magistrate Judge**.

Plaintiff Jessica Murch ("Murch") filed this action individually and on behalf of other similarly situated individuals against GPS Capital Markets, LLC ("GPS"), alleging that GPS violated the Telephone Consumer Protection Act ("TCPA"), codified at *47 U.S.C. § 227*. The Court has jurisdiction over this matter pursuant to *28 U.S.C. § 1331*, but not all parties have consented to the jurisdiction of a magistrate judge pursuant to *28 U.S.C. § 636(c)*. Now before the Court is GPS's motion to dismiss and/or strike. For the reasons explained below, the Court recommends that the district judge grant in part and deny in part GPS's motion.

### BACKGROUND [1]

---

[1] The Court takes these facts from the complaint and assumes they are true for the purpose of reviewing the pending motions. *See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* ("[When] ruling on a defendant's motion to dismiss a complaint [the court] must accept as true all of the factual allegations contained in the complaint.") (simplified); *Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)* ("With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the

On October 28, 2024, Murch missed **[\*2]** a phone call from a number ending in 2502. (Compl. ¶ 21, ECF No. 1.) On October 29, 2024, Murch missed a second phone call from the same number. (*Id.*) On November 1, 2024, Murch received and answered the third call from the same number. (*Id.*) Below is Murch's transcript of the third call:

Jessica Murch: Hello.

Alex: Hello. Hi.

Jessica Murch: Hi.

Alex: Can I speak to Mr. [S.C.[2] ]? I was hoping to get in touch with him.

Jessica Murch: Who's calling?

Alex: Um, my name's Alex. I - [00:00:15] I've been reaching out to him. I'm calling from GPS Capital Markets.

Jessica Murch: Uh-huh. I'm sorry. Um, he's not available, but I can, uh, take a message if that works.

Alex: Okay. Like, uh, leave a message with you?

Jessica Murch: Yeah.

Alex: Okay. [00:00:30] Yeah. Uh, let me see if I can condense it, I guess. I — well, I just wanna confirm. Is — is [S.C.] - Mr. [S.C.] still the global practice director for Life and Financial Services?

Jessica Murch: Yes. Mm-hmm.

Alex: Okay. He is. That's great. [00:00:45] And, uh, would you happen to know if he deals with any foreign exchange, um -

Jessica Murch: Uh, yes.

Alex: He does. Okay. Great. Then, uh, you could just, I guess, pass on — if it's not too much, we're, uh **[\*3]** - [00:01:00] our — our company's the — the nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage. So, we'd love to just get in touch with him, um, or -

Jessica Murch: Okay.

Alex: - someone else who works at [S.C.'s company], uh, regarding foreign exchange.

Jessica Murch: Okay. Is this a good number to call back on? [00:01:15]

Alex: Yeah, this would be a great number. And could I get your name again just so I can know who I've talked to before?

Jessica Murch: Yeah. Kathy.

Alex: Kathy. Thank you so much, Kathy.

Jessica Murch: Mm-hmm.

Alex: I appreciate it. And I'm Alex. Um...

Jessica Murch: Okay, Alex.

Alex: But yeah.

Jessica Murch: Yeah, I'll have him give you a shout back. [00:01:30] Thank you so much. Bye-bye.

Alex: Okay. Sounds good. Have a great one. Bye-bye.

(Pl.'s Resp. Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp.") Ex. D, ECF No. 16-4.[3])

_____

nonmoving party.") (citation omitted).

[2] In the interest of privacy, the Court uses only the initials of the non-party individual referenced in the call.

_____

[3] Murch included quotes from the relevant call in her complaint but did not include the call's entire content. Murch submitted a transcript of the call in response to GPS's *Federal Rule of Civil Procedure ("Rule") 12(b)(1)* factual standing challenge. The Court finds that it is appropriate to consider Murch's call transcript as incorporated by reference into her complaint based on her quotations from the call in the complaint and reliance on the call's content as the basis for her claim. *See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994)* ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached

Murch alleges that she uses the phone number GPS called "for personal, residential, and household reasons."[4] (Compl. ¶ 16.) Murch further alleges that her "telephone number has been listed on the National Do Not Call [("DNC")] Registry more than [thirty-one] days prior **[*4]** to the calls at issue" and that she "has never been a customer of GPS and never consented to receive calls or text messages from GPS." (*Id.* ¶¶ 19-20.)

Based on these facts, Murch asserts a single claim against GPS, alleging that GPS violated the TCPA by initiating more than one telephone solicitation to her phone number, which is listed on the DNC registry, within a twelve-month period. (*Id.* ¶¶ 41-46.) GPS moves to dismiss Murch's claims pursuant to *Rule 12(b)(1)* on the ground that the Court lacks subject matter jurisdiction because Murch does not have Article III standing to bring a TCPA claim. (Def.'s Mot. Dismiss & Strike ("Def.'s Mot.") at 11-15, ECF No. 7.) GPS further moves to dismiss Murch's claim pursuant to *Rule 12(b)(6)* on the ground that Murch fails to state a claim upon which relief can be granted. (*Id.* at 15-25.) In the alternative, GPS moves to strike Murch's class allegations pursuant to *Rule 12(f)* on the ground that Murch's proposed class is facially uncertifiable. (*Id.* at 25-31.)

## DISCUSSION

## I. LEGAL STANDARDS

to the pleading, may be considered in ruling on a *Rule 12(b)(6)* motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)*; *see also Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018)* ("The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.") (citations omitted).

[4] "*[Section] 227(c)* and its implementing regulations apply only to 'residential' telephone subscribers[.]" *Chennette v. Porch.com, Inc., 50 F.4th 1217, 1223 (9th Cir. 2022)*.

## A. *Rule 12(b)(1)*

Typically, "when 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all material allegations of the complaint, **[*5]** and must construe the complaint in favor of the complaining party.'" *Mecinas v. Hobbs, 30 F.4th 890, 896-97 (9th Cir. 2022)* (quoting *Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1178 (9th Cir. 2000)*). An exception to this "general rule" is "where the defendant brings a motion under *Rule 12(b)(1)* challenging subject matter jurisdiction as a factual—rather than facial—matter." *Id. at 896* (citing *White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)*).

If the defendant asserts a factual attack "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)*). Ordinarily, "[a]t that point, the court may resolve any factual disputes concerning the existence of jurisdiction." *Id.* (citing *Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983)*). If, however, "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Id.* (quoting *Augustine, 704 F.2d at 1077*).

## B. *Rule 12(b)(6)*

To survive a motion to dismiss under *Rule 12(b)(6)*, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting **[*6]** *Twombly, 550*

*U.S. at 570*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly, 550 U.S. at 556*). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly, 550 U.S. at 556*).

## C. *Rule 12(f)*

*Rule 12(f)* provides that a "court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter." *FED. R. CIV. P. 12(f)*. "A decision to grant a motion to strike class allegations at the pleading stage is the 'functional equivalent of denying a motion to certify a case as a class action' before discovery commences." *Nichols v eHealthInsurance Servs. Inc., No. 5:23-cv-06720, 2025 U.S. Dist. LEXIS 37917, 2025 WL 689721, at *4 (N.D. Cal. Mar. 3, 2025)* (quoting *Bates v. Bankers Life & Cas. Co., 848 F.3d 1236, 1238 (9th Cir. 2017)*). "The Ninth Circuit has recognized that 'often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.'" *Id.* (quoting *Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009)*). The Ninth Circuit has instructed that generally, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable." *Id.* (quoting *Vinole, 571 F.3d at 942*). "But when the problem with the class allegations is 'facially evident, **[*7]** it makes sense to address the issue early on.'" *Id.* (citation omitted).

## II. ANALYSIS

## A. *Rule 12(b)(1)*

The Ninth Circuit has explained that "[t]o contest a plaintiff's showing of subject matter jurisdiction, a

defendant may file two types of *Rule 12(b)(1)* motions[.]" *Bedwell v. TBLB PAGE 6 - FINDINGS AND RECOMMENDATION Enters. LLC, No. 21-56245, 2022 U.S. App. LEXIS 21469, 2022 WL 3083320, at *1 (9th Cir. Aug. 3, 2022)*. Specifically, a defendant may file "a facial attack, which challenges jurisdiction 'facially,' by arguing that the allegations . . . are insufficient on their face to invoke federal jurisdiction, or a 'factual' attack, which presents extrinsic evidence . . . disputing the truth of the allegations of the complaint that would otherwise invoke federal jurisdiction." *Id.* (citing *Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)*).

Here, GPS brings a factual attack on Murch's Article III standing to assert her TCPA claim, and a facial attack on Murch's standing to seek injunctive relief. (*See* Def.'s Mot. at 9, citing the relevant sections containing the respective arguments for dismissal and stating that "[i]n this Motion, GPS makes both a factual . . . and a facial . . . Article III standing challenge").

## 1. Injury in Fact

GPS moves to dismiss Murch's claim on the ground that "extrinsic evidence shows she did not suffer any 'injury in fact' traceable to GPS's conduct, and therefore she lacks Article III standing." (*Id.* at 11.) **[*8]** Specifically, GPS argues that "[Murch] is at best complaining of a 'bare procedural violation' in this case . . . divorced from the 'real harms' the TCPA was designed to prevent" because the relevant call was intended for S.C., at a published business number. (*Id.* at 13-14, "[T]he evidence shows that the one short call that Plaintiff claims to have answered on November 1, 2024 (out of the three at issue) was in reality made to a published business number, that is apparently owned and used by a different person ([S.C.])." ) (emphasis omitted). GPS submits with its motion a recording and "rough transcript" of the relevant call (Decl. Everett Greenleaf ("Greenleaf Decl.") Ex. B, ECF No. 8-2) and argues that the extrinsic evidence demonstrates

that "[Murch] plainly was not solicited to purchase anything from GPS on any call, as is alleged." (Def.'s Mot. at 13.)

Murch responds that she has owned the relevant phone number since July 2024 and that "[GPS] could, and should, have checked whether the telephone number was possibly assigned to someone else entirely and scrubbed it to determine whether it was on the National Do Not Call Registry before calling it, but consciously did not do so." **[*9]** (Pl.'s Resp. at 11, ECF No. 16) (emphasis omitted). Murch also submits her own transcript of the relevant call and argues that "[o]n its face, the script is clearly telephone solicitation extolling the benefits of GPS Capital's foreign exchange brokerage services." (*Id.* at 13.) Specifically, Murch argues that the caller "extolled the benefits of GPS Capital's foreign exchange services" by stating that "our company[ is the] nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage[, s]o, we'd love to just get in touch with him . . . [or] someone else who works at [S.C.'s company] . . . regarding foreign exchange." (*Id.*)

### a. Applicable Law

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Chennette, 50 F.4th at 1221* (quoting *Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011)*). "An allegation of a bare procedural violation is not enough to satisfy Article III because the injury 'must affect **[*10]** the plaintiff in a personal and individual way' and must be 'de facto' (that is, 'actually exist')." *Id.* (quoting *Spokeo, Inc. v. Robins, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*).

The Ninth Circuit has determined that "in enacting the TCPA, Congress 'establishe[d] the substantive right to be free from certain types of phone calls and texts absent consumer consent . . . [and] identified unsolicited contact as a concrete harm.'" *Id.* (quoting *Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017)*). The TCPA defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *47 C.F.R. § 64.1200(f)(15)*. "A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Chennette, 50 F.4th at 1221* (quoting *Van Patten, 847 F.3d at 1043*).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)* (citing *Savage, 343 F.3d at 1039 n.2*). "A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits." *Farr v. United States, 990 F.2d 451, 454 n.1 (9th Cir. 1993)* (quoting *Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987)*). "[W]here **[*11]** jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment." *Id.* (quoting *Careau Grp. v. United Farm Workers of Am., AFL-CIO, 940 F.2d 1291, 1293 (9th Cir. 1991)*). "Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine, 704 F.2d at 1077*.

### b. Analysis

## 1) Standard

Murch argues that the Court should deny GPS's jurisdictional challenge because the jurisdictional question is intertwined with the merits of her TCPA claim. (*See* Pl.'s Resp. at 9, "[W]hen, as here, the question of jurisdiction and the merits are intertwined with the statute, a 12(b)(1) motion is proper 'only when the allegations of the complaint are frivolous.' When the jurisdictional issues of the case are so intertwined with the factual merits-based issues, the motion should be denied and the case allowed to proceed to a determination on the merits[,]" citing *Safe Air for Everyone, 373 F.3d at 1039-40*.) GPS responds that "[t]his Court is not precluded from ruling on this issue now by the 'intertwinement' rule, because GPS's factual jurisdictional challenge is not inextricably intertwined with, and is 'separable from the merits' **[\*12]** of, Plaintiff's TCPA claim." (Def.'s Reply Pl.'s Opp'n ("Def.'s Reply") at 2, quoting *Alfi v. Nordstrom, Inc., No. 3:09-cv-01249, 2010 U.S. Dist. LEXIS 129761, 2010 WL 5093434, at \*4 (S.D. Cal. Dec. 8, 2010)*, ECF No. 22.)

The Court finds that GPS's jurisdictional challenge "is so intertwined with the merits that its resolution depends on the resolution of the merits[.]" *Farr, 990 F.2d at 454 n.1* (citation omitted). Specifically, the TCPA serves as the basis for federal subject matter jurisdiction and Murch's substantive claim for relief and thus the question of jurisdiction and the merits of this action are intertwined. *See 47 U.S.C. § 227(g)(2)* ("The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection."); *see also Safe Air for Everyone, 373 F.3d at 1040* ("The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 139 (9th Cir. 1983)*)); *Ventura Packers, Inc. v. F/V Jeanine Kathleen, 305 F.3d 913, 922 (9th Cir. 2002)* (finding that "the Maritime Lien Act inextricably intertwines the questions of subject matter jurisdiction and [the plaintiff]'s substantive claim for relief" because "the Maritime Lien Act enumerates the elements required for *both* a valid necessaries **[\*13]** lien and the right to enforce that lien in admiralty" and therefore, "we consider both [the jurisdictional and merits] questions according to the standards applicable on summary judgment").

Accordingly, GPS "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine, 704 F.2d at 1077*; *Ventura Packers, Inc., 305 F.3d at 922* ("We, therefore, leave for the trier of fact to decide whether [the plaintiff] provided the Ships with goods and services on the order of the owner or a person authorized by the owner. This inquiry will determine whether there is admiralty jurisdiction and whether [the plaintiff] prevails on the merits."); *Careau Grp., 940 F.2d at 1293* ("[T]he ultimate jurisdictional issue is precisely the same as the ultimate issue on the merits. As a result, the district court should dismiss for lack of jurisdiction only if there are no triable issues of fact.").

## 2) Application

The Court agrees with GPS that the material jurisdictional facts include whether the relevant call constitutes a "telephone solicitation" within the meaning of the TCPA. (*See* Def.'s Reply at 3, "[T]he extrinsic evidence submitted in this case shows that Plaintiff did not receive a 'telephone solicitation' as **[\*14]** defined by the TCPA's DNC implementing regulations; and, as a consequence, that she did not suffer an 'injury-in-fact' as is required for standing under Article III of the Constitution, depriving this Court of federal subject matter jurisdiction to hear her TCPA claim.") (footnote omitted).

The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose for initiating the communication. *See Abboud v. Circle K Stores Inc., No. 2:23-cv-01683, 2025 U.S. Dist. LEXIS 13605, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025)* ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's purpose in causing the messages to be sent."); *Whittaker v. Freeway Ins. Servs. Am., LLC, No. 3:22-cv-08042, 2023 U.S. Dist. LEXIS 6018, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023)* ("It is the purpose behind a call that controls, not what happened during the call.") (simplified); *Friedman v. Torchmark Corp., No. 3:12-cv-02837, 2013 U.S. Dist. LEXIS 114321, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013)* ("The Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future.").

The parties' evidence demonstrates that the caller first sought to confirm that S.C. owned the relevant number, worked in a particular role in the financial services industry, and utilized particular services within that industry. (*See* Pl.'s Resp. Ex. D at 1, asking if S.C is "still the global practice director for Life and Financial Services" and "if he deals with any foreign **[*15]** exchange[.]") The caller then asked Murch to communicate to S.C. that GPS is "the nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage" and that "we'd love to just get in touch with him . . . or . . . someone else who works at [S.C.'s company] . . . regarding foreign exchange." (*Id.*) GPS's declaration in support of its motion confirms that "GPS sells foreign exchange and currency management solutions to corporate accounts," that GPS "sells its products and services to businesses and persons working in the financial services and banking sectors" and that "the purpose of [the relevant] calls was to contact an individual working in the financial sector[.]" (*See* Greenleaf Decl. ¶¶ 9-10, ECF No. 8.)

In its briefing, GPS argues that Murch did not suffer an Article III injury-in-fact because the caller did not intend to and did not encourage *her* to purchase goods or services. (*See* Def.'s Reply at 6, "[T]he evidence shows 'the purpose of the calls' was not 'to solicit the Plaintiff to sign up for the Defendant's products and services, specifically, a foreign exchange brokerage account' as she alleges and thus that she did not receive a 'telephone solicitation' **[*16]** and was not injured.") (simplified). At oral argument, GPS clarified its position that the relevant calls were not made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" from S.C., but rather to update its calling list. (*See* Mot. Dismiss Hr'g Tr. ("Hr'g Tr.") 14:14-21, May 13, 2025, ECF No. 27.)

Based on the submitted evidence, the Court finds that disputes of material jurisdictional facts preclude a determination of standing at this stage of the litigation. Specifically, the parties dispute the caller's purpose for initiating the relevant call, and the purpose of the call is relevant to both the merits of Murch's claim and whether she suffered an Article III injury-in-fact. To the extent GPS argues that the relevant calls were not "telephone solicitations" because the caller did not solicit *Murch* "to sign up for [GPS's] products and services" during the call (Def.'s Reply at 6), that argument is a variation of the "intended recipient" defense, which the Ninth Circuit has rejected as inconsistent with the TCPA's text and intended purpose. *See N.L. by Lemos v. Credit One Bank, N.A., 960 F.3d 1164, 1167 (9th Cir. 2020)* (rejecting the "intended recipient" defense and holding that "[the defendant]'s intent to call **[*17]** a customer who had consented to its calls does not exempt [it] from liability under the TCPA when it calls someone else who did not consent"); *Abboud, 2025 U.S. Dist. LEXIS 13605, 2025 WL 307039, at *10-12* (applying *N.L. by Lemos* in the DNC registry context); *Samson v. United Healthcare Servs. Inc., No. 2:19-cv-00175, 2022 U.S. Dist. LEXIS 229000, 2022 WL 17820567, at *2 (W.D. Wash. Dec. 20, 2022)* ("The Ninth Circuit [in *N.L. by Lemos*] upheld the district court's holding that a

company that intended to call a customer, but in fact did not, . . . [does] not exempt the company from liability under the TCPA."); *Greene v. Select Funding LLC, No. 2:20-cv-07333, 2021 U.S. Dist. LEXIS 206366, 2021 WL 4926495, at *2 (C.D. Cal. Feb. 5, 2021)* (applying *N.L. by Lemos* in the DNC Registry context and rejecting the defendant's Article III standing challenge). Thus, the Court cannot conclude as a matter of law that Murch suffered no injury because she was not the intended recipient of the call.

GPS relies primarily on *Selby* in support of its standing argument. (*See* Def.'s Mot. at 12, "The *Selby* case is instructive on this point.") *Selby* is distinguishable. Specifically, the court in *Selby* held that the plaintiff did not have Article III standing to assert her TCPA claim because the defendant's undisputed purpose for initiating the calls at issue was debt collection, which does not violate the TCPA. *See Selby v. Ocwen Loan Servicing, LLC, No. 3:17-cv-00973, 2017 U.S. Dist. LEXIS 189995, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017)* ("All of the calls at issue here relate to [the defendant]'s efforts to collect a debt and do not relate to telemarketing. Calls from debt collectors are undoubtedly unwanted, **[*18]** stressful, and frustrating, but the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors."). Here, unlike in *Selby*, the purpose of the calls at issue is disputed by the parties, and GPS does not argue or provide evidence supporting that the caller initiated the calls for debt collection purposes.

The other cases GPS cites are also distinguishable. For example, unlike here, where Murch submitted evidence in response to GPS's standing challenge, in *Baccari*, the court granted the defendant's *Rule 12(b)(1)* motion because the plaintiff failed to submit any evidence in response to the defendant's factual standing challenge. *See Baccari v. Carguard Admin., Inc., No. 2:22-cv-01952, 2022 U.S. Dist. LEXIS 140853, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022)* ("Because [the plaintiff] has not met his burden to produce evidence

responding to [the defendant]'s factual attack, [the defendant]'s motion for lack of subject matter jurisdiction will be granted, and the Complaint will be dismissed without prejudice."). *Hall* is distinguishable for the same reason. *See Hall v. Xanadu Mktg., Inc., 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023)* ("Here, [the plaintiff] does not provide any evidence by way of declaration to dispute [the defendant]'s declaration that she consented to receiving the texts. Instead, [the plaintiff] argues that her allegations in the Amended Complaint **[*19]** control, but in a factual challenge the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case and no presumptive truthfulness attaches to plaintiff's allegations.") (simplified).

In *St. Louis Heart Center, Inc.*, the Eighth Circuit affirmed the dismissal of the plaintiff's TCPA claim on standing grounds because the plaintiff had "not alleged a concrete or particularized harm resulting from receiving faxes that [the plaintiff] both invited and did not rebuke." *St. Louis Heart Ctr., Inc. v. Nomax, Inc., 899 F.3d 500, 503 (8th Cir. 2018)*. Unlike the plaintiff in *St. Louis Heart Center, Inc.*, however, it is undisputed that Murch did not consent to receive the calls at issue here.

In *Stewart*, the court dismissed the plaintiff's TCPA claim alleging that the defendant failed to honor the plaintiff's request to be placed on the defendant's internal do-not-call list for lack of standing because "he did not clearly express a desire to stop receiving calls from [the defendant]." *Stewart v. Network Cap. Funding Corp., 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021)*. Here, however, it is undisputed that the relevant phone number was on the DNC registry at the time of the relevant calls.

In *Winner*, the Court dismissed the plaintiffs' claims for lack of standing because the plaintiffs consented to receive the messages **[*20]** at issue. *See Winner v. Kohl's Dep't Stores, Inc., No. 2:16-cv-01541, 2017 U.S. Dist. LEXIS 131225, 2017 WL 3535038, at *6 (E.D. Pa. Aug. 17, 2017)* ("The

facts contained in the Stipulation establish that both [plaintiffs] gave prior express consent under the TCPA through a method made permissible by the E-Sign Act. Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC."). Here, however, it is undisputed that Murch did not consent to receive the calls at issue. The other cases that GPS cites in its reply are distinguishable for similar reasons.

In light of the Court's conclusion that the question of jurisdiction and the merits are intertwined and that material jurisdictional facts are in dispute, the district judge should deny GPS's *Rule 12(b)(1)* standing challenge. *See Mecinas, 30 F.4th at 896* ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.") (citation omitted); *Augustine, 704 F.2d at 1077* ("[T]he moving party should prevail only if the material jurisdictional facts are **[*21]** not in dispute and the moving party is entitled to prevail as a matter of law."); *Ventura Packers, Inc., 305 F.3d at 922* ("We, therefore, leave for the trier of fact to decide whether [the plaintiff] provided the Ships with goods and services on the order of the owner or a person authorized by the owner. This inquiry will determine whether there is admiralty jurisdiction and whether [the plaintiff] prevails on the merits.").

## 2. Injunctive Relief

Murch seeks "[i]njunctive relief for the Class, pursuant to *47 U.S.C. § 227(c)(5)* preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry[.]" (Compl. at 8-9.) GPS moves to dismiss Murch's request for injunctive relief because she "does not allege any facts in her Complaint suggesting she is at any

imminent risk of any future injury (i.e., of receiving additional violative calls from or on behalf of GPS in the future), as required to demonstrate Article III standing for injunctive relief in any federal case." (Def.'s Mot. at 14) (emphasis omitted).

Murch responds that injunctive relief is "particularly warranted here [because] Plaintiff continues to receive calls and there is real risk of future harm."[5] (Pl.'s Resp. at 17) (emphasis omitted). Murch further argues that "[i]t **[*22]** is plausible that the Plaintiff may receive additional calls in the future, and [GPS] has made no assurances that it will abstain from calling the Plaintiff." (*Id.* at 17-18, citing *Griffin v. Am.-Amicable Life Ins. Co. of Tex., No. 6:24-cv-00243-MC, 2024 U.S. Dist. LEXIS 175344, 2024 WL 4333373 (D. Or. Sept. 27, 2024)*.)

### a. Applicable Law

"In a facial [standing] attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone, 373 F.3d at 1039*. In evaluating a facial challenge under *Rule 12(b)(1)*, the Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Wolfe, 392 F.3d at 362* ("[T]he defendants argue that the allegations in [the] complaint are insufficient on their face to establish subject matter jurisdiction. Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint. We assume [the plaintiff]'s allegations to be true and draw all reasonable inferences in his favor.").

"For a prospective remedy such as injunctive relief, the 'threatened injury must be certainly impending,' and 'allegations of possible future injury are not

---

[5] At oral argument, however, Murch's counsel acknowledged that Murch has not received a call from GPS since the November 1, 2024 call at issue. (*See* Hr'g Tr. 34:10-12.)

sufficient.'" *Griffin, 2024 U.S. Dist. LEXIS 175344, 2024 WL 4333373, at *3* (quoting *Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013)*). "Previous injuries, though insufficient by themselves to grant standing, are 'evidence **[*23]** bearing on whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)*).

**b. Analysis**

The Court finds that Murch has failed to allege facts to establish "a present case or controversy regarding injunctive relief[.]" *Lyons, 461 U.S. at 102* (quoting *O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)*).

Murch alleges that GPS called her three times over a five-day period in 2024. (Compl. ¶ 21.) Murch alleges that she did not answer the first two calls. (*Id.* ¶¶ 23-24.) Murch answered the third call during which "'Alex' from 'GPS Capital Markets' . . . attempted to sell [Murch] [GPS]'s foreign exchange trading platform[.]" (*Id.* ¶¶ 24-25.) Murch does not allege any other details relating to her conversation with GPS, but alleges that she "never provided her consent or requested the calls." (*Id.* ¶ 30.)

In *Griffin*, the court held that the plaintiffs "sufficiently allege[d] an imminent risk of future harm that entitles them to injunctive relief" because each of the plaintiffs continued to receive calls soliciting life insurance after repeatedly informing the defendant that they were not interested in its products. *See Griffin, 2024 U.S. Dist. LEXIS 175344, 2024 WL 4333373, at *1, *6* (alleging that one plaintiff received three calls from the same agent and informed him each time that he was not interested in the **[*24]** life insurance products offered); *2024 U.S. Dist. LEXIS 175344, [WL] at *1-2* (alleging that the second plaintiff received two calls from the defendant's agents, in which the defendant transferred her to multiple agents who

continued to solicit life insurance even after she informed the agents that she was not interested in their products). Here, Murch does not allege that she ever requested that GPS stop calling her or that GPS has called her since November 1, 2024.

Having considered the factual allegations in Murch's complaint, the Court finds that Murch alleges only a possible future injury and therefore lacks standing to pursue her claim for injunctive relief. *See Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018)* ("[T]he 'threatened injury must be *certainly impending* to constitute injury in fact' and "allegations of *possible* future injury are not sufficient." (quoting *Clapper, 568 U.S. at 409*)); *see also Woodburn v. Gen. Auto. Ins. Servs., No. 2:22-cv-01975, 2023 U.S. Dist. LEXIS 240812, 2023 WL 11892501, at *2 (D. Nev. Nov. 6, 2023)* (dismissing the plaintiff's TCPA claim for injunctive relief for lack of standing because "she has not plausibly alleged that [the defendant] is likely to wrong her again in a similar way" considering "[t]he amended complaint includes a screenshot showing that Woodburn responded to [the defendant]'s second text by typing 'Stop,' and she does not allege she received another text thereafter"); **[*25]** *Blair v. Assur. IQ LLC, No. 2:23-cv-00016, 2023 U.S. Dist. LEXIS 183095, 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023)* (dismissing the plaintiff's TCPA claim for injunctive relief for lack of standing and finding that the plaintiff failed to "allege a sufficient threat of future harm—let alone 'actual and imminent' or 'certainly impending' harm[ because] . . . he does not even mention the possibility of future calls[ a]nd according to the amended complaint, he only received calls over a period of seven days"). Accordingly, the district judge should dismiss Murch's claim for injunctive relief.

**B. *Rule 12(b)(6)***

**1. Failure to state a claim**

GPS moves to dismiss Murch's claim under *Rule 12(b)(6)* for failure to state a claim on multiple grounds. First, GPS argues that Murch fails plausibly to "allege a theory of liability under the TCPA against GPS, which alone is fatal and warrants dismissal." (Def.'s Mot. at 15-21.) Second, GPS argues that Murch fails to allege sufficient facts supporting her TCPA claim because "she readily admits that she only answered one of the three calls at issue." (*Id.* at 22.) Third, GPS argues that Murch fails to state a viable TCPA claim because "the Complaint also fails to sufficiently allege that the communications Plaintiff purportedly received constituted actionable 'telephone solicitations' as defined **[*26]** by the TCPA's implementing regulations." (*Id.* at 23-24.) Fourth, GPS argues that the Court should dismiss Murch's claim because "Plaintiff does not allege that she herself (and not some other party) registered the phone number upon which she received the alleged calls on the National DNC Registry[.]" (*Id.* at 24-25) (emphasis omitted).

With respect to GPS's first argument, Murch responds that she has sufficiently alleged facts that support a theory of direct liability against GPS. (Pl.'s Resp. at 19-25.) To GPS's remaining arguments, Murch responds that she has sufficiently pled all required elements of her TCPA claim. (*Id.* at 25-32.)

### a. Direct Liability

GPS moves to dismiss Murch's claim on the ground that "the complaint lacks sufficient non-conclusory factual allegations indicating that the defendant actually made the calls at issue by taking the steps necessary to physically place a call." (Def.'s Mot. at 16; *see also* Def.'s Reply at 16, "Plaintiff's Opposition ultimately fails to refute GPS's substantive arguments on the *Rule 12(b)(6)* issues.") Murch responds that "this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint[.]" **[*27]** (Pl.'s Resp. at 23.)

### 1) Applicable Law

Under the TCPA, "[t]here are two potential theories of liability: (1) direct liability; and (2) vicarious liability." *Thomas v. Taco Bell Corp., 582 F. App'x 678, 679 (9th Cir. 2014)*. "Under the direct liability standard, 'the complaint must allege facts showing the defendant actually placed calls violating the TCPA.'" *Griffin, 2024 U.S. Dist. LEXIS 175344, 2024 WL 4333373, at *3* (quoting *Workman v. CarGuard Admin. Inc., No. 2:23-cv-00961, 2024 U.S. Dist. LEXIS 11476, 2024 WL 249160, at *5 (D. Ariz. Jan. 23, 2024)*). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* (citation omitted).

### 2) Analysis

Murch alleges that "[d]uring the third call, which Plaintiff answered, the Plaintiff spoke to an individual named 'Alex' from 'GPS Capital Markets.'" (Compl. ¶ 24.) Murch further alleges that "[u]pon information and belief, [the caller's] telephone number is owned by Defendant GPS." (*Id.* ¶ 22.) Murch clarifies in her response that she is asserting claims against GPS on a direct theory of liability. (Pl.'s Resp. at 19.)

The Court finds that Murch's allegations, taken in the light most favorable to her, support a reasonable inference **[*28]** that GPS initiated the relevant calls. Specifically, Murch alleges that the same phone number called her three times within a five-day period. (*See* Compl. ¶¶ 21-25.) Murch further alleges that during the third call, the caller identified himself as "'Alex' from 'GPS Capital Markets'" and "billed [GPS] as the 'world's largest foreign exchange brokerage,' and also sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account."

(*Id.* ¶¶ 24-25.) The Court finds that Murch's allegations are sufficient to support a reasonable inference that GPS initiated the alleged calls. *See Griffin, 2024 U.S. Dist. LEXIS 175344, 2024 WL 4333373, at *4* (finding the plaintiff's allegations that he "received repeated calls by an outfit purporting to call on behalf of the Defendant to sell Defendant's services" to be "sufficient to create a plausible inference that Defendant made the calls at issue"); *Greene, 2021 U.S. Dist. LEXIS 206366, 2021 WL 4926495, at *3* ("[T]he most reasonable inference is the simplest one—that the caller is from where she said she was.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege facts supporting a direct theory of liability against GPS.

### b. Number of Calls

GPS moves to dismiss Murch's claim on **[*29]** the ground that "she has not sufficiently pleaded she received more than one telephone solicitation by or on behalf of GPS in [a] 12-month period, as required" to assert her TCPA claim. (Def.'s Mot. at 22.) Murch responds that "the TCPA does not require a plaintiff to answer each call, [evidenced] by its very definition requiring only the receipt of more than one call, and the Plaintiff received three." (Pl.'s Resp. at 26) (emphasis omitted). Murch further argues that the alleged facts support a reasonable inference that all three calls were telephone solicitations from GPS. (*Id.* at 25-27.)

### 1) Applicable Law

"The TCPA gives consumers 'who ha[ve] received more than one telephone [solicitation] within any 12-month period by or on behalf of the same entity . . . a private right of action." *Jones v. Royal Admin. Servs., Inc., 887 F.3d 443, 448 (9th Cir. 2018)* (quoting *47 U.S.C. § 227(c)(5)*). Importantly here, "more than one telephone solicitation is needed to trigger a [TCPA] violation." *Greene, 2021 U.S.*

*Dist. LEXIS 206366, 2021 WL 4926495, at *5*.

### 2) Analysis

Murch alleges that she received three calls from the relevant phone number and that she only answered the third call. (*See* Compl. ¶¶ 21-24.) The parties identify case law with conflicting interpretations of the TCPA's requirement that a plaintiff "receive[] more than one telephone **[*30]** [solicitation] within any 12-month period[.]" *47 U.S.C. § 227(c)(5)*. Neither party identifies, and the Court has not found, any binding authority interpreting the relevant statutory language.

GPS primarily relies on *Greene* and similar cases holding that a plaintiff who pleads that she received multiple calls from the same number, but only answered one call, fails sufficiently to plead facts supporting receipt of "more than one telephone [solicitation]" to support a TCPA claim. *See Greene, 2021 U.S. Dist. LEXIS 206366, 2021 WL 4926495, at *5* ("Plaintiff has alleged that his mother placed his number on the DNC registry. And while he alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged one telephone solicitation. But more than one telephone solicitation is needed to trigger a violation. Plaintiff, however, has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations."); *Weingrad v. Top Healthcare Options Ins. Agency Co., No. 2:23-cv-05114, 2024 U.S. Dist. LEXIS 167980, 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024)* ("[The defendant] placed nine calls to [the plaintiff]. But [the plaintiff] only answered one of these calls. [The plaintiff] does not allege more than one telephone solicitation within a twelve-month **[*31]** period. He does not presently allege [the defendant] violated the Telephone Consumer Protection Act.") (citations omitted); *Gillam v. Reliance First Cap., LLC, No. 2:21-cv-04774, 2023 U.S. Dist. LEXIS 29477, 2023 WL*

*2163775, at *3 (E.D.N.Y. Feb. 22, 2023)* ("[T]he call log shows, with the exception of the August 4, 2021 call, that the other calls were blocked, missed calls or declined calls. As such, Plaintiff has not plausibly alleged that these prior calls were 'telephone solicitation[s]' under *Section 227(c)(5)*." (citing *Greene, 2021 U.S. Dist. LEXIS 206366, 2021 WL 4926495, at *5*)) (simplified).

Murch primarily relies on cases holding that, at the pleading stage, a plaintiff's allegations that she only answered one telephone solicitation, but received multiple calls from the same phone number, are sufficient to state a TCPA claim. *See Toney v. Quality Res., Inc., 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014)* ("[The plaintiff] has alleged that she received and answered a call from [the telemarketer] in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from [the telemarketer]. The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Whittaker, 2023 U.S. Dist. LEXIS 6018, 2023 WL 167040, at *2* ("Multiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of **[*32]** the calls[ was solicitation].") (citations omitted); *Atkinson v. Choice Home Warranty, No. 2:22-cv-04464, 2023 U.S. Dist. LEXIS 5570, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023)* ("[W]hile Plaintiff only alleges the specific content of one call, she answered the phone on at least three occasions, claims that Defendant began calling [the plaintiff] on her cellular telephone to sell Plaintiff a home warranty plan, that the calls were for telemarketing purposes, and that Defendant placed calls to [the plaintiff] on numerous occasions attempting to solicit Plaintiff a home warranty plan[.] These allegations create a reasonable inference that more than one of the seven calls explicitly listed were 'telephone solicitations' in violation of the statute.") (simplified); *Bird v. Pro Star Builders, Inc., No. 2:22-cv-03610, 2022 U.S.*

*Dist. LEXIS 215155, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022)* ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not.").

In light of the Court's obligation to draw all reasonable inferences in Murch's favor at the pleading stage, the Court finds that it is reasonable to infer from the content and timing of the third call that the first two calls from the same phone number were for the same purpose. *See Toney, 75 F. Supp. 3d at 746* ("The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] **[*33]** made the first three calls to market [the defendant]'s services."); *Whittaker, 2023 U.S. Dist. LEXIS 6018, 2023 WL 167040, at *2* ("Multiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls[ was solicitation].") (citations omitted); *Bird, 2022 U.S. Dist. LEXIS 215155, 2022 WL 18216007, at *3* ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she received more than one telephone solicitation.

### c. Telephone Solicitation

GPS moves to dismiss Murch's claim on the ground that "she does not plead any facts, beyond her naked conclusions, suggesting that she was actually solicited to purchase GPS's goods or services on that call." (Def.'s Mot. at 24.) Murch responds that she "received three calls from the same number, and the third caller was GPS Capital calling to solicit its foreign exchange services." (Pl.'s Resp. at 28.)

## 1) Applicable Law

The TCPA and related regulations defines the term "telephone solicitation" to include "the initiation of a telephone call or message **[*34]** for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *47 C.F.R. § 64.1200(f)(15)*; *see also* *47 U.S.C. § 227(a)(4)* (same). "The purpose of a text or call determines whether it qualifies as a telephone solicitation, and courts use 'a measure of common sense' to determine its purpose." *Abboud v. Circle K Stores Inc., 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024)* (quoting *Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918 (9th Cir. 2012)*).

## 2) Analysis

Murch alleges that during the third call, GPS's employee "attempted to sell the Plaintiff the Defendant's foreign exchange trading platform, which he billed as the 'world's largest foreign exchange brokerage,' and also sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (Compl. ¶ 25.) Although the call transcript contradicts Murch's allegation that GPS's employee "attempted to sell" *Murch* its "foreign exchange platform" (Compl. ¶ 25), the Court nevertheless finds that Murch sufficiently pleads facts supporting her allegation that the relevant phone call was a "telephone solicitation." As discussed above, Murch alleges and the call's transcript confirms that on the call, GPS's employee "billed [GPS] as the 'world's largest foreign exchange brokerage'" and "sought to speak with anyone else **[*35]** that might be interested regarding a foreign exchange brokerage account." (*Id.*) Drawing all reasonable inferences in Murch's favor, the Court finds these allegations support a reasonable inference that GPS's employee initiated the relevant call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" *47 U.S.C. § 227(a)(4)*; *see also Abboud, 731 F. Supp.*

*3d at 1102* ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." (quoting *Chesbro, 705 F.3d at 918*)); *see also Whittaker, 2023 U.S. Dist. LEXIS 6018, 2023 WL 167040, at *2* ("Except for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money, as did the recorded message in this case.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she received a telephone solicitation.

## d. DNC Registration

GPS moves to dismiss Murch's TCPA claim on the ground that she "does not allege that she herself (and not some other party) registered the phone number upon which she received the alleged calls on the National DNC Registry[.]" **[*36]** (Def.'s Mot. at 25) (emphasis omitted). Murch responds that "the TCPA cannot require that an individual later seeking to sue under the Do Not Call Registry provisions of the TCPA needs to personally register their number on the Do Not Call Registry because that fact would be impossible to prove, as the FTC is neither authorized to nor collects such information." (Pl.'s Resp. at 29) (emphasis omitted).

## 1) Applicable Law

TCPA regulations prohibit any "person or entity [from] initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" *47 C.F.R. § 64.1200(c)(2)*. "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

## 2) Analysis

Murch alleges that her "telephone number has been listed on the National Do Not Call Registry more than 31 days prior to the calls at issue." (Compl. ¶ 19.) The parties have identified case law with conflicting interpretations of *47 C.F.R. § 64.1200(c)(2)*. Specifically, GPS cites *Rombough* and similar cases which interpreted the relevant regulatory language to require a plaintiff to **[\*37]** plead that they personally registered the relevant phone number on the DNC registry to avoid dismissal. (*See* Def.'s Mot. at 24-25); *see also Rombough v. Robert D. Smith Ins. Agency, Inc., No. 1:22-cv-00015, 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278, at \*3 (N.D. Iowa June 9, 2022)* (dismissing the plaintiff's TCPA claim in part because "she does not allege that she registered her telephone number on the do-not-call-registry"); *Rogers v. Assur. IQ, LLC, No. 2:21-cv-00823, 2023 U.S. Dist. LEXIS 51955, 2023 WL 2646468, at \*4 (W.D. Wash. Mar. 27, 2023)* (dismissing the plaintiff's TCPA claim in part because the plaintiff failed to allege that "they placed their own numbers on the DNC list (as opposed to someone else placing their numbers on the list)"). Murch cites a number of cases disagreeing with *Rombough*'s analysis and argues that *Rombough* "has been disagreed with by every other court to consider it and its premises." (Pl.'s Resp. at 31, collecting cases.) The parties have not identified, and the Court has not found, any binding authority interpreting the relevant regulatory language.

As one district court in this circuit explained, "the regulation states that it applies to a 'residential telephone subscriber who has registered his or her number' on the DNC Registry, [however,] it goes on to require that DNC registrations 'must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.'" **[\*38]** *Abrahamian v. loanDepot.com LLC, No. 2:23-cv-00728, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at \*2 (D. Ariz. Mar. 13, 2024)* (quoting *47 C.F.R. § 64.1200(c)(2)*). The Court agrees with the *Abrahamian* court's analysis and conclusion "that as phone numbers change hands, the DNC Registry may not always reflect which consumers requested to be included" and "that the [regulation's] language includes the term 'indefinitely' to remove the ambiguity of which numbers should be protected." *Id.* Thus, the Court agrees with the majority of district courts in this Circuit that have interpreted *47 C.F.R. § 64.1200(c)(2)* and rejected the requirement that the plaintiff plead that they personally registered the relevant phone number on the DNC registry. *See id.* (rejecting *Rombough*'s interpretation of *47 C.F.R. § 64.1200(c)(2)*); *Nichols, 2025 U.S. Dist. LEXIS 37917, 2025 WL 689721, at \*3* ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."); *cf. Mason v. Spring EQ LLC, No. 5:24-cv-01833, 2024 U.S. Dist. LEXIS 240142, 2024 WL 5424385, at \*3 (C.D. Cal. Nov. 27, 2024)* (denying the defendant's motion to stay because "[o]n its face, the statutory language appears to protect phone numbers until they are removed regardless of personal registration" and "[c]onsidering the statutory language and conflicting case law cited by the parties, the Court is unconvinced that Defendant will clearly prevail in its motion to strike").

Accordingly, the district judge should deny GPS's **[\*39]** motion to dismiss on the ground that Murch failed to allege that she registered her number on the DNC registry.

## C. Class Allegations

Murch seeks to certify a "National DNC Class" on behalf of:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging

the purchase of GPS's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

(Compl. ¶ 33.)

GPS moves in the alternative to strike Murch's "class allegations under *Rule 12(f)* and/or *23*." (Def.'s Mot. at 25-31.) As recognized in *Walters*, "[t]here is an apparent split in this district on the issue" of whether a defendant's challenge to class allegations at the pleading stage is properly analyzed under *Rule 12(b)(6)* or *Rule 12(f)*. *Walters v. Vitamin Shoppe Indus., Inc., No. 3:14-cv-01173-PK, 2018 U.S. Dist. LEXIS 89081, 2018 WL 2424132, at *4 (D. Or. May 8, 2018)* (citations omitted), *findings and recommendation adopted*, *2018 U.S. Dist. LEXIS 88826, 2018 WL 2418544 (D. Or. May 29, 2018)*; *compare Bates v. Bankers Life & Cas. Co, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014)* (granting the defendant's *Rule 12(f)* motion to strike class allegations at the pleading stage), *aff'd*, *716 F. App'x 729 (9th Cir. 2018)* and *Updike v. Clackamas Cnty., No. 3:15-cv-00723-SI, 2015 U.S. Dist. LEXIS 160169, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015)* ("The Court finds it inappropriate to address Defendants' motion to dismiss [the plaintiff]'s class allegations at th[e pleading] stage" **[*40]** because "other Federal Rules of Civil Procedure exist to address improper class action allegations [including] . . . *Rule 12(f)*[.]") *with Speers v. Pre-Employ.com, Inc., No. 3:13-cv-01849-HU, 2014 U.S. Dist. LEXIS 82386, 2014 WL 2611259, at *2 (D. Or. May 13, 2014)* ("[A] defendant may move to dismiss class allegations prior to discovery in appropriate cases, although a *Rule 12(f)* motion is not the appropriate vehicle to challenge the sufficiency of class allegations."), *findings and recommendation adopted*, *2014 U.S. Dist. LEXIS 99907, 2014 WL 3672910 (D. Or. July 23, 2014)*; *cf. Gardiner v. Walmart Inc., No. 4:20-cv-04618, 2021 U.S. Dist. LEXIS 75079, 2021 WL 2520103, at *10 (N.D. Cal. Mar. 5, 2021)* ("Courts within this District and within the Ninth Circuit have determined that motions to strike are not the proper vehicle for

seeking dismissal of class allegations.") (simplified) (collecting cases). For the reasons explained below, the Court finds that Murch's class allegations are insufficient under either standard.

**1. *Rule 12(b)(6)***

**a. Applicable Law**

"Generally, *Rule 12(b)(6)* is not a proper vehicle for dismissing class claims, but district courts dismiss class allegations under the *Twombly/Iqbal* standard where the complaint 'lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.'" *Garcia v. Anane Enter. LLC, No. 2:24-cv-01993, 2025 U.S. Dist. LEXIS 54222, 2025 WL 894616, at *14 (E.D. Cal. Mar. 24, 2025)* (quoting *Mish v. TForce Freight, Inc., No. 3:21-cv-04094, 2021 U.S. Dist. LEXIS 193155, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021)*); *see also Webb v. Rejoice Delivers LLC, No. 5:22-cv-07221, 2025 U.S. Dist. LEXIS 62664, 2025 WL 974996, at *2 (N.D. Cal. Apr. 1, 2025)* (same); *Johnson v. Air Prods. & Chems., Inc., No. 2:22-cv-07327, 2023 U.S. Dist. LEXIS 54040, 2023 WL 2663279, at *5 (C.D. Cal. Jan. 26, 2023)* (same). Dismissing class allegations under the *Twombly/Iqbal* standard "does not test Plaintiff's compliance with *Rule 23*, and instead measures those claims under *Rule 8(a)*'s federal pleading **[*41]** standard." *Valenzuela v. Everi Games Inc., No. 2:24-cv-00257, 2024 U.S. Dist. LEXIS 27720, 2024 WL 5681957, at *4 n.3 (C.D. Cal. Feb. 15, 2024)* (citations omitted); *see also Guerra v. United Nat. Foods, Inc., No. 5:19-cv-01684, 2019 U.S. Dist. LEXIS 244152, 2019 WL 13203781, at *13 (N.D. Cal. Nov. 8, 2019)* ("Class certification discovery is not a substitute to the pleading requirements of *Rule 8* and *Twombly*. Class allegations must be supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted." (quoting *Jue v. Costco Wholesale Corp., No. 3:10-cv-00033, 2010 U.S.*

*Dist. LEXIS 22394, 2010 WL 889284, at \*6 (N.D. Cal. Mar. 11, 2010)*)) (simplified); *Grundmeyer v. Allstate Prop. & Cas. Ins. Co., No. 2:15-cv-00464, 2015 U.S. Dist. LEXIS 180693, 2015 WL 9487928, at \*1-2 (W.D. Wash. Sept. 29, 2015)* ("[When analyzing the defendant's *Rule 12* challenge to the class allegations, t]he question . . . is whether the allegations in the First Amended Complaint state 'plausible' grounds for class certification or whether they are so conclusory or formulaic that they should be disregarded." (citing *Twombly, 550 U.S. at 570*)). "If the class allegations are legally or factually defective, . . . dismissal is appropriate." *Grundmeyer, 2015 U.S. Dist. LEXIS 180693, 2015 WL 9487928, at \*1* (citing *Shroyer v. New Cingular Wireless Servs. Inc., 622 F.3d 1035, 1041 (9th Cir. 2010)*); *see also Garcia, 2025 U.S. Dist. LEXIS 54222, 2025 WL 894616, at \*14* ("Class claims must be supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted.") (simplified); *Flores v. Starwood Hotels & Resorts Worldwide, Inc., No. 8:14-cv-01093, 2015 U.S. Dist. LEXIS 194080, 2015 WL 12912337, at \*4 (C.D. Cal. Mar. 16, 2015)* ("[I]f a class action complaint could survive a motion to dismiss based merely on the need for class discovery, then many, if not all, class action complaints would have expansive class allegations and definitions to permit a fishing expedition during discovery. The Court **[\*42]** is troubled by this possibility.").

### b. Analysis

Murch alleges that "[c]lass action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged" in part because "[t]here are hundreds of Class members, such that joinder of all members is impracticable." (Compl. ¶ 39.) Murch further alleges that the proposed class is sufficiently numerous because, although "[t]he exact number of Class members is unknown[,] . . . based on the *en masse* nature of telemarketing [the class] is believed to be at least hundreds of persons at this time, and individual

joinder in this case is impracticable." (*Id.* ¶ 35.)

The Court finds that Murch fails plausibly to allege facts to support her class allegations. Specifically, Murch's allegations, the judicially noticeable materials, and materials incorporated by reference all support that GPS intended to call a business at a number published on the business's website and mistakenly reached Murch, who then lied about her identity and pretended to take a message for the intended business recipient. (*See* Pl.'s Resp. Ex. D.) Murch does not dispute that GPS markets or sells its products to businesses and not to consumers. **[\*43]** (*See* Greenleaf Decl. ¶ 9, "GPS sells foreign exchange and currency management solutions to corporate accounts. As such, GPS does not market its products or services to the general public or consumers like Plaintiff[.] Rather, GPS only sells its products and services to businesses and persons working in the financial services and banking sectors. In other words, GPS only markets 'business to business' and not to consumers."; Hr'g Tr. 35:5-11, "[Murch does not] dispute that [GPS] do[es] appear to be a more business-centered or business-to-business operation. But . . . ultimately, I think that those questions are best raised for discovery[.]") Nor does Murch dispute that S.C.'s company website listed Murch's phone number as S.C.'s business phone number at the time GPS made the calls at issue.[6] (*See* Greenleaf Decl. Exs. A, C.) In light of these undisputed facts, the Court asked Murch's counsel about whether Murch had a good faith factual basis to assert her claim on behalf of others similarly situated. (*See* Hr'g Tr. 35:12-16.) Murch's counsel responded that Murch's class allegations are primarily supported by his

---

[6] Consistent with Ninth Circuit authority, the Court takes judicial notice of the fact of publication, and what was in the public realm at the time, but not whether the contents of the publications are in fact true. *See also* **Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V., 899 F.3d 1081, 1087 n.2 (9th Cir. 2018)** ("We take notice of the fact of publication, but do not assume the truth of the article's contents." (citing **Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010)**)); *see also FED. R. EVID. 201(c)(1)* ("The court . . . may take judicial notice on its own.").

general knowledge about telemarketers and his experience in TCPA cases. ( *[\*44] See id.* 35:17-25, 36:1-4, 6-13.)

Given the unique and undisputed facts in the current record, the Court finds that "this is one of the rare cases in which dismissal of class allegations under *Rule 12(b)(6)* is appropriate, because 'the complaint lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.'" *Webb, 2025 U.S. Dist. LEXIS 62664, 2025 WL 974996, at \*4* (quoting *Mish, 2021 U.S. Dist. LEXIS 193155, 2021 WL 4592124, at \*8*); *see also Garcia, 2025 U.S. Dist. LEXIS 54222, 2025 WL 894616, at \*14* (dismissing class allegations because the plaintiff's "conclusory allegations fail to plausibly suggest the existence of a class who collectively suffered under [the] Defendants' unlawful policies and practices") (citation omitted); *Rubalcaba v. R&L Carriers Shared Servs., L.L.C., No. 4:23-cv-06581, 2024 U.S. Dist. LEXIS 73958, 2024 WL 1772863, at \*16 (N.D. Cal. Apr. 23, 2024)* (dismissing class allegations because "the Court concludes that this is one of the rare cases where Plaintiff's class allegations are so conclusory that forcing Defendant on a deep-sea charter of class discovery would be prejudicial") (simplified); *Johnson, 2023 U.S. Dist. LEXIS 54040, 2023 WL 2663279, at \*5* (dismissing class allegations because the plaintiff "has not alleged sufficient facts to support the broad meal and rest period classes he alleges in his complaint"); *Mish, 2021 U.S. Dist. LEXIS 193155, 2021 WL 4592124, at \*8-9* ("As currently pled, [the plaintiff]'s class allegations . . . lack 'sufficient factual content' to enable 'the Court to make a reasonable inference that Defendants are **[\*45]** liable' for the claims alleged.") (citations omitted); *Ovieda v. Sodexo Operations, LLC, No. 2:12-cv-01750, 2012 U.S. Dist. LEXIS 173844, 2012 WL 1627237, at \*4 (C.D. Cal. May 7, 2012)* ("[The plaintiff's] allegation is wholly conclusory and thus we need not take it as true in deciding this Motion. In sum, Plaintiff's class allegations . . . must be dismissed because she has alleged absolutely no facts to show that her work experience was similar

to that of any member of the putative class.").

Specifically, the Court finds that Murch fails plausibly to allege "sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted." *Garcia, 2025 U.S. Dist. LEXIS 54222, 2025 WL 894616, at \*14*; *see, e.g., Taylor v. Penske Logistics, LLC, No. 5:20-cv-02623, 2021 U.S. Dist. LEXIS 180160, 2021 WL 4288525, at \*4 (C.D. Cal. Sept. 21, 2021)* ("[The plaintiff] merely alleges what happened to him personally and asks the Court to extrapolate and assume, without any additional facts, that [the defendant] treated other employees in a similar fashion. This 'logical disconnect' renders the class claim subject to dismissal."); *Zamora v. Penske Truck Leasing Co., L.P., No. 2:20-cv-02503, 2021 U.S. Dist. LEXIS 39982, 2021 WL 809403, at \*3 (C.D. Cal. Mar. 3, 2021)* ("Plaintiffs' arguments suffer from a basic logical disconnect. Whether Plaintiffs adequately allege claims on their own behalf is beside the point. Plaintiffs do not assert any factual support for their class allegations. Rather, Plaintiffs merely allege that their claims are also brought on behalf of the Class. Without any factual **[\*46]** support, . . . the Court finds such leaps implausible. . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter.") (citation omitted); *Alvarado v. Wal-Mart Assocs., Inc., No. 2:20-cv-01926, 2020 U.S. Dist. LEXIS 209834, 2020 WL 6532868, at \*3 (C.D. Cal. Oct. 22, 2020)* ("Plaintiff cannot extrapolate from her singular experience that Defendants have a pattern and practice of committing similar violations[.]") (simplified); *Alvarado v. Wal-Mart Assocs. Inc., No. 2:20-cv-01926, 2020 U.S. Dist. LEXIS 212159, 2020 WL 6526372, at \*3 (C.D. Cal. Aug. 7, 2020)* ("Before a plaintiff can obtain class discovery and put a defendant through the expense of opposing class certification, she must at least plausibly allege that the asserted claims might apply to others in the putative class. Performing its 'context-specific task,' the Court finds that as currently stated, Plaintiff's allegations make it implausible that other putative class members will share her alleged injuries.")

(citation omitted); *Antonio v. Saxon Mortg. Servs., Inc., No. 2:11-cv-10066, 2012 U.S. Dist. LEXIS 209338, 2012 WL 13426614, at *3 (C.D. Cal. Sept. 7, 2012)* ("Plaintiffs clearly do not know if the proposed class actually exists. Nor have Plaintiffs alleged any facts that would give them, or the Court, any reason to believe (or even hope) that such a class exists. The federal fact-pleading standard, though lenient, does not permit a plaintiff to proceed with claims based on pure speculation. Plaintiffs cannot make baseless assumptions in their complaint in the hopes that something **[*47]** will 'stick' during discovery. Plaintiffs' argument here amounts to a request for leave to pursue class claims based on guesses lacking factual support in the hopes that a class will somehow materialize at a later date."); *Ovieda, 2012 U.S. Dist. LEXIS 173844, 2012 WL 1627237, at *1* ("[A] plaintiff cannot 'unlock the doors of discovery . . . armed with nothing more than conclusions.'" (quoting *Iqbal, 556 U.S. at 678-79*)).

For these reasons, the district judge should dismiss Murch's class allegations pursuant to *Rule 12(b)(6)*.

## 2. *Rule 12(f)*

If the Court declines to dismiss Murch's complaint, GPS moves in the alternative to strike Murch's "class allegations under *Rule 12(f)* and/or *23*[.]" (*See* Def.'s Mot. at 25-31.)

### a. Applicable Law

*Rule 12(f)* provides that a "court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter." *FED. R. CIV. P. 12(f)*. "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike the class allegations prior to discovery." *Tomaszewski v. Circle K Stores Inc., No. 2:20-cv-01569, 2021 U.S. Dist. LEXIS 123798, 2021 WL 2661190, at *2 (D. Ariz. Jan. 12, 2021)* (quoting *Sanders v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)*). "[I]n the context of

a motion to strike class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable." *Bates, 993 F. Supp. 2d at 1340-41*. "Yet where the plaintiffs fail to **[*48]** make even a prima facie showing of *Rule 23*'s prerequisites, . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977)* (citation omitted).

"The Ninth Circuit has recognized that 'often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.'" *Nichols, 2025 U.S. Dist. LEXIS 37917, 2025 WL 689721, at *4* (quoting *Vinole, 571 F.3d at 942*). "But when the problem with the class allegations is 'facially evident, it makes sense to address the issue early on.'" *Id.* (quoting *Baton v. Ledger SAS, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024)*); *see also Granados v. Onpoint Cmty. Credit Union, No. 3:21-cv-00847-SI, 2023 U.S. Dist. LEXIS 87214, 2023 WL 3570039, at *8 (D. Or. May 18, 2023)* ("Class allegations may be stricken at the pleading stage. . . . The granting of such motions 'has happened . . . when the class definition is obviously defective in some way.'") (citations omitted).

### b. Analysis

The Court recommends that the district judge strike Murch's class allegations for several reasons.

As an initial matter, the Court finds that Murch's class definition fails because, as defined and in light of Murch's own factual allegations, Murch is not a member of the class. Specifically, Murch seeks to represent individuals "who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase **[*49]** of GPS's goods or services[.]" (Compl. ¶ 33.) Murch

fails plausibly to allege, however, that she received any calls from GPS encouraging the purchase of GPS's goods or services. Rather, construing her allegations in the light most favorable to her, Murch received a phone call initiated for the purpose of encouraging S.C. or anyone else "who works at [S.C.'s company] . . . regarding foreign exchange" to purchase GPS's goods or services. (Pl.'s Resp. Ex. D at 1.) Murch does not allege that she worked at S.C.'s company or dealt with foreign exchange. The call's transcript makes clear that the caller never offered Murch any goods or services. (*See generally id.*) Although Murch's allegations may be sufficient at the pleading stage to support her claim that she received a call initiated for the *purpose* of solicitation, she fails sufficiently to allege that the caller "encourage[d] the purchase of GPS's good or services." (Compl. ¶ 33.) Thus, Murch's proposed class lacks typicality because she "has not alleged that she falls into her own class definition." *Brown v. Nano Hearing Tech Opco, LLC, No. 3:24-cv-00221, 2024 U.S. Dist. LEXIS 120371, 2024 WL 3367536, at *9 (S.D. Cal. July 9, 2024)* (striking class allegations in part because the plaintiff "has not alleged that she falls into her own class definition" and "the Complaint [*50] does not name any other plaintiffs, [therefore] the purported class lacks typicality" (citing *Galan Segura v. CRST Van Expedited, Inc., No. 5:12-cv-01901, 2014 U.S. Dist. LEXIS 190412, 2014 WL 12567799, at *2 (C.D. Cal. June 16, 2014)*)); *Ismail v. Am. Airlines, Inc., No. 2:22-cv-01111, 2023 U.S. Dist. LEXIS 122951, 2023 WL 5504932, at *7 (C.D. Cal. July 14, 2023)* (striking class allegations in part because the plaintiff "pleads that he was an 'exempt supervisor,' but all but one of his proposed Class Definitions include only non-exempt workers" and "[t]he one proposed Class Definition that includes supervisors specifies that it includes only 'level 3 and level 4 supervisors,' and he does not allege that his job title fits into that category"); *see also Philips v. Ford Motor Co., No. 5:14-cv-02989, 2016 U.S. Dist. LEXIS 177672, 2016 WL 7428810, at *8 (N.D. Cal. Dec. 22, 2016)* ("Typicality requires that the named Plaintiffs be members of the class they represent[.]") (simplified), *aff'd, 726 F. App'x 608 (9th Cir. 2018)*.

Further, the Court finds that Murch's proposed class definition would inappropriately require the Court to make findings on legal issues to determine class membership. Specifically, Murch seeks to represent a class of individuals "who received more than one telemarketing call[.]" (Compl. ¶ 33.)

Like "telephone solicitation," the relevant regulations define "telemarketing" as including only calls or messages initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 C.F.R. § 64.1200(f)(13)*. Thus, determining class [*51] membership is not based on objective criteria. Rather, determining class membership requires a subjective inquiry into whether GPS initiated each call for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, issues directly related to the merits of each member's claim. *See Nichols, 2025 U.S. Dist. LEXIS 37917, 2025 WL 689721, at *5* (striking class allegations and "replacing the phrase 'telephone solicitations' with 'telephone calls'" because "whether a person received a 'telephone call' is an objective criterion that does not require the Court to make an upfront determination regarding consent"); *Salaiz v. eHealthInsurance Servs. Inc., No. 5:22-cv-04835, 2023 U.S. Dist. LEXIS 48742, 2023 WL 2622138, at *5 (N.D. Cal. Mar. 22, 2023)* (striking class allegations because the plaintiff's proposed class definition "improperly relies on merits determinations"); *Cashatt v. Ford Motor Co., No. 3:19-cv-05886, 2021 U.S. Dist. LEXIS 56724, 2021 WL 1140227, at *3 (W.D. Wash. Mar. 24, 2021)* (striking class allegations "because injury and causation are elements that must be established and which go to the question of liability; they are therefore not appropriate as part of the definition of the class"); *cf. Panacci v. A1 Solar Power, Inc., No. 3:15-cv-00532, 2015 U.S. Dist. LEXIS 77294, 2015 WL 3750112, at *3 (N.D.

*Cal. June 15, 2015)* (denying motion to strike TCPA class allegations because "to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants **[\*52]** within a certain timeframe" and "[n]one of these questions involve legal analysis" because "[m]embership can be determined by objective criteria") (citation omitted).

Murch argues that "courts have certified classes with nearly identical definitions in the past." (Pl.'s Resp. at 33, citing *Aley v. Lightfire Partners, LLC, No. 5:22-cv-00330, 2024 U.S. Dist. LEXIS 156946, 2024 WL 4007345, at \*2 (N.D.N.Y. Aug. 30, 2024)*) (emphasis omitted). As an initial matter, *Aley* is a district court opinion from another circuit. *Cf. Joe Hand Promotions Inc. v. Gonzalez, 423 F. Supp. 3d 779, 784 (D. Ariz. 2019)* ("District court opinions are relevant for their persuasive authority, but this Court is not bound by the opinion of another judge of the same or different district." (citing *Starbuck v. City & Cnty. of S.F., 556 F.2d 450, 457 n.13 (9th Cir. 1977)*))).

In any event, the facts in *Aley* are distinguishable. Specifically, the court in *Aley* certified a class of individuals "who received more than one telemarketing call from [the defendant] as part of the 'Auto Protectors' calling campaign." *Aley, 2024 U.S. Dist. LEXIS 156946, 2024 WL 4007345, at \*2*. The court never addressed the purpose of the calls at issue, likely because the purpose of the alleged calls was undisputed. *See id.* ("[The Defendant] placed the telemarketing calls at issue relying on the supposed consent obtained through Myjobscorner.com."). As a result, class members could be identified by whether they received calls "pursuant to the same marketing campaign." *2024 U.S. Dist. LEXIS 156946, [WL] at \*3*. Here, **[\*53]** however, GPS disputes the purpose of the alleged calls and Murch does not allege facts supporting that the relevant calls were made pursuant to a marketing campaign that could objectively determine the purpose of the calls at issue. On the

contrary, Murch's allegations, the judicially noticeable materials, and materials incorporated by reference all support that GPS intended to call a business and mistakenly reached Murch, who then lied about her identity and pretended to take a message for the intended business recipient.

Finally, the Court finds that Murch has failed to satisfy her "burden of advancing a prima facie showing that the class action requirements of *[Rule] 23* are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985)*. Specifically, Murch alleges that "the exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable." (Compl. ¶ 35.)

As discussed above, however, it is clear from the relevant call's transcript, as well as judicially noticeable materials, that GPS contacted Murch unintentionally and that **[\*54]** it intended to contact S.C. at a business phone number. In light of Murch's conclusory allegations, which are contradicted by the judicially noticeable materials and materials incorporated by reference, the Court finds that Murch has failed to make "a prima facie showing that the class action requirements of *[Rule] 23* are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete, 767 F.2d at 1424*; *see also Holly v. Alta Newport Hosp., Inc., 612 F. Supp. 3d 1017, 1028 (C.D. Cal. 2020)* (striking class allegations because "[the plaintiff] fails to allege any facts in the FAC to support numerosity" and finding that "[the plaintiff]'s implicit suggestion that the six photographs may have contained the medical records of other individuals does not establish numerosity on its own" and "the claims that [the plaintiff] makes about the alleged numerosity of the class in her Opposition are absent from the FAC"); *Sallie Holly v. Alta Newport Hosp., Inc., No. 2:19-cv-07496, 2020 U.S. Dist. LEXIS 195652, 2020 WL 6161457, at \*5 (C.D. Cal. Oct. 21, 2020)* (striking

2025 U.S. Dist. LEXIS 169651, *54

class allegations because the plaintiff "fail[ed] to allege any facts in the SAC to support numerosity and instead relies on only the possibility of discovery to substantiate her allegations" and stating "[t]he Court is unwilling to put both parties through costly discovery to permit [the plaintiff] further attempts to establish an implausible **[*55]** fact"); *cf. Seymour v. Fay Servicing LLC, No. 2:21-cv-01666, 2021 U.S. Dist. LEXIS 251228, 2021 WL 6499937, at *13 (C.D. Cal. Aug. 25, 2021)* (striking class allegations because the plaintiff "failed to plead commonality, and by extension, predominance").

For these reasons, if the district judge does not dismiss Murch's class allegations under *Rule 12(b)(6)*, the district judge should grant GPS's *Rule 12(f)* motion to strike Murch's class allegations.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT IN PART and DENY IN PART GPS's motion to dismiss and to strike (ECF No. 7). Specifically, the district judge should deny GPS's *Rule 12(b)(1)* motion, but grant GPS's motion to dismiss Murch's injunctive relief claim and dismiss or strike Murch's class allegations. The Court further recommends that the district judge allow Murch to file an amended complaint within fourteen (14) days if she is able to cure the pleading deficiencies discussed herein. If not, the case will proceed on Murch's individual TCPA claim.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. **[*56]** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under

advisement.

DATED this 6th day of June, 2025.

/s/ Stacie F. Beckerman

HON. STACIE F. BECKERMAN

United States Magistrate Judge

**End of Document**



**User Name:** Anthony Paronich

**Date and Time:** Saturday, April 18, 2026 4:06 PM EDT

**Job Number:** 281925221

# Document (1)

1. *Nichols v. eHealthInsurance Servs.*

   **Client/Matter:** -None-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

 Cited
As of: April 18, 2026 8:06 PM Z

# *Nichols v. eHealthInsurance Servs.*

United States District Court for the Northern District of California

March 3, 2025, Decided; March 3, 2025, Filed

Case No. 23-cv-06720-EKL

## Reporter

2025 U.S. Dist. LEXIS 37917 *; 2025 LX 194141; 2025 WL 689721

TERRI NICHOLS, et al., Plaintiffs, v. EHEALTHINSURANCE SERVICES, INC., Defendant.

## Core Terms

ehealth, registry, phone number, register, implement regulations, telephone solicitation, fail-safe, telephone number, motion to dismiss, motion to strike, right of action, telephone call, third party, telemarket, consumer, alleged violation, subscriber, discovery, telephone

**Counsel:** [*1] For Terri Nichols, individually and on behalf of all others similarly situated, Thomas Matthews, individually and on behalf of all others similarly situated, Plaintiffs: Gustavo Ponce, Mona Amini, Seyed Abbas Kazerounian, Kazerouni Law Group, APC, Costa Mesa, CA.

For eHealthInsurance Services, Inc., doing business as eHealth, Defendant: Brittany A Andres, Puja J. Amin, Troutman Amin, LLP, Irvine, CA.

**Judges:** Eumi K. Lee, United States District Judge.

**Opinion by:** Eumi K. Lee

## Opinion

**ORDER GRANTING IN PART MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**

Re: Dkt. Nos. 14, 15

In this putative class action, named plaintiff Thomas Matthews alleges that Defendant eHealthInsurance Services, Inc. ("eHealth") violated the *Telephone Consumer Protection Act (the "TCPA")* by placing unsolicited telemarketing calls to his phone number, which was registered with the National Do-Not-Call Registry. eHealth moves to dismiss the complaint and to strike class allegations. *See* Mot. to Dismiss, ECF No. 14; Mot. to Strike, ECF No. 15. The Court carefully reviewed the parties' briefs and heard argument on October 22, 2024. For the following reasons, the Court GRANTS in part the Motion to Dismiss and GRANTS in part the Motion to Strike.

## I. BACKGROUND

Plaintiff Thomas Matthews alleges [*2] that he owns a cell phone with a phone number ending in digits "8364."[1] Compl. ¶ 59. He is the sole user and/or subscriber of his cell phone. *Id.* ¶ 60. Matthews alleges that his cell phone number was added to the National Do-Not-Call Registry (the "NDNC Registry") on or about August 31, 2021. *Id.* ¶ 62. On June 10 and July 15, 2022, eHealth allegedly placed several telemarketing calls to Matthews. *Id.* ¶¶ 63-68. Matthews claims that he did not consent to receive these calls, and that he did not have an established business relationship

---

[1] The facts are taken from the complaint and assumed to be true for purposes of these motions. Initially, the complaint was brought by Matthews and another plaintiff, Terri Nichols. On February 18, 2025, Nichols filed a notice of voluntary dismissal without prejudice. ECF No. 46. Accordingly, this Order refers only to Matthews.

with eHealth. *Id.* ¶¶ 70-71.

Matthews seek to represent a nationwide class of persons "registered on the National Do Not Call Registry . . . to whom Defendant and/or a third party acting on Defendant's behalf, made two [or] more telephone solicitations . . . within any twelve-month period." Compl. ¶ 92. Matthews asserts two causes of action on his own behalf and on behalf of the proposed class. Count 1 alleges violations of the TCPA, *47 U.S.C. § 227, et seq.*, and Count 2 alleges violations of the TCPA's implementing regulations, *47 C.F.R. § 64.1200(c), et seq.*

## II. MOTION TO DISMISS

### A. Legal Standard

Under *Federal Rule of Civil Procedure 12(b)(6)*, a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, **[*3]** the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. For purposes of a *Rule 12(b)(6)* motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008)*. However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011)* (per curiam) (quoting *W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)*).

If the court finds that dismissal pursuant to *Rule 12(b)(6)* is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)* (en banc) (quoting *Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)*).

### B. Discussion

### 1. Count 1

Count 1 appears to assert that eHealth violated the TCPA by using an Automatic Telephone Dialing System ("ATDS") or prerecorded messages. *See* Compl. ¶¶ 22, 30, 127, 129, 130; *see also 47 U.S.C. § 227(b)(1)(A)(iii)* (prohibiting the use of ATDS or prerecorded messages, except for emergency purposes or with the prior express **[*4]** consent of the called party). eHealth moves to dismiss this claim on the basis that Matthews fails to allege that he received calls from an ATDS or that he received prerecorded messages. Mot. to Dismiss at 9-13.

In his opposition brief, Matthews concedes that the complaint "does not allege that Defendant utilized an automatic telephone dialing system ('ATDS') or an artificial or prerecorded voice." Opp. at 3-4, ECF No. 29. Matthews clarifies that the complaint "inadvertently" included references to ATDS, *id.* at 3, and that his claim is "based on Defendant's violations of the TCPA by contacting [Matthew's] telephone number registered with the [NDNC Registry]." *Id.* at 4.

At the motion hearing, Plaintiff's counsel agreed that Count 1 may be dismissed because Count 2 separately alleges a violation of the TCPA's NDNC Registry provision — the only claim that Matthews intends to pursue. Accordingly, the Court GRANTS the Motion to Dismiss Count 1 without leave to amend because Matthews does not allege any facts that could state a claim under this theory of liability, and the claim was asserted in error. *Lopez, 203 F.3d at 1127*; *see also Diamond S.J. Enter., Inc. v. City of San Jose, 395 F. Supp. 3d 1202, 1231*

*(N.D. Cal. 2019)* (striking immaterial allegations that were erroneously included in complaint). **[\*5]**

## 2. Count 2

Count 2 alleges a violation of the TCPA's implementing regulations, which prohibit telephone solicitations to telephone numbers that are listed in the NDNC Registry. The only disputed issue is whether Matthews must allege that he *personally* registered his phone number in the NDNC Registry to state a claim. *See* Mot. to Dismiss at 14-15. The Court holds that Matthews need not allege that he personally registered his number in the NDNC Registry. Rather, it is sufficient that Matthews alleges that his phone number "was added" to the NDNC Registry. Compl. ¶ 62. The plain language and statutory scheme of the TCPA and its implementing regulations support this conclusion.

First, the plain language of the TCPA indicates that Congress sought to prohibit all unsolicited telemarketing calls to phone numbers in the NDNC Registry, without limitation as to who had registered the phone numbers. The TCPA instructed the Federal Communications Commission ("FCC") to initiate a rulemaking proceeding to implement the TCPA's protections. *47 U.S.C. § 227(c)(1)*. The statute provided that the FCC "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential **[\*6]** subscribers who object to receiving telephone solicitations." *Id. § 227(c)(3)*. The TCPA mandated that the implementing regulations "prohibit any person from making or transmitting a telephone solicitation *to the telephone number* of any subscriber included in the database." *Id. § 227(c)(3)(F)* (emphasis added). Through this language, it appears that Congress intended to prohibit calls *to phone numbers* in the NDNC Registry. This prohibition does not turn on whether the person who receives the call personally listed the phone number in the NDNC Registry. *See Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 990 n.8 (9th*

*Cir. 2023)* ("The Do-Not-Call Registry lists numbers, not names."). This reading also comports with the TCPA's capacious private right of action. *Id. § 227(c)(5)* (providing a cause of action to any "person who has received" unsolicited calls); *Hall, 72 F.4th at 989* (observing that the TCPA "provides a private right of action to redress unsolicited calls to [registered] numbers"). Congress did not limit the right of action to subscribers who personally added their phone numbers to the NDNC Registry.

Second, the TCPA's implementing regulations also indicate that a plaintiff need not allege that he personally registered his phone number in the NDNC Registry. The regulations provide for ongoing protection **[\*7]** for the registered phone number unless it is removed by the consumer or by the database administrator. *47 C.F.R. § 64.1200(c)(2)* (providing that, once a phone number is added to the NDNC Registry, the registration "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator"). Thus, the TCPA's protections attach to registered telephone numbers, regardless of whether the phone number is still used by the person who originally listed it in the NDNC Registry.

In addition, requiring a plaintiff to affirmatively allege (or prove) that he personally listed his phone number in the NDNC Registry would run contrary to the liability scheme of the TCPA's implementing regulations. The implementing regulations create a framework through which consumers benefit from the TCPA's protections as long as a phone number is registered in the NDNC Registry, unless the *telemarketer* proves that a specified safe harbor applies. *See id. § 64.1200(c)(2)(i)-(iii)* (placing the burden of proof on the telemarketer to "demonstrate" it has protocols to prevent calls made in error, or that the telemarketer "has obtained" consent). Notably, there is no safe harbor that precludes **[\*8]** liability for calls made to persons who did not personally list their phone numbers in the NDNC Registry. eHealth's proposed

construction would effectively read in an additional safe harbor that is not provided by the implementing regulations.

Based on the foregoing reasons, the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue — with one exception — has reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs., No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, 2020 WL 7391299, at \*14 (N.D. Cal. July 22, 2020)*; *Abrahamian v. loanDepot.com LLC, No. 23-cv-00728-PHX-SMB, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at \*2 (D. Ariz. Mar. 13, 2024)*. The exceptional case is *Caitlin Rombough v. Robert D. Smith Ins. Agency, Inc., No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278, at \*2-3 (N.D. Iowa June 9, 2022)* (dismissing claim because plaintiff did not allege that she personally registered her phone number in the NDNC Registry). In *Rombough*, the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered* his or her telephone number on the" NDNC Registry." *47 C.F.R. § 64.1200(c)* (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must **[\*9]** be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*. The Court finds that it is more consistent with the remedial purpose of the TCPA not to construe an additional

pleading requirement absent a clear basis in the TCPA or its implementing regulations. "Because the TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose." *Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1047 (9th Cir. 2017)*. Accordingly, eHealth's Motion to Dismiss Count 2 is DENIED.

## III. MOTION TO STRIKE CLASS ALLEGATIONS

### A. Legal Standard

Under *Rule 12(f)*, a party may move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. The purpose of a motion to strike is to avoid wasteful litigation of "spurious issues." *Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010)*. Therefore, a "motion to strike should only be granted if the matter sought to be stricken clearly **[\*10]** has no possible bearing on the subject matter of the litigation." *Baton v. Ledger SAS, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024)*.

A decision to grant a motion to strike class allegations at the pleading stage is the "functional equivalent of denying a motion to certify a case as a class action" before discovery commences. *Bates v. Bankers Life & Cas. Co., 848 F.3d 1236, 1238 (9th Cir. 2017)* (per curiam) (quoting *In re Bemis Co., 279 F.3d 419, 421 (7th Cir. 2002)*). The Ninth Circuit has recognized that "often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009)*. Thus, in general, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable." *Id.* (quoting

*Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977)*). But when the problem with the class allegations is "facially evident, it makes sense to address the issue early on." *Baton, 740 F. Supp. 3d at 883*.

## B. Discussion

Matthews seeks to represent the following class:

> All persons within the United States, registered on the National Do Not Call Registry for at least 31 days, to whom Defendant and/or a third party acting on Defendant's behalf, made two [or] more *telephone solicitations* that promoted Defendant's products or services, to a cellular telephone number within any twelvemonth period, within the four (4) years **[*11]** prior to the filing of the Complaint.

Compl. ¶ 92 (emphasis added). eHealth moves to strike the class allegations based on three purported deficiencies of this class definition. eHealth argues that the class definition is: (1) an improper "fail-safe" class; (2) overbroad because it includes members who do not have valid claims; and (3) indeterminate because it includes members who received calls from unspecified third parties acting on eHealth's behalf. The Court addresses these arguments in turn, finding only the first persuasive at this stage of the litigation.

First, eHealth argues that Matthews has defined an improper "fail-safe" class. *See* Mot. to Strike at 19-22. A proper class is defined by objective criteria. For example, in a false advertising case, the class might be defined as all persons who purchased a certain product during a certain time period. *See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1123-24 (9th Cir. 2017)*. By contrast, a fail-safe class "is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp., 375 F. App'x 734, 736 (9th Cir. 2010)*. To continue with the false advertising example, a fail-safe class would be all persons who bought a product that the defendant "falsely advertised." *See Brazil v. Dell,*

*Inc., 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008)*. This example illustrates a fundamental **[*12]** problem with a fail-safe class: To determine class membership, "it would be necessary for the court to reach a legal determination that [the defendant] had falsely advertised." *Id.* This approach is unmanageable and improper because courts may not "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)*; *see also Kamar, 375 F. App'x at 736*.

Here, eHealth is correct that the class definition is fail-safe because membership "turns on whether a consumer received a telephone solicitation from eHealth." Mot. to Strike at 20. A "telephone solicitation" is not just a telephone call. Rather, the TCPA's implementing regulations define "telephone solicitation" to exclude calls made with consent or where there is an established business relationship between the caller and the called party. *See 47 C.F.R. § 64.1200(f)(15)*. Therefore, the Court cannot determine who is a member of the class without evaluating the merits of each potential class member's claim, including evidence regarding consent and whether there was an established business relationship with eHealth. *Pepka v. Kohl's Dep't Stores, Inc., No. 16-cv-4293-MWF (FFMx), 2016 U.S. Dist. LEXIS 186402, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016)*.

Because this is a fail-safe class and defective as a matter of law, it is appropriate to strike it at the pleading stage. *See Olean Wholesale Grocery Coop., v. Bumble Bee Foods LLC, 31 F.4th 651, 669 n.14 (9th Cir. 2022)* (noting that a fail-safe class is impermissible). **[*13]** Indeed, courts frequently strike similar class definitions in TCPA cases where the class is defined to exclude calls that were made with consent. *See, e.g., Salaiz v. eHealthInsurance Servs. Inc., No. 22-CV-04835-BLF, 2023 U.S. Dist. LEXIS 48742, 2023 WL 2622138, at *2, *5 (N.D. Cal. Mar. 22, 2023)*; *Dixon v. Monterey Fin. Servs., No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 82601, 2016 WL*

*3456680, at \*4 (N.D. Cal. June 24, 2016)*; *Winters v. Loan Depot LLC, No. CV-20-01290-PHX-SPL, 2022 U.S. Dist. LEXIS 47778, 2022 WL 22865378, at \*7 (D. Ariz. Mar. 17, 2022)*.

However, a class "may be redefined" to resolve the fail-safe issue. *Olney v. Job.Com, Inc., No. 12-cv-01724-LJO, 2013 U.S. Dist. LEXIS 141339, 2013 WL 5476813, at \*11 (E.D. Cal. Sept. 30, 2013)*. Here, the issue can be resolved by replacing the phrase "telephone solicitations" with "telephone calls." Redefining the class in this manner is appropriate because whether a person received a "telephone call" is an objective criterion that does not require the Court to make an upfront determination regarding consent. *See Panacci v. A1 Solar Power, Inc., No. 15-cv-00532-JCS, 2015 U.S. Dist. LEXIS 77294, 2015 WL 3750112, at \*8 (N.D. Cal. June 15, 2015)* (declining to strike class definitions that "d[id] not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership"); *see also Olney, 2013 U.S. Dist. LEXIS 141339, 2013 WL 5476813, at \*11* (declining to strike revised class definition of all persons "who received any telephone calls" that did not exclude calls made with consent). Accordingly, the Court GRANTS eHealth's Motion to Strike the class definition with leave to amend consistent with the discussion above.

The Court now turns to eHealth's second argument, that the class is overbroad because it includes members who lack valid TCPA claims. **[\*14]** eHealth argues that the class necessarily includes members who consented to be called, and those class members do not have valid claims.[2] This

---

[2] There is an inherent tension between this argument and eHealth's first argument that the class definition is improper because it *excludes* calls made with consent. eHealth "cannot have it both ways. If it is per se impermissible to define the class in such a way that it only includes persons [who] . . . did not consent, it cannot be per se impermissible to re-define that class to include some individuals who consented to be called. To so hold would absolutely preclude class actions in TCPA cases, an outcome that finds no support in the law."

argument is raised prematurely because eHealth has not submitted any evidence that any class member consented to be called or had an established business relationship with eHealth. *See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th Cir. 2012)* (individualized issues of consent did not preclude provisional class certification in a TCPA case because defendant failed to "show a single instance where express consent was given before the call was placed"). At this early stage, the Court has no basis to conclude that "a great number" of class members "could not have been harmed" by eHealth's allegedly unlawful conduct. *Olean, 31 F.4th at 669 n.14*. The Court will not strike class allegations based on the speculative possibility that an unspecified number of class members might have consented to receive calls. Discovery is needed to evaluate eHealth's arguments about the overbreadth of the class. *See Vinole, 571 F.3d at 942*.

The cases eHealth relies upon are inapposite. For example, *Jamison v. First Credit Services, Inc.*, held that a class definition was overbroad at the class certification stage based on evidence "that a large percentage of the potential **[\*15]** class did consent to receiving calls." *No. 12 C 4415, 2013 U.S. Dist. LEXIS 105352, 2013 WL 3872171, at \*8 (N.D. Ill. July 29, 2013)*. Here, the case is at the pleading stage, and eHealth has not produced any evidence that Matthews or the putative class members consented to receiving calls. Another case cited by eHealth, *Buonomo v. Optimum Outcomes, Inc.*, confirms that eHealth's motion is premature. *301 F.R.D. 292 (N.D. Ill. 2014)*. In that case, the defendant moved to strike class allegations, arguing that individualized issues of consent would predominate over common issues. *Id. at 298-99*. The court rejected this argument as premature because the defendant failed to present "any specific evidence" that consent would require individualized proof. *Id. at 298-99*. The court held that the plaintiff "must have the opportunity to conduct discovery" regarding whether the proposed

---

*Olney, 2013 U.S. Dist. LEXIS 141339, 2013 WL 5476813, at \*11*.

class's claims were "susceptible to generalized proof." *Id. at 299*. The same principle holds true here.[3]

Finally, eHealth argues that the class is indefinite because it includes persons who received calls from "a third party acting on Defendant's behalf." Mot. to Strike at 17-18. The Court declines to strike or narrow the class definition on this basis because eHealth may be liable under the TCPA for telephone solicitations "where an agency relationship, as defined **[*16]** by federal common law, is established between [eHealth] and a third-party caller." *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9th Cir. 2014)*, *aff'd*, *577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*. The identity of relevant third parties can be clarified in discovery — for example, through an interrogatory requesting the identity of third parties, if any, that eHealth engaged to call consumers on its behalf to market its products or services. Courts have declined to strike similar class definitions. *See, e.g., Olney, 2013 U.S. Dist. LEXIS 141339, 2013 WL 5476813, at *11* (declining to strike class definition that included persons who received telephone calls "from Defendant or its agent(s) and/or employee(s)") (cleaned up).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss Count 1 without leave to amend and DENIES the Motion to Dismiss Count 2. The Court GRANTS the Motion to Strike the fail-safe class definition with leave to amend, consistent with the instructions in this Order. The Court DENIES the Motion to Strike in all other respects. Matthews shall file an amended complaint within fourteen days of this Order. The amended complaint shall omit allegations regarding former

named plaintiff Nichols in light of her notice of voluntary dismissal.

**IT IS SO ORDERED**.

Dated: March 3, 2025

/s/ Eumi K. Lee

Eumi K. Lee

United States **[*17]** District Judge

---

End of Document

---

[3] eHealth argues that the class is overbroad because it includes persons who did not personally place their phone numbers on the NDNC Registry. This is not a requirement for a TCPA claim, *see supra* Section II.B.2, thus the Court declines to strike the class definition on this basis.